**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE ADVANTA CORP. ERISA LITIGATION | : <br> :     Civil Action No. 2:09-04974-CMR <br> : <br> : |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO**
**DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Steven B. Feirson
Michael L. Kichline
J. Ian Downes
Sarah L. Wyatt
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Attorneys for All Defendants Other Than*
*John Moore*

Dated:  <u>October 27, 2010</u>

## TABLE OF CONTENTS

**Page**

**OVERVIEW OF MOTION TO DISMISS** ............................................................................. 1

**MANDATE TO DISMISS MERITLESS CLAIMS ON THE PLEADINGS** ....................... 1

**INTRODUCTION** ............................................................................................................ 3

**FACTUAL BACKGROUND** .......................................................................................... 9

I.      THE PLANS ............................................................................................................. 9

        A.      The ESOP .......................................................................................... 10

              1.    Plan Design and Operation ................................................... 11

              2.    Plan Participation ................................................................. 13

              3.    Fiduciary Responsibility Under the ESOP ........................... 14

        B.      The Savings Plan ............................................................................. 16

              1.    Design of the Savings Plan ................................................... 16

              2.    Investment Options Under the Savings Plan ......................... 18

               3.    Communications with Savings Plan Participants Regarding the Company Stock Fund ............................................................. 20

              4.    Fiduciary Responsibility Under the Savings Plan ................ 22

II.     ADVANTA'S OPERATIONS DURING THE PROPOSED CLASS PERIOD ............ 23

**ARGUMENT** ................................................................................................................. 26

I.      PLAINTIFFS' PRUDENCE CLAIM MUST BE DISMISSED AS TO THE DIRECTOR DEFENDANTS BECAUSE THE DIRECTOR DEFENDANTS HAD NO FIDUCIARY RESPONSIBILITY WITH RESPECT TO THE OFFERING OF ADVANTA STOCK AS AN INVESTMENT OPTION UNDER THE SAVINGS PLAN (COUNT I) ................................................................... 26

II.     PLAINTIFFS' PRUDENCE CLAIM WITH RESPECT TO THE ESOP MUST BE DISMISSED BECAUSE THE ESOP AFFORDED PLAN FIDUCIARIES NO DISCRETION WITH RESPECT TO INVESTMENTS IN ADVANTA STOCK (COUNT I) ................................................................................ 29

        A.      Under Controlling Third Circuit Law, There Can Be No Breach of the Fiduciary Duty of Prudence Where a Plan "Absolutely Requires" Investments in Employer Stock ................................................ 29

        B.      The Fiduciaries of the ESOP Had No Discretion with Respect to the Plan's Investments in Advanta Stock ........................................... 34

## TABLE OF CONTENTS

Page

III.     PLAINTIFFS' CLAIM THAT DEFENDANTS BREACHED THEIR DUTY OF PRUDENCE SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT PLED SUFFICIENT FACTS TO OVERCOME MOENCH'S PRESUMPTION OF PRUDENCE(COUNT I) ..................................................................................... 36

    A.     The Moench Presumption Governs the Alleged Fiduciaries' Decisions With Respect to the Offering of Advanta Stock ................................................ 36

    B.     Plaintiffs' Conclusory Allegations That Defendants "Knew or Should Have Known" of the Alleged Imprudence of Advanta Stock Are Insufficient to Overcome the Presumption of Prudence...................................... 38

        1.     To Overcome the Moench Presumption, Plaintiffs Must Plead Facts Establishing That Plan Fiduciaries Knew That Employer Stock Was An Imprudent Investment ....................................................... 38

        2.     Plaintiffs Plead No Facts Supporting the Conclusion That the Defendants Knew of Advanta's "Impending Collapse." ......................... 39

IV.     SECTION 404(c) OF ERISA BARS PLAINTIFFS' CLAIM WITH RESPECT TO THE SAVINGS PLAN ........................................................................................ 45

V.     PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THAT DEFENDANTS VIOLATED ANY FIDUCIARY DUTY OF DISCLOSURE IMPOSED BY ERISA (COUNT I) ...................................................................................................... 47

    A.     Defendants Were Not Required to Provide Plaintiffs With Information Concerning Advanta's Financial Condition or the Likely Future Value of Its Stock. ...................................................................................................... 48

    B.     Plaintiffs' Disclosure Claim Fails Because Plaintiffs Cannot Prove Loss Causation ..................................................................................................... 50

    C.     The Alleged "Misstatements" Cannot Support a Claim for Breach of ERISA's Disclosure Obligations.......................................................................... 51

        1.     Plaintiffs' Disclosure Claim Fails to Comply with the Requirements of Fed. R. Civ. P. 9(b).................................................... 51

        2.     Defendants' Alleged Misstatements Were Not Made in a Fiduciary Capacity and Are Not Actionable Under ERISA ................................... 53

VI.     THE ALLEGED "CONFLICTS OF INTEREST" ARE INSUFFICIENT TO SUPPORT A CLAIM FOR BREACH OF ERISA'S FIDUCIARY "DUTY OF LOYALTY" (COUNT II) ............................................................................................ 54

VII.     PLAINTIFFS' FAILURE TO MONITOR CLAIM (COUNT III) SHOULD BE DISMISSED............................................................................................................... 57

    A.     Plaintiffs' Claim Fails Because It Is Derivative of Their Meritless Prudence Claim ................................................................................................. 57

## TABLE OF CONTENTS

**Page**

B.      Plaintiffs Do Not Identify Any Circumstances That Should Have Led the Director Defendants To Exercise Their Limited Fiduciary Duties Under the Plans ............................................................................................................. 58

**CONCLUSION** ............................................................................................................. **60**

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009).............................................................................2, 53, 54

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955 (2007)...................................................1, 2, 53, 54

*Benak v. Alliance Capital Mgmt., L.P.*,
   435 F.3d 396 (3d Cir.2006)............................................................................ 46

*Dann v. Lincoln Nat'l Corp.*,
   -- F. Supp. 2d --, 2010 WL 1644276, (E.D. Pa. April 20, 2010) ....................................33, 50

*DiFelice v. U.S. Airways, Inc.*,
   497 F.3d 410 (4th Cir. 2007)........................................................................44, 45, 57

*Edgar v. Avaya, Inc.*,
   503 F.3d 340 (3d Cir. 2007)..........................................................................passim

*Fisher v. JP Morgan Chase & Co.*,
   -- F. Supp. --, 2010 WL 1257345 (S.D.N.Y. March 31, 2010)........................................... 29

*Gearren v. McGraw-Hill Companies, Inc.*,
   690 F. Supp. 2d 254 (S.D.N.Y. 2010) ..........................................................33, 50

*Gradent v. Conexant Sys., Inc.*,
   574 F. Supp. 2d 456 (D.N.J. 2008)................................................................... 33

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
   302 F.3d 18 (2d Cir. 2002)............................................................................ 34

*Harris v. Amgen, Inc.*,
   No. 07-5442, 2010 WL 744123 (C.D. Cal. Mar. 2, 1010)................................................. 56

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009)......................................................................... 47

*In re Advanta Corp. ERISA Litigation*,
   No. 2:09-cv-04974-CMR ............................................................................ 1

*In re Bank of America Corp. Securities, Derivative, and ERISA Litig.*,
   No. 09-MD-2058, 2010 WL 344819 (S.D.N.Y. Aug. 27, 2010) ....................................28, 41

*In re Bausch & Lomb Inc. ERISA Litig.*,
   No. 06-6297, 2008 WL 5234281 (W.D.N.Y. Dec. 12, 2008)....................................54, 55, 59

## TABLE OF AUTHORITIES

*In re Burlington Coat Factory Securities Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ............................................................ 10

*In re Citigroup*,
   No. 07-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ................................ 33, 41, 54-56

*In re Coca-Cola Enter., ERISA Litig.*,
   No. 1:06 CV 0953, 2007 WL 1810211 (N.D. Ga. June 20, 2007) .................................. 34, 53

*In re Dynegy, Inc. ERISA Litig.*,
   309 F. Supp. 2d 861 (S.D. Tex. 2004) ................................................... 57

*In re Huntington Bancshares Inc. ERISA Litig.*,
   No. 2:08-cv-0165, Slip. Op. at 16 (S.D. Ohio February 10, 2009) ....................... 40

*In re ING Groep, N.V. ERISA Litig.*,
   No. 09-400, 2010 WL 1704402 (N.D. Ga. Mar. 31, 2010) ................................. 34

*In re Lehman Brothers Securities and ERISA Litigation*,
   683 F. Supp. 2d 294 (S.D.N.Y. 2010) ......................................... 28, 29, 41, 45, 54

*In re Mckesson HBOC, Inc. ERISA Litig.*,
   391 F. Supp. 2d 812 (N.D. Cal. 2005) ................................................... 57

*In re Merck & Co., Inc. Securities Derivative and ERISA Litig.*,
   No. 05-2369, 2006 WL 2050577 (D.N.J. July 11, 2006) ................................... 57

*In re Polaroid ERISA Litig.*,
   362 F.Supp.2d 461 (S.D.N.Y. 2005) ................................................. 56, 57

*In re Radioshack Corp. "ERISA" Litig.*,
   547 F. Supp. 2d 606 (N.D. Tex. 2008) ................................................. 59

*In re RCN Litig.*,
   NO.04-5068, 2006 WL 753149 (D.N.J. Mar. 21, 2006) ..................................... 29

*In re Wachovia Corp. ERISA Litig.*,
   No. 3:09cv262, 2010 WL 3081359 (W.D.N.C. Aug. 6, 2010) ...................................39, 45

*In re Washington Mut., Inc. Securities, Derivative & ERISA Litig.*,
   No. 09-md-1919 MJP, 2009 WL 3246994 (W.D. Wash. Oct. 5, 2009) .........................59, 60

*In re WorldCom, Inc.*,
   263 F.Supp.2d 745 (S.D.N.Y. 2003) ................................................... 57

## TABLE OF AUTHORITIES

*Johnson v. Radian Group, Inc.*,
  2010 WL 2136562 (E.D. Pa. May 26, 2010) ....................................................... 56

*Johnson v. Radian Group, Inc.*,
  No. 08-2007, 2009 WL 2137241 (E.D.Pa. July 16, 2009), at *19 ........................ 50

*Kirschbaum v. Reliant Energy*,
  526 F.3d 243 (5th Cir. 2008)...............................................................6, 31, 40, 54

*Kirschbaum v. Reliant Energy, Inc.*,
  536 F3d 243 (5th Cir. 2008)...................................................................... 39, 40

*Lanfear v. Home Depot, Inc.*,
  -- F. Supp. 2d --, 2010 WL 2427413 (N.D. Ga. June 7, 2010) .......................28, 33

*Moench v. Robertson*,
  62 F.3d 553 (3d Cir. 1995)............................................................................passim

*Nelson v. IPALCO Enter., Inc.*,
  IP02-0477-C-H/K, 2003 WL 402253 (S.D. Ind. Feb. 13, 2003) ......................... 10

*Page v. Impac Mortg. Holdings, Inc.*,
  2009 WL 890722 (C.D. Cal. March 31, 2009) ................................................... 47

*Pegram v. Herdrich*,
  530 U.S. 211 (2000).................................................................................54, 57

*Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993)............................................................................ 10

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008).........................................................................40, 41

*Quan v. Computer Sciences Corp.*,
  -- F.3d --, 2010 WL 3784702 (9th Cir. Sept. 30, 2010)..............................39, 51, 61

*Srein v. Frankford Trust Co.*,
  323 F.3d 214 (3d Cir. 2003).............................................................................. 27

*Summers v. UAL Corp.*,
  No. 03-1537, 2005 WL 2648670 (N.D. Ill. Oct. 12, 2005) ................................. 45

*U.S. Express Lines, Ltd. v. Higgins*,
  281 F.3d 383 (3d Cir. 2002).............................................................................. 10

## TABLE OF AUTHORITIES

*Urban v. Comcast Corp.*,
    No. 08-773, 2008 WL 4739519 (E.D.Pa. Oct. 28, 2008) .............................................passim

*Varity v. Howe*,
    516 U.S. 489 (1996)............................................................................................... 54

*Ward v. Avaya, Inc.*,
    299 Fed.Appx. 196 (3d Cir. Feb. 13, 2008) .................................................44, 45

*Ward v. Avaya, Inc.*,
    487 F. Supp. 2d 467 (D.N.J. 2007), *aff'd* 299 Fed.Appx. 196 (3d Cir. 2008) .................10, 39

### STATUTES, RULES AND REGULATIONS

29 U.S.C. § 1002(21)(A) .................................................................................13, 27

29 U.S.C. § 1102(a)(1) ................................................................................... 13

29 U.S.C. § 1104(a) ....................................................................................... 30

29 U.S.C. § 1104(a)(1)(C) ............................................................................... 5

29 U.S.C. §§ 1104(a)(2) ................................................................................ 31

29 U.S.C. § 1104(c)(1)(A) .........................................................................18, 46

29 U.S.C. § 1104(d)(3) ..............................................................................10, 17

29 U.S.C. § 1107(b)(1) ................................................................................. 31

29 U.S.C. § 1107(a)-(b) ................................................................................. 6

29 U.S.C. § 1107(d)(6) ...............................................................................9, 10

29 C.F.R. § 2509.75-8 .................................................................................. 59

29 C.F.R. § 2550.404c-1(b) ........................................................................... 46

Fed. R. Civ. P. 9(b)........................................................................................ 53

Fed. R. Civ. P. 8 ........................................................................................... 43

## OVERVIEW OF MOTION TO DISMISS

Plaintiffs Matthew Ragan, Paula Hiatt, Pamela Yates and Joanne Claflin are former employees of Advanta Corp. ("Advanta") and are or were participants in one or both of two defined contribution pension plans sponsored by Advanta—the Advanta Corp. Employee Stock Ownership Plan (the "ESOP") and the Advanta Corp. Employee Savings Plan (the "Savings Plan") (together the "Plans" and each individually a "Plan").  In late 2009, the plaintiffs filed complaints against certain alleged fiduciaries of the Plans and, in the case of Ragan and Hiatt, Advanta, asserting violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

In June 2010, the Court ordered that the Plaintiffs' individual cases be consolidated under the caption *In re Advanta Corp. ERISA Litigation*, No. 2:09-cv-04974-CMR.  Plaintiffs filed the instant Consolidated Class Action Complaint ("Complaint") on August 11, 2010.  The Complaint dropped the claims against Advanta (because of Advanta's bankruptcy), but asserted claims of breach of fiduciary duty against Defendants Paul Jeffers, Dennis Alter, Max Botel, Dana Becker Dunn, Ronald Lubner, William Rosoff, Phillip Browne, Michael Coco, John Moore, Jodi Plavner, David Weinstock, Marci Wilf and Cathy Wilson.

All Defendants submit this Memorandum in support of their Motion, pursuant to Federal Rules of Civil Procedure 12(b)(6) and ERISA, to dismiss all claims asserted in the Complaint.

## MANDATE TO DISMISS MERITLESS CLAIMS ON THE PLEADINGS

The Supreme Court and the Third Circuit have set a high bar for the pleading of ERISA "stock drop" claims such as those in this case.  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

127 S. Ct. 1955 (2007), the Supreme Court clarified that in order to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Id.* at 1964–65. Rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965; *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *see also id.*, at 1950 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

The Third Circuit has applied the Supreme Court's pronouncements to impose a rigorous standard for stating a claim in ERISA cases such as this one. Claims relating to plan investments in employer stock under ERISA, such as Plaintiffs', are governed by the standards articulated by the Third Circuit in the landmark case of *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995). Recently, in *Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007), the Third Circuit specifically held that *Moench*'s standards should be applied at the motion to dismiss stage. *Id.* at 349. The court reasoned that "if a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is *required* to dismiss the complaint pursuant to Rule 12(b)(6)." *Id.* (emphasis added). This requirement exists because there is simply "no reason to allow [a] case to proceed to discovery when, even if the allegations are proven true, [a plaintiff] cannot establish that defendants abused their discretion." *Id.*

As discussed below, because the allegations in Plaintiffs' Complaint fall short of articulating valid claims pursuant to *Moench* and *Edgar*, those claims should be dismissed.

## INTRODUCTION

In this ERISA "stock drop" lawsuit, the alleged fiduciaries of two pension plans sponsored by Advanta Corp. are accused of violating their obligations to the plans' participants by maintaining the plans' investments in Advanta stock.  However, the Plaintiffs, in their action, ignore the ultimately dispositive fact that, contrary to their claims, ERISA does not permit plan fiduciaries to disregard the terms of employee benefit plans, particularly those that encourage or require investments in employer stock, as cavalierly as Plaintiffs suggest.  In fact, ERISA affords a special status to plans, like both the ESOP and the Savings Plan, that provide employees with the opportunity to invest in employer securities.

Under controlling Third Circuit law, because Advanta's ESOP affords the plan's fiduciaries no discretion with respect to investments in employer stock, those fiduciaries are bound to maintain such plans' investments in company stock.  Accordingly, as is shown below, there is no basis on which to disregard the ESOP's terms concerning participants' investments in Advanta stock, and Plaintiffs' claims with respect to the ESOP must be dismissed.  Furthermore, because the design of the Savings Plan encourages investments in Advanta stock, rather than simply permitting such activity, there is a legal presumption that the fiduciaries acted prudently by maintaining such stock as an investment option.  Here, Plaintiffs have failed in their pleading to offer a rebuttal to that presumption.  Hence, the motion to dismiss with respect to the Savings Plan should also be granted.

In addition to failing to surmount the hurdles presented by the designs of the Plans in this case, Plaintiffs' Complaint is fatally flawed as much for what it says as for what it does not say. The Complaint makes clear that what Plaintiffs are truly complaining about is not the conduct of the Defendants, but rather the effects of the unprecedented and unforeseeable economic recession that has crippled the global economy in recent years.  Accordingly, because ERISA's fiduciary obligations do not include a requirement that plan fiduciaries predict the future, Plaintiffs' claims are without merit and should be dismissed.

Prior to its filing for bankruptcy in November 2009, Advanta Corp. was a leading issuer of credit cards to small business and business professionals.  Founded in 1951 as Teachers Service Organization, Inc. by the father of Advanta's current CEO, Dennis Alter, Advanta for many years successfully served the individuals and small enterprises that form the backbone of the American economy, including teachers seeking to obtain personal credit, residential homebuyers and small businesses looking to lease equipment.  More recently, Advanta focused its business exclusively on the provision of credit cards to the small business community.

It is now well-known that, as the current economic crisis deepened, small businesses were among the hardest hit.  As a consequence of this historic economic downturn, many of Advanta's customers began to fall behind on their credit card payments, and Advanta's delinquencies and losses began to mount.  No one, however, knew at the time just how severe the impact of the recession would be for Advanta.

Plaintiffs now seek to impose responsibility upon the alleged fiduciaries of the Plans for the significant decline in the value of Advanta's stock that accompanied the unforeseeable deterioration of the Company's business.  Specifically, according to Plaintiffs, because the

Defendants allegedly knew (for reasons that are entirely unidentified in the Complaint) that Advanta stock was an "unsuitable and inappropriate" investment for the Plans, they were required to "divest the Plans of Advanta stock" and "ensure that participants liquidated their Advanta common stock investments in each of the Plans."  Complaint ("Compl."), ¶¶ 220-222. The Defendants named in Plaintiffs' Complaint consist of certain members of Advanta's Board of Directors (the "Director Defendants"), and certain present or former Advanta employees and the President of Advanta's subsidiary Advanta Bank Corp. who were members of the Administration Committee responsible for administering the Plans (the "Committee Defendants").[1]

Plaintiffs' Complaint contains three counts, each of which relates to the Plans' investments in Advanta stock.  Each of these claims is without merit, for the following reasons:

**Breach of the "Duty of Prudence" (Count I)**.  Under ERISA, a plan fiduciary must discharge his or her duties "with the care, skill, prudence, and diligence under the circumstances

---

[1]    The Director Defendants are Dennis Alter, Advanta's CEO and Chair of the company's Board of Directors (the "Board"), William Rosoff, Advanta's President and Vice-Chair of the Board, and three members of the Board, Max Botel, Dana Becker Dunn and Ronald Lubner, who are also alleged to have been members of the Board's Compensation Committee.  The Committee Defendants are Philip Browne, Paul Jeffers, David Weinstock, Michael Coco, John Moore, Jodi Plavner, Cathy Wilson and Marci Wilf. Compl., ¶ 22-32.  The Committee Defendants are each alleged to have been members of the plan administration committees for both the ESOP and the Savings Plan during some or all of the class period and, with the exception of Mr. Moore, to have held various management-level positions with Advanta during unidentified portions of the class period.  *Id.*  Although the exhibits attached to Plaintiffs' Complaint demonstrate that the composition of the Plan committees changed during the course of the class period, *compare* Exhibit A to Plaintiffs' Complaint *with* Exhibit B (revealing that Cathy Wilson was not a member of the Savings Plan Administration Committee until some time after April 2009), Plaintiffs make no attempt to identify the specific periods during which each Administrative Committee Defendant served on the Savings Plan and/or ESOP Administration Committees.

then prevailing that a prudent man acting in a like capacity and familiar with such matters would

use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. §

1104(a)(1)(C).  Plaintiffs' first claim (Count I) alleges that all of the Defendants breached

ERISA's fiduciary "duty to prudently and loyally manage the plans' assets" by:

(1)     "continuing to offer" Advanta stock as an investment option under the Plans
        "when Defendants knew or should have known it was imprudent to do so;"

(2)     "investing Plan assets in Advanta common stock;"

(3)     "failing to provide complete and accurate information to Plan participants
        regarding the Company's financial condition and the prudence of investing in
        Company stock;" and

3)      "maintaining the Plans' pre-existing heavy investment" in Advanta stock at a time
        when it was allegedly "no longer a prudent investment for the Plans."[2]

Compl., ¶ 5.  According to Plaintiffs, Defendants were obligated to "take any meaningful steps to

protect Plan participants from the inevitable losses that they knew would ensue as the non-

disclosed material problems, concerns and business slowdowns took hold and became public,"

but failed to do so.  *Id.*, ¶ 220.

Plaintiffs' claim that the Defendants' breached ERISA's "duty of prudence" by

maintaining the Plans' investments in employer stock must be dismissed based on the standards

---

[2]     To the extent that Plaintiffs intend their allegations regarding the Plans' "heavy
        investment" in Advanta stock to serve as an independent basis for their prudence claim,
        that argument is absolutely foreclosed by ERISA.  ERISA explicitly exempts plans like
        the ESOP and the Savings Plan from its otherwise applicable limitation on the percentage
        of plan assets that may be invested in employer securities.  29 U.S.C. § 1107(a)-(b).
        Accordingly, there is no basis whatsoever for Plaintiffs' argument that an EIAP can be
        invested "too heavily" in employer securities.  *See, e.g., Kirschbaum v. Reliant Energy*,
        526 F.3d 243, 249 (5th Cir. 2008) (rejecting claim that EIAP was "too heavily weighted
        in high-risk stock" on the basis that ERISA's "express statutory exemption of the
        diversification duty in relation to an employer's stock holdings precludes…recovery").

articulated by the Third Circuit.  In *Moench*, the Third Circuit articulated a three-pronged standard for evaluating claims that a fiduciary breached ERISA's "duty of prudence" by maintaining a plan's investments in employer stock: 1) where a plan's settlor requires investment in employer securities, as a matter of law, fiduciaries cannot be held liable for complying with such requirement; 2) where plan fiduciaries are "not absolutely required to invest in employer securities," but are "more than simply permitted to make such investments," a fiduciary "who invests [plan] assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision"; and 3) where a plan merely "allows or permits a particular investment," the review of a fiduciary's decisions with respect to employer stock is de novo.  62 F.3d at 571.

**The ESOP.**  The ESOP affords plan fiduciaries <u>no</u> discretion with respect to investments in Advanta stock, compelling that Advanta's contributions to the Plan be invested in such stock in all circumstances.  Accordingly, *Moench* bars Plaintiffs' claim for breach of ERISA's fiduciary duty of prudence based on the ESOP's investments in Advanta stock.  **(*See* pages 29-36, below.)**

**The Savings Plan.**  The Savings Plan provides participants, not the fiduciaries, with control over the investment of their plan accounts.  It allows participants to choose to invest the contributions to their account in a broad range of investment options, including Advanta stock.  The terms of the Savings Plan—which provide that Advanta stock "shall" be an investment option under the Plan—make it clear that the plan is subject to *Moench*'s presumption of prudence.  Accordingly, pursuant to *Moench* and its progeny, Plaintiffs' claim must be dismissed unless they can overcome this presumption by pleading specific facts

suggesting that Defendants *knew* of extraordinary and "dire circumstances" that should have compelled them to disregard the terms of the Plan.  Here, Plaintiffs have failed to meet their burden to rebut the presumption in Defendants' favor for at least two reasons.  First, the facts alleged in the Complaint consist of nothing more than a parroting of Advanta's public statements concerning its business and stock price.  Second, because an individual is a fiduciary under ERISA only "to the extent" that he or she exercises discretionary authority with respect to the management of the assets of a plan, and because the Savings Plan limits the Director Defendants' authority under the Plan to the appointment and removal of the Administration Committee, Plaintiffs cannot state a valid claim against the Director Defendants for breach of any duty related to the management of the assets of the Plan. **(*See* pages 36-47.)**

**Breach of ERISA's Duty of Disclosure (Count I).**  Plaintiffs also contend that Defendants breached their fiduciary duties of prudence by failing to provide the Plans' participants with "complete and accurate information regarding the Company's true financial condition and the Company's concealment of the same and, generally, by conveying inaccurate information regarding the Company's outlook."  Plaintiffs' claim fails because ERISA simply does not impose the boundless duty to disclose business information and to "opine" on the condition of employer stock that Plaintiffs suggest.  Further, the statements that Plaintiffs alleged were inaccurate or misleading (i.e., Advanta's public statements to investors in press releases and SEC filings) were not made while acting in a "fiduciary capacity."  **(*See* pages 47-54.)**

**Breach of the Duty to "Avoid Conflicts of Interest" (Count II).**  Plaintiffs' claim that Defendants violated their alleged duty to avoid conflicts of interest is baseless because Plaintiffs have alleged nothing more than that Defendants had an incentive to "artificially inflate" the price

of Advanta stock because some of their compensation was tied to the value of Advanta's stock. Under controlling law, such allegations fail to state a valid claim.  (*See* **pages 54-57.**)

  **Breach of the Duty to Monitor (Count III).**  Plaintiffs' final claim is that the members of Advanta's Board of Directors (the "Director Defendants"), who were charged under the Plans with the limited authority to appoint and remove members of the Plans' Administration Committee, which managed the day-to-day operation of the Plans, violated their duty to "monitor" the conduct of the fiduciaries they appointed.  This claim fails because Plaintiffs attempt to expand the scope of ERISA's duty to monitor beyond the bounds set by binding precedent.  (*See* **pages 57-60.**)

  For these and the other reasons discussed below, each of Plaintiffs' claims is entirely without merit, and accordingly, the Complaint should be dismissed in its entirety with prejudice.

## FACTUAL BACKGROUND

**I. THE PLANS**

  At issue in this case are two distinct defined contribution pension plans sponsored by Advanta Corp., the ESOP and the Savings Plan.  The ESOP is an employee stock ownership plan funded entirely by Advanta and whose primary purpose is to provide for employee ownership of shares of Advanta Corp. stock.  The Savings Plan is a 401(k) plan funded by contributions from plan participants and Advanta "matching" contributions and that offers a wide range of investment options and affords participants complete control over the investment of the contributions made to their accounts.

  As described below, and seemingly unappreciated by Plaintiffs, there are significant differences in the purpose, design and operation of, and apportionment of administrative and

fiduciary responsibility for, each of the Plans.  Accordingly, in evaluating the sufficiency of

Plaintiffs' claims in this case, the specific terms of each Plan must be carefully and separately

considered.

### A.    The ESOP

As its name suggests, the ESOP is an "employee stock ownership plan" under ERISA.

*See* 29 U.S.C. § 1107(d)(6).[3]  An employee stock ownership plan is a type of "eligible individual

account plan" within the meaning of ERISA.  *See* 29 U.S.C. § 1107(d)(3)(A).  Accordingly, each

participant in the ESOP possesses one or more individual plan accounts to which contributions of

shares of Advanta stock are made on a periodic basis.  *See* ESOP Plan Document (attached as

Exhibit A hereto), § 2.1.[4]  As stated in the ESOP Plan Document, the purpose of the plan is "to

---

[3]    The full definition of an employee stock ownership plan under ERISA is "an individual
account plan-- (A) which is a stock bonus plan which is qualified, or a stock bonus plan
and money purchase plan both of which are qualified, under section 401 of Title 26, and
which is designed to invest primarily in qualifying employer securities, and (B) which
meets such other requirements as the Secretary of the Treasury may prescribe by
regulation."  29 U.S.C. § 1107(d)(6).  Consistent with this definition, the ESOP Plan
Document explicitly states that "[i]t is intended that the Plan be a qualified employee
stock ownership plan within the meaning of sections 401(a) and 4975 of the [Internal
Revenue] Code."  ESOP Plan Document (Ex. A), § 1.2.

[4]    The primary terms of the Plan are also described in a Summary Plan Description ("SPD")
that is distributed to each Plan participant.  A copy of the most recent SPD for the ESOP
is attached hereto as Exhibit B.  The Court may consider the formal plan documents for
the Plans in deciding Defendants' Motion because any "document integral to or explicitly
relied upon in the complaint may be considered without converting the motion to dismiss
into one for summary judgment." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388
(3d Cir. 2002). *Accord In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410,
1426 (3d Cir. 1997); *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998
F.2d 1192, 1196 (3d Cir. 1993).  Courts regularly allow defendants to attach plan
documents to their motions to dismiss ERISA claims if the complaint references or
implicates the plan, as Plaintiffs' Complaint does. *See, e.g.*, *Ward v. Avaya, Inc.*, 487
F.Supp.2d 467, 471 n.4 (D.N.J. 2007) ("In this case, Plaintiff's claims center entirely on
the benefit plans detailed in the complaint.  Accordingly, this Court will consider the Plan

enable each eligible person employed by the Employer to benefit, in accordance with the terms

of the Plan, from an accumulation of stock of the Employer and to provide for substantial

employee participation in the ownership of the Employer…."  ESOP Plan Document (Ex. A), §

1.1.[5]  "It is a primary purpose of the Plan to establish for each Participant an ownership interest

in the Employer."  *Id.*

### 1.    Plan Design and Operation

Consistent with its stated purpose of providing Advanta employees with an ownership

interest in the company, the ESOP is designed and operates in a manner significantly different

from the Savings Plan (a fact that Plaintiffs largely ignore in their Complaint).  That is, the ESOP

Plan Document establishes a strict, detailed procedure for funding the plan and distributing

shares of Advanta stock to participants.

The source of the shares of Advanta stock used to make contributions to participant

accounts, and the amount and timing of these contributions, are specifically described in the

ESOP Plan Document.  Specifically, the Plan Document states that:

> [I]t is anticipated that the trustees under the Plan will arrange from
> time to time for loans meeting the requirements of "Exempt
> Loans" under ERISA and the Code (as those terms are hereinafter
> defined), that the proceeds of these loans will be used as soon as
> practicable after receiving such loans to purchase Employer
> Securities (as defined in the Plan), that such Employer Securities
> will be held in a suspense account pending payments on such
> loans, that Employer contributions will be used to pay principal
> and interest on such loans, that at the end of each Plan Year,
> Employer Securities will be released from the Suspense Account to

---

documents, which Defendants have included in their motion, without converting this
motion to one for summary judgment.").

[5]    As used in § 1.1 and in most provisions of the ESOP, the "Employer" is Advanta Corp.

> reflect the payments on such loans and will be allocated to the
> accounts of Participants, and that Participants will enjoy all the
> rights of an owner with respect to the Employer Securities
> allocated to their accounts but subject to the Plan's vesting rules,
> all as more particularly provided later in this Plan.

*Id.*, § 1.1.  All contributions to the ESOP for the purpose of releasing stock to participants'

accounts are made by Advanta; participants are expressly prohibited from making their own

contributions to the Plan.  *See id.*, § 5.1 ("No contributions shall be required of, nor shall any

contributions be accepted from, any Participant."); *see also* ESOP SPD (Ex. B), at 6.

All of the shares of Advanta stock available for distribution to participants in the ESOP

were acquired by the Plan as part of a loan transaction with Advanta Corp. entered into in 1998.

*See* Advanta Corp. 2006 SEC Form 10-K (Exhibit C hereto) at 80 ("In 1998, the ESOP borrowed

approximately $12.6 million from Advanta Corp. and used the proceeds to purchase

approximately 1 million shares of Class A Common Stock.").[6]  This loan is repayable with an 8

% interest rate over a period of 30 years.  *Id.*  Each year, Advanta "make[s] contributions to the

ESOP equal to the ESOP's debt service less dividends received on ESOP shares.  As the ESOP

makes each loan payment, an appropriate percentage of stock becomes available to be allocated

to participants."  *Id.*

The process described in Advanta's Form 10-K is explicitly dictated by the terms of the

ESOP Plan Document and involves no exercise of discretion by Advanta or any individuals

charged with administering the Plan.  Specifically, the ESOP states that "[f]or each Plan Year

---

[6]       Due to the volume of this report and Advanta's other SEC filings, Defendants are
providing the Court only with those portions of such filings that are specifically
referenced herein.  Should the Court wish to review complete versions of these filings,
Defendants will of course provide them.

during which an Exempt Loan is outstanding, the Employer <u>shall</u> make contributions under the Plan with respect to such Plan Year" sufficient to pay the principal and interest then due with respect to the loan.  ESOP Plan Document (Ex. A), § 4.1 (emphasis added).  As such loan payments are made, an appropriate number of shares become available from the Plan's suspense account for distribution to participants.  *Id.*, §§ 6.1 ("As of each Anniversary Date, the Employer's contribution for the Plan Year ending on that date <u>shall</u> be allocated among the Accounts of Active Participants entitled to share therein (as determined pursuant to subsection (b) hereof) as follows…" (emphasis added)), 6.1(d), 7.7 ("[T]he securities becoming available for allocation with respect to such Plan Year <u>shall be allocated in nonmonetary units</u>" to the accounts of Plan participants  *Id.*, § 7.7 (emphasis added)).

### 2.    Plan Participation

Section 3.1 of the ESOP states that:

> Every Employee who was eligible to participate in the Advanta Corp. Employee Savings Plan as of the Restatement Effective Date [September 10, 1998] commenced participation as of such date. Every other Employee becomes a Participant as of the Entry Date (as hereinafter defined) that occurs on or immediately following the date on which such Employee has both attained at least age 21 and is credited with one year of Service.

Thus, participation in the ESOP is automatic for every employee who satisfies the eligibility criteria described in the Plan Document.

The ESOP provides that participants' rights with respect to the shares allocated to their ESOP accounts vest completely after the participant has five years of service with Advanta or another participating employer.  ESOP Plan Document (Ex. A), § 10.1; ESOP SPD (Ex. B), at 7.

Additionally, any participant who attains "Normal Retirement Age" under the ESOP while still employed becomes 100% vest in his or her Plan account as of that date.  *Id.*

### 3.      Fiduciary Responsibility Under the ESOP

ERISA requires that every employee benefit plan designate "one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan."  29 U.S.C. § 1102(a)(1).  Importantly, an individual is only a fiduciary of an ERISA plan "to the extent" that he or she exercises discretionary authority over the administration of a plan or its assets.  29 U.S.C. § 1002(21)(A).  Accordingly, it is well-settled that fiduciary status is not an "all or nothing" concept and that an individual may be a plan fiduciary for some purposes but not others.

Articles XIII and XIV of the ESOP describe the apportionment of the (limited) fiduciary responsibilities with respect to the Plan.  The Plan also specifically limits each fiduciary's authority and responsibility to those duties expressly described in the Plan or imposed by law.  ESOP Plan Document (Ex. A), § 14.2 ("No Named Fiduciary shall have authority or responsibility to deal with matters other than as delegated to it under this Plan, under the Trust Agreement, or by operation of law.").

The ESOP provides that "[t]he Plan Administrator shall be the Company's Plan Committee" and that the members of the Committee "shall serve at the pleasure of the Board of Directors."  ESOP Plan Document (Ex. A), § 13.1.  The ESOP expressly limits the authority of the Committee, however, to the performance of certain specified functions.[7]  *See* ESOP Plan

---

[7]      "The Plan Administrator shall have the following duties and responsibilities:(a)  to maintain and preserve records relating to Plan Participants, former Participants, and their Beneficiaries; (b)  to prepare and furnish to Participants all information and notices

Document (Ex. A), § 13.4; *see also id.*, § 14.2 ("[T]he Plan Administrator shall be a 'Named

Fiduciary,' and as such, shall have no authority and responsibility other than as granted in the

Plan, or as imposed by law."). Significantly, none of these duties grant to the Committee any

authority to sell or cease the acquisition of shares of Advanta stock.

     The ESOP also states that Advanta itself shall have exclusive authority with respect to

certain fiduciary functions. *See* ESOP Plan Document (Ex. A), § 14.1.[8]  The Plan further states

that any action to be taken by Advanta under the Plan "may be taken by the Board of Directors,

---

required under Federal law or the provisions of this Plan; (c)  to prepare and furnish to
the Trustee sufficient employee data and the amount of contributions received from all
sources so that the Trustee may maintain separate Accounts for Participants and make
required payments of benefits; (d)  to prepare and file or publish with the secretary of
Labor, the secretary of the Treasury, their delegates and all other appropriate government
officials all reports and other information required under law to be so filed or published;
(e)  to provide directions to the Trustee with respect to the purchase of life insurance,
methods of benefit payment, valuations at dates other than Annual Valuation Dates and
on all other matters where called for in the Plan or requested by the Trustee; (f)  to
construe the provisions of the Plan, to correct defects therein and to supply omissions
thereto; (g) to engage assistants and professional advisers; (h)  to arrange for bonding, if
required by law; (i)  to provide procedures for determination of claims for benefits; (j)  to
determine whether a domestic relations order constitutes a QDRO [Qualified Domestic
Relation Order] and to take such action as the Plan Administrator deems appropriate in
light of such domestic relations order; and  (k)  to retain records on elections and waivers
by Participants, their spouses and their Beneficiaries, all as further set forth herein."
ESOP Plan Document (Ex. A), § 13.4

[8]    "The Employer, as Plan sponsor, shall serve as a 'Named Fiduciary' having the following
(and only the following) authority and responsibility: (a)  to establish and communicate
to the Trustee a funding policy for the Plan; (b)  to appoint the Trustee and the Plan
Administrator and to monitor each of their performances; (c)  to communicate such
information to the Plan Administrator and to the Trustee as each needs for proper
performance of its duties; and (d)  to provide channels and mechanisms through which
the Plan Administrator and/or the Trustee can communicate with Participants and their
Beneficiaries." *Id.*

or by such committee or person as may be designated for this purpose by the Board of Directors." *Id.*, § 17.2.

B.     **The Savings Plan**

The second plan at issue in the Complaint is the Advanta Corp. Employee Savings Plan (the "Savings Plan").   The Savings Plan is a profit-sharing plan, commonly known as a 401(k) plan, pursuant to which each plan participant has an individual account to which contributions are made by or on behalf of the participant.   Savings Plan participants are entitled to invest the contributions to their Plan accounts, both the participants' own contributions and the "matching" contributions made by Advanta, in a wide array of investment options, including the Advanta Common Stock Fund.   Participants exercise complete control over the investment of all of the contributions to their Savings Plan accounts.   A copy of the 2001 Plan Document for the Savings Plan is attached hereto as Exhibit D.

Effective October 1, 2008, Advanta retained Charles Schwab Retirement Plan Services, Inc. ("Schwab") to act as recordkeeper and trustee of the Savings Plan.  *See* Unanimous Consent of Administrative Committee (Ex. E hereto).  The general structure and operation of the Savings Plan remained unaffected by the switch to Schwab.  *See* Charles Schwab 401(k) Non-Standardized Prototype Adoption Agreement ("Adoption Agreement") (Ex. E); Schwab Defined Contribution Plan Services Agreement ("Services Agreement") (Ex. F).

1.     **Design of the Savings Plan**

The Savings Plan is an eligible individual account plan under § 407 of ERISA.  29 U.S.C. § 1104(d)(3).  Participants in the Savings Plan are entitled to make pre-tax contributions of portions of their compensation to the Plan.  Specifically, as described in the 2007 and 2009

16

Summary Plan Descriptions for the Savings Plan, copies of which are attached hereto as Exhibits H and I, respectively, during the proposed class period, participants were entitled to contribute up to 75% of their eligible compensation to the Plan, subject to a legally prescribed maximum. 2007 Savings Plan SPD (Ex. G), at 10; 2009 Savings Plan SPD (Ex. H), at 6.  In addition, Advanta matched a certain percentage of each participant's contributions to his or her Savings Plan account.  2007 Savings Plan SPD, at 12 (5% matching contribution); 2009 Savings Plan SPD, at 7 (4% matching contribution).

The contributions to each participant's Plan account may be invested by the participant in one or more of the numerous investment options offered by the Plan.  This is true for both the individual's own contributions and Advanta's matching contributions.  *See* 2007 Savings Plan SPD, at 17 ("You decide how to invest your account"), 18 ("You will make one investment decision for your Salary Reduction Contributions and the Company contributions combined."); 2009 Savings Plan SPD, at 15 ("[Y]ou can direct how all of your Account will be invested.").

Because participants have exclusive control over the investment of the contributions to their Plan accounts, the Savings Plans is governed by § 404(c) of ERISA.  Section 404(c) states that:

> In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account…*no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control*….

29 U.S.C. § 1104(c)(1)(A) (emphasis added).

The 2001 Plan Document explicitly stated that the Plan was "to be administered in such fashion…in order to cause the Plan to comply with Section 404(c) of ERISA."  2001 Savings Plan Document (Ex. D), § 6.8.  This feature of the Savings Plan is also reflected in the documents executed between Advanta and Schwab in 2008.  *See* Services Agreement (Ex. F), § 1 ("Each Participant exercises full and independent investment authority over his/her entire account balance for the above Authorized Funds.").  Participants were explicitly informed of the Savings Plans' compliance with § 404(c) in both the 2007 and 2009 SPD's.  2007 SPD (Ex. G), at 18 ("The Plan is intended to operate as a plan described in Section 404(c) of ERISA…."); 2009 SPD (Ex. H), § XIV ("We intend to comply with Section 404(c) of [ERISA].").

### 2. Investment Options under the Savings Plan

#### a. Varied Array of Investment Alternatives

Participants in the Savings Plan were afforded a broad and varied array of investment alternatives in which they could elect to invest the contributions to their accounts.  Participants were provided with substantial information concerning these options in the Savings Plan's SPD's.  Each SPD included an appendix that described the numerous investment options made available to participants.  2007 SPD, Appx. B; 2009 SPD, Appx. C.  As of 2007, participants were afforded 13 investment funds from which to choose; in 2009, 14 investment alternatives were made available to participants.  *Id.*  These alternatives included conservative investment options designed to conserve principal, such as "stable value" funds and bond funds, balanced funds comprised of both common stocks and fixed-income investments and stock funds with various degrees of risk and anticipated returns.  *Id.*  Additionally, as discussed below, participants were specifically authorized by the Savings Plan to invest the contributions to their

accounts in the "Company Stock Fund," a fund consisting entirely of Advanta common stock.
*Id.*

### b.    The Company Stock Fund

Of particular significance for this case, the Savings Plan was designed specifically to include Advanta stock as an investment alternative.  The 2001 Plan Document states, in no uncertain terms, that "[t]he [Administrative] Committee *shall establish* an Investment Category consisting solely of Company Stock."  2001 Savings Plan Document (Ex. D),§ 6.2.  Similarly, the Schwab Plan Services Agreement notes that Advanta Class A and B common stock are among the "investment choices" "authorized" by "the Employer."  Services Agreement (Ex. F), § I.

The Plan's SPD's also specifically note that the Plan is designed to include the Company Stock Fund as an option in which participants can choose to invest.  The 2007 SPD states that "[the Plan] is designed to promote the interests of the Company, its shareholders and you by allowing you to invest in the Company's Class B Common Stock thereby giving you an incentive to put forth maximum efforts for the success of the Company.").  2007 SPD (Ex. G), at 7.  This feature of the Savings Plan was also addressed in the 2009 SPD, which noted that "[y]our investment options include an opportunity to invest in the Class B Common Stock of Advanta Corp. (the 'Company Stock').  The investment option in which you may invest in Company Stock is referred to as the 'Company Stock Fund.'"  2009 SPD (Ex. H), at 16.  The 2009 SPD also included as an appendix an Investment Policy Statement promulgated by the Savings Plan's Administrative Committee.  The Investment Policy Statement informs

participants that "Advanta Corp. stock is offered as an investment option *pursuant to the terms of the Plan*."  2009 SPD, Appx. B, at 7 (emphasis added).

> **3.     Communications with Savings Plan Participants Regarding the Company Stock Fund**

Participants in the Savings Plans were provided with extensive disclosures regarding the nature of and risks associates with investments in Advanta stock.  The 2009 Plan SPD, in a section bearing the heading "Importance of Diversification," advised participants that:

> Making a non-diversified investment in a single stock carries more risk than investing in a diversified fund.  Before you invest in Company Stock, you should be careful to review your total asset allocation strategy and assess the level of risk that is associated with all of your investment choices.  Important information about the financial performance of Advanta Corp., which may affect the value of Company stock, is generally disclosed in public earnings reports and our filings with the Securities and Exchange Commission (the "SEC").

2009 SPD (Ex. G), at 16.   Participants in the Savings Plan were also provided with quarterly reports that reflected the performance of their plan accounts.  These reports were accompanied by supplements that reflected the performance of the Company Stock Fund, as well as the other investments available under the Savings Plan, for multi-year periods and reminded participants of the importance of maintaining a diversified portfolio.  Examples of these Supplements are attached here to as Exhibits K-N.

Further, the SPDs refer participants to Advanta's SEC filings, including Advanta's Annual and Quarterly Reports (Form 10-K and 10-Q), which advise investors of numerous risk factors that could affect the value of Advanta stock.  For instance, Advanta's 2006 Annual Report contained numerous detailed disclosures concerning factors that could impact the price of Advanta stock.  *See* 2006 Form 10-K (Ex. C), at 14-18.  Among these was that:

> To generate cash for the funding of our operations we also rely on our ability to combine and sell business credit card receivables as asset-backed securities through transactions known as securitizations. At December 31, 2006, off-balance sheet securitized receivables represented 63% of our funding. Our ability to complete securitizations depends upon:
>
> - general conditions in the securities markets;
> - specific conditions in the asset-backed securities markets;
> - the quality of our business credit card portfolio;
> - and the ratings on the asset-backed securities sold in the securitizations.
>
> Adverse changes in these market conditions, the quality of our loan portfolio or any down-grade of the ratings on the asset-backed securities may disrupt the timing of our securitization transactions and impair our ability to complete securitizations on terms that are satisfactory to us. Although securitizations are not our only source of cash to fund our operations, any substantial reduction in our ability to complete securitizations could negatively impact our results of operations and financial condition.

*Id.*, at 18.

As the class period progressed and the global economy experienced a dramatic downturn, Advanta provided Savings Plan participants with specific disclosures that addressed the additional risks facing the company.  Advanta's 2008 Form 10-K, a copy of the relevant portions of which is attached hereto as Exhibit N, noted that the quality of Advanta's credit portfolio has been negatively impacted by the growing recession:

> Deterioration of the U.S. economy beginning in the latter half of 2007 and the continuing negative trends in economic conditions and disruption in the capital markets have adversely affected our business. Many small business credit card issuers, including Advanta, have experienced increased delinquencies and charge-offs due to the impact of the general economic downturn on small businesses. … If the economic downturn continues, the ability and willingness of our small business customers to pay amounts owed to us could continue to be adversely affected, resulting in further increases in delinquencies and charge-offs.

21

2008 Form 10-K, at 13.

### 4.      Fiduciary Responsibility Under the Savings Plan

Advanta itself is designated as the "Plan Administrator" for the Savings Plan.  *See* 2001

Savings Plan  Document (Ex. D), § 1.3.  The Plan also provides that "[t]he Company, through its

Board of Directors, shall designate a Committee which shall have the authority to control and

manage the operation and administration of the Plan."  *Id.*, § 2.2.  Advanta's Board of Directors

"may remove, with or without cause, the Committee or any Committee member."  *Id.*

Based on this allocation of duties, the Savings Plan states that:

> The Board of Directors, the Administrator, the Committee, the Trustee and the Investment Manager (if any) possess certain specified powers, duties, responsibilities and obligations under the Plan and the Trust Agreement.  *It is intended under this Plan and the Trust Agreement that each be responsible solely for the proper exercise of its own functions and that each not be responsible for any act or failure to act of another*, unless otherwise responsible as a breach of its fiduciary duty or for breach of duty by another Fiduciary under ERISA's rules of co-fiduciary responsibility.  In general:

> 2.5.1  the Board of Directors is responsible for appointing and removing the Committee and the Trustee and for amending or terminating the Plan and the Trust Agreement;

> 2.5.2  the Committee is responsible for administering the Plan, for adopting such rules and regulations as in the opinion of the Committee are necessary or advisable to implement and administer the Plan and to transact its business, and for providing a procedure for carrying out a funding policy and method, including the specification of Investment Categories, consistent with the objectives of the Plan and the requirements of Title I of ERISA;

> 2.5.3  the Company, as Administrator, is responsible for discharging the statutory duties of a plan administrator under ERISA and the Code….

*Id.*, § 2.5 (emphasis added).

The responsibilities of the Plan Committee, particularly with respect to the offering of the Company Stock Fund as an investment option, are also addressed in the Savings Plan's Investment Policy Statement.  The Statement provides that "[t]he Committee is charged with: …Identifying and selecting a blend of well-managed investment options for the Plan that offer an adequate diversification; [and] … Ensuring that the Company stock is a prudent investment choice."  Savings Plan Investment Policy Statement (Ex. I), at 4.  The Statement further provides that "[t]he Committee will monitor the performance of Advanta stock not for the purpose of recommending levels of Advanta stock for investment in the Plan or for the elimination of Advanta stock as a Plan investment; rather, to ensure Advanta stock is a prudent investment option."  *Id.* at 1.

## II.   ADVANTA'S OPERATIONS DURING THE PROPOSED CLASS PERIOD

As noted above and as discussed in greater detail below, the Plaintiffs' claims in this case focus on the performance of Advanta's stock during the proposed class period.  It is no secret that Advanta, like nearly every corporation in the country and particularly those in the financial services industry, has experienced severe economic troubles in recent years.  Indeed, as the Court is aware, Advanta filed for bankruptcy in November 2009.  On January 11, 2010, Advanta announced that the Company's Board of Directors had authorized a liquidation of the Debtors' assets.

Despite its occasional conclusory and unsupported allegations of fraud and intentional misconduct by Advanta's management, Plaintiffs' Complaint clearly demonstrates that Advanta's economic difficulties were the result of unprecedented and unpredictable changes in the economy as a whole.  According to the Complaint, at the outset of the class period,

Advanta's common stock was trading at $26.16 per share of Class B stock and $29.93 per Class

A share.  Compl. ¶ 107.  As of April 24, 2007, when Advanta announced its financial results for

the first quarter of that year, the price of shares of Advanta's Class B stock has increased to

$31.36, while Class A shares traded at $28.24 per share.  *Id.*, ¶ 113.

   Plaintiffs' allegations with respect to the period following this date consist primarily of a

recitation of Advanta's public disclosures concerning its credit portfolio and a summary of the

opinions of certain financial analysts regarding the company.  The chart below reflects the

changes in Advanta's stock price alleged in the Complaint:

| Date | Class B Share Price |
|---|---|
| 7/31/2007 | $25.66 |
| 10/25/2007 | $17.69 |
| 11/27/2007 | $11.06 |
| 1/30/2008 | $9.18 |
| 4/30/2008 | $8.78 |
| 7/29/2008 | $7.14 |
| 10/30/2008 | $3.74 |
| 1/29/2009 | $.70 |
| 4/30/2009 | $1.17 |
| 5/11/2009 | $1.55 |
| 6/8/2009 | $.81 |
| 7/1/2009 | $.39 |

   As can be discerned from the Complaint, the declines in the value of Advanta stock were

primarily attributable to increased delinquencies by Advanta's customers.  For instance, on

November 29, 2007, Advanta filed with the SEC a Form 8-K indicating that the company had

conducted a call with investors on November 27 during which it had disclosed that "delinquency

buckets have been negatively impacted as a higher percentage of customers than anticipated have

rolled into delinquency and a lower percentage of delinquent customers have made payments"

and that "[t]he Company now believes that these higher delinquency rates, and therefore charge-

off trends, will continue some time before they improve." Compl., ¶ 128.  Significantly, it was at

or about this time that the U.S. economy "officially" entered into a recession.  *See* Report of

National Bureau of Economic Research, dated 12/1/2008.

On May 9, 2008, Advanta filed its Form 10-Q for the first quarter of 2008.  In the report,

Advanta noted that its customer delinquency rates continued to increase, due largely to the

deepening economic downturn:

> Provision for credit losses and provision for interest and fee losses
> on a consolidated basis increased for the three months ended
> March 31, 2008 as compared to the same period of 2007. The
> increases in the provisions were due primarily to increases in
> delinquency and net principal charge-off rate trends…. The
> deterioration in credit performance is broad-based across
> industries, geographic regions and origination vintages in our
> receivable portfolio. The increasing delinquency and charge-off
> rates reflect deterioration in the U.S. economy and, to a lesser
> extent, continued seasoning of the portfolio.

Form 10-Q, dated 5/9/2008 (Exhibit O hereto), at 26.

Over the course of the next year, Advanta continued to experience increases in customer

delinquencies and a deterioration of the company's credit quality:

- "Despite our focus on high credit quality customers, we had higher delinquency and
  net principal charge-off rates in the three and nine months ended September 30, 2008
  as compared to the same periods of 2007 due primarily to deterioration in the U.S.
  economy and, to a lesser extent, continued seasoning of the portfolio, and as a result,
  we had higher provisions for credit losses and lower securitization income."  Form
  10-Q, dated 11/7/2009 (Ex. P), at 29

- "The current market and economic environments present us with inherent and
  specific challenges. The general economic environment in the United States has had
  and is expected to continue to have a significant impact on our results. Deterioration
  in the U.S. economy has negatively impacted the credit quality of our receivables and
  decreased rates of growth in customer merchandise sales volume."  2008 Form 10-K,
  dated 3/13/2009 (Ex. N), at 27

25

- "Deterioration of the U.S. economy beginning in the latter half of 2007 and the continuing negative trends in economic conditions and disruption in the capital markets have adversely affected our business. Many small business credit card issuers, including Advanta, have experienced increased delinquencies and charge-offs due to the impact of the general economic downturn on small businesses. In addition, weaker economic conditions and a decline in our business credit card accounts have resulted in lower transaction volumes. … We had higher delinquency and net principal charge-off rates in the three months ended March 31, 2009 as compared to the same period of 2008 due primarily to deterioration in the U.S. economy and, to a lesser extent, continued seasoning of the portfolio, and as a result, we had higher provisions for credit losses and lower securitization income." Form 10-Q, dated 5/11/2009 (Ex. Q), at 29.

Ultimately, these economic conditions forced Advanta to file for bankruptcy protection pursuant to Chapter 11 of the Bankruptcy Code on November 8, 2009.  Compl., ¶ 179.


## ARGUMENT

I.   **PLAINTIFFS' PRUDENCE CLAIM MUST BE DISMISSED AS TO THE DIRECTOR DEFENDANTS BECAUSE THE DIRECTOR DEFENDANTS HAD NO FIDUCIARY RESPONSIBILITY WITH RESPECT TO THE OFFERING OF ADVANTA STOCK AS AN INVESTMENT OPTION UNDER THE SAVINGS PLAN (COUNT I).**

As noted above, an individual is a fiduciary under ERISA only "to the extent" that he or she exercises discretion with respect to a particular aspect of the administration of an employee benefit plan.  29 U.S.C. § 1002(21)(A).  That is, fiduciary status under ERISA is not an "all or nothing concept."  *See, e.g., Srein v. Frankford Trust Co.*, 323 F.3d 214, 221 (3d Cir. 2003) (quoting *Maniace v. Commerce Bank of Kansas City, N.A.,* 40 F.3d 264, 267 (8th Cir.1994)); *Moench*, at 561.  Indeed, Plaintiffs specifically acknowledge the limited nature of fiduciary responsibility under ERISA in their Complaint, stating that "Plaintiffs do not allege that each Defendant was a fiduciary with respect to all aspects of the Plans' management and

administration.  Rather…Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them…."  Compl., ¶ 74.

Notwithstanding this purported recognition, however, Plaintiffs fail to distinguish among the Defendants in asserting their claims.  In particular, despite the clear allocation of fiduciary authority contained in the Savings Plan documents, Plaintiffs assert their prudence claim with respect to that Plan against all Defendants.  Because the assertion of a claim against the Director Defendants based on the continued offering of the Company Stock Fund as an investment option under the Savings Plan is foreclosed by the plain terms of the Savings Plan, that claim should be dismissed.

The Savings Plan is clear that the authority of Advanta's Board of Directors with respect to the administration of the Plan is very limited: "the Board of Directors is responsible for appointing and removing the Committee and the Trustee and for amending or terminating the Plan and the Trust Agreement."  2001 Savings Plan Document (Ex. D), § 2.5.1.  This is the full extent of the Board's authority under the Plan.[9]

---

[9]     Plaintiffs allege that "the Board has primary oversight of the Plans" and that the Board's appointment power is only "indicative of the Board's authority."  Compl., ¶ 78.  However, any allegations that the Board's authority extended beyond the power to appoint are wholly unsupported and plainly inconsistent with the terms of the Savings Plan.  Those allegations therefore cannot be credited by the Court.  *Accord In re Lehman Brothers Securities and ERISA Litigation*, 683 F. Supp. 2d 294, 299 (S.D.N.Y. 2010) ("The [complaint] alleges also, in the words of the statute, that the Director Defendants are Plan fiduciaries. But this contention is a legal conclusion, unsupported by factual allegations. In the absence of any facts to support this assertion, and I need not accept it as true.The [complaint] therefore fails to allege that the Director Defendants had a fiduciary duty in any respect material to this complaint.").

Numerous courts, including those within the Third Circuit, have held that a claim for the failure to divest a plan of employer stock cannot lie against defendants whose only authority relates to the appointment of plan administrators. *See In re Bank of America Corp. Securities, Derivative, and ERISA Litig.*, No. 09-MD-2058, 2010 WL 344819, at *14 (S.D.N.Y. Aug. 27, 2010) (granting motion to dismiss in favor of directors on the basis that "[t]he Complaint does not contain factual allegations regarding any actions taken by the board to add support to the conclusory assertion that the board was a fiduciary with respect to the management of the Plans' assets or the administration of the Plans."); *Lanfear v. Home Depot, Inc.*, -- F. Supp. 2d --, 2010 WL 2427413, at * 9 (N.D. Ga. June 7, 2010) (dismissing claims against certain defendants because [t]he allocation of responsibilities in the Plan document makes clear that the Administrative Committee had no authority with respect to the Plan's investments; this authority was delegated only to the Investment Committee."); *Fisher v. JP Morgan Chase & Co.*, -- F. Supp. --, 2010 WL 1257345, at * 5 (S.D.N.Y. March 31, 2010) (dismissing claims against director defendants due to the plaintiffs' failure to "sufficiently allege[] that the director defendants and other individual defendants had discretion over the decision to offer the JP Morgan Chase stock as an investment option"); *In re Lehman Brothers Securities and ERISA Litigation*, 683 F. Supp. 2d 294, 299 (S.D.N.Y. 2010) (dismissing prudence claim against board of directors where "the only factual allegations that Director Defendants exercised control and authority over the Plan is the contention that the board appointed its Compensation Committee and that that committee in turn appointed the Plan Committee"); *In re RCN Litig.*, NO.04-5068, 2006 WL 753149, at *8 (D.N.J. Mar. 21, 2006) (refusing to "vitiate the notion of limited fiduciary responsibility established by the 'to the extent' language in ERISA" and rejecting

contention that "the power to appoint and remove the Plan's administrator makes the Company and the Board Defendants ERISA fiduciaries with regards to the management of the Plan's assets").

Since the Director Defendants possessed no authority to divest or otherwise manage the Savings Plan's investments in Advanta stock, Count I of Plaintiffs' Complaint (to the extent that it relates to the offering of the Company Stock Fund as an investment option) must be dismissed as to those Defendants.

## II. PLAINTIFFS' PRUDENCE CLAIM WITH RESPECT TO THE ESOP MUST BE DISMISSED BECAUSE THE ESOP AFFORDED PLAN FIDUCIARIES NO DISCRETION WITH RESPECT TO INVESTMENTS IN ADVANTA STOCK (COUNT I).

### A. Under Controlling Third Circuit Law, There Can Be No Breach of the Fiduciary Duty of Prudence Where a Plan "Absolutely Requires" Investments in Employer Stock.

The analysis of claims of the breach of ERISA's duty of prudence in so-called "stock drop" cases like this one must begin with the Third Circuit's seminal decision in *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995). In *Moench*, the Court of Appeals articulated the standards by which claims that a plan fiduciary breached his or her duty of prudence under ERISA by maintaining plan investments in employer stock must be evaluated. Pursuant to those standards, fiduciaries, like those of Advanta's ESOP, who are not granted any discretion with respect to the plan's investments in employer stock cannot be held liable for any losses arising from such investments.

ERISA's fiduciary duty of prudence requires that plan fiduciaries discharge their duties:

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

> like capacity and familiar with such matters would use in the
> conduct of an enterprise of a like character and with like aims;
>
> (C) by diversifying the investments of the plan so as to
> minimize the risk of large losses, unless under the
> circumstances it is clearly prudent not to do so

29 U.S.C. § 1104(a).  However, ERISA explicitly establishes a number of exceptions to these

general duties where investments in employer securities are concerned.  Most significantly, it

exempts the fiduciaries of "eligible individual account plans" from the duty of prudence with

respect to investments in a plan sponsor's stock insofar as prudence requires the diversification

of plan assets, which it otherwise does.  *See* 29 U.S.C. §§ 1104(a)(2), 1107(b)(1).[10]

This framework reflects the "favored status Congress has granted to employee stock

investments in their own companies."  *Kirschbaum v. Reliant Energy*, 526 F.3d 243, 254 (5th

Cir. 2008).  Recognizing this clear Congressional policy,[11] the Third Circuit held that fiduciaries

---

[10]    Section 1104(a)(2) states that:

> In the case of an eligible individual account plan (as defined in
> section 1107(d)(3) of this title), the diversification requirement of
> paragraph (1)(C) and the prudence requirement (only to the extent
> that it requires diversification) or paragraph (1)(B) is not violated
> by the acquisition or holding of qualifying employer real property
> or qualifying employer securities (as defined in section 1107(d)(4)
> of this title).

[11]    As the Third Circuit recognized in *Moench*, ERISA's obviously favored treatment of
investments in employer stock reflects Congress's view that "the concept of employee
ownership constituted a goal in and of itself."  62 F.3d at 568; *see also Kirschbaum*, at
248 (noting that "Congress, for well-documented policy reasons, has encouraged
employee ownership of employer stock").  This express statutory policy completely
undermines Plaintiffs' contention that plan fiduciaries are required to take into account
certain alleged "characteristics and behavior" of ERISA plan participants.  *See* Compl., ¶
96.  The paternalistic obligations that Plaintiffs advocate are completely at odds with
ERISA's well-established fiduciary obligations and the Congressional policies embodied
in the statute, and are contrary to Third Circuit precedent.

of a plan that provides for investments in employer stock "should not be subject to the strict scrutiny that would be exercised over a trustee [merely] authorized to make a particular investment." *Moench,* 62 F.3d at 571.  Accordingly, the Third Circuit concluded that where a fiduciary is "more than simply permitted to make… investments [in employer stock]," the fiduciary is entitled to a "presumption of prudence" with respect to such investments:  "[A]n ESOP fiduciary who invests [plan] assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities." *Id.*

Significantly, while the Third Circuit noted that it was "not concerned with a situation in which an ESOP plan in absolute unmistakable terms requires that the fiduciary invest the assets in the employer's securities regardless of the surrounding circumstances," the court suggested, that where a plan "absolutely requires" investments in company stock, the fiduciaries of such a plan should be "immune from judicial scrutiny."  *Id.* at 571.

In its more recent decision in *Edgar v. Avaya*, 503 F.3d 340 (3d Cir. 2007), the Third Circuit made it clear that the fiduciaries of plans that afford no discretion with respect to investments in employer stock cannot be sued for breach of the duty of prudence in connection with such investments.  Specifically, the Third Circuit stated that, under the tripartite standard articulated in *Moench*, "if the trust 'requires' the trustee to invest in a particular stock, then the trustee is 'immune from judicial inquiry.'"  *Id.* at 346 (emphasis added).[12]  Thus, as Chief Judge

---

[12]    As in *Moench*, the court in *Edgar* determined that the plan at issue "encourage[d]," but did not "absolutely require" that the employer's stock be offered as an investment option. 503 F.3d at 347 n.11.  Accordingly, the plaintiffs' claims were properly evaluated in light

Bartle summarized in his decision in *Urban v. Comcast Corp.*,  No. 08-773, 2008 WL 4739519 (E.D.Pa. Oct. 28, 2008):

> Where a plan fiduciary decides to invest in employer securities, our Court of Appeals has applied differing levels of scrutiny based on whether the plan mandates, encourages, or simply permits such investments.  … *[W]here a plan's settlor mandates investment in employer securities, the plan fiduciaries are "immune from judicial inquiry" related to such investments, essentially because they are implementing the intent of the settlor.*"

*Id.*, at *11 (emphasis added).  *See also Dann v. Lincoln Nat'l Corp.*, -- F. Supp. 2d --, 2010 WL 1644276, at *6 (E.D. Pa. April 20, 2010) ("*Moench* set forth a three level standard of review: where the trust requires investments in a particular stock, the trustee is immune from judicial scrutiny…"); *Gradent v. Conexant Sys., Inc.*, 574 F. Supp. 2d 456, 462 (D.N.J. 2008) ("The distinctions identified by the *Moench* court broke down as follows: Where the plan *requires* investment in a particular stock, the fiduciary's conduct is not subject to judicial review.") (emphasis in original); *accord Gearren v. McGraw-Hill Companies, Inc.*, 690 F. Supp. 2d 254, 266 n.9 (S.D.N.Y. 2010) ("The [*Moench*] opinion clearly implies that…if the [plan] terms absolutely required the fiduciary to invest in employer stock, his decision to do so would likely be immune from judicial review.").

A number of district courts have applied these principles in dismissing claims like Plaintiffs' claims with respect to the ESOP here.  For instance, in *In re Citigroup*, No. 07-9790, 2009 WL 2762708, at *1 (S.D.N.Y. Aug. 31, 2009), the court citing extensively to *Moench* and *Edgar* throughout its decision, granted defendants' motion to dismiss because the plans at issue

of the "presumption of prudence" articulated in *Moench*.  *Id.* at 347.  Applying the presumption, the court in *Edgar* found that the district court had properly dismissed the plaintiffs' claims in response to a motion to dismiss.  *Id.* at 348-49.

32

in the case "unequivocally required that Citigroup stock be offered as an investment

option…defendants had no discretion—and could not have been 'acting as fiduciaries'—with

respect to the Plans' investment in Citigroup stock." *Id.*, at *1.  Accordingly, those fiduciaries

could not, as a matter of law, be held liable for a breach of the duty of prudence.  *Id.*, at *7-8.

"[I]f the price of employer stock collapses and the value of an EIAP or an ESOP declines, it is a

natural result of the plan's design.  No fault would lie with the plan's fiduciaries, who were

adhering to the mandatory terms of a plan that was designed not to guarantee income, but to

encourage employee stock ownership." *Id.*, at *12.  This conclusion, the court noted, is "not

only [in] accord with the traditional principles of trust law, but it is consistent with ERISA's

language, structure, and purpose." *Id.*, at *10.

Similarly, in *In re ING Groep, N.V. ERISA Litig.*, No. 09-400, 2010 WL 1704402 (N.D.

Ga. Mar. 31, 2010), a district court dismissed claims pursuant to Rule 12(b)(6), finding that "[a]s

the [employer stock] option was mandated by the Plan, defendants cannot be liable for breach of

fiduciary duty on the basis of their decision to offer [employer] stock." *Id.* at 10 (citing *Pedraza*

*v. Coca-Cola Co.*, 456 F. Supp. 2d 1262, 1273-74 (N.D. Ga. 2006).  According to the court,

because the plan at issue required that the employer's stock be offered as an investment option,

the defendants "did not act as fiduciaries with respect to the decision to offer [the employer's]

stock as an investment option." *Id.  See also In re Coca-Cola Enter., ERISA Litig.*, No. 1:06 CV

0953, 2007 WL 1810211, at *9 (N.D. Ga. June 20, 2007) ("Because the Plan expressly

establishes CCE stock as an investment option, the Committee has the discretion only to select

additional investment options, not to eliminate CCE stock from the mix."); *accord Harris Trust*

*& Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 29 (2d Cir. 2002) (stating that

"adherence to [plan] terms by a plan administrator cannot constitute a breach of its fiduciary duties, barring a grant of discretionary authority to the fiduciary").

### B. The Fiduciaries of the ESOP Had No Discretion with Respect to the Plan's Investments in Advanta Stock.

Because the ESOP afforded fiduciaries no discretion, they are immune from suit and the claim for breach of the duty of prudence must be dismissed as a matter of law.

The Advanta ESOP is without question a plan that compels that plan assets be invested in employer stock.  Indeed, it is difficult to imagine a plan that more clearly "absolutely requires" such investments.  The ESOP states in no uncertain terms that its overriding purpose is "to enable each eligible person employed by the Employer to benefit, in accordance with the terms of the Plan, from an accumulation of stock of the employer and to provide for substantial employee participation in the ownership of the Employer."  ESOP Plan Document (Ex. A), § 1.1. More importantly, the ESOP's express terms and its structure and operation make clear that the Defendants possessed <u>no discretion</u> with respect to the Plan's investments in Advanta stock.

As described above, the shares of Advanta stock available for distribution to the ESOP participants were acquired in 1998 pursuant to the loan transaction described in the Plan and Advanta's SEC filings.  *See* ESOP Plan Document (Ex. A), § 1.1; 2006 Form 10-K (Ex. C), at 80.  These shares are held in trust until such time as the terms of the ESOP authorize their release.  ESOP Plan Document, § 6.1.  The ESOP does not permit the distribution of shares unless and until Advanta makes the contributions necessary to enable the Plan to make its required loan payments.  Additionally, the ESOP does not permit distributions to participants to be in cash or any form other than Advanta stock, as it specifically states that "the securities becoming available for allocation with respect to such Plan Year shall be allocated in

*nonmonetary units* (in full and fractional shares to the fifth decimal place) to the Stock Interests of the Accounts of Participants."  ESOP Plan Document (Ex. A), § 7.7.

The occurrence of each of these events is expressly compelled by the terms of the ESOP. *The ESOP's fiduciaries have no control whatsoever over them*.  To put it simply, as far as the Plan's investments in Advanta stock are concerned, the ESOP runs itself in accordance with the Plan Document.

The Defendants' lack of control over the ESOP's investments is confirmed by the Plan's provisions concerning the allocation of fiduciary responsibility.  As stated above, the ESOP Plan Document includes a detailed and exhaustive list of the duties imposed on the Plan's fiduciaries. Significantly, none of these duties relates to in any way to the exercise of discretionary control over the investment of contributions in employer stock.  *See* ESOP Plan Document (Ex. A), ¶¶ 13.4, 14.1.  Thus, the ESOP itself leaves no doubt that Advanta, in designing the ESOP, left no discretion to any plan fiduciaries to alter the Plan's intent that all of its assets be permanently invested in Advanta stock.

In conclusion, because the ESOP does not grant any Plan fiduciary authority to direct that Plan contributions be made in any form other than Advanta stock or to divest the Plan of company stock, such fiduciaries cannot, as a matter of law, be found to have breached their ERISA obligations by failing to take such actions.  Accordingly, pursuant to the rules clearly articulated by the Third Circuit in *Moench* and *Edgar*, Plaintiffs' claims with respect to the ESOP must be dismissed.

III.   **PLAINTIFFS' CLAIM THAT DEFENDANTS BREACHED THEIR DUTY OF PRUDENCE SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT PLED SUFFICIENT FACTS TO OVERCOME *MOENCH*'S PRESUMPTION OF PRUDENCE (COUNT I).**

A.   **The Moench Presumption Governs the Alleged Fiduciaries' Decisions With Respect to the Offering of Advanta Stock.**

Under controlling Third Circuit precedent, a fiduciary of a plan that more than "simply permit[s]" investments in employer stock, "is entitled to a presumption that it acted consistently with ERISA by virtue of that decision."  62 F.3d at 571.  Put another way, even if a plan's fiduciaries are not "absolutely required" to maintain the plan's investments in employer stock, those fiduciaries are entitled to the protection of a "presumption of prudence" unless they are afforded "unfettered discretion in making investments." *Urban*, 2008 WL 4739519, at *2.[13]  To overcome the "*Moench* presumption," a plaintiff must "establish[] that the fiduciary abused its discretion by investing in employer securities." *Moench*, at 571.

The presumption of prudence established by *Moench* clearly governs Plaintiffs' prudence claim with respect to the Savings Plan.  In addition, should the Court determine that the ESOP does not absolutely require that its assets remain invested exclusively in Advanta stock, and that the ESOP's fiduciaries therefore possesses some degree of discretion with respect to investments in such stock, the *Moench*'s presumption of prudent would clearly apply to Plaintiffs' claims with respect to the ESOP.

---

[13]   In *Edgar*, the Third Circuit held that the presumption applies to all eligible individual account plans ("EIAPs") that do more than simply permit investment in employer stock, regardless of whether they are formally designated as ESOPs.  503 F.3d at 345 ("Although the Plans are not ESOPs, we agree with the District Court that the same deferential standard applies here.").  The Savings Plan is an EIAP.

As discussed above, there can be no doubt that the fiduciaries of the ESOP do not possess "unfettered discretion" with respect to investments in employer stock.  Similarly, the Savings Plan goes well beyond merely permitting Advanta stock to be offered as an investment option and evinces a clear intent on the part of the Plan's settlor that Advanta stock be an investment alternative for participants.  *See Dann*, *supra*, at *7 ("Read as a whole, it is clear that the Plans contemplate and expect that the LNC Common Stock Fund is available as an investment option.").

The Savings Plan's Plan Document states unequivocally that "[t]he [Plan Administration Committee *shall establish* an Investment Category consisting solely of Company Stock."  2001 Savings Plan Document (Ex. D), § 6.2 (emphasis added).  Additionally, the Savings Plan's 2007 SPD informs participants that "[the Plan] is *designed* to promote the interests of the Company, its shareholders and you by allowing you to invest in the Company's Class B Common Stock thereby giving you an incentive to put forth maximum efforts for the success of the Company." 2007 Savings Plan SPD (Ex. G), at 7 (emphasis added).  The 2009 SPD similarly notes the expected inclusion of Advanta stock among the Savings Plan's investment alternatives, informing participants that "[y]our investment options include an opportunity to invest in the Class B Common Stock of Advanta Corp. (the "Company stock")."  2009 Savings Plan SPD (Ex. H), Art. XIV(A).

Based on these clear provisions, it is beyond dispute that the Savings Plan "more than simply permits" the inclusion of the Company Stock Fund as an investment option, and that Plaintiffs' duty-of-prudence claim with respect to that Plan are subject to *Moench*'s presumption of prudence.

**B.** **Plaintiffs' Conclusory Allegations that Defendants "Knew or Should Have Known" of the Alleged Imprudence of Advanta Stock Are Insufficient to Overcome the Presumption of Prudence.**

**1.** **To Overcome the *Moench* Presumption, Plaintiffs Must Plead Facts Establishing That Plan Fiduciaries Knew That Employer Stock Was An Imprudent Investment.**

The Third Circuit held in *Moench* that, in order for the presumption of prudence to be overcome, "the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate." *Moench*, 63 F.3d at 571. The Third Circuit expanded on this pronouncement in *Edgar*, holding that a plaintiff must allege the existence of "dire circumstances" that were known to plan fiduciaries and that would have compelled a prudent fiduciary "to disobey the terms of the Plan by not offering the [company] stock fund as an investment option, or by divesting the Plans of [company] securities." *Edgar*, 505 F.3d at 349. Accordingly, "a decline in the price of a company's stock, even a significant decline, is not sufficient absent allegations of other circumstances such as fraudulent conduct or *knowledge* of the company's impending collapse." *Ward v. Avaya, Inc.*, 487 F. Supp. 2d 467, 480 (D.N.J. 2007), *aff'd* 299 Fed.Appx. 196 (3d Cir. 2008) (emphasis added).[14]

---

[14] Numerous courts have recognized that the burden imposed on plaintiffs by the *Moench* presumption is a significant one. *See, e.g., Kirschbaum v. Reliant Energy, Inc.*, 536 F3d 243, 256 (5th Cir. 2008) (noting that the *Moench* presumption is a "substantial shield"); *Quan v. Computer Sciences Corp.*, -- F.3d --, 2010 WL 3784702, at *7 (9th Cir. Sept. 30, 2010) (emphasizing importance of ensuring that burden imposed on plaintiffs by *Moench* is "sufficiently heavy"); *In re Wachovia Corp. ERISA Litig.*, No. 3:09cv262, 2010 WL 3081359, at *13 (W.D.N.C. Aug. 6, 2010) ("The judicial presumption of prudence substantially raises the threshold for holding plan fiduciaries responsible for investment losses arising from employer stock investments.").

The requirement that a plaintiff plead facts sufficient to support a conclusion that the plan fiduciaries had *knowledge* of circumstances that were likely to lead to a collapse in the price of employer stock is a critical element of the *Moench/Edgar* framework.  "A fiduciary cannot be placed in the untenable position of having to predict the future of the company's stock performance," allegations such as Plaintiff's cannot support a claim of breach of fiduciary duty. *Kirschbaum*, 526 F.3d at 256; *see also In re Huntington Bancshares Inc. ERISA Litig.*, No. 2:08-cv-0165, Slip. Op. at 16 (S.D. Ohio February 10, 2009) ("Defendants cannot be held to a standard that would require them to predict the future of the financial markets so as not to breach their fiduciary duties under ERISA.").  Accordingly, in order for a plaintiff to sufficiently allege circumstances that could overcome the presumption of prudence, "there must be something akin to a 'red flag' of misconduct" that should have led plan fiduciaries to know that company stock was an imprudent investment alternative.  *Pugh v. Tribune Co.*, 521 F.3d 686, 700 (7th Cir. 2008).

> **2.      Plaintiffs Plead No Facts Supporting the Conclusion That the Defendants Knew of Advanta's "Impending Collapse."**

Despite its considerable bulk, Plaintiffs' Complaint is almost completely devoid of substance.  The Complaint contains nothing more than a recitation of the Defendants' positions with Advanta, a summary of Advanta's public, forwarding-looking statements concerning its financial situation, citations to Advanta's stock price and quotations from some financial analysts' statements concerning Advanta's business.  Plaintiffs' Complaint thus does not come close to pleading the "persuasive and analytically rigorous facts" that are required to overcome the *Moench* presumption.  *See Kirschbaum*, 536 F3d at 256.

Particularly since, as one court recently recognized, claims of breach of fiduciary duty "must be viewed in the context of the global financial crisis," *In re Bank of America Corp. Securities, Derivative, and ERISA Litig.*, *supra*, at *21, in order to state a claim for breach of the duty of prudence, a plaintiff must not only show that an employer faced "dire circumstances" that threatened its continuing viability, it must also plead facts from which it can be concluded that the defendant fiduciaries *knew* of those circumstances and should have concluded that the employer's stock was no longer a prudent investment. *Edgar* at 349.

Plaintiffs' Complaint is replete with conclusory statements that "[d]uring the Class Period, these Defendants knew or should have known that, as described herein, the Advanta common stock was not a suitable and appropriate investment for the Plans." *See* Compl. ¶ 220. However, the Complaint puts no flesh on these barebones allegations. Indeed, the Plaintiffs lump all Defendants together and merely assert that "[b]ecause of their high ranking positions within the Company and/or their status as Plan fiduciaries, Defendants knew or should have known of the existence of the above-mentioned problems [with Advanta's financial position]." Compl., ¶ 191. As several courts have recognized, such generalized allegations are insufficient to overcome the *Moench* presumption. *See In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *25 (S.D.N.Y. Aug. 31, 2009) ("[P]laintiffs' allegation that the Administrative Committee 'knew or should have known' of Citigroup's 'massive subprime exposure' is no more than a 'naked assertion' devoid of 'further factual enhancement.'"); *Pugh v. Tribune Co.,* 521 F.3d 686, 700-701 (7th Cir.2008) ("A conclusory statement that all defendants should have known specific facts about a company is generally insufficient to state a claim."); *see also In re Lehman Bros.*, 683 F. Supp. 2d at 301-302 (holding that allegations that defendant was "a Senior Vice President

and Global Head of Lehman's employee benefits functions" and "managed all aspects of the benefits programs" were insufficient to establish knowledge required to state a claim).

Nowhere does the Complaint allege a connection between the decline in the value of Advanta stock and knowledge by any of the Defendants of specific circumstances that a reasonable fiduciary would know were likely to lead to that decline. Rather, at most, the Complaint asserts that Advanta's problems were caused by an economic downturn that led to increased customer delinquencies. There is no basis for concluding that any of the Defendants should have known that the general challenges in Advanta's business—declining earnings, increasing customer delinquencies, declining credit quality—would lead to the events that ultimately transpired. Absent specific allegations that each of the Defendants knew of and were able to foresee (and at what point in time) the "impending collapse" of Advanta's business, the generalized allegations concerning Advanta's business contained in the Complaint are insufficient to overcome the *Moench* presumption.

Perhaps recognizing that the facts alleged in the Complaint do nothing more than suggest that Advanta, like nearly every business in the nation, was facing unprecedented challenges during the class period, Plaintiffs attempt to bolster their claims by alleging that, during the class period, while Defendants announced Advanta's positive outlook, they were actually engaging in "unsafe, unsound, unfair, deceptive and illegal banking practices" and "questionable accounting practices." Compl., ¶ 99.[15]  Plaintiffs' allegations miss the mark, however, as they fail to allege

---

[15]    These allegations sound in fraud and are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Urban v. Comcast*, No. 08-773, 2008 WL 4739519, at *9 (E.D. Pa. Oct. 28, 2008) ("[W]here a plaintiff's claim for breach of fiduciary duty is grounded in fraudulent conduct, the more stringent pleading standard of Rule 9(b) must be satisfied."). However, regardless of whether Plaintiffs' claim is

key facts regarding the alleged inappropriate practices, any connection between the practices and Advanta's stock price, or that any Defendant knew that the practices would lead to a decline in the stock price that would cause a prudent fiduciary to divest the Plans of Advanta stock.[16]

For instance, Plaintiffs merely offer vague statements that Defendants "hid[] large amounts of impaired credit card receivables"; "fail[ed] to verify its customers' ability to pay"; and "incorrectly account[ed] for delinquent customers and credit trends…."  Compl., ¶ 100. Plaintiffs not only completely fail to identify specific conduct by any of the Defendants that was allegedly improper, they fail to draw any connection between these alleged "questionable" accounting practices and the decline in Advanta stock.

Plaintiffs likewise make a number of conclusory allegations concerning Advanta's alleged improprieties with respect to the "Cash Back Reward" program and its "interest rate re-pricing scheme," which they allege caused customers to "flee" and ultimately required Advanta to pay restitution pursuant to a cease and desist order with the FDIC.  Compl., ¶¶ 101-103, 169-173.  Nowhere, however, do Plaintiffs plead any specific facts relating to these alleged practices, such as how the alleged deception was actually carried out, when it occurred, why it was

---

governed by Rule 9(b), or solely by Rule 8, the allegations made in support of that claim are legally deficient.

[16]   Plaintiffs makes a weak attempt to connect vague "improper and imprudent practices" to the decline in Advanta stock by alleging that the decline in price was caused by the revelation of "improper and imprudent practices." Compl., ¶ 130.  The Plaintiffs' own Complaint demonstrates the falsity of this statement.  Plaintiffs merely point to Advanta's public announcement regarding increased delinquency rates and an increase in the company's credit loss reserve due to a deteriorating economy.  Contrary to Plaintiffs' conclusory allegation, none of Advanta's announcements revealed "improper and imprudent practices."

deceptive or harmful to Advanta or Plan participants or the magnitude of the practices' alleged impact on Advanta stock.  Indeed, Plaintiffs make no connection whatsoever between these practices and the value of Advanta's stock.  Nor do Plaintiffs identify any facts that suggest which of the Defendants actually knew of the practices, or more importantly, that any of the Defendants actually knew (and when they knew) that these practices would lead to a decline in Advanta's stock.

In short, stripped of its conclusory allegations and unsupported attributions of knowledge, Plaintiff's Complaint is premised entirely upon a contention that Defendants "must have" known of the alleged events that would befall the company.  As the court recognized in *DeFelice*, such flawed logic cannot support a claim for breach of fiduciary duty.  497 F.3d at 424 ("At the heart of the Employees' case seems to be the view that, given their losses and U.S. Airways's undisputed knowledge of its uncertain financial condition over the class period, U.S. Airways *must* have violated ERISA's 'prudent man' duty when it continued to offer the Company Fund as a Plan option.  Although we are not unsympathetic to the Employees' losses, such a contention is not tenable.") (emphasis in original).

Because *Moench* and *Edgar* require a plaintiff to plead specific facts showing fiduciaries' knowledge of dire circumstances facing an employer, courts have consistently rejected claims, like Plaintiffs', that are based entirely on the fact that an employer's stock declined significantly or that the employer ultimately filed for bankruptcy.  For instance, in *Ward v. Avaya, Inc.*, 299 Fed.Appx. 196 (3d Cir. Feb. 13, 2008), the Third Circuit affirmed the dismissal of a plaintiff's complaint despite allegations that the defendant's stock price declined from $22.18 per share to $1.15 per share over the course of a two-year period.  *Id.*, at 200-201.  The court reasoned that:

> Ward's complaint fails to point to anything other than Avaya's financial struggles to support his breach of fiduciary duty claim. Thus, at most, "[Ward's] allegations, if true, indicate that during the Class Period, Avaya was undergoing corporate developments that were likely to have a negative effect on the company's earnings and, therefore, on the value of the company's stock." That alone does not suffice to rebut the presumption that the defendants acted within their discretion in refusing to halt or alter the Plan's investments in Avaya stock.

*Id.* at 201 (quoting Edgar, at 348). *See also In re Wachovia Corp. ERISA Litig.*, *supra*, at * 4-6, 14-15 (dismissing claim despite allegations that price of Wachovia stock fell from $55.42 to $1.84); *In re Lehman Brothers Securities and ERISA Litigation*, 683 F. Supp. 2d 294 (S.D.N.Y. 2010) (holding that, notwithstanding fact that Lehman Brothers filed for bankruptcy, complaint failed to overcome *Moench* presumption because it contained "no factual enhancement to its claims that Ms. Uvino, an employee responsible for human resources data and employee benefits, knew or should have known about Lehman's dire financial condition prior to its bankruptcy filing").[17]

Accordingly, insofar as it alleges that Defendants breached their fiduciary duty of prudence by continuing to offer the Company Stock Fund as an investment option under the Savings Plan and by failing to divest the ESOP of its holdings of Advanta stock, Count I of Plaintiffs' Complaint must be dismissed.

---

[17]  As *Lehman* makes clear, the mere fact that Advanta filed for bankruptcy does not compel a finding that Plaintiffs have stated a valid claim. *Accord DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007) (upholding judgment in favor of defendants, despite U.S. Airways' bankruptcy, on the basis that "whether a fiduciary's actions are prudent cannot be measured in hindsight"); *Summers v. UAL Corp.*, No. 03-1537, 2005 WL 2648670, at *6 (N.D. Ill. Oct. 12, 2005) (granting summary judgment because "Plaintiffs now in hindsight unfairly seek to hold [plan trustee] accountable for not foreseeing the future and for failing to foresee UAL's ultimate filing of bankruptcy").

**IV.     SECTION 404(c) OF ERISA BARS PLAINTIFFS' CLAIM WITH RESPECT TO THE SAVINGS PLAN.**

As noted above, the Savings Plan was designed to comply with § 404(c) of ERISA. Savings Plan Document (Ex. D), § 6.8; Services Agreement (Ex. F), § 1.  Under § 404(c), where a plan "provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account" and complies with the relevant regulations issued by the Department of Labor, "no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control...." 29 U.S.C. § 1104(c)(1)(A).  The primary requirements of the Department of Labor's regulations are that: 1) the participant must be able to choose "from a broad range of investment alternatives;" 2) the plan must permit the participants to give instructions to the plan with respect to those options at least once every three months; and 3) the participant must be given or have the opportunity to obtain "sufficient information to make informed decisions with regard to investment alternatives available under the plan." 29 C.F.R. § 2550.404c-1(b).  The allegations in the Complaint and the plan-related documents attached thereto make it clear that the Savings Plan is one to which § 404(c) applies.

The Savings Plan granted participants complete control over the investment of the contributions to their accounts.  Specifically, the 2009 SPD informs participants that "[s]ubject to the Plan Investment Policy…you can direct how all of your Account will be invested.  You can choose from any of the investment options approved by us.  You can switch between investments as often as is permitted under the investment options you choose…." 2009 Saving Plan SPD (Ex. H), at 15.  The SPD also specifically informs participants that they can "request more

information on fees" at any time and notes that detailed information concerning each investment is provided to participants on at least an annual basis.  *Id.*

Additionally, during the class period, Plan participants were able to invest the contributions to their accounts in a broad range of investment alternatives.  *Id.*, Appendix B. Specifically, participants could choose to invest, in any manner they saw fit, in 13-14 investment alternatives.  2007 SPD (Ex. G), Appx B; 2009 SPD (Ex. H), Appx. C.  These options offered varying levels of risk and potential return.  *Id.*

In *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), the Seventh Circuit concluded that applying § 404(c) to a motion to dismiss is appropriate where there is "no plausible allegation that the Plans do not comply with § 1104(c)."  *Id.* at 588; *see also Page v. Impac Mortg. Holdings, Inc.*, 2009 WL 890722 (C.D. Cal. March 31, 2009) ("[T]his Court may look to the allegations of the FAC and the documents attached thereto to determine whether to grant this Motion based on § 404(c).").[18]  Here, as in *Hecker*, there is no question that the Savings Plan complied with the requirements of § 404(c) and that any losses suffered by the Plan's participants were the result of their own decision-making with respect to the allocation of the contributions to their Plan accounts.

Given these undisputed facts, § 404(c) clearly applies to Plaintiffs' claims under the Savings Plan, and there is no basis for allowing such claims to proceed.

---

[18]      Indeed, when a defense appears on the face of the complaint (and the other materials properly considered in connection with a motion to dismiss), a court may consider the defense and dismiss cases on the pleadings.  *See Benak v. Alliance Capital Mgmt., L.P.*, 435 F.3d 396, 400 n. 14 (3d Cir.2006).

## V.   PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THAT DEFENDANTS VIOLATED ANY FIDUCIARY DUTY OF DISCLOSURE IMPOSED BY ERISA (COUNT I).

The second facet of Plaintiffs' claim that Defendants breached ERISA's duty of prudence is their allegation that Defendants "fail[ed] to provided complete and accurate information regarding the Company's true financial condition," "conceal[ed]" such information and "convey[ed] inaccurate information regarding the Company's future outlook." Compl., ¶ 223. Thus, Plaintiffs allege that Defendants breached their duty of disclosure both by failing to disclose required information and by affirmatively misleading participants by making inaccurate statements. Neither of these assertions provides a valid basis for Plaintiffs' claim.

First, to the extent that Plaintiff contends that ERISA's duty of disclosure imposed a general obligation on Defendants to provide the Savings Plan's participants with additional information regarding Advanta's financial condition and the risks associated with the company's stock *sua sponte*, that argument is plainly wrong. Contrary to Plaintiffs' assertion, ERISA does not impose the vague, boundless obligation to disclose general business information. As stated in *Edgar*, "under Third Circuit law, [fiduciaries] d[o] not have a duty to 'give investment advice' or 'to opine on' [a] stock's condition." *Id.*, at 350.

Second, Plaintiff's disclosure claim based on Defendants' alleged failure to provide non-public information concerning Advanta's operations also fails because there can be no loss causation in connection with such alleged non-disclosure.

Third, to extent the Plaintiffs' claim is based on alleged "concealment" or misrepresentations, that claim fails as well, both because Plaintiffs have failed to comply with the Federal Rules of Civil Procedure's requirements that they plead allegations of fraud with

specificity and, more importantly, because the general, forward-looking statements that Plaintiffs

contend were false or inaccurate were not fiduciary statements covered by ERISA.

    **A.**    **Defendants Were Not Required to Provide Plaintiffs With Information Concerning Advanta's Financial Condition or the Likely Future Value of Its Stock.**

According to Plaintiffs, the information that Defendants allegedly failed to disclose

consisted of "crucial information regarding the Company's operations and artificial inflation of

the Company's stock." *Id.*, ¶ 224. Plaintiffs do not, however, identify what specific "crucial

information" should have been disclosed. Indeed, the information provided by the Company has

been held by the Third Circuit and numerous other courts as sufficient to satisfy the duty of

disclosure.

As described above, participants were regularly provided with detailed information

regarding the nature and past performance of the Company Stock Fund. In addition, the Savings

Plan's SPD explicitly warned Plan participants of the risks associated with investments in

Advanta stock and emphasized the importance of diversification. 2009 Savings Plan SPD (H), at

16. Further, Advanta made explicit disclosures regarding the risks facing its business,

particularly as its delinquency rates increased , in its SEC filings, all of which were incorporated

by reference into the Savings Plan's SPDs. *See, e.g.,* 2008 Form 10-K, dated 3/13/2009 (Ex. N),

at 13-21, 27-31; Form 10-Q, dated 5/9/2008 (Exhibit O hereto), at 21-27; Form 10-Q, dated

5/11/2009 (Ex. Q), at 29-30; Form 10-Q, dated 11/7/2009 (Ex. P), at 29-31; *see also* 2007

Savings Plan SPD (Ex. G), at 22 (incorporating SEC filings); 2009 Savings Plan SPD (Ex. H), at

17-18 (same).

The Third Circuit has held that disclosures such as these are sufficient to comply fully with ERISA's disclosure obligations.  Specifically, in *Edgar*, the court held that:

> The Summary Plan Descriptions inform Plan participants that their investments are tied to the market performance of the funds; that each fund carries different risks and potential returns; that participants are responsible for investigating the investment options; and that, in doing so, they might consider seeking the advice of a personal financial advisor. In addition, the Plan Descriptions explicitly warn participants that there are particular risks associated with investing in a non-diversified fund.

503 F.3d at 350.

Numerous other courts have concluded that communications such as those made by Defendants here are more than sufficient to comply with ERISA's disclosure obligations.  *See, e.g., Dann*, *supra*, 2010 WL 1644276, at *11 ("Dann cannot establish a failure to disclose claim based on Defendants' failure to disclose adverse corporate events because fiduciaries have no affirmative duty to provide investment advice or opine on the health of employer securities…."); *Gearren*, 690 F. Supp. 2d at 271 ("Defendants have no affirmative duty under ERISA to disclosure information about the company's financial condition to plan participants."); *Johnson v. Radian Group, Inc.*, No. 08-2007, 2009 WL 2137241 (E.D.Pa. July 16, 2009), at *19 ("[T]hese disclosures fulfill the duty not to misinform participants about the risks associated with investment in the Radian stock fund.  The defendants had no duty to further opine on the condition of Radian common stock….").

As detailed above, the disclosures provided with respect to the Savings Plan informed participants of the nature of and risks associated with investments in the Company Stock Fund. ERISA did not require Defendants to make any further disclosures.  Accordingly, here, as in

*Edgar*, "defendants fulfilled their duty of disclosure under ERISA by informing Plan participants about the potential risks associated with investment in [employer stock]."  *Id.*

### B.   Plaintiffs' Disclosure Claim Fails Because Plaintiffs Cannot Prove Loss Causation.

Plaintiffs' attempt to argue that Defendants' fiduciary duties required them to provide Plaintiffs with non-public information concerning Advanta's operations also fails because there can be no loss causation in connection with such alleged non-disclosure.  According to Plaintiffs, Defendants breached their fiduciary obligations by "failing to provide complete and accurate information regarding the Company's true financial condition and the Company's concealment of same."  Compl., ¶ 223.[19]   However, in *Edgar*, the Third Circuit held that, under the "efficient capital markets hypothesis," any disclosure of material information "result[s] in a swift market

---

[19]     There is also a serious question as to whether there is any way that Plaintiffs can establish loss causation in connection with their general prudence claims with respect to both the Savings Plan and the ESOP.   Plaintiffs appear to contend that Defendants were obligated to discontinue offering the Company Stock Fund under the Savings Plan, and to divest the ESOP of Advanta stock, because of their knowledge of the impact that the ultimate disclosure of Advanta's allegedly improper practices would have on the value of Advanta stock.  *See* Compl., ¶ 220 ("Defendants failed to take any meaningful steps to protect Plan participants from the inevitable losses that they knew would ensue as the non-disclosed material problems, concerns and business slowdowns took hold and became public.").  However, as the court noted in *Edgar*, "had defendants decided to divest [the Plans of Advanta stock], based on information that was not publicly available, they would have faced potential liability under the securities laws for insider trading.".  Because "[f]iduciaries are under no obligation to violate securities laws in order to satisfy their ERISA fiduciary duties," *Quan v. Computer Sciences Corp.*, -- F.3d --, 2010 WL 3784702, at *8 n.8 (9th Cir. Sept. 30, 2010), Plaintiffs' prudence claim cannot be based on their alleged failure to protect Plan participants by acting on inside information.  Accordingly, at most, the Defendants' purported knowledge of the practices alleged by Plaintiffs would have required them to disclose the practices publicly.  And, as discussed in this Section, had such public disclosures occurred, the market would have absorbed and responded to those disclosures, and the price of Advanta's stock would have fallen accordingly.

adjustment," regardless of its timing.  *Edgar*, at 350.  Accordingly, here, as in *Edgar*, "the Plans would not have been able to sell their [] stock holdings at the higher, pre-announcement price, and the Plans would have sustained the same losses they incurred."  *Id.*  Thus, there is no disclosures that any of the Defendants could have made that would have permitted the Plans' participants to avoid the losses they suffered.

> ### C.   The Alleged "Misstatements" Cannot Support a Claim for Breach of ERISA's Disclosure Obligations.

The second apparent component of Plaintiff's disclosure claim—that certain Defendants made material misrepresentations regarding Advanta's financial condition that independently violated ERISA's fiduciary disclosure obligations, *see* Compl., ¶¶ 223-224—is equally flawed. This claim fails for two reasons.  First, Plaintiffs fail to identify why any specific statements by Defendants were false or misleading.  Second, while plan fiduciaries certainly have an obligation not to make material false statements to participants, only statements made in a fiduciary capacity can constitute a basis for a claim of breach of ERISA's fiduciary duties.  Here, the only allegedly inaccurate statements Plaintiffs identify in their Complaint are general public statements that were made by Advanta or its officers in their corporate, rather than fiduciary, capacities.

> ### 1.   Plaintiffs' Disclosure Claim Fails to Comply with the Requirements of Fed. R. Civ. P. 9(b).

Like nearly all of their allegations, Plaintiffs' assertion that Defendants "convey[ed] inaccurate information regarding the Company's future outlook," *id.*, ¶ 223, is wholly conclusory.  Presumably, Plaintiffs' disclosure claim is based on a contention that some or all of the public statements identified in the Complaint were inaccurate.  However, Plaintiffs fail to

identify why any of these statements were allegedly inaccurate.  Such vague and conclusory

allegations are insufficient to state a claim for breach of ERISA's duty of disclosure.

In addition to failing to satisfy the basic requirements of *Twombly* and *Iqbal*, Plaintiffs'

misrepresentation claim fails to comply with Rule 9(b) of the Federal Rules of Civil Procedure.

"[W]here a plaintiff's claim for breach of fiduciary duty is grounded in fraudulent conduct, the

more stringent pleading standard of Rule 9(b) must be satisfied."  *Urban v. Comcast*, No. 08-

773, 2008 WL 4739519, at *9 (E.D. Pa. Oct. 28, 2008) ; *see also In re Coca-Cola Enterprises

Inc.,* No. 1:06-CV-0953 (TWT), 2007 WL 1810211, at *2, 7 (N.D. Ga. June 20, 2007) (holding

that Plaintiffs' breach of fiduciary duty claims were all premised upon a theory of fraudulent

conduct and were therefore subject to the heightened pleading standard of Rule 9(b)).  As the

court noted in *Urban*, Rule 9(b) requires that "a plaintiff provide 'notice of the precise

misconduct' with which defendants are charged ...."  *Id.* at *8 (quoting *Rolo v. City Investing Co.

Liquidating Trust,* 155 F.3d 644, 658 (3d Cir.1998)).  Here, Plaintiffs fail to specify the basis on

which any of Defendants' alleged misstatements were false or misleading, and as such, fail to

satisfy the heightened requirements of Rule 9(b).

Further, Plaintiffs do not offer any allegations sufficient to support the conclusion that

any Defendant knew that any of the allegedly false statements were inaccurate.  Indeed,

Plaintiffs' only support for their contention that any of the statements identified in the Complaint

were inaccurate or misleading is the fact that Advanta's stock price declined at some point after

the statements were made.  Such after-the-fact developments are completely insufficient to

support a finding that a statement was made with the required prior knowledge of its falsity, as is

required to maintain a claim for breach of ERISA's "duty not to mislead."

### 2.  Defendants' Alleged Misstatements Were Not Made in a Fiduciary Capacity and Are Not Actionable Under ERISA.

Even if Plaintiffs had complied with their responsibilities under *Twombly*, *Iqbal* and Rule 9(b), their claim fails because none of Defendants' alleged misstatements were actionable fiduciary statements under ERISA.

As the Supreme Court held in *Pegram v. Herdrich*, 530 U.S. 211 (2000), "[i]n every case charging breach of ERISA fiduciary duty, … the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Id.* at 226.  Accordingly, "[t]o recover for…statements under ERISA, as opposed to the securities laws, [a plaintiff] must demonstrate that the representations were made in a fiduciary capacity." *Kirschbaum*, 526 F.3d at 256.

Statements are only made in a fiduciary capacity where they are "intentionally connected to statements regarding a plan's benefits." *In re Bausch & Lomb Inc. ERISA Litig.*, No. 06-6297, 2008 WL 5234281, at *7 (W.D.N.Y. Dec. 12, 2008) (citations omitted); *accord Varity v. Howe*, 516 U.S. 489, 505 (1996) (holding that statements were made in a fiduciary capacity only because "Varity intentionally connected its statements about Massey Combines' financial health to statements it made about the future of benefits, so that its intended communication about the security of benefits was rendered materially misleading").  Accordingly, "emerging caselaw makes clear that those who prepare SEC filings do not become ERISA fiduciaries through those acts." *In re Lehman Bros.*, at 300 (quoting *In re Citigroup ERISA Litig.,* 2009 WL 2762708, at *23); *accord Kirschbaum*, at 257 (holding that statements contained in defendant's SEC filings were not fiduciary statements even though filings were incorporated by reference into plan

documents); *In re Citigroup*, at *23 (statements in SEC filings not actionable because "they were…*corporate* communications from an employer to its employees, not ERISA communications from a fiduciary to participants"); *In re Bausch & Lomb Inc. ERISA Litig.*, at *7 ("[C]ourts have dismissed ERISA claims alleging breaches of fiduciary duty to disclose in the employer stock context where the challenged statements consisted of SEC filings and statements made to the market.").

Here, each of the allegedly misleading statements that Plaintiffs identify in their Complaint is either a forward-looking statement made by officers of Advanta in communicating with investors generally, or a similar statement contained in the company's SEC filings.  *See* Compl., ¶¶ 105-106, 109, 113, 116 (statements by Advanta's CEO), 128 (statement in Form 8-K filed in November 2007); 130 (Form 10-K filed with SEC in January 2008), 140 (Form 10-Q filed in July 2008).[20]  For this reason, Plaintiffs' misrepresentation claim should be dismissed.

## VI.   THE ALLEGED "CONFLICTS OF INTEREST" ARE INSUFFICIENT TO SUPPORT A CLAIM FOR BREACH OF ERISA'S FIDUCIARY "DUTY OF LOYALTY" (COUNT II).

Count II of Plaintiffs' Complaint asserts that Defendants breached their "duty to avoid conflicts of interest."  According to Plaintiffs, this duty, while not among those duties explicitly listed in § 404 of ERISA, is part of ERISA's "duty of loyalty," which requires that fiduciaries

---

[20]     Further confirming that the misstatements identified in the Complaint were not made in a fiduciary capacity is that the individuals or entities making the statements were not those charged by the Savings Plan with communicating with Plan participants.  Under the Savings Plan, the Administration Committee is given the responsibility for the "distribution to Members and beneficiaries of all…information required of the Plan." 2001 Plan Document (Ex. D), § 2.4.2.  Conversely, the Savings Plan limits the authority of the Director Defendants to "appointing and removing the Committee and the Trustee and for modifying or terminating the Plan and the Trust Agreement." *Id.*, § 2.5.1.

discharge their obligations "solely in the interest of the participants and beneficiaries" and "for the "exclusive purpose" of providing benefits to participants. Compl., ¶ 229. Plaintiffs' claim fails because they have not identified any specific fiduciary act that any Defendant took due to the theoretical conflict of interest identified in the Complaint.

Plaintiffs allege nothing more than that the compensation of certain Defendants was "significantly tied to the price of Advanta stock" and that therefore "at least certain of the Defendants had incentive to keep the Plans' heavily invested in Advanta stock on a regular, ongoing basis." Compl. ¶ 201. Courts have consistently held that such allegations are insufficient to state a claim a breach of duty of loyalty. *See, e.g., Johnson v. Radian Group, Inc.*, 2010 WL 2136562, at *14 (E.D. Pa. May 26, 2010) (rejecting claim based on allegations "that defendants had a conflict of interest because their salaries and incentive compensation were based on Radian's perceived success"); *In re Citigroup*, , at *26 ("[P]laintiffs claim that defendants' compensation was 'tied to the performance of Citigroup stock.' That is not enough to plead an actionable conflict of interest."); *Harris v. Amgen, Inc.*, No. 07-5442, 2010 WL 744123 (C.D. Cal. Mar. 2, 1010) (same); *In re Polaroid ERISA Litig.*, at 479 (same).

A plaintiff cannot establish a claim for breach of the duty of loyalty merely by identifying a *potential* conflict of interest. As one court has stated, "[n]o case of which the court is aware has held that ERISA fiduciaries breach their duty of loyalty simply 'for placing themselves in a position' where they might act disloyally. … The duty of loyalty requires fiduciaries to refrain from actual disloyal conduct, not simply running the risk that such behavior will occur." *See In re Mckesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 835 (N.D. Cal. 2005); *see also Pegram v. Herdrich,* 530 U.S. at 225, ("[u]nder ERISA ... a fiduciary may have financial

interests adverse to beneficiaries"); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d at 421 n.6 ("Mere officer or director status does not create an imputed breach of the duty of loyalty simply because an officer or director has an understandable interest in positive performance of company stock."); *In re Merck & Co., Inc. Securities Derivative and ERISA Litig.*, No. 05-2369, 2006 WL 2050577, at *11 (D.N.J. July 11, 2006) (holding that "the inherent risk of dual loyalties…is not...a separate and distinct ERISA duty").

Rather, in order to plead a claim for breach of the duty of loyalty, a plaintiff must identify a specific act or omission taken in a fiduciary capacity as a result of an alleged conflict of interest, as well as resulting harm to the plan. *See In re Polaroid ERISA Litig.*, 362 F.Supp.2d 461, 479 (S.D.N.Y. 2005) (rejecting conflict of interest claim because "Plaintiffs fail to allege that the conflict of interest impeded [the fiduciaries'] prudent decision-making with respect to the Plan and Plan participants"); *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 897–98 (S.D. Tex. 2004) (granting motion to dismiss breach of loyalty claim on the basis that "plaintiff has failed to state a conflict of interest claim because she has failed to allege an identifiable conflict that either benefited the defendants or caused an identifiable harm to the Plan"); *In re WorldCom, Inc.*, 263 F.Supp.2d 745 (S.D.N.Y. 2003) ("Plaintiffs' allegations that Ebbers's holding of WorldCom stock and participation in its compensation program created a conflict of interest are insufficient by themselves to state a claim under ERISA.  Plaintiffs do not allege that Ebbers's personal investments caused him to take or fail to take any actions detrimental to the Plan *while* he was wearing his 'fiduciary hat.'").

While Plaintiffs allege that a number of Defendants sold some of their individual shares of stock during the class period, these actions do not suggest that any of the Defendants' actions

with respect to the Plans were motivated by their own self-interest.  Plaintiffs only allege that two of the thirteen Defendants sold shares during the class period.  Compl., ¶¶ 200-207. Significantly, Plaintiffs do not contend that Advanta's CEO, Dennis Alter, or any of the other ten Defendants, sold any shares during the class period.  *Id.*  Further, Plaintiffs have alleged no harm to Plan participants resulting from the Defendants' alleged sales.

For these reasons, Plaintiffs' allegations are thus entirely insufficient to establish a claim of breach of the duty of loyalty.

## VII.   PLAINTIFFS' FAILURE TO MONITOR CLAIM (COUNT III) SHOULD BE DISMISSED

### A.   Plaintiffs' Claim Fails Because It Is Derivative of Their Meritless Prudence Claim.

Count III of the Complaint asserts that the Director Defendants are liable for failing to monitor certain of the Plans' fiduciaries in their exercise of their fiduciary duties.  Compl., ¶¶ 236-239.  According to the Complaint, "the Director Defendants knew or should have known that the fiduciaries they were responsible for monitoring were: (i) continuing to invest the assets of the Plans in Advanta stock when it was no longer prudent to do so; and (ii) imprudently allowing the Plans to continue offering Advanta stock as an investment alternative." *Id.*, ¶ 238. Thus, this claim is predicated on a finding that Advanta stock was an imprudent investment.

Because, as argued above, no Defendant breached the duty of prudence with respect to offering the Advanta stock under either the ESOP or the Savings Plan, Plaintiffs' failure to monitor claim must fail as well.  *Accord In re Bausch & Lomb Inc. ERISA Litig.*, 2008 WL 5234281, at *10 ("Because the plaintiffs' Complaint fails to state a claim for breach of fiduciary duty by any of the Plan's fiduciaries, the plaintiffs' claims for failing to adequately monitor these

fiduciaries must also be dismissed."); *In re Radioshack Corp. "ERISA" Litig.*, 547 F. Supp. 2d 606, 616 (N.D. Tex. 2008) (dismissing failure to monitor claim on the basis that such claim was "derivative" of dismissed prudence and misrepresentation claims).

### B. Plaintiffs Do Not Identify Any Circumstances That Should Have Led the Director Defendants To Exercise Their Limited Fiduciary Duties Under the Plans.

According to regulations issued by the Department of Labor, the duty to monitor requires that, "[a]t reasonable intervals the performance of ... fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfied the needs of the plan." 29 C.F.R. § 2509.75-8.  Plaintiffs, however, seek to transform this limited fiduciary obligation into a general duty of prudence.

Plaintiffs state that the "duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries."  Compl., ¶ 236.  With respect to the latter component of this alleged duty, "[c]ourts have held that a monitoring claim based on a failure to periodically review appointed fiduciaries must allege facts relating to the periodic review process."  *In re Washington Mut., Inc. Securities, Derivative & ERISA Litig.*, No. 09-md-1919 MJP, 2009 WL 3246994, at *11 (W.D. Wash. Oct. 5, 2009) (citation omitted).  Here, as in *Washington Mutual*, "Plaintiffs include no allegations of fact about the Board's procedures with respect to appointment and retention and merely argue that this duty must have been breached by the precipitous fall in [Advanta's] stock price."  *Id.*  Such conclusory allegations are insufficient to state a valid claim.

Plaintiffs' contention with respect to the Director Defendants' alleged duty to provide information appears to be that the Director Defendants were required to provide the Committee Defendants with the alleged non-public information that Plaintiffs contend caused the Director Defendants to know that investment in Advanta stock was imprudent and to ensure that Committee Defendants discontinued the Plans' investments in Advanta stock.  This alleged duty is clearly inconsistent with ERISA's general fiduciary duty principles.  Indeed, to adopt the interpretation of the scope of the duty to monitor advocated by Plaintiffs would render the duty to monitor indistinguishable from the more stringent duty of prudence imposed on the fiduciaries charged with the actual duty to administer a plan.

Just as a managing fiduciary does not have a general obligation to "give investment advice" or "opine on a stock's condition," *Edgar*, at 350, a monitoring fiduciary cannot be required to provide such information to managing fiduciaries.  There is no basis for distinguishing between the information that plan participants are entitled to possess in order to exercise control over their own plan accounts and the information that a plan's managing fiduciaries need in order to carry out their duties with respect to a plan's investments in employer stock.  Accordingly, Plaintiffs have failed to state a claim for breach of fiduciary duty based on their allegation that the Director Defendants were subject to a generalized duty to provide information to the Committee Defendants concerning Advanta's alleged "business problems" and that would lead the Committee Defendants to "appreciate the huge risk" posed by the Plans' participants' investments in Advanta stock.

Additionally, Plaintiffs' proposed duty to provide information to monitored fiduciaries is completely unworkable.  Plaintiffs appear to contend that the duty to monitor required the

Director Defendants to provide the Committee Defendants with material, non-public, "insider" information and to ensure that the Committee Defendants acted upon it. Such a course of action would unquestionably violate the federal securities laws. ERISA's duty of disclosure cannot be interpreted to require fiduciaries to breach their responsibilities under the securities laws. *See Quan v. Computer Sciences Corp.*, 2010 WL 3784702, at *8 n.8; *Edgar*, at 350.

For these reasons, Plaintiffs have failed to state a valid claim against the Director Defendants for breach of ERISA's fiduciary duty to monitor.

## CONCLUSION

For the reasons stated above, all of the claims asserted in Plaintiffs' Consolidated Class Action Complaint should be dismissed with prejudice.

Respectfully submitted,

    s/ J. Ian Downes
Steven B. Feirson
Michael L. Kichline
J. Ian Downes
Sarah L. Wyatt
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104

*Attorneys for All Defendants Other Than John Moore*

    s/ Jeffery A. Dailey
David L. Comerford
Jeffery A. Dailey
Akin Gump Strauss Hauer & Feld LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA  19103

Dated:  October 27, 2010                    *Attorneys for Defendant John Moore*