**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| )<br>)<br>**IN RE ADVANTA CORP. ERISA LITIG.** )<br>)<br>)<br>)<br>)<br>) | **CIVIL ACTION NO.: 2:09-cv-04974-CMR** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................1

II.   STATEMENT OF FACTS ........................................................................4

      A.    THE PLANS ..................................................................................4

            1.    The Structure of the ESOP and the Savings Plans:  The Purpose of
                  the Plans Are To Help Participants Save For Retirement ...........................5

                  a.    ESOP ............................................................................5

                  b.    Savings Plan ................................................................6

      B.    FACTS UNDERLYING THE FIDUCIARY BREACHES ....................................7

      C.    THE COUNTS OF THE COMPLAINT ....................................................11

III.  ARGUMENT ....................................................................................12

      A.    STANDARD OF REVIEW ON A MOTION TO DISMISS ...............................12

      B.    COUNT I STATES A CLAIM FOR BREACH OF THE DUTY TO
            MANAGE PLAN ASSETS PRUDENTLY AND LOYALLY:  THE
            PRESUMPTION OF PRUDENCE DOES NOT APPLY TO
            DEFENDANTS' DECISIONS TO INVEST IN THE COMPANY
            STOCK FUND ................................................................................14

            1.    Plaintiffs Properly Plead The Director Defendants' Fiduciary
                  Status ........................................................................................15

            2.    Defendants Are Not "Immune" From Judicial Scrutiny ...........................16

            3.    Defendants Are Not Entitled To a Presumption Of Prudence
                  Because The Plans Did Not Mandate Investment In Company
                  Stock ..........................................................................................20

                  a.    The plain language of the Plans confirms that Defendants
                        had discretion regarding investing in Advanta Stock ...................20

                  b.    Defendants' conduct should be reviewed *de novo* ........................22

            4.    At This Preliminary Stage, Determining Whether The Plans Are
                  ESOPs or Determining Whether Defendants Are Entitled To The
                  *Moench* Presumption Is Premature .........................................................25

            5.    Even If the *Moench* Presumption Applies, Plaintiffs Have
                  Sufficiently Rebutted The Presumption ....................................................27

a.   The *Moench* presumption must be viewed within the context of ERISA's primary purpose.............................................27

b.   The Complaint's specific factual allegations overcome the *Moench* presumption..................................................................30

C.   DEFENDANTS ARE NOT ENTITLED TO THE PROTECTION OF ERISA SECTION 404(c)...................................................................35

1.   ERISA Section 404(c) is Not a Defense to Plaintiffs' ERISA Claims ...........................................................................36

2.   Even if the ERISA Section 404(c) Defense Did Apply, it is Not a Ground for Dismissal Under Rule 12(b)(6)...............................38

3.   Even if the ERISA Section 404(c) Defense Applied Over Plaintiffs' Claims, Defendants Are Not Entitled to Invoke It..................39

D.   COUNT I STATES A CLAIM AGAINST DEFENDANTS FOR THEIR FAILURE TO ENSURE THAN PLAN PARTICIPANTS HAD COMPLETE AND ACCURATE INFORMATION REGARDING ADVANTA STOCK..................................................................................41

1.   Defendants Have a Fiduciary Duty to Ensure that Plan Participants Have Accurate and Complete Information ................................41

2.   Defendants' "Loss Causation" Argument is Inapplicable to this ERISA Action ...............................................................45

3.   Plaintiffs' Claims Are Not Subject to the Pleading Requirements of FED. R. CIV. P. 9(b) ...................................................49

4.   Defendants Alleged Misstatements Were Made in a Fiduciary Capacity ....................................................................50

E.   PLAINTIFFS HAVE PROPERLY ALLEGED A BREACH OF THE DUTY OF LOYALTY ............................................................51

F.   THE MONITORING COUNT STATES A CLAIM..........................................53

IV.   CONCLUSION....................................................................57

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Acosta v. Pacific Enter.*,
   950 F.2d 611 (9th Cir. 1991) ................................................................................28

*Allison v. Bank One-Denver*,
   289 F.3d 1223 (10th Cir. 2002) ............................................................................39

*Almonor v. BankAtlantic Bancorp, Inc. et al.*,
   No. 07-CV-61862, slip op. (S.D. Fla. July 15, 2009) ..........................................23

*Alvidres v. Countrywide Fin. Corp.*,
   No. 07-CV-05810, 2008 U.S. Dist. LEXIS 27431 (C.D. Cal. Mar. 18, 2008) ......32

*Arizona Public Service Co. v. U.S. E.P.A.*,
   562 F.3d 1116 (10th Cir. 2009) ............................................................................37

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ..........................................................................................49

*Banks v. Healthways, Inc.*,
   No. 08-CV-0734, 2009 WL 211137 (M.D. Tenn. Jan. 28, 2009) ..........................26

*Beesley v. Int'l Paper Co.*,
   No. 06-CV-0703, 2009 WL 260782 (S.D. Ill. Feb. 4, 2009) ................................49

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................12, 13, 49

*Bennett v. Conrail Matched Savings Plan Admin. Comm.*,
   168 F.3d 671 (3d Cir. 1999) ..................................................................................20

*Bixler v. Central Penn. Teamsters Health & Welfare Fund*,
   12 F.3d 1292 (3d Cir. 1993) ..................................................................................41

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ................................................................................49

*Brown v. Medtronic, Inc.*,
   No. 09-CV-2524, 2010 WL 5059594 (8th Cir. Dec 13, 2010) ..............................46

*Buck v. Hampton Twp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006) ..................................................................................13

*Bunch v. W.R. Grace & Co.*,
    555 F.3d 1 (1st Cir. 2009) ................................................................................47

*Central States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc.*,
    472 U.S. 559 (1985) ................................................................................17, 20

*Chevron U.S.A., Inc. v. NRDC*,
    467 U.S. 837 (1984) ................................................................................37

*Concha v. London*,
    62 F.3d 1493 (9th Cir. 1995) ................................................................49

*Cress v. Wilson*,
    No. 06-CV-2717, 2007 WL 1686687 (S.D.N.Y. June 6, 2007) ...........54

*Dann v. Lincoln Nat'l Corp.*,
    708 F. Supp. 2d 481 (E.D. Pa. 2010) ................................27, 34, 44, 50

*DiFelice v. U.S. Airways, Inc.*,
    497 F.3d 410 (4th Cir. 2007) ................................................................3, 36

*Donovan v. Bierwirth*,
    680 F.2d 263 (2d Cir. 1982) ................................................14, 28, 51

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................................46

*Edgar v. Avaya*,
    503 F.3d 340 (3d Cir. 2007) ................................................................ passim

*Fischer v. Philadelphia Elec. Co.*,
    994 F.2d 130 (3d Cir. 1993) ................................................................44

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ................................................................14

*Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc.*,
    93 F. 3d (3d Cir. 1996) ................................................................41, 54

*Graden v. Conexant Sys., Inc.*,
    574 F. Supp. 2d 456 (D.N.J. 2008) ................................................23, 24

*Graden v. Conexant Systems, Inc.*,
    496 F.3d 291 (3d Cir. 2007) ................................................................47

*Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000) ................................................................................17

*Harris v. Koenig,*
    602 F. Supp. 2d 39 (D.D.C. 2009) ........................................................46

*Hecker v. Deere & Co.,*
    556 F.3d 575 (7th Cir. 2009) ...........................................................38

*Hecker v. Deere & Co.,*
    569 F.3d 708 (7th Cir. 2009) ...........................................................38

*Hedges v. U.S.,*
    404 F.3d 744 (3d Cir. 2005)...........................................................13

*Hill v. BellSouth Corp.,*
    313 F. Supp. 2d 1361 (N.D. Ga. 2004) ...............................................51

*Hill v. The Tribune Co.,*
    No. 05-CV-2602, 2006 WL 2861016 (N.D. Ill. Sept.29, 2006) ........................50

*Howell v. Motorola, Inc.,*
    337 F. Supp. 2d 1079 (N.D. Ill. 2004) ...............................................55

*In re ADC Telecomms., Inc.,*
    No. 03-CV-2984, 2004 WL 1683144 (D. Minn. July 26, 2004) ........................32

*In re AEP ERISA Litig.,*
    327 F. Supp. 2d 817 (S.D. Ohio 2004) ..........................................25, 39, 45

*In re AOL Time Warner, Inc., Sec. and "ERISA" Litig.,*
    No. 02-CV-8853, 2005 WL 563166 (S.D.N.Y. March 10, 2005) .........................16

*In re Blais,*
    No. 93-CV-3219, 2004 Bankr. LEXIS 508 (Bankr. S.D. Fla. 2004)......................25

*In re Cardinal Health, Inc. ERISA Litig.,*
    424 F. Supp. 2d 1002 (S.D. Ohio 2005) .........................................33, 46

*In re Diebold ERISA Litig.,*
    No. 06-CV-0170, 2008 WL 2225712 (N.D. Ohio May 28, 2008) ....................27, 46

*In re Dynegy, Inc. ERISA Litig.,*
    309 F. Supp. 2d 861 (S.D. Tex. 2004) ...............................................36

*In re Enron Corp. Sec., Deriv. & ERISA Litig.,*
    284 F. Supp. 2d 511 (S.D. Tex. 2003) ........................................... passim

*In re Ferro Corp. ERISA Litig.,*
    422 F. Supp. 2d 850 (N.D. Ohio 2006)..........................................32, 39

*In re Ferro Corp. ERISA Litig.*,
    442 F. Supp. 2d 850 (N.D. Ohio 2006)....................................................................47

*In re First American Corp. ERISA Litig.*,
    No. 07-CV-1357, 2009 WL 928294 (C.D. Cal. Apr. 2, 2009) ................................47

*In re Ford Motor Co. ERISA Litig.*,
    590 F. Supp. 2d 883 (E.D. Mich. 2008)........................................................30, 32, 33

*In re Fremont General Corp. Litig.*,
    No. 07-CV-02693, slip op. (C.D. Cal. May 30, 2008)...........................................32

*In re Goodyear Tire & Rubber Co. ERISA Litig.*,
    438 F. Supp. 2d 783 (N.D. Ohio 2006)....................................................................47

*In re Honeywell*,
    No. 03-CV-1214, 2004 WL 3245931 (D.N.J. Sept. 14, 2004) ("*Honeywell*")......32, 48, 50, 54

*In re JDS Uniphase Corp. ERISA Litig.*,
    No. 03-CV-4743, 2005 WL 1662131 (N.D. Cal. July 14, 2005)......................47, 55

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
    No. 05-CV-2369, 2006 WL 2050577 (D.N.J. July 11, 2006).............................23, 42, 50, 54

*In re Merck & Co., Inc. Securities, Derivative & Erisa Litig.*
    ("*Merck Vioxx*"), Nos. 05-CV-1151, 05-CV-2369, 2009 WL 790452 (D.N.J. Mar. 23, 2009) ....................................................................................................46, 50

*In re Merck & Co., Inc. Vytorin ERISA Litig.*
    ("*Merck Vytorin*"), No. 08-CV-1974, 2009 WL 2834792 (D.N.J. Sept. 1, 2009)..................45

*In re Morgan Stanley ERISA, Litig.*,
    696 F. Supp. 2d 345 (S.D.N.Y. 2009)......................................................................16

*In re Mut. Funds Inv. Litig.*,
    No. 04-CV-949, 2005 WL 3692756 (D. Md. Dec. 6, 2005)....................................39

*In re Mutual Funds Invest. Litig.*,
    403 F. Supp. 2d 434 (D. Md. 2005)..........................................................................32

*In re Pfizer Inc. ERISA Litig.*,
    No. 04-CV-10071, 2009 WL 749545 (S.D.N.Y. Mar. 20, 2009) ("*Pfizer*") .................. passim

*In re Polaroid ERISA Litig.*
    240 F.R.D. 65 (S.D.N.Y. 2006) .........................................................................36, 40

*In re Polaroid ERISA Litig.*,
    362 F. Supp. 2d 461 (S.D.N.Y. 2005)...............................................................27, 49, 54

*In re Qwest Savings and Investment Plan ERISA Litig.*,
  No. 02-RB-464, slip op. (D. Colo. Sept. 24, 2004) ("*Qwest*") ...............................................16

*In re Regions Morgan Keegan ERISA Litig.*,
  692 F. Supp. 2d 944 (W.D. Tenn. 2010)...............................................................................15

*In re Schering Plough Corp. ERISA Litig.*,
  420 F.3d 231 (3d Cir. 2005)............................................................................................22, 23

*In re Schering-Plough Corp. ERISA Litig.*,
  No. 03-CV-1204, 2007 WL 2374989 (D.N.J. Aug. 15, 2007) ...............................................15

*In re Schering-Plough ERISA Litig.*,
  No. 08-CV-1432, 2010 WL 2667414 (D.N.J. June 29, 2010)....................................32, 41, 54

*In re Sears, Roebuck & Co. ERISA Litig.*,
  No. 02-CV-8324, 2004 WL 407007 (N.D. Ill. Mar. 3, 2004)................................................53

*In re Sprint ERISA Litig.*,
  388 F. Supp. 2d 1207 (D. Kan. 2004) ("*Sprint*")....................................................32, 36, 38, 55

*In re Syncor ERISA Litig.*,
  351 F. Supp. 2d 970 (C.D. Cal. 2004) ....................................................................32, 54, 55

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ...........................................................................................32

*In re Tyco Intern. Ltd. Multidistrict Litig.*,
  606 F. Supp. 2d 166 (D.N.H. 2009)....................................................................................36

*In re Tyco Intern., Ltd. Multidistrict Litig.*,
  No. 02-MDL-1335, 2004 WL 2903889 (D.N.H. Dec. 2, 2004) ......................................39, 40

*In re Unisys Sav. Plan Litig.*,
  74 F.3d 420 (3d Cir. 1996)........................................................................................ passim

*In re Westar Energy, Inc.*,
  No. 03-CV-4032, 2005 WL 2403832 (D. Kan. Sept. 29, 2005).............................................53

*In re WorldCom, Inc. ERISA Litig.*,
  263 F. Supp. 2d 745 (S.D.N.Y. 2003)........................................................................ passim

*In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*,
  312 F. Supp. 2d 1165 (D. Minn. 2004).........................................................................27, 50

*In re YRC Worldwide, Inc. ERISA Litig.*,
  No. 09-CV-2593, 2010 WL 4386903 (D. Kan. Oct. 29, 2010) .............................................52

*Kanawi v. Bechtel Corp.*,
    590 F. Supp. 2d 1213 (N.D. Cal. 2008) ...................................................36

*Kanawi v. Bechtel Corp.*,
    No. 06-CV-5566, 2007 WL 5787490 (N.D. Cal. May 15, 2007)...........................39

*Kirschbaum v. Reliant Energy, Inc.*,
    526 F.3d 243 (5th Cir. 2008) ...................................................32

*Kuper v. Iovenko*,
    66 F.3d 1447 (6th Cir. 1995) ...................................................25

*LaLonde v. Textron, Inc.*,
    369 F.3d 1 (1st Cir. 2004).....................................................32

*Langbecker v. Elec. Data Sys. Corp.*,
    476 F.3d 299 (5th Cir. 2007) (Reavley, J., dissenting)...........................37

*Loomis v. Exelon Corp.*,
    No. 06-CV-4900, 2009 WL 4667092 (N.D. Ill. Dec. 9, 2009)...............................39

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985).......................................................29

*McMahon v. McDowell*,
    794 F.2d 100 (3d Cir. 1986), *cert. denied* 459 U.S. 1069 (1982).........................51

*Moench v. Robertson*,
    62 F.3d 553 (3d Cir. 1995)................................................. passim

*Morrison v. MoneyGram Int'l. Inc.*,
    607 F. Supp. 2d 1033 (D. Minn. 2009).......................................32

*Page v. Impac Mortg. Holdings, Inc.*,
    No. 07-CV-1447, 2009 WL 890722 (C.D. Cal. Mar. 31, 2009)......................36, 39

*Patten v. Northern Trust Co.*,
    No. 08-CV-5912, 2010 WL 894050 (N.D. Ill. March 9, 2010)........................50

*Pietrangelo v. NUI Corp.*,
    No. 04-CV-3223, 2005 WL 1703200 (D.N.J. July 18, 2005)....................... passim

*Pinkerton v. Roche Holdings Ltd.*,
    292 F.3d 361 (3d Cir. 2002)..................................................14

*Rankin v. Rots*,
    278 F. Supp. 2d 853 (E.D. Mich. 2003).......................................39, 54

*Shanehchian v. Macy's, Inc.*,
  No. 07-CV-00828, 2009 WL 2524562 (S.D. Ohio Aug. 13, 2009) ..........................30, 33, 44

*Shirk v. Fifth Third Bancorp*,
  No. 05-CV-49, 2007 WL 1100429 (S.D. Ohio Apr. 10, 2007) ...................................... passim

*Smith v. Aon Corp.*,
  No. 04-CV-6875, 2006 WL 1006052 (N.D. Ill. April 12, 2006)...............................47, 50, 52

*Smith v. Delta Airlines, Inc.*,
  422 F. Supp. 2d 1310 (N.D. Ga. 2006) ...................................................................................32

*Stein v. Smith*,
  270 F. Supp. 2d 157 (D. Mass. 2003) ....................................................................................54

*Summers v. State Street*,
  453 F.3d 404 (7th Cir. 2006) ..................................................................................................35

*Swierkiewicz v. Sorema, N.A.*,
  534 U.S. 506 (2002)..........................................................................................................12, 25

*Taylor v. KeyCorp, et al.*,
  678 F. Supp. 2d 633 (N.D. Ohio 2009)..............................................................................27, 32

*Tussey v. ABB, Inc.*,
  No. 06-CV-4305, 2008 WL 379666 (W.D. Mo. Feb. 11, 2008) ...........................................36

*Urban v. Comcast Corp.*,
  No. 08-CV-773, 2008 WL 4739519 (E.D. Pa. Oct. 28, 2008) ........................................12, 23

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996).........................................................................................................2, 17, 29

*Woods v. Southern Co.*,
  396 F. Supp. 2d 1351 (N.D. Ga. 2005) .............................................................................39, 52

**FEDERAL STATUTES**

29 U.S.C. 1104(c)(1)..................................................................................................................39

29 U.S.C. § 1104(a)(1)(B) ........................................................................................................51

29 U.S.C. § 1104(a)(1)(B) ........................................................................................................14

29 U.S.C. § 1104(c) ..................................................................................................................35

29 U.S.C. § 1107(a)-(b) ............................................................................................................28

29 U.S.C. § 1001(b)..................................................................................................................35

29 U.S.C. § 1104(a)(1)(B) ...............................................................................................28

29 U.S.C. § 1104(a)(1)(D) ..........................................................................................20, 30

29 U.S.C. § 1104(a) ........................................................................................................24

29 U.S.C. § 1104(b)(1)(B) ..............................................................................................35

29 U.S.C. § 1104(c)(1) ..............................................................................................37, 39

29 U.S.C. § 1104(c)(1)(B) ...............................................................................................36

29 U.S.C. § 1109(a) .........................................................................................................11

29 U.S.C. § 1132(a)(2)................................................................................................11, 29

# I.    INTRODUCTION

The bleak state of state of affairs of Advanta Corp. ("Advanta" or the "Company") at the beginning of this year was aptly summarized as follows:

> Bankrupt Advanta Corp. is in liquidation mode, and thousands of mostly older investors are grappling with painful losses.  The Montgomery County credit card company this month asked for court permission to abandon contracts for expensive suites at Citizens Bank Park and Lincoln Financial Field.  The firm even asked if it could sell office equipment, cars -  possibly including two limos, two early 1990s Mercedes-Benz sedans, and a 1997 Porsche 911 Carrera – and other items it no longer needs, now that chief executive officer Denis Alter has given up hopes of finding a new business line for Advanta.

*See* Harold Brubaker, *This Economy: Advanta's Investors Dealing With Losses*, *Philly.Com*, January 31, 2010, at 1. This harsh reality arose from reckless banking practices and the willful blindness of executives who drove the Company into bankruptcy on November 8, 2009.  Among other things, during the Class Period, Advanta's customer default rate was substantially higher than the industry average due to the Company's abject failure to verify its customers' ability to pay, along with the Company's practice of issuing credit cards to small business owners without verifying income – thus making the Company's credit receivables excessively risky.  *See* Consolidated Class Action Complaint ("Complaint"),[1] ¶ 8.  The Federal Deposit Insurance Company ("FDIC") determined Advanta's banking practices were unsafe, unsound, unfair, deceptive and illegal.  Complaint ¶ 99 (citing *In re Advanta Bank Corp.*, Nos. FDIC-08-259b, 08-403k, Cease and Desist Order, (FDIC June 30, 2009)).

Clearly, Advanta's predicament was not the result of an "unprecedented and unforeseeable economic recession" as Defendants boldly argue.  *See* Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint

---

[1]    All capitalized and undefined terms used herein shall have the same meanings ascribed to them in the Complaint.

("Defs. Mem.") at 4.   Rather, it was ill-conceived actions by Advanta and its officers and directors, who are Defendants in this case, that led to Advanta's filing for bankruptcy. Unfortunately, Defendants did not gamble with just the Company's fortunes through their reckless behavior; they risked the Company's employees' retirement savings that were invested in Advanta stock within the Employee Stock Ownership Plan ("ESOP") and the Advanta Corp. Employee Savings Plan ("Savings Plan") (collectively, the "Plan" or "Plans").   As a result, Advanta's employees' retirement savings were decimated.   Now, the Defendant-fiduciaries seek to cast blame elsewhere and point to everyone and everything else, including the economy.[2] Defendant's arguments are as flawed as their behavior during the class period.   As set forth in Plaintiffs' Complaint, Defendants' actions during the Class Period fall far short of satisfying their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA").

Emblematic of Defendants' efforts to evade liability is their argument that the ESOP did not afford them discretion with respect to investments in the Company stock, and as such, they are immune from judicial scrutiny.   *See* Defs. Mem. at 3, 34-35.   This is a preposterous notion directly contrary to ERISA.   Under section 404(a)(1) of ERISA, *every* fiduciary of a retirement plan must exercise his or her overarching duty of care regardless of whether the plan requires investment in a company's equity.   *Edgar v. Avaya*, 503 F.3d 340, 346 (3d Cir. 2007).   As the Third Circuit made clear in *Avaya*, "Despite the special status of ESOPs … ESOP fiduciaries ***are***

---

[2]      As fiduciaries owing the highest duties to Plan participants, even a catastrophic once-in-a-lifetime financial crisis cannot excuse Defendants from taking appropriate action to protect the Plan participants.   As one Court sagely remarked about a trustee's responsibilities during the great depression, "current economic depression does not render the trustee immune from liability in the event of negligence resulting in loss to the beneficiary, since the existence of depressions, which tend to create stagnant or subnormal market conditions, do not result in the creation of legal moratoriums in so far as the due performance of affirmative duties by persons acting in a fiduciary capacity are concerned."   *Hatfield v. First Nat. Bank of Danville*, 317 Ill. App. 169 (Ill. App. 1942).   This is persuasive authority as fiduciary duties under ERISA derive from the law of trusts.   *Varity Corp. v. Howe*, 516 U.S. 489, 486, 496 (1996).

***still required*** to act in accordance with the duties of loyalty and care that apply to fiduciaries of typical ERISA plans." *Id.* (emphasis added). Thus, the instant Defendants were required to take action to protect the Plans and their participants from the losses incurred through the imprudent investment in Advanta stock. Moreover, Defendants' assertion that they were powerless to save the Plans from losses is mistaken because the ESOP provided discretion to Defendants regarding investment in Advanta stock. For example, the Director Defendants had the ultimate "discretion whether and in what amount contributions [were to] be made" in the form of Company stock. Complaint ¶ 91. As set forth in the well-pled allegations of the Complaint regarding the Company's dire circumstances during the Class Period, Defendants should not have continued to invest the Plans' assets in Advanta stock during the Class Period.

Defendants similarly had discretion with respect to directing investment of the Savings Plan's assets. In particular, the Administrative Committee[3] was specifically charged with the power of "recommending appropriate action if … the investment strategy employed by any of the funds is no longer appropriate for the investment option." Complaint ¶ 86. Disregarding this directive, Defendants argue that it was the participants, not Defendants, who controlled the investment of their plan accounts. This attempt by Defendants to shirk their responsibilities should not be countenanced. After all, Defendants had the ultimate responsibility to select and maintain prudent investment options for the Plans at all times. *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007) ("a fiduciary must initially determine, and continue to monitor, the prudence of each investment option available to plan participants").

Defendants also argue that based on the language of the Plans they are at least afforded a presumption of prudence under *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995) regarding their

---

[3] The Administrative Committee refers to the "Advanta Corp. Employee Savings Plan Administration Committee."

continued investment of the Plans' assets in Company stock during the Class Period. Under both the law and the facts here, Defendants are not entitled to a presumption that the Plans' investment in Advanta stock was prudent. As described herein, the Plans did not mandate that Advanta stock be an investment option which would entitle Defendants to a presumption of prudence. Moreover, even if Defendants were entitled to this presumption, the application of this presumption is an evidentiary issue that should not be applied on a motion to dismiss. Further, even if the presumption were applied at this stage, Plaintiffs' allegations sufficiently overcome the presumption, given: (1) the Plans' primary purpose as a retirement savings vehicle for participants; and (2) the sea-change in the financial health and prospects of the Company – from a viable company to one that was spiraling into bankruptcy – making it an overly risky and imprudent Plan investment.

Accordingly, Plaintiffs have stated a claim under Count One of the Complaint for failure to prudently and loyally manage the Plans' assets. Defendants' other arguments challenging the sufficiency of the allegations of the Complaint are equally without merit. Plaintiffs have adequately pled in Count Two that Defendants breached their duty to avoid conflicts of interest and in Count Three that the Director Defendants failed to adequately monitor their appointees. Since Defendants' arguments lack merit and cannot defeat the well-pled allegations of the Complaint, Defendants' motion to dismiss should be denied in its entirety

## II.      STATEMENT OF FACTS

### A.      THE PLANS

The ESOP and Savings Plan are "employee pension benefit plans" as defined by ERISA § 3(2)(A). Complaint ¶ 34. Inherent in their formation, the purpose of the ESOP and Savings Plans are to help employees save for retirement and provide income during employees' retirement years. Complaint ¶ 3. Throughout the Class Period, the assets of the Plans were held

"in trust" by the Defendants who had control over the management of the Plans and their assets, and exercised discretion over the selection of investment options made available under the Plans. Complaint ¶ 45, 75-76.

More specifically, per the Plan documents, both the Savings Plan and the ESOP were administered by the Administrative Committee.  Complaint ¶ 22.  Its members were appointed by the Board and during the Class Period consisted of Defendants Philip Browne, Paul Jeffers, David Weinstock, Michael Coco, John Moore, Jodi Plavner, Cathy Wilson, and Marci Wilf. Complaint ¶¶ 24-32, 78.  As fiduciaries, the Administrative Committee members were required to manage and administer the Plans and their investments solely in the interest of the Plans' participants.  Complaint ¶ 73.

1.   **The Structure of the ESOP and the Savings Plan: The Purpose of the Plans Is To Help Participants Save For Retirement**

a.   **The ESOP**

In 1998, Advanta began investing in its own stock securities *for the benefit of Plan participants* through the ESOP.  Complaint ¶ 35, 36.  The Board of Directors ("Board")[4] retained discretion to determine the amount, if any, of contributions and directed the purchase of Advanta stock within the ESOP funded entirely by the Company.  Complaint ¶ 44, 91.  *See* 2006 ESOP SPD, p. 6, attached as Exhibit B to Defs. Mem. (stating "Inasmuch as contributions are generally made from the Company's profits, and the Company's Board of Directors has the discretion whether and in what amount contributions shall be made, there is no set amount which must be contributed each year by the Company.").   Not only did the Board determine *whether* contributions would be made -- since there was no set amount which had to be made -- the Board

---

[4]      The Board of Directors consists of Defendants Max Botel, Dana Becker Dunn, Ronald Lubner, and William Rosoff.  Complaint ¶¶ 17-21.

also determined if any excess contributions should be made in cash or other marketable obligations.  *See* 1998 ESOP SPD, p. 18-19, attached as Exhibit A to Defs. Mem. (stating that "Additional Employer contributions may be made in cash, stock or marketable obligations of the Employer").  By virtue of the ESOP Plan's language, Advanta "<u>shall have the right at any time, from time to time, to suspend Employer contribution to the Fund</u> pursuant to the [ESOP] [P]lan" and has the right to "<u>complete discontinuance of employer contributions</u>."  *See* 1998 ESOP SPD, pp. 52-53 (emphasis added), attached as Exhibit A to Defs. Mem.  In other words, the plain language of the ESOP absolutely does *not* require contributions be made to purchase Advanta stock.

### b.    The Savings Plan

The overarching purpose of the Savings Plan is to "provide a means for employees to save for retirement" by offering a broad array of investments that allow participants to build their portfolios.  Complaint ¶ 47.  The Savings Plan was funded by participants as well as the Company.[5]  Complaint ¶ 47.  In fact, participants could contribute up to 75% of their eligible compensation in any of the investment selections.  Complaint ¶ 57.

Per the Savings Plan documents, the Defendants, as fiduciaries, were responsible for selecting investment categories for which the participants could choose to invest.  Complaint ¶¶ 50-52, 59, 75-76.  To determine if an option needed to be changed, the investment policy was reviewed annually to ensure it reflected the Plan's objectives and needs of its participants.  Complaint ¶ 50.  One of the investment options chosen by the Defendants − the Company Stock Fund − invested primarily in Advanta stock for the express purpose of "long term capital growth

---

[5]    Advanta matched 50% of each employee's contribution to the Savings Plan up to 5% of eligible compensation until January 1, 2009, at which time Advanta matched 100% of employee contributions, up to 4% of eligible compensation.  Complaint ¶¶ 57 – 58.

and reasonable current income."[6]   Complaint ¶¶ 60, 161.   To obtain this goal of long-term growth, the Savings Plan offered Advanta Class A Common Stock.  This option was terminated in June 2009 at which time Advanta Class B Common Stock became exclusively available until the end of the Class Period.[7]  Complaint ¶ 59.

In order to provide Advanta employees a means of saving for retirement, the Savings Plan's Investment Objectives required Defendants to monitor the investments and, in particular, Advanta stock.   Specifically, *as conceded by Defendants*, the Administrative Committee Company was required to monitor the Stock Fund:

> **for the purpose of recommending levels of Advanta stock for investment or for elimination of Advanta stock as a Plan investment and to ensure Advanta remained a prudent investment option**.

Complaint ¶¶ 52, 86; Defs. Mem. p. 23 (emphasis added).

Despite the fact that the Defendants had the power to liquidate Advanta stock from the Plans' holdings or not purchase Company stock in the first place, Defendants elected to either increase or maintain the Plans' holdings during the Class Period.   In the meanwhile, the fiduciaries themselves sold over $62 million of Advanta stock during the Class Period. Complaint ¶¶ 108, 112, 115, 119, 122, 126.

## B.   FACTS UNDERLYING THE FIDUCIARY BREACHES

The Class Period begins on October 31, 2006.  Months earlier, while Advanta *appeared* to others be a healthy company, Defendants began to sell their shares of Advanta stock.  For instance, Defendant Dennis Alter, Chairman and CEO of Advanta, sold $38.5 million of his

---

[6]    The Company Stock Fund also set-aside a portion of its capital in cash to provide liquidity for Participants' daily transactions.

[7]    Plaintiffs define the Class Period beginning October 31, 2006 through November 8, 2009. Complaint ¶ 62.

stock while Chief Credit Officer, Christopher Carroll ("Carroll") dumped 75% of his holdings. Complaint ¶ 16, 108.  In total, three senior officers at Advanta sold an astonishing $40 million worth of Advanta securities in the months leading up to the start of the Class Period.  This marked the beginning of the flood of the Defendants' selling activity.  Between January and February 2007, four Defendants sold a combined $57 million worth of Advanta Class A and Class B stock.[8]  Complaint ¶¶ 108, 112, 111, 114, 115.  By September of 2007, sales of Advanta stock by Advanta Officers and Directors totaled over $62 million.  Complaint ¶ 122, 126.  While Defendants protected their personal interests by selling off their shares in Advanta stock, they breached their fiduciary duties to the Plans and the Plans' participants and wholly failed to take any action to protect them from the significant losses arising from the imprudent investment in Company stock during the Class Period.

During the Class Period, Advanta was primarily an issuer of credit cards geared towards small businesses.  Complaint ¶ 98.  Through its depository institution, Advanta Bank Corporation, Advanta financed and managed its credit card business which accounted for almost all of Advanta's revenue.  Complaint ¶ 98.  As part of that business, Advanta promoted its "Cash Back Reward" program to attract new customers and increase its revenue.  To the public, the results were attractive as earnings increased and the company added over 50% more customers in 2006 alone.  Complaint ¶ 109.  Building off this news, in January 2007 Defendant Rosoff proclaimed that Advanta's profit for 2008 would increase over 40%.  Complaint ¶ 110. However, due to the "Cash Back Reward" program's design, and unbeknownst to customers and

---

[8]      Defendant and Board member, Dana Becker Dunn, dumped 80% of her holdings. Complaint ¶¶ 18, 115.  Defendant and President of Advanta Bank Corporation, John Moore, dumped over 40% of his holdings.  Complaint ¶¶ 28, 115.  Chair of the Audit Committee, Robert Blank, dumped 100% of his holdings.  Complaint ¶ 115.  Defendant and Board member, William Rosoff, for the first time in over a decade, sold almost 50% of his holdings, in one day, for $11.5 million.  Complaint ¶¶ 20, 115.

the investing public, it was effectively impossible to earn the stated percentage of cash back reward payments.   Complaint ¶ 102.   Advanta's Officers and Directors were the few to understand this arrangement – that is, until the truth eventually emerged.

In another effort to generate additional revenue, Advanta began increasing its customers' annual percentage rate even though these customers did not exceed their credit limit nor fail to make timely payments.   Complaint ¶ 103.   Again, initially the scheme appeared successful to the public.   Complaint ¶ 109.   However, high credit quality customers began to flee to lower interest rate alternatives.   Complaint ¶ 103.   By the end of 2007, the effects of Advanta's aggressive tactics began to surface as its credit rate loss slowly crept upward as a higher percentage of customers rolled into delinquency and a lower percentage of delinquent customers made payments resulting in higher charge-off rates.[9]   Complaint ¶¶ 124, 127-128, 130.   Class A and Class B shares of Advanta common stock traded around $8 and $9 per share, a roughly 70% drop from January 2007 to January 2008.   Complaint ¶¶ 111, 131.   One investment firm noted the deterioration of Advanta's credit quality "*even relative to [its] competitors*" and opined that "losses will continue to rise sharply over the next couple of quarters, possibly more should the worsening in delinquency trends continue."   Complaint ¶ 133 (emphasis added).   This is exactly what happened.

On April 21, 2008, an investment firm which covered the Company announced that they were "*less convinced that Advanta will be able to survive.*"   Complaint ¶ 135.   Indeed, the Company's net credit losses were roughly twice the amount they were the previous year. Complaint ¶¶ 116, 137.   Advanta's key metrics signaled a "sharp fundamental deterioration in the business" as a combination of spending drops, credit quality deterioration, and abysmal

---

[9]     Credit loss is defined as a loan receivable that is proven uncollectible and is written off. Available at http://www.finance-lib.com/financial-term-credit-loss.html, December 9, 2010.

delinquency trends led this investment firm to upwardly revise its loss forecast; a forecast that was just made two months prior.  Complaint ¶ 139.

Advanta's struggles continued into the third quarter of 2008 as the Company reported a net loss of $17.6 million while its credit loss rate hit 10%.  Complaint ¶ 144.  This devastating development was compounded by the fact that the FDIC found that Advanta engaged in deceptive and illegal practices in running its reward program which led to a multi-million dollar settlement.  Complaint ¶ 145.  In January 2009, analysts continued predicting the death of Advanta noting that with over $4B in outstanding bonds, Advanta's cash likely would be insufficient and the Company likely would be forced into bankruptcy.  Complaint ¶¶ 147-148.

This path to failure became more likely when the Company announced that it had lost $43.8 million during 2008.  This loss, coupled with the fact that its credit loss rate rose to 12% in a one year period, forced the Company to slash its costs and reduce staff.  Complaint ¶¶ 149, 156, 161.  During this time, Advanta's Class A and Class B Common Stock struggled to trade above $1.00.  Complaint ¶¶ 152, 158.

On May 11, 2009, Advanta shut down all credit card accounts to future use, a last ditch attempt to preserve its cash at the expense of future revenue growth.  Complaint ¶¶ 161, 163.  Advanta's lack of capitalization was due, in part, to its junk rating status as it was shut out of the Federal Reserve's Loan Facility.  Complaint ¶ 163.  At this same time, the Company consented to two cease and desist orders issued by the FDIC in connection with the marketing of its Cash Back Reward program, re-pricing of its credit card accounts, lack of effective oversight and supervision of its credit card products and unjust enrichment in connection with these violations and practices.  Complaint ¶ 170.  The second cease and desist order required the Bank's Board and Management to stop operating the Bank in a manner that caused it significant financial

deterioration, operating with inadequate capital given its risk profile and operating in a manner that does not sustain satisfactory earnings to maintain sufficient capital.  Complaint ¶ 171.  On July 1, 2009, the Company's Class A common stock closed at \$.42 per share while its Class B common stock closed at \$.39 per share, a roughly 98% drop in value from the time the fiduciary Defendants sold their respective shares.  *See* Complaint ¶¶ 107-108, 111-112, 114-115, 118-119, 122, 125-126, 174.

Not surprisingly and shortly thereafter, on November 8, 2009, Advanta filed for bankruptcy protection under Chapter 11.  Complaint ¶¶ 177, 179.  Its stock was suspended from the NASDAQ Stock Market on November 18, 2009.  Complaint ¶ 180.  On March 22, 2010, Advanta Bank Corporation was closed by the FDIC and the Utah Division of Financial Institutions.  Complaint ¶ 185.  The Plan participants' holdings of Advanta stock were virtually worthless.

## C.  THE COUNTS OF THE COMPLAINT

Based on these facts, Plaintiffs bring suit on behalf of the Plans pursuant to ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief pursuant to ERISA Section 409(a), 29 U.S.C. § 1109(a).  This section provides: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate. . . ."  29 U.S.C. § 1109(a).

Count I alleges that Defendants, the Administrative Committee and its members, each of whom acted as a fiduciary with respect to the Plans, breached their duties by failing to prudently and loyally manage the Plans' investment in Advanta Stock by:  (1) continuing to permit the Plans to offer Advanta Common Stock Fund as an investment option when it was imprudent to

do so; (2) maintaining the Plans' pre-existing heavy investment in Advanta Stock when it is was no longer a prudent investment; and (3) failing to provide accurate and complete information to Plan participants about Advanta's financial condition (and generally, by conveying inaccurate information regarding the Company's future outlook) and the true risks associated with investing in the Company.  Complaint ¶¶ 215-226.

Count II alleges that Defendants, each of whom acted as a fiduciary with respect to the Plans, breached their duties by failing to avoid conflicts of interest by selling large amounts of Advanta stock while maintaining or adding to the Plans' holdings.  Complaint ¶¶ 227-232.

Count III alleges that the Director Defendants – who were responsible for the selection, appointment and monitoring of the Administrative Committee members – breached their fiduciary duties by failing to properly monitor the performance of their fiduciary appointees, by failing to provide the fiduciary appointees with accurate and complete information necessary for the appointees to make sufficiently informed decisions, and by failing to remove appointees whose performance was inadequate.  Complaint ¶¶ 233-242.

## III.    ARGUMENT

## A.    STANDARD OF REVIEW ON A MOTION TO DISMISS

A complaint need only provide "a short and plain statement of the claim," FED. R. CIV. P. 8(a), which gives the defendants "fair notice of what the … claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rule 8(a)'s simplified pleading standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002).  Claims brought under ERISA for breach of fiduciary duties are subject to the simplified notice-pleading standard.  FED. R. CIV. P. 8(a), *Urban v. Comcast Corp.*, No. 08-CV-773, 2008 WL 4739519, at *9 (E.D. Pa. Oct. 28, 2008) (where a plaintiff's "claims are grounded

in unreasonable or imprudent conduct … the more liberal notice pleading standard of Rule 8(a) applies."). Courts within this Circuit and across the country are in accord. *See, e.g.*, *Pietrangelo v. NUI Corp.*, No. 04-CV-3223, 2005 WL 1703200, at *9 (D.N.J. July 18, 2005) ("Generally, pleadings alleging breaches of fiduciary duties under ERISA are scrutinized under the notice pleading standard of Federal Rule of Civil Procedure 8(a)."); *In re Pfizer Inc. ERISA Litig.*, No. 04-CV-10071, 2009 WL 749545, at *5 (S.D.N.Y. Mar. 20, 2009) ("*Pfizer*") ("[t]here are no specialized or heightened pleading rules for ERISA actions. Rather, ERISA actions are subject to the general notice pleading standard contained in Rule 8").

Under Rule 12(b)(6), a defendant bears the burden of showing that a plaintiff has not stated a claim. FED. R. CIV. P. 12(b)(6), *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005). In *Twombly*, the United States Supreme Court emphasized that a "heightened fact pleading of specifics" is *not* required, a plaintiff need only assert "enough facts to state a claim [for] relief that is plausible on its face." *Id.* at 570. When considering a motion to dismiss under Rule 12(b)(6), a court takes the factual allegations of the complaint as true and draws all reasonable inferences in favor of plaintiff. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

The United States Court of Appeals for the Third Circuit defines a two-prong analysis for the district courts in analyzing a Rule 12(b)(6) review:

> First, the district court must accept all of the complaint's well-pled facts as true, but may disregard any legal conclusions. Then a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' Where the well-pled facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged the pleader is entitled to relief.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  It is up to the court to "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Pinkerton v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002).

**B.      COUNT I STATES A CLAIM FOR BREACH OF THE DUTY TO MANAGE PLAN ASSETS PRUDENTLY AND LOYALLY:  THE PRESUMPTION OF PRUDENCE DOES NOT APPLY TO DEFENDANTS' DECISIONS TO INVEST IN THE COMPANY STOCK FUND**

Defendants baldly assert that "[u]nder controlling Third Circuit law, there can be no breach of the fiduciary duty of prudence where a plan 'absolutely requires' investment in employer stock." Defs. Mem. at 29.  This contention is simply erroneous for several reasons.

First and foremost, controlling Third Circuit authority makes clear that "[d]espite the special status of ESOPs … ESOP fiduciaries ***are still required*** to act in accordance with the duties of loyalty and care that apply to fiduciaries of typical ERISA plans." *Edgar v. Avaya*, 503 F.3d 340, 346 (3d Cir. 2007) (emphasis added).   Third Circuit case law does not support Defendant's assertion that "fiduciaries, like those of Advanta's ESOP, who are not granted any discretion with respect to the plan's investments in employer stock cannot be held liable." Defs. Mem. at 29.  Rather, ***all*** ERISA fiduciaries are required to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims" (*see* 29 U.S.C. § 1104(a)(1)(B)), and it is black letter law that the fiduciary duties imposed by ERISA are "the highest known to law." *Donovan v. Bierwirth*, 680 F.2d 263, 272, n.8 (2d Cir. 1982).  Nothing Defendants cite, and more importantly, nothing in the Third Circuit body of ERISA jurisprudence, is to the contrary.

Moreover, Defendants' proclamation that they are "immune from judicial scrutiny" (*see* Defs. Mem. at 31) rings hollow as the language in the ESOP Plan makes clear that Defendants

were not "absolutely required" to invest in the Company Stock Fund. Accordingly, even if there were a situation in which a plan's fiduciaries could be shielded from their fiduciary duties by virtue of the plan's language -- which as stated above, there cannot be, given ERISA's overarching duty of prudence -- the instant case is most certainly not such a situation.

Additionally, Defendants' conclusion is mistaken as it is premature for the Court to endeavor into determining whether the Plans qualify as ESOPs or have an ESOP component, and/or whether Defendants are entitled to any deferential standard of review under *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995) at this pleading stage.

Lastly, Defendants wholly ignore that even if the Court determines the Plans at issue here are ESOPs or have ESOP components, and the Court determines that the Plans' language falls into one of the categories of review under *Moench*, Plaintiffs' well-pled Complaint is replete with allegations sufficient to rebut any presumption of prudence. Simply stated, Defendants sat idly by, protecting their own interests while wholly ignoring their fiduciary duties owed to the Plans and the Plans' participants. Contrary to their protestations, Defendants are still held to a high standard of fiduciary conduct under ERISA regardless of the type of plan at issue.

### 1.    Plaintiffs Properly Plead The Director Defendants' Fiduciary Status

As an initial matter, Defendants argue that there can be no claim against the Director Defendants under Count One of the Complaint for continued offering of the Company Stock Fund. Defs. Mem. at 27. This argument lacks merit. First, determination of fiduciary status is a highly fact intensive inquiry that is generally not amenable to disposition on a motion to dismiss.[10] Moreover, the Complaint adequately alleges that the Director Defendants exercised

---

[10]    *See, e.g.*, *In re Regions Morgan Keegan ERISA Litig.*, 692 F. Supp. 2d 944, 960 (W.D. Tenn. 2010) (finding that fiduciary status is "a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss"); *In re Schering-Plough Corp. ERISA Litig.*, No. 03-CV-1204, 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007) ("Fiduciary status is a fact

discretionary authority over the management of the Plans' assets.   After all, it was the Director Defendants who had ultimate "discretion whether and in what amount contributions [were to] be made" in the form of Company stock.  Complaint ¶ 91.  *See In re Morgan Stanley ERISA, Litig*., 696 F. Supp. 2d 345, 355 (S.D.N.Y. 2009) ("the decision as to how to fund Employer Contributions, which amounted to tens of millions of dollars during the Class Period, is an exercise of 'discretionary authority or control,' and as such, bestows fiduciary status on Morgan Stanley.").  As another court also noted:

> Decisions to issue Qwest stock for sale to the plan, and to make matching contributions with Qwest stock rather than cash, are decisions that arguably have a direct effect on Plan assets.  This is particularly true when the defendants allegedly knew that Qwest stock was a highly risky investment.  Thus, it is conceivable that the plaintiffs could prove that such actions constituted ERISA fiduciary actions.

*In re Qwest Savings and Investment Plan ERISA Litig.*, No. 02-RB-464, slip op. at 14 (D. Colo. Sept. 24, 2004) ("*Qwest*").[11]   Thus, it cannot be disputed that the Director Defendants had fiduciary status with respect to the claim of imprudent investment in Count One.  Additionally, as explained below, the Director Defendants had fiduciary status with respect to the failure to monitor claim in Count Three of the Complaint.

### 2.    Defendants Are Not "Immune" From Judicial Scrutiny

After shirking their duties for years, Defendants attempt to abdicate their fiduciary responsibility by arguing they are "immune from judicial scrutiny" because they supposedly had no discretion with respect to Advanta stock in the Plans.  Defs. Mem. at 31.  In support of their

---

sensitive inquiry and courts generally do not dismiss claims at this early stage where the complaint sufficiently pleads defendants' ERISA fiduciary status."); *In re AOL Time Warner, Inc., Sec. and "ERISA" Litig.*, No. 02-CV-8853, 2005 WL 563166, at *7 n. 13 (S.D.N.Y. March 10, 2005).

[11]    The *Qwest* decision is attached hereto as Exhibit A.

erroneous contention, Defendants selectively cite both the *Moench*[12] and *Edgar*[13] decisions. However, upon closer inspection, neither case bolsters Defendants' argument, and actually both cases reinforce Plaintiffs' arguments herein.   Indeed, as discussed *infra*, Defendants had plenty of discretion under the Plans with respect to the Advanta stock; and, even assuming Defendants did not have discretion, it is preposterous to say Defendants' actions and inactions are ":immune" from judicial scrutiny.

Defendants argue that the Third Circuit in *Edgar*, "made it clear that the fiduciaries of plans that afford no discretion with respect to investments in employer stock cannot be sued for breach of the duty of prudence in connection with such investments," and that if the trust "requires" the trustee to invest in a particular stock, then the trustee is "immune from judicial inquiry."  Defs. Mem. at 31.  However, both the *Moench* and the *Edgar* decisions are fatal to Defendants' so-called "immunity" argument.

In *Moench*, the Third Circuit grappled with the inherent tension in the law when ERISA fiduciaries allow large investments in company stock (which is allowed for true ESOPs), and then that decision is challenged as a breach of ERISA's separate and distinct duty of prudence. *Moench*, 62 F.3d. at 556.   To honor the twin goals of employee ownership in ESOPs and rigorous prudence by plan fiduciaries, the court in *Moench* in its analysis turned to the common law of trusts as stated in the Restatement (Third) of Trusts § 228 & comments d-e.  *Moench*, 62 F.3d at 571.[14]   Under the law of trusts the Court reasoned, "there may come a time when such

---

[12]     *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995).

[13]     *Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007).

[14]     Fiduciary duties under ERISA derive from the law of trusts.  *Central States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985); *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996); *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 249 (2000).

investments no longer serve the purpose of the trust, or the settlor's intent." *Moench*, 62 F.3d at 571. And, the Court noted, trust law makes clear that fiduciaries cannot hide behind the language of the trust agreement: under the proper circumstances, faithful execution of fiduciary duties may require deviation from the trust's direction or contracting out investment decisions to an impartial outsider. *See Moench*, 62 F.3d at 572.

Reference to "immunity" first appeared in *Moench* when, in discussing the scope of the traditional common law trust principles prior to ERISA,[15] the Court noted that a trustee of a trust that required investment in a particular stock "essentiality' was "immune from judicial inquiry." *Moench*, 62 F.3d at 571. The *Moench* Court, however, expressly recognized in the same passage that, even under the traditional trust law principles, a trustee could not follow such direction if purchasing a particular stock would be "illegal." *Id.* Moreover, the *Moench* Court explicitly stated that it was not endorsing the broad immunity argument that Defendants advance here, holding:

> [W]e are not concerned with the situation in which an ESOP plan in absolutely unmistakable terms requires that the fiduciary invert the assets in the employer's securities regardless of the surrounding circumstances. Consequently, ***we should not be understood*** **as suggesting that there could never be a breach of fiduciary duty in such a case.**

*Id.* at 567, n.4 (emphasis added).[16]

Applying the flexible, equitable approach of trust law, the court in *Moench* adopted a presumption that could be rebutted by evidence that a fiduciary abused its discretion:

> In light of the analysis detailed above, keeping in mind the purpose behind ERISA and the nature of ESOPs themselves, we hold that in the first instance, an ESOP

---

[15]     The fact that the *Moench* Court discussed this so-called "immunity from judicial inquiry" in connection with the state of the law before the enactment of ERISA further renders this concept, and Defendants' argument, moot.

[16]     *See also Edgar*, 503 F.3d at 346, n.10 (noting that *Moench* "left open the issue").

> fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision.  However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer stock.

*Id.* at 571.   Specifically, the Third Circuit held that a fiduciary who invests plan assets in employer stock is only "entitled to a presumption that it acted consistently with ERISA by virtue of that decision.  *Id.* at 571.   This holding has become known as the "*Moench* presumption." However, a presumption is not a grant of immunity as the Court made clear by holding a plaintiff "could overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities."  *Id.*

Defendants fare no better by referencing the *Edgar* decision.  In *Edgar*, the Third Circuit first determined that the plans at issue -- unlike the Plans here -- unequivocally provided that the available investment options "shall include the Avaya Stock Fund."  *Edgar*, 503 F.3d at 343. Notwithstanding that determination, the *Edgar* Court ***did not*** conclude that the defendants were immune from judicial scrutiny but, instead, simply concluded that the defendants were entitled to the benefit of the *Moench* presumption.  In other words, even if the Court were to find that the Plans actually required the offering of Advanta Common Stock (which as discussed in detail *infra* is not the case here), Defendants would not be entitled to immunity, but simply an application of the abuse of discretion standard of review under the *Moench* presumption.[17]

Accordingly, regardless of how the Court interprets the operative sections of the Plans, there is no basis for Defendants' position that they are "immune" from judicial inquiry because investment in Advanta common stock is required by the Plans.  It is black-letter law that a fiduciary may not blindly follow plan terms if doing so would bring about an imprudent result or

---

[17]     *See* below at Section III.B.3.a for discussion of application of the "*Moench* presumption" to this case.

otherwise violate ERISA.  *See, e.g.*, *Central States, S.E. & S.W. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 568 (1985) ("[T]rust documents cannot excuse trustees from their duties under ERISA."); *Bennett v. Conrail Matched Savings Plan Admin. Comm.*, 168 F.3d 671, 679 (3d Cir. 1999) ("ERISA basically requires that fiduciaries comply with the plan as written **unless it is inconsistent with ERISA**") (emphasis added): *see also* ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) (fiduciaries shall discharge their duties in accordance with plan documents only "insofar as such documents are consistent with the provisions of this title [ERISA]…").  Even if a plan purported to unequivocally require a particular investment, as Defendants contend here, a fiduciary is duty-bound to override the plan term if it would be imprudent to follow the provision.  Whether a fiduciary has complied with this ERISA requirement is obviously subject to judicial scrutiny, otherwise a fiduciary could breach his or her duty with complete impunity; and that is plainly not a consequence contemplated or intended by the participant-protective nature of ERISA.

### 3.    Defendants Are Not Entitled To a Presumption Of Prudence Because The Plans Did Not Mandate Investment In Company Stock

#### a.    The plain language of the Plans confirms that Defendants had discretion regarding investing in Advanta Stock

Compounding their erroneous interpretation of controlling Third Circuit caselaw, Defendants next incorrectly conclude that the Plans' language mandates investment in Advanta common stock, a fact which excuses their imprudent actions and inactions.  Defendants are once again mistaken.

Contrary to Defendants' interpretation, nothing in the Plans "absolutely require[d]" the offering of Advanta common stock.  Defs. Mem. at 34.  In fact, as discussed *supra* at Section II.A.1.a, the ESOP SPD expressly vests the Board of Directors with the "***discretion*** whether and in what amount contributions shall be made, ***there is no set amount*** which must be contributed

each year by the Company."  January 2006 ESOP SPD at 6 (emphasis added).  Moreover, the

SPD informs that "the Administrative Committee has **complete discretion** and authority to

interpret the Plan, to determine any questions of fact arising under the Plan and to make all

decisions necessary in applying the Plan provisions."  *Id.* at 10 (emphasis added).  These

permissive words eviscerate Defendants' argument, as they underscore the complete discretion

the Board of Directors and the Administrative Committee possessed with respect to the

continued offering and continued investment in the Advanta company stock fund.  The language

in the ESOP Plan Document absolutely forecloses any contrary argument.  Specifically, § 16.4

notes that the Employer, defined as Advanta Corp., is empowered "to **suspend employer**

**contributions** to the Fund pursuant to the Plan," and § 16.3, titled "Complete Discontinuance of

Employer Contributions" informs participant that the Employer (again Advanta Corp.) has the

discretion "to at any time **discontinue Employer contributions**" completely.  1998 ESOP Plan

Document at § 16.3, pp. 52-53 (emphasis added).  Accordingly, the plain terms of the ESOP

confirm that the Defendant-fiduciaries had discretion how much to invest or whether to invest at

all in Company stock.

Defendants further attempt to shirk their fiduciary duties by arguing that the Savings Plan

language also mandates that Advanta common stock "shall" be included as an investment option.

Defs. Mem. at 7.  However, like their arguments with respect to the ESOP, this argument falls

flat.  As discussed *supra* at Section II.A.1.b, the Savings Plan language makes clear that

Defendants retained a great deal of power to administer the Savings Plan.  Indeed, while

Defendants quote section 6.2 of the 2001 Savings Plan Document, which notes "[t]he

[Administrative] Committee *shall establish* an Investment Category consisting solely of

Company Stock" (Defs. Mem. at 19), even putting in italics the language they wish to

emphasize, Defendants omit other sections of the Plan Document which cast doubt upon this so-called mandatory language.  For example, Defendants neglect to mention that section 6.1 of the 2001 Savings Plan Document, titled "Investment Control" and found on the same page just above the language Defendants reference, states "The [Administrative] Committee shall instruct the Trustee or an Investment Manager to establish Investment Categories for selection by the members and *may at any time* add or *delete* from the Investment Categories."  *Id.* at § 6.1, p49 (emphasis added).  This language confirms that while the Plan may empower the Defendants to create a Savings Plan option consisting of Advanta common stock, this option is in no way required to remain available, but may be deleted at any time from the menu of investment options.  Accordingly, as with the ESOP, the Savings Plan language eviscerates Defendants' arguments that they had no discretion to remove Company stock as an investment option or take any other step to protect the Plans' participants and beneficiaries.

### b.    Defendants' conduct should be reviewed *de novo*

As explained above, whether a fiduciary is entitled to this *Moench* presumption is dependent upon the plan language and the amount of discretion afforded under the terms of the plan.  And as examined in detail above, the language in the Plans affords Defendants discretion with respect to the offering of, or investment in, Advanta common stock.  Accordingly, in the parlance of the *Moench* presumption, because the Plans permit rather than require fiduciaries to invest in Company stock, the presumption does not apply since the Defendant-fiduciaries were merely exercising their discretion.  *See, e.g.*, *In re Schering Plough Corp. ERISA Litig.*, 420 F.3d 231, 238, n.5 (3d Cir. 2005).  Indeed *In re Schering Plough* the Third Circuit made it crystal clear that where there is no plan/settlor mandate or requirement to invest in company stock, there is no presumption of prudence for that plan's investment in company stock holding:  "We find our *Moench* decision in apposite because fiduciaries here were 'simply permitted to make…

investments' in 'employer securities.'"  *Id.* at 238; *see also Almonor v. BankAtlantic Bancorp, Inc. et al.*, No. 07-CV-61862, slip op. at 15 (S.D. Fla. July 15, 2009) (holding company stock was not entitled to the *Moench* presumption since defendants had full discretion to offer or not offer the participants the company stock").[18]  This stands in stark contrast to the picture Defendants seek to paint here regarding when an employer-sponsored retirement plan "require[s] the investment of plan funds" thereby rendering application of the *Moench* presumption appropriate.  *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 05-CV-2369, 2006 WL 2050577, at *7 (D.N.J. July 11, 2006).

Given that the Plans did not mandate investment in Advanta common stock, the Plans are not "*Moench*" type Plans to which the presumption attaches.  Rather, under controlling Third Circuit law, Defendants' conduct should be reviewed *de novo*.  *See, e.g.*, *Edgar*, 503 F.3d at 346 ("[I]f the trust merely 'permits' the trustee to invest in a particular stock, then the trustee's investment decision is subject to *de novo* judicial review.") (discussing *Moench*); *see also Urban v. Comcast Corp.*, No. 08-CV-773, 2008 WL 4739519, at *12 (E.D. Pa. Oct. 28, 2008) (holding "the principles of trust law enunciated by our Court of Appeals in *Moench* dictate that where the fiduciaries of a trust are not guided by the intent of the settlor, their decisions are subject to *de novo* review.").  Under *de novo* review, the Court must "look to the statutory language of the prudent man standard to determine whether a cognizable claim for breach of fiduciary duty has been pled."  *Graden v. Conexant Sys., Inc.*, 574 F. Supp. 2d 456, 464 (D.N.J. 2008) (applying de novo review and concluding that the defendant-fiduciaries knew or should have known about the employer's "business troubles" but nonetheless failed to take steps to protect the plan and plan

---

[18]     The *Almonor* decision is attached hereto as Exhibit B.

participants by, among other things, ceasing to offer employer securities as an investment option under the plan.).

As explained *supra* in Section II.B, the Complaint alleges that Defendants knew or should have known about, *inter alia*, the Company's failure to access sufficient funding for its business, and the true risks of investing in Advanta common stock.  Indeed, the Advanta Corp. ESOP Financial Statements and Supplemental Schedules, for December 31, 2008 and 2007, state:

> If Advanta is unable to develop and implement a new business opportunity that will generate revenues and profits or if Advanta is unable to access sufficient funding for its business or a new business opportunity, Advanta may not be able to continue as a going concern.  Consequently, there is substantial doubt about the Plan's ability to continue as a going concern since the Plan holds Advanta Corp. Class A Common Stock and Advanta pays the Plan's administrative expenses.

*Id.* at 5.  This document demonstrates that by at least 2008, Defendants knew that the ESOP could soon be worthless.  Nonetheless, as the months progressed and the Company's stock price plunged (as Defendants' own chart on page 24 of their brief demonstrates), Defendants failed to take any action to protect the Plans and the participants such as ceasing to offer the Advanta Stock Fund.[19]  *See also* Complaint ¶ 188, providing a graphical chart tracking the decimation suffered by the Plans during the Class Period as a result of the imprudent investments in Advanta stock.  Given the fiduciary obligations of prudence and loyalty contained in ERISA section 404(a), 29 U.S.C. § 1104(a), Count I states a claim.

---

[19]     Defendants mischaracterize Plaintiffs' allegations, claiming they could not be expected to "predict the future of [Advanta's] stock" or anticipate the "unprecedented and unpredictable changes in the economy as a whole."  Defs. Mem. at 39, 23.     Plaintiffs are not asserting as much; rather the focus of Plaintiffs' breach of fiduciary action is that Defendants failed to take any steps to protect the Plans and their participants *after* the decline became evident.  Plaintiffs do not seek to impose upon Defendants greater duties than ERISA requires – they simply seek to hold Defendants liable for their failure to fulfill those duties.

**4.    At This Preliminary Stage, Determining Whether The Plans Are ESOPs or Determining Whether Defendants Are Entitled To The *Moench* Presumption Is Premature**

As a threshold matter, the Court should not even consider the applicability of the *Moench* presumption at this stage of the litigation.   First, whether the ESOP here is truly an ESOP in practice – as Defendants argue – can and *should* only be determined after fact discovery, not at the pleading stage.  *See Shirk v. Fifth Third Bancorp*, No. 05-CV-49, 2007 WL 1100429, at *9 (S.D. Ohio Apr. 10, 2007) ("Where the plaintiffs are alleging a breach of fiduciary duty based not only on a failure to diversify but also because a company's stock was itself an imprudent investment, 'it is neither necessary nor appropriate' for the Court to determine whether a plan qualifies as an ESOP on a motion to dismiss.") (citing *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1032-33 (S.D. Ohio 2005)); *see also In re AEP ERISA Litig.*, 327 F. Supp. 2d 817, 828 (S.D. Ohio 2004).[20]

Second, the presumption of prudence is an evidentiary standard that controls a plaintiff's ultimate burden of proof on a developed record. It is not a pleading standard.  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510-12 (2002) (a presumption is an evidentiary issue that is not to be considered at the pleading stage).   Notably, *Moench* itself was decided on cross motions for summary judgment. *See* 62 F.2d at 562.  *See also Kuper v. Iovenko*, 66 F.3d 1447, 1452 (6th Cir. 1995) (applying the *Moench* presumption on facts in the parties' trial briefs, reply briefs, proposed findings of facts and conclusions of law, and the stipulated record).   Consequently, whether Defendants breached their duty of prudence is a question of fact that is properly decided by the trier of fact on a full factual record, after the completion of discovery.  *See In re Pfizer,*

---

[20]    Whether a plan or a subset of a plan is an ESOP depends not only on the documents, but also on how the plan was operated in practice.  *See In re Blais*, No. 93-CV-3219, 2004 Bankr. LEXIS 508 (Bankr. S.D. Fla. 2004) ("The law is concerned not only with the form of the plan but also with its effects in operation") (citation omitted).

*Inc. ERISA Litig.*, No. 04-CV-10071, 2009 WL 749545, at *11 (S.D.N.Y. Mar. 20, 2009) (where plaintiffs disputed that the retirement plan funds at issue qualified as ESOPs, the court held it "unnecessary to address the scope or the applicability of the *Moench* presumption" at the pleading stage); *Banks v. Healthways, Inc.*, No. 08-CV-0734, 2009 WL 211137, at *3 (M.D. Tenn. Jan. 28, 2009) (accepting as true for the purposes of a motion to dismiss that the plan is not an ESOP, the court held that no presumption of prudence applied at that stage, and plaintiff stated a claim under the "prudent man" standard); *Pietrangelo v. NUI Corp.*, No. 04-CV-3223, 2005 WL 1703200, at *8 (D.N.J. July 20, 2005) (refusing to apply the *Moench* presumption where the plaintiff asserted that the plan was not designed primarily to invest in company stock, but finding the presumption was nonetheless overcome where plaintiff alleged that "Defendants failed to diverge from the Plan documents and/or directives that they reasonably should have known would lead to an imprudent result or would otherwise harm Plaintiff and members of the class.").

Defendants argue that according to the Third Circuit's decision in *Edgar*, the *Moench* presumption applies at the pleading stage.  Defs. Mem. at 2 (citing *Edgar*, 503 F.3d at 349).  *Edgar* is distinguishable, however, in that it represents an example of a plaintiff's failure to plead sufficient facts such that, on the face of his complaint, he pleads himself out of court.  *Edgar* holds as some other courts have held that where a complaint alleges facts that actually show the strength and viability of a company, the plaintiffs cannot prove the fiduciaries acted unreasonably by investing in company stock.  *Id.* at 349 (the company "was, in fact, profitable and paying substantial dividends throughout that period.").  As detailed herein, the instant case is readily distinguishable in that the Company faced drastic financial situations during the Class Period, ultimately leading to the Company's resort to bankruptcy relief under Chapter 11 of the

U.S. Bankruptcy Code filed on November 8, 2009.  Complaint ¶ 2, n.1; *see also* discussion *supra*

in Section II.B.  Thus, the Court should refrain from conducting a *Moench* analysis at this early

stage of the proceedings.  *See Dann v. Lincoln Nat'l Corp.*, 708 F. Supp. 2d 481, 492 (E.D. Pa.

2010) (warning "courts should be wary of applying that [presumption of prudence] standard too

strictly before plaintiffs have had an opportunity for discovery… while the presumption of

prudence is a factor in a motion to dismiss, Plaintiffs do not have an affirmative burden to plead

the specific facts necessary to overcome the presumption").[21]

### 5.   Even If The *Moench* Presumption Applies, Plaintiffs Have Sufficiently Rebutted The Presumption

Even if this Court were to decide that Defendants are entitled to the *Moench* presumption

and that it is proper to apply the presumption at this initial pleading stage, Plaintiffs have

properly stated their ERISA claims.

### a.   The *Moench* presumption must be viewed within the context of ERISA's primary purpose

As an initial point, Defendants attempt to shirk their fiduciary duties by arguing that in

enacting ERISA, Congress excluded fiduciaries of certain plans from the duties of prudence and

loyalty.  *See* Defs. Mem. at 30.  This is a clear misstatement of the law.  While Congress

removed  the cap with respect to the acquisition or holding of employer securities for certain

---

[21]     Given that *Moench* creates an evidentiary presumption of prudence rather that a pleading standard, many courts refuse to apply it on a motion to dismiss.  *See, e.g.*, *Pfizer*, 2009 WL 749545, at *11 (finding it "unnecessary to address the scope or the applicability of the *Moench* presumption" at the pleading stage); *Taylor v. KeyCorp, et al.*, 678 F. Supp. 2d 633, 639-40 (N.D. Ohio 2009) (same); *In re Diebold ERISA Litig.*, No. 06-CV-0170, 2008 WL 2225712, at *8 (N.D. Ohio May 28, 2008) ("Defendants are not entitled to a presumption of reasonableness at this stage of the litigation."); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 475 (S.D.N.Y. 2005) ("Whether a plaintiff has overcome the presumption of prudence is an evidentiary determination that is ill-suited to resolution on a motion to dismiss."); *In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 312 F. Supp. 2d 1165, 1180 (D. Minn. 2004) ("[P]resumptions are evidentiary standards that should not be applied to motions to dismiss.").

plans, *see* 29 U.S.C. § 1107(a)-(b), this exemption does not by any means negate Defendants'

obligation to invest Plan assets prudently.  Indeed, Defendants' statement that EIAPs are exempt

from the duty of diversification (*see* Def. Mem. at 30) only reinforces their misunderstanding of

the claims in this matter.   The crux of Plaintiffs' claim is that Defendants breached their

fiduciary duties by permitting the Plans to invest in Advanta stock when Advanta stock was

clearly imprudent due to the severe mismanagement of the Company, *not* as a result of the

failure to diversify.

ERISA embodies several vital policy goals. Defendants spend a great deal of time

explaining Congressional intent behind EIAPs, but overlook the important fact that such plans do

not defeat the overarching purpose for ERISA's establishment, including the fundamental

requirement that all ERISA fiduciaries must act prudently at all times.  ERISA § 404(a)(1)(B),

29 U.S.C. § 1104(a)(1)(B) (a fiduciary must discharge his duties with the "care skill, prudence,

and diligence under the circumstances then prevailing that a prudent man acting in a like

capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims").  This is "the highest [duty] known to the law."  *Donovan v.*

*Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982); *see also Acosta v. Pacific Enter.*, 950 F.2d 611,

618 (9th Cir. 1991) ("common law trust principles animate the fiduciary responsibility

provisions of ERISA").

Legislative history also confirms that in enacting ERISA, Congress was committed to the

belief that fiduciaries should be held to the highest standards of fiduciary conduct.[22]   For

instance, in discussing eligible individual account plans like ESOPs, Congress noted:

---

[22]      *See* ERISA Legislative History at, A &P H.R. Rep. 90-1867, p. 7 ("[P]robably the
greatest shortcoming of current law is its utter lack of provisions holding persons exerting
control or authority over private welfare and pension plan funds responsible to plan participants

Section 14(f)(4)(A) limits to 20 percent the amount of the fund's total assets that may be invested in the stock or securities of the employer.  This limitation conforms to the Treasury Department's similar ruling with regard to private foundations.  However, a proviso to section 14(d)23 and to section 14(f)(4)(A) insulates profit sharing, stock bonus, thrift and savings, and similar plans which otherwise fall within the scope of the bill from a diversification requirement with respect to investments in the stock or securities of the employer whose employees are participants in the plan.  ***This proviso is not intended to insulate such plans from other applications of the prudent man rule. Thus, if investment by a profit-sharing plan in the employer is completely unsound the prudent man rule should operate to preclude such investment.***  All that the proviso says is that if investment in the employer is sound, no profit sharing or similar plan shall be precluded by virtue of a diversification requirement from investing part or all of the plan funds in the stock or securities of the employer to the extent the plan so requires.

A&P H.R. Rep. 90-1867 at 8. (emphasis added).[24]

Recently, Congress has recognized that company stock is risky and perhaps inconsistent, in part, with the overarching purpose of ERISA.  In enacting the Pension Protection Act of 2006, Congress expanded diversification rights to participants who would otherwise be locked into the

---

for their management of fund assets. To meet the glaring need for such provisions, a new section, section 14, has been added by the committee establishing fiduciary standards of conduct governing those responsible for fund management.")

[23]    Section 14(d) provides in part that "each such fiduciary shall discharge his duties with regard to the fund with the same degree of care and skill as a man of ordinary prudence would exercise in dealing with his own property." A&P H.R. Rep. 90-1867 at 7.

[24]    Indeed, the overarching goal of ERISA, following several well-publicized failures of private pension plans, was to ensure a financially secure source of income for retirement. As the Supreme Court noted in *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) "the principal statutory duties imposed on the trustees [of ERISA plans] relate to the proper management, administration, and investment of . . . assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Id.* at 142-43.  Thus, the Court pointed out in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), that the specific purpose of ERISA section 502(a)(2) is to allow suits to enforce "fiduciary obligations related to the plan's financial integrity," *id.* at 512, in accordance with "a special congressional concern about plan asset management" reflected in section 409, *id.* at 511; *see also, Russell*, 473 U.S. at 140 n.8 ("the crucible of congressional concern was [the] misuse and mismanagement of plan assets by plan administrators and . . . ERISA was designed to prevent abuses in the future").

inherent risk of heavy pension plan investment in employer securities.  *See* IRC Sections 401(a)(35)(B), 401(a)(35)(C).[25]

In short, the notion that Defendants could manage the investments of the Plans imprudently and disloyally because they believed Plan language shielded them from liability is contrary to Defendants' fiduciary duty under ERISA, and in particular, their duty under 29 U.S.C. § 1104(a)(1)(D) to disregard Plan provisions that would lead to a breach of their fiduciary duties.  ERISA would be a dead letter if fiduciaries could simply replace the actual standards imposed by the statute with a less onerous one by simply writing it down in a Plan document. ERISA does not countenance such conduct.  *See In re Ford Motor Co. ERISA Litig.*, 590 F. Supp. 2d 883, 889 (E.D. Mich. 2008) ("Indeed, ERISA would be almost impotent if it permitted settlors to exempt their fiduciaries from its requirements with a simple stroke of the pen."); *see also Shanehchian v. Macy's, Inc.*, No. 07-CV-00828, 2009 WL 2524562, at *5 (S.D. Ohio Aug. 13, 2009) (rejecting defendants' contention "that they had no discretion to remove the Macy's Stock Fund as an investment option") (citing *Kuper*, 66 F.3d at 1457 ("ERISA provides that a fiduciary may only follow plan terms to the extent that the terms are consistent with ERISA.").

### b.    The Complaint's specific factual allegations overcome the *Moench* presumption

It is within the context of ERISA's overriding purpose to protect plan participants that the *Moench* presumption was formulated.  Invoking the Restatement of Trusts, the Court in *Moench* offered some examples of evidence that could be presented to rebut the presumption of prudence, including "circumstances not known to the settlor and not anticipated by him" that "would defeat or substantially impair the accomplishment of the purposes of the trust," and circumstances

---

[25]    The recent decline of company stock ownership is also a reflection of the riskiness of company stock. *See* William J. Wiatrowski, *401(k) plans move away from employer stock as investment vehicle*, Monthly Labor Review, November 2008.

under which a prudent trustee would be expected to take protective action. *Moench*, 62 F.3d at 571. The purpose of *Moench* is to articulate an intermediate standard for evaluating the conduct of fiduciaries responsible for company stock in ESOPs. In the ESOP context, investments in company stock will be presumed prudent, but that presumption can be rebutted by evidence that the fiduciaries abused their discretion.

Depending on the facts presented, courts have used varying terminology to describe evidence that is sufficient (or insufficient) to rebut the presumption of prudence. These descriptions are not presented as "magic language" that must be pleaded and proved to assert a cause of action. The common thread presented in *Moench* and its progeny is whether the fiduciaries *abused their discretion*, under ERISA and the law of trusts, in maintaining plan investments in company stock in an ESOP. *Moench*, 62 F.3d at 571. *Edgar* did not change this standard. *See Edgar*, 503 F.3d at 348 ("[P]laintiff must show that the ERISA fiduciary could not have believed reasonably that the continued adherence to the [plan's] direction was in keeping with the settlor's expectations of how a prudent trustee would operate.") (internal quotations omitted). An abuse of discretion can be shown through evidence establishing that, "owing to circumstances not known to the settlor and not anticipated by him, investing in employer securities would defeat or substantially impair the accomplishments of the trust." *Edgar*, 503 F.3d at 348 (internal quotations omitted).

Dissatisfied with *Moench's* fiduciary standard, Defendants appear to have fashioned their own. Defendants argue that Plaintiffs must allege the existence of "dire circumstances" that would have compelled a fiduciary to act. Defs. Mem. at 38. Defendants declare, "A decline in the price of a company's stock, even a significant decline is not sufficient absent allegations of other circumstances such as fraudulent conduct or knowledge of the company's impending

collapse." *Id.*(citing *Ward v. Avaya*, 487 F. Supp. 2d 467, 480 (D.N.J. 2007), *aff'd* 299 Fed.

Appx. 196 (3d Cir. 2008)).   Defendants' argument misses the mark for multiple reasons.

First, the Third Circuit expressly rejected the view that a Company's impending collapse

is required to rebut the presumption.  *See Edgar*, 503 F.3d at 349 n.13 ("We do not interpret

*Moench* as requiring a company to be on the brink of bankruptcy before a finding is required to

divest a plan of employer securities.); *see also In re Schering-Plough ERISA Litig.*, No. 08-CV-

1432, 2010 WL 2667414, at *4 (D.N.J. June 29, 2010) (holding allegations "need not amount to

the company being 'on the brink of bankruptcy.'").[26]   Contrary to the draconian pleading

requirements urged by Defendants, a presumption of prudence can be overcome by a variety of

circumstances, none of which amounts to a pending collapse of the employer company at issue.

*See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1102 (9th Cir. 2008) (artificial inflation of

company stock sufficient to overcome presumption); *LaLonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st

Cir. 2004) (same); *Alvidres v. Countrywide Fin. Corp.*, No. 07-CV-05810, 2008 U.S. Dist.

---

[26]     *Accord Morrison v. MoneyGram Int'l. Inc.*, 607 F. Supp. 2d 1033, 1050-54 (D. Minn.
2009) (impending collapse not required to state claim); *Taylor*, 678 F. Supp. 2d at 639 (holding
"the allegations necessary to rebut the presumption at this early stage would not be the drastic,
extreme or impending collapse allegations suggested by Defendants"); *Ford*, 590 F. Supp. 2d at
890-893 (rejecting a requirement of imminent collapse of fraudulently inflated stock to overcome
presumption); *In re Fremont General Corp. Litig.*, No. 07-CV-02693, slip op. at 3-4 (C.D. Cal.
May 30, 2008) (finding no requirement of "impending collapse"); *Shirk*, 2007 WL 1100429, at
*10 (holding that similar allegations successfully rebutted the *Moench* presumption) (attached
hereto as Exhibit C); *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 860 (N.D. Ohio 2006)
("However, *Moench* involved a company that was, in fact, on the brink of financial collapse.
Nowhere in the opinion does the Third Circuit limit its holding to companies facing such dire
circumstances"); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 256 (5th Cir. 2008) ("we do
not hold that the *Moench* presumption applies only in the case of investments in stock of a
company that is about to collapse"); *In re Sprint ERISA Litig.*, 388 F. Supp. 2d 1207, 1224-25
(D. Kan. 2004) ("*Sprint*") (noting that impending collapse in *Moench* refers to the collapse of the
stock price not the company itself); *In re Honeywell*, No. 03-CV-1214, 2004 WL 3245931, at
*11 (D.N.J. Sept. 14, 2004) ("*Honeywell*"); *In re ADC Telecomms., Inc.,* No. 03-CV-2984, 2004
WL 1683144, at *6 (D. Minn. July 26, 2004); *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970,
982 (C.D. Cal. 2004); *Smith v. Delta Airlines, Inc.,* 422 F. Supp. 2d 1310, 1331 (N.D. Ga. 2006);
*In re Mutual Funds Invest. Litig.*, 403 F. Supp. 2d 434, 449 (D. Md. 2005).

LEXIS 27431, at *4 (C.D. Cal. Mar. 18, 2008) (allegations of mismanagement (that the court noted "extend well beyond any stated duty . . . to diversify"), coupled with stock fluctuation, sufficient to demonstrate imprudence); *Ford*, 590 F. Supp. 2d at 909 (many ways to demonstrate imprudence, including showing "that the stock has become excessively risky as a result of massive mismanagement"); *Shanehchian*, 2009 WL 2524562, at *7 (presumption overcome where plaintiff alleged, *inter alia*, that "despite problems with the integration process, Defendants continued to reassure the market and the Plans' participants regarding the success of the merger; as a result of undisclosed facts concerning the integration process the stock was artificially inflated and though Defendants knew or should have known that the stock was an imprudent investment, they continued to heavily invest the Plans in company stock . . .") (internal citations omitted); *Cardinal*, 424 F. Supp. 2d at 1032 (ERISA fiduciary liable if it "knew, or had reason to know that [company] faced troubles that were certain to cause a decline in the value of its stock") (citing *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-CV-4743, 2005 WL 1662131 (N.D. Cal. July 14, 2005)).

In any event, here, Plaintiffs' allegations surpass any applicable standard of review, as the two hundred and fifty plus paragraph Complaint more than sufficiently alleges the "dire circumstances" befalling Advanta, and the Company's "impending" and realized collapse evidenced by Advanta's current bankrupt state.  Specifically, Plaintiffs alleged that Advanta stock was imprudent due, among other things, to:  (a) the fact that the Company's assets contained large amounts of impaired credit card receivables for which Advanta had not accrued losses; (b) Advanta's customer default rate would be substantially higher than the industry average by 2009 due to the Company's failure to verify its customers' ability to pay; (c) Advanta's practice of issuing credit cards to small business owners without verifying income, the

Company's credit receivables was excessively risky; (d) customers were leaving and would continue to leave the Company due to, among other things, Advanta's drastic increase of interest rates and its manipulation of the cash reward program; and (e) the Company's portfolio would have large charges to reflect impairments due to Advanta's failure to correctly account for its delinquent customers and credit trends.  Complaint ¶ 8; *see also* discussion *supra* in Section II.B.

Indeed, when confronted with facts and allegations similar to those here, numerous courts including this Court recently in the *Dann* action have sustained the plaintiffs' breach of fiduciary duty allegations.  In reaching its conclusion that the plaintiff sufficiently rebutted the *Moench* presumption, the *Dann* Court referenced the numerous allegations, supported by references to newspaper articles and other sources which suggested a prudent fiduciary should have known of the impending collapse of the relevant market.  *Dann*, 708 F. Supp. 2d at 485-86.  Here too, the Complaint is replete with allegations concerning Advanta's business practices and the Company's ongoing decline.  *See, e.g.*, Complaint ¶¶ 120, 124, 128, 132-135, 137, 139-141, 143-144, 147-149, 153, 156-157, 160-161, 163, 165, 167, 170-171, 173, 175, 177-185.  Additionally, the Court in *Dann* rejected the defendants' presumption argument noting that "[a]lthough the amended complaint falls short of alleging LNC's 'impending collapse,' a company need not 'be on the brink of bankruptcy before a fiduciary is required to divest a plan of employer securities.'" *Dann*, 708 F. Supp. 2d at 491 (quoting *Edgar*, 503 F.3d at 349 n.13).  As noted herein, Advanta went well beyond the brink and actually filed for bankruptcy, so even this overly exacting standard is met.  Defendants' steadfast ignorance of these warnings and the reality of the Company's business prospects was a violation of their fiduciary duties; and Defendants' steadfast adherence to offering or investing in Company Stock despite these warnings and the

reality of the Company's business prospects was an abuse of their discretion which sufficiently rebuts the *Moench* presumption.

Additionally, lowering the prudence bar to the point that a fiduciary is required to sell company stock only after it has become worthless – as Defendants seem to advocate – is impossible to square with ERISA's stated mission of "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and . . . providing for appropriate remedies, sanctions, and ready access to the Federal courts."  ERISA § 2(b), 29 U.S.C. § 1001(b). *See also Summers v. State Street*, 453 F.3d 404, 411 (7th Cir. 2006) ("selling when bankruptcy is declared will almost certainly be too late").  Rather, the applicable standard is the actions that a reasonable and loyal fiduciary would have taken under similar circumstances.  *See* ERISA § 404(b)(1)(B), 29 U.S.C. § 1104(b)(1)(B).

In summary, even if this Court decides the *Moench* presumption should be applied at the pleading stage – which it should not – and even if the Court decides that Defendants are entitled to the *Moench* presumption – which they are not – and even if the Court applies the "dire circumstances" or "impending collapse" standard – which is not the appropriate standard – Plaintiffs' allegations are still more than sufficient to rebut any presumption as Advanta's bankruptcy answered all questions concerning the Company's financial state.

## C.  DEFENDANTS ARE NOT ENTITLED TO THE PROTECTION OF ERISA SECTION 404(c)

Defendants erroneously contend that liability against them is precluded under Section 404(c) of ERISA, 29 U.S.C. § 1104(c).  Defs. Mem. at 45-46.  Defendants' argument fails for numerous reasons.  First, Section 404(c) is not a defense to Plaintiffs' imprudent investment and disclosure claims.  Even if Section 404(c) was a viable defense against Plaintiffs' claims, it is a fact-intensive affirmative defense that is not suitable for resolution at the pleading stage.  Finally,

even if Defendants' 404(c) defense could be determined at this stage (as Defendants argue), Defendants are not entitled to the defense.

1.   **ERISA Section 404(c) is Not a Defense to Plaintiffs' ERISA Claims**

Section 404(c) immunizes fiduciaries from liability "for any loss, or by reason of any breach, ***which results from [a] participant's or beneficiary's exercise of control***." ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B) (emphasis added); *See In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d at 1234 (D. Kan. 2004)  ("Under that provision, where a plan participant exercises "independent control" over the assets in his or her account, a fiduciary is not liable for any loss that results from the participant's exercise of control.").

Section 404(c) is not a defense to a fiduciary's selection or retention of imprudent investment options.  *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n. 3 (4th Cir. 2007) (§404(c) safe harbor "does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k) plan."); *In re Tyco Intern. Ltd. Multidistrict Litig.*, 606 F. Supp. 2d 166, 168-69 (D.N.H. 2009) (deciding on summary judgment that "defendants are not entitled to a section 404(c) defense"); *Page v. Impac Mortg. Holdings, Inc.*, No. 07-CV-1447, 2009 WL 890722, at *4 (C.D. Cal. Mar. 31, 2009) (the safe harbor of § 404(c) does not apply in this case); *Kanawi v. Bechtel Corp.*, 590 F. Supp. 2d 1213, 1232 (N.D. Cal. 2008); *Tussey v. ABB, Inc.*, No. 06-CV-4305, 2008 WL 379666, at *3 (W.D. Mo. Feb. 11, 2008); *In re Polaroid ERISA Litig.* 240 F.R.D. 65, 76 (S.D.N.Y. 2006); *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 893-94 (S.D. Tex. 2004); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 284 F. Supp. 2d 511, 574-79 (S.D. Tex. 2003); *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 764 n.12 (S.D.N.Y. 2003).  Rather, the act of choosing or continuing to designate investment alternatives offered by a 404(c) plan is a fiduciary function subject to ERISA's general fiduciary standards.  *DiFelice*, 497 F.3d at 418, n.3.

There is good reason for these decisions.  While the statutory text of Section 404(c) provides a safe harbor to fiduciaries under certain circumstances, it does not immunize a fiduciary's decisions regarding selection and retention of plan investment options.  Indeed, this position is entirely in line with the long-standing interpretation of Section 404(c) taken by the Department of Labor -- the federal agency charged with interpreting § 404(c).  *See* ERISA § 404(c)(1), 29 U.S.C. § 1104(c)(1).  In its final regulation, promulgated after an extensive notice and comment period, the DOL stated:

> [T]he act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, ***is not a direct or necessary result of any participant direction of such plan***. Thus, for example, in the case of look-through investment vehicles, the plan fiduciary has a fiduciary obligation to prudently select such vehicles, as well as a residual fiduciary obligation to periodically evaluate the performance of such vehicles to determine … whether the vehicles should continue to be available as participant investment options.

Final Regulation Regarding Participant Directed Individual Account Plans, 57 Fed. Reg. 46906 at 46,924 n. 27 (October 13, 1992) (emphasis added); *Id.* at 46,922 ("the act of designating investment alternatives […] in an ERISA section 404(c) plan is a fiduciary function to which the limitation on liability provided by section 404(c) is not applicable."); *see also* DOL Advisory Opinion No. 98-04A, 1998 WL 326300, at *1, *3 n. 1 (May 28, 1998); DOL Advisory Letter, 1997 WL 1824017, at *2 (Nov. 26, 1997). The DOL's reasonable interpretation of § 404(c) is entitled to deference under *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984).  *See Arizona Public Service Co. v. U.S. E.P.A.*, 562 F.3d 1116, 1123 (10th Cir. 2009); *see also Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 320 (5th Cir. 2007) (Reavley, J., dissenting).[27]

---

[27]   To remove any doubt as to the issue, the DOL is amending the regulation to reiterate its long-held position that the relief afforded by Section 404(c) does not extend to a fiduciary's duty to prudently select and monitor investment options.  *See* Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans, 73 Fed. Reg. 43,014, 43,018 (July 23, 2008).

Defendants reliance on *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) is misplaced.   Defendants ignore the Seventh Circuit's modification of that decision in its subsequent order denying rehearing en banc.   *Hecker v. Deere & Co.*, 569 F.3d 708 (7th Cir. 2009).   In its rehearing order, the Court noted that its decision in *Hecker* was "tethered closely to the facts before the court."   *Id*. at 711.   Unlike here, the *Hecker* plaintiffs did not allege that the fiduciaries offered an unsound or imprudent investment option; rather, they claimed that fees and expenses paid by the plan were unreasonable and excessive. Specifically, they alleged that "the Plans were flawed because [defendants] decided to accept 'retail' fees and did not negotiate presumptively lower 'wholesale fees.'"   *Id*.   While the Court allowed a 404(c) defense under those facts, it expressly "refrained from making any definitive pronouncement on 'whether the safe harbor applies to the selection of investment options for a plan,'" leaving the "area open for future development." *Id*. 710 (citing earlier decision in *Hecker*, 556 F.3d at 589).

## 2.       Even if the ERISA Section 404(c) Defense Did Apply, it is Not a Ground for Dismissal Under Rule 12(b)(6)

Section 404(c) is a fact-intensive affirmative defense that applies in a very limited set of circumstances and is not suitable for resolution at the pleading stage. *In re Unisys Sav. Plan Litig*., 74 F.3d 420, 446 (3d Cir. 1996) (Section 404(c) is an affirmative defense that defendants have the burden to plead and prove); *see Sprint*, 388 F. Supp. 2d at 1234.   Under the DOL regulations governing Section 404(c), participants do not "exercise control" over their accounts, and hence the defense is not available, unless participants exercise "independent control in fact." 29 C.F.R.  §2550.404c-1(c)(2). This in turn "depends on the facts and circumstances of the

particular case." *Id*.  For this reason, Defendants' assertion of a § 404(c) defense should not be considered at this point in the proceedings.[28]

Defendants' citation to *Page v, Impac Mortg. Holdings, Inc*., 2009 WL 890722 (C.D. Mar. 31, 2009) is unavailing.  While that Court addressed the 404(c) defense on a motion to dismiss, it merely determined that -- as a matter of law -- the 404(c) safe harbor "does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k) plan." *Id*. at \*4 (quoting *DiFelice*, 497 F.3d at 418, n. 3).

### 3.    Even if the ERISA Section 404(c) Defense Applied With Respect To Plaintiffs' Claims, Defendants Are Not Entitled to Invoke It

Even if § 404(c) could provide a defense to the selection or retention of imprudent investment options, and even if the defense could be resolved on the pleadings, Defendants have fallen far short of what is required to invoke it here.  With respect to this defense, Defendants have the burden of proof.  *See Allison v. Bank One-Denver*, 289 F.3d 1223, 1238 (10th Cir. 2002*); Meinhardt v. Unisys Corp. (In re Unisys Sav. Plan Litig.)*, 74 F.3d 420, 446 (3d Cir. 1996).  As part of their burden, Defendants must specifically prove that Participants exercised independent and meaningful control over their investments.  ERISA § 404(c)(1); 29 U.S.C.

---

[28]    The vast majority of courts to address the issue have held that § 404(c) is an affirmative defense that must be pled and proven at trial and is not appropriately resolved at the pleading stage.  *See In re Washington Mutual*, No. 08-md-1919, 2009 WL 3246994, at \*7 (W.D. Wash. Oct. 5, 2009) ("In most cases, defendants raise § 404(c) as an affirmative defense and are not entitled to a Rule 12(b)(6) dismissal based on the defense"); *Loomis v. Exelon Corp.*, No. 06-CV-4900, 2009 WL 4667092, at \*2 (N.D. Ill. Dec. 9, 2009); *Kanawi v. Bechtel Corp.*, No. 06-CV-5566, 2007 WL 5787490, at \*3 (N.D. Cal. May 15, 2007); *Shirk v. Fifth Third Bancorp*, No. 05-CV-49, 2007 WL 1100429, at \*11 (S.D. Ohio Apr. 10, 2007); *In re Ferro Corp. ERISA Litig*., 422 F. Supp. 2d 850, 862 (N.D. Ohio 2006); *In re Mut. Funds Inv. Litig*., No. 04-CV-949, 2005 WL 3692756, at \*9 (D. Md. Dec. 6, 2005); *Woods v. Southern Co*., 396 F. Supp. 2d 1351, 1367 (N.D. Ga. 2005); *AEP*, 327 F. Supp. 2d at 828; *In re Tyco Intern., Ltd. Multidistrict Litig.*, No. 02-MDL-1335, 2004 WL 2903889, at \*7 (D.N.H. Dec. 2, 2004); *Rankin v. Rots*, 278 F. Supp. 2d 853, 872-73 (E.D. Mich. 2003); *WorldCom,* 263 F. Supp. 2d at 764; *Enron*, 284 F. Supp. 2d at 578-79.

1104(c)(1); see 29 C.F.R. § 2550.404c-1(b)(2)(i)(B) (a Plan must provide the Participants "with sufficient information to make informed decisions with regard to investment alternatives available under the plan . . ."). To meet this standard, Defendants must have provided all material information concerning (1) the financial condition and performance of the Advanta Stock Fund, and, therefore, the company and (2) developments that materially affected the financial status of the company and/or the Advanta Stock Fund. *In re Unisys Sav. Plan Litig*, 74 F.3d at 447; *In re Polaroid Erisa Litig*., 240 F.R.D. at 75; *In re Tyco*, 2004 WL 2903889, at *7-8 (the defense is unavailable if the fiduciary concealed "material non-public facts" that it should have disclosed); *WorldCom*, 263 F. Supp. 2d at 764 ("a participant's control over his investment decisions is 'not independent' if a 'plan fiduciary has concealed material non-public facts regarding the investment from the participant'").[29] There are significant facts in dispute regarding these issues. Defendants' citation to a few sentences in the 2009 SPD concerning investment directions and "information on fees" (*see* Defs. Mem. at 45-46) does not remotely satisfy their burden of proof.

**D. COUNT I STATES A CLAIM AGAINST DEFENDANTS FOR THEIR FAILURE TO ENSURE THAN PLAN PARTICIPANTS HAD COMPLETE AND ACCURATE INFORMATION REGARDING ADVANTA STOCK**

Defendants raise several arguments in support of their assertion that Plaintiffs' have not adequately alleged a breach of the duty of disclosure.[30] Defendants contend that (1) they had no

---

[29]     The current regulation makes it clear that a participant does not exercise the requisite control under § 404(c) unless he or she is "provided or has the opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives available under [a plan]." 29 C.F.R. § 2550.404c-1(b)(2)(B). Nor is the participant's exercise of control sufficiently independent to come within § 404(c)'s purview if a "plan fiduciary has concealed material non-public facts regarding the investment" option in question. *Id*. § 2550.404c-1(c)(2)(ii).

[30]     Even if the Court were to conclude that Defendants did not breach their fiduciary obligation to disclose certain information to Plan participants, Count I – which is principally

duty to disclose complete and accurate information regarding the Company Stock Fund (*see* Defs. Mem. at 47-49); (2) Plaintiffs cannot, as a matter of law or fact, establish loss causation as to any nondisclosure (*Id.* at 47, 50-51); (3) Plaintiffs have failed to plead fraud with particularity pursuant to Rule 9 of the Federal Rules of Civil Procedure (*Id.* at 47-48; 51-52); and (4) the alleged misstatements were not made in a fiduciary capacity. (*Id.* at 48; 53-54).  Each of these arguments lacks merit.

1.   **Defendants Have a Fiduciary Duty to Ensure that Plan Participants Have Accurate and Complete Information**

"[T]he duty to disclose material information is the core of a fiduciary's responsibilities." *Bixler v. Central Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993); *In re Unisys*, 74 F.3d at 442; *In re Schering-Plough ERISA Litig.*, 2010 WL 2667414, at *6 ("ERISA fiduciaries must provide participants with the information needed to adequately protect their Plan interests.") (quoting *Edgar*, 503 F.3d at 350 ("It is well-established that an ERISA fiduciary 'may not materially mislead those to whom section 1104(a)'s duties of loyalty and prudence are owed.'")); *Pietrangelo*, 2005 WL 1703200, at *9.  This fiduciary duty encompasses "not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful."  *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc.*, 93 F. 3d at 1171, 1180 (3d Cir. 1996).  These obligations apply with equal force to communications concerning employer stock:

> As ERISA fiduciaries, these defendants may not knowingly present false information regarding a plan investment option to plan participants.  There is no exception to the obligation to speak truthfully when the disclosure concerns the employer's stock.

---

based on Defendants' decision to continue offering Advanta stock as an investment option after it was no longer prudent to do so – would remain unaffected.

*In re Merck & Co., Inc., Securities Deriv. & Erisa Litig.*, No. 05-CV-2369, 2006 WL 2050577, at *15 (D.N.J July 11, 2006) ("*Merck*") (internal quotations omitted).

Defendants first contend that Plaintiffs failed to identify any false or misleading statements or omissions.  Defs. Mem. at 48.  To the contrary, the Complaint is replete with numerous allegations that state a claim for fiduciary breach arising from Defendants' failure to disclose complete information to Participants.  For example, the Company's SEC filings as incorporated into the Plans' Summary Plan Description negligently omitted to disclose material information concerning the Company's business, operations, regulatory compliance and prospects. While Advanta portrayed itself as a company having a "solid foundation" based on "high credit quality customers," (*see* Complaint ¶¶ 99-100, 104, 105-19, 124), the Company concealed the truth about its financial condition and business operations.  Among other things, Defendants failed to disclose that (a) the Company's assets contained large amounts of impaired credit card receivables for which Advanta had not accrued losses; (b) Advanta's customer default rate would be substantially higher than the industry average by 2009 due to the Company's failure to verify its customers' ability to pay; (c) due to Advanta's practice of issuing credit cards to small business owners without verifying income, the Company's credit receivables were excessively risky; (d) customers were leaving and would continue to leave the Company due to, among other things, Advanta's drastic increase of interest rates and its manipulation of the cash reward program; and (e) the Company's portfolio would have large charges to reflect impairments, due to Advanta's failure to correctly account for its delinquent customers and credit trends. *Id.* at ¶¶ 8, 99-104, 130-166.  Moreover, Defendants concealed significant improprieties involving its Cash Back Rewards program and its interest rate re-pricing scheme which -- when

uncovered by regulators -- resulted in Advanta being forced to pay approximately $35 million in restitution. *Id*. at ¶¶ 101-03, 169-178.

In addition to concealing Advanta's mismanagement and improprieties, Defendants also knew or should have known that Advanta stock was not a suitable and appropriate investment for the Plans and that it was clearly too risky for retirement savings. Nonetheless, Defendants failed to disclose that for years the Company was engaged in unsound banking policies and practices that resulted in rapid credit quality deterioration, an increased risk profile, a drastically reduced capital position, and mounting uncollectable debt. *Id*. at ¶¶ 130-178, 191-194. For example, the SPD for the Employee Savings Plan merely advised Plan Participants that the Company Stock Fund was an investment in Advanta stock that sought "long term capital growth and reasonable current income." (A copy of the Summary Plan Description for the Advanta Corp. Employee Savings Plan is attached to Plaintiffs' Complaint, Ex. G (Dkt. No. 39-6) at 50). The Advanta Stock Fund's represented goal was thus entirely unrealistic during the Class Period. Despite the allegations that Defendants knew or should have known of dire conditions at Advanta (*id*. at ¶¶ 191-194), Defendants failed to disclose those issues to Plan participants in the Summary Plan Description or any other Plan communication.

Defendants further contend that -- as a matter of law -- they satisfied their fiduciary duties merely by providing Plan participants with generalized disclosures regarding "the nature and performance of the Company Stock Fund." Defs. Mem. 48-49. In particular, Defendants point to (1) a section of the SPD for the Savings Plan which described the importance of diversification and (2) various snippets within their SEC filings which purportedly disclosed the

risks facing Advanta's business.[31]   At most, however, this argument raises fact issues which should be decided on a full record.  *See Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993) (holding that — "[t]he content of the particular communications [defendant] allegedly made to members of the plaintiff class and whether such communications constituted affirmative misrepresentations are questions of fact properly left to the trier of fact").

Numerous courts presented with such fact-intensive arguments have regularly rejected them as premature at the pleading stage.  As one court has recently observed in denying a motion to dismiss:

> Defendants argue Plaintiff's misrepresentation claim fails because any disclosure obligations Defendants may have had regarding investment in Macy's stock were met. . . . While Defendants deny that ERISA imposes any duty to disclose information about strategy, operations and financial results regarding the integration of the Macy stores, they contend that Macy's specifically cautioned the public regarding the risks Plaintiff alleges were undisclosed. Defendants cite several allegedly cautioning statements made by Macy's contemporaneous with the alleged misrepresentations that Defendants argue the Amended Complaint ignores
>
> . . . .
>
> The court finds that a determination of whether the communications cited by Plaintiff actually constitute misrepresentations, when viewed in light of the contemporaneous communications cited by Defendants, is a question of fact and therefore not proper for a motion to dismiss.

*Shanehchian*, 2009 WL 2524562, at *8 (citations omitted); *Dann*, 708 F. Supp. 2d at 493-94 ("Because [the disclosure] claim is based on many of the same facts as Plaintiff's prudent investment claim, I will allow discovery to proceed without prejudice to Defendants to raise the same arguments at the summary judgment stage); *Shirk*, 2007 WL 1100429, at *13 ("whether challenged communications constituted misrepresentations and whether they were material are

---

[31]     While Defendants cite to disclosures in the Savings Plan SPD, they cite no similar disclosures in the ESOP SPD.

questions properly left for trial"); *In re AEP ERISA Litig.*, 327 F. Supp. 2d at 832 (same) (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d at (whether communications regarding investment risks constituted misrepresentations was a triable issue of fact).   The determination of the veracity of any given communication challenged by Plaintiffs at the time the communication was issued should be properly reserved for trial, and certainly should not be decided in the context of a motion to dismiss before discovery.

> ## 2.     Defendants' "Loss Causation" Argument is Inapplicable to this ERISA Action

Defendants argue that Plaintiffs cannot, as a matter of law or fact, establish loss causation as to any nondisclosure.   Defs. Mem. at 50.   Defendants claim that, under the efficient market hypothesis, if the truth of Advanta's improprieties and financial condition were publicly disclosed, such a disclosure would have resulted in a swift market adjustment and the Plan would have sustained the same losses that occurred when the material information was announced. (*Id.*).   According to Defendants, "there is [sic] no disclosures that any of the Defendants could have made that would have permitted the Plans' participants to avoid the losses they suffered." (*Id.* at 51).   Defendants' argument fails for numerous reasons.

First, Defendants ignore that Plaintiffs' Complaint alleges, *inter alia*, that Defendants imprudently purchased Advanta stock that was artificially inflated by *misrepresentations* and omissions during the Class Period.[32]   (*See* Complaint ¶ 222).   These purchases at artificially inflated prices resulted in an immediate loss because the Plans paid more than the stock was worth.   *See In re Merck & Co., Inc. Vytorin ERISA Litig.* ("*Merck Vytorin*"), No. 08-CV-1974, 2009 WL 2834792, at *4 (D.N.J. Sept. 1, 2009) ("[W]ith respect to loss causation, the Court

---

[32]     In addition, Defendants contend that there is a "serious question" whether Plaintiffs can establish loss causation in connection with the imprudent investment claim. (*Id.* at n. 19).

finds that the Complaint contains sufficient factual allegations to state a claim that Defendants' breach of their fiduciary duties artificially inflated the stock price and caused Plaintiffs' loss."); *In re Merck & Co., Inc. Securities, Derivative & Erisa Litig.* ("*Merck Vioxx*"), Nos. 05-CV-1151, 05-CV-2369, 2009 WL 790452, at *5 (D.N.J. Mar. 23, 2009) ("[B]y alleging that Defendants' misrepresentations artificially raised the price of Merck stock, Plaintiffs have alleged loss causation.")[33]

Second, the recoverable damages arising from a fiduciary breach is not the amount of a price drop in the stock (*i.e.*, the difference in the stock price with or without artificial inflation) but, rather, the difference between the performance of the imprudent stock and that of an

---

[33]     To the extent that Defendants argue that securities loss causation principles apply here, they are mistaken.  Defendants may point to a recent order issued December 13, 2010, in which the Eight Circuit applied a standing analysis which incorporates loss-causation principles from *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  *See Brown v. Medtronic, Inc.*, No. 09-CV-2524, 2010 WL 5059594 (8th Cir. Dec 13, 2010).  This decision, however, provides no support for Defendants here.  First, the decision is contrary to the determinations of numerous courts that have expressly declined to apply *Dura* in connection with ERISA breach of fiduciary duty claims.  *See, e.g.*, *Harris v. Koenig*, 602 F. Supp. 2d 39, 64 (D.D.C. 2009) (rejecting *Dura* loss causation argument "because it relates to Act of 1934, not ERISA"); *Diebold*, 2008 WL 2225712, at *10 ("[T]here is no authority in support of an application of Dura in the ERISA context."); *Cardinal Health*, 424 F. Supp. 2d at 1044 ("[T]he Court refuses to read into ERISA a requirement that Plaintiffs must plead 'loss causation' in accordance with the standard necessary for securities fraud claims.")  Second, the *Medtronic* decision is factually distinct.  Unlike the allegations in *Medtronic*, Plaintiffs' claims here are not based exclusively on the fact that the price of the Company Stock Fund was artificially inflated by undisclosed material information.  To the contrary, Plaintiffs here allege that Defendants breached their fiduciary duties by failing to protect the Plans' assets when the Company faced dire circumstances which ultimately resulted in Advanta's bankruptcy and caused tremendous losses to the Plans.  Accordingly, even if *Medtronic's* standard is applied, Plaintiffs have properly pled loss causation by alleging "a net loss in investment value that is fairly traceable to the defendants' challenged actions."  *See Medtronic*, 2010 WL 5059594 at *3.  Moreover, Defendants' reliance on *Edgar* in support of their "loss causation" argument is misplaced.  The claims in *Edgar* are easily distinguishable from Plaintiffs' claims here.  In *Edgar,* the Court found that there was no material information withheld from the Avaya plan participants.  The Third Circuit noted that "[w]e cannot agree . . . that these developments . . . created the type of dire situation which would require defendants to disobey the terms of the Plans by not offering the Avaya Stock Fund as an investment option, or by divesting the Plans of Avaya securities."  *Edgar,* 503 F.3d at 348.  In the instant case, Plaintiffs have clearly alleged such circumstances.

appropriate and prudent investment.  *See, e.g.*, *Graden v. Conexant Systems, Inc.*, 496 F.3d 291, 301 (3d Cir. 2007) ("[I]f Graden succeeds on the merits, the District Court will look to the prudent investment alternatives that the Conexant plan offered during this period to determine what the Conexant Stock Fund B investors would have earned but for Conexant's breach."); *In re First American Corp. ERISA Litig.*, No. 07-CV-1357, 2009 WL 928294, at *3 (C.D. Cal. Apr. 2, 2009) ("[T]he proper ERISA analysis" measures "[l]osses to a plan from breaches of the duty of prudence . . . by comparing the performance of the imprudent investments with the performance of a prudently invested portfolio.").  In *Bunch v. W.R. Grace & Co.,* 555 F.3d 1, 5 (1st Cir. 2009)*,* the Court in rejecting the efficient market hypothesis stated that "reiterating what was decided by the district court, this position is plainly wrong."  The *Bunch* court continued, stating "as cogently stated by [the district] court, the efficient market is not the standard by which State Street's actions are to be judged.  Rather, under ERISA, a fiduciary is required to act with the care, skill, prudence and diligence ... that a prudent man acting in a like capacity and familiar with such matters would use." *Id.*

Third, the issue regarding loss causation is fact-intensive and should not be decided on a motion to dismiss.  *See*, *e.g.*, *In re Ferro Corp. ERISA Litig.*, 442 F. Supp. 2d 850, 863 (N.D. Ohio 2006) (loss causation raises "speculative issue inappropriate for resolution at this early stage of the litigation"); *In re Goodyear Tire & Rubber Co. ERISA Litig.*, 438 F. Supp. 2d 783, 792 (N.D. Ohio 2006) (rejecting application of efficient market hypothesis at the pleading stage); *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-CV-04743, 2005 WL 1662131, at *9 (N.D. Cal. July 14, 2005) (same); *Smith v. Aon Corp.*, No. 04-CV-6875, 2006 WL 1006052, at *8 (N.D. Ill. April 12, 2006) (declining to engage in a fact-based analysis of the extent to which Defendants' fiduciary breach caused harm to the Plan).  There is absolutely nothing in the record from which

this Court can presently decide how much Advanta's stock price would have fallen, or when it would have fallen, had the truth been told (which it was not).  At this stage, this speculative argument should be rejected.  In any event, with respect to Advanta stock owned by the Plan prior to the Class Period, Plaintiffs intend to demonstrate through expert testimony that losses would have been minimized by a full and complete disclosure of the truth about Advanta's financial condition earlier in the Class Period.  *See*, *e.g.*, *In re Honeywell Int'l ERISA Litig.*, No. 03-CV-1214, 2004 WL 3245931, at *12 (D.N.J. Sept. 14, 2004) (finding defendants' loss causation arguments to be "flawed on the merits" because "it is not evident that full public disclosure of the true facts would not have prevented as least some of the losses allegedly incurred by the Plan").  These issues should await expert discovery.

Finally, Defendants contend that there is a "serious question" whether Plaintiffs can establish loss causation in connection with the imprudent investment claim.  Defs. Mem. at 50, n. 19.  Defendants claim that, under insider trading laws, they would have been required to disclose material non-public information before divesting the Plans of Advanta stock and, if they did, the price of Advanta stock would have fallen accordingly.  First, to the extent that the price of Advanta stock was artificially inflated, the above arguments with respect to causation apply equally to the disclosure and imprudent investment claims.  Second, Plaintiffs' imprudent investment claim is not based exclusively on an artificial inflation theory (*i.e.* that Defendants misled the market).  Rather, Plaintiffs have alleged that Plans suffered tremendous losses when Defendants breached their fiduciary duties by failing to liquidate the Plans' holdings in Advanta stock when the Company faced (publicly known) dire circumstances.  (Complaint at ¶¶ 220-21, 225).  Accordingly, Plaintiffs have properly pled causation.

**3.      Plaintiffs' Claims Are Not Subject to the Pleading Requirements of FED. R. CIV. P. 9(b)**

Defendants erroneously argue that Plaintiffs are required to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  (Def. Mem. at 51-52.)  Defendants are wrong.  "Generally, pleadings alleging breaches of fiduciary duties under ERISA are scrutinized under the notice pleading standards of Federal Rule of Civil Procedure 8(a)."  *Pietrangelo*, 2005 WL 1703200, at *9 (citing cases).  *See also Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995) ("Rule 9(b) is applicable where the plaintiffs allege fraud, but not where they simply allege breaches of ERISA fiduciary duties."); *Beesley v. Int'l Paper Co.*, No. 06-CV-0703, 2009 WL 260782, at *2 (S.D. Ill. Feb. 4, 2009) ("Courts generally hold that a claim for breach of fiduciary duty under ERISA are not subject to the heightened pleading requirements even though some of the allegations of breach of fiduciary duty under ERISA . . . arguably sound in fraud or deceit.") (citations omitted).[34]

An allegation that ERISA fiduciaries breached their obligations by failing to provide complete and accurate information concerning the employer's true financial condition does not sound in fraud and, thus, is not subject to the heightened pleading standards of Rule 9(b).  *See*, *e.g.*, *Polaroid*, 362 F. Supp. 2d at 469-70.  Indeed, even where plaintiffs allege that defendants failed to act reasonably in light of adverse circumstances created by the fraudulent activity of others, Rule 8(a) – not Rule 9(b) – applies.  *Pietrangelo*, 2005 WL 1703200, at *9.  This is because the legal standard is not merely whether Defendants knew of the truth, but whether they knew or should have known.  *In re Unisys Sav. Plan Litig.*, 74 F.3d  at 434; *In re Enron Corp.*

---

[34]      Neither *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), nor *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), have changed the fundamental principle that Rule 8(a)'s notice pleading standard applies to the Complaint.  *See*, *e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (a complaint sufficiently alleges ERISA claims for breach of fiduciary duty if the facts pled give the defendant fair notice of what the claim is and the grounds upon which it rests.).

*Securities, Derivative & ERISA Litig.* 284 F. Supp. 2d 511, 547 (S.D. Tex. 2003) (citing Department of Labor regulations, 29 C.F.R. § 2550.404a-1(b).  Accordingly, Plaintiffs need not plead that Defendants knew their statements were inaccurate.

### 4.    Defendants Alleged Misstatements Were Made in a Fiduciary Capacity

Plaintiffs allege that Defendants misled Plan participants in their Plan communications, including SPDs and SEC filings incorporated into SPDs.   There is no question that Plan communications, such as the SPD, are made in a fiduciary capacity.   In addition, SEC filings which are incorporated into and partly comprise an SPD are fiduciary representations.  *See In re WorldCom Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 766 (S.D.N.Y. 2003) ("Those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not violate ERISA if the filings contain misrepresentations.   Those who are ERISA fiduciaries, however, cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings."); s*ee also* Dann, 708 F. Supp. 2d at 493 (allowing a claim for breach of duty to disclose where Defendants allegedly mislead plan participants in incorporated SEC filings); *Merck Vioxx*, 2009 WL 790452, at *5 (misrepresentations in SEC filings incorporated into plan communications can form basis of a breach of fiduciary duty); *Merck*, 2006 WL 2050577, at *15-17 (same); *Pietrangelo*, 2005 WL 1703200, at *6-7 (upholding breach of fiduciary duty claim based on misrepresentations in SEC filings incorporated into plan communications); *Honeywell*, 2004 WL 3245931, at *9 (same).[35]

---

[35]    Numerous courts have determined that SEC filings incorporated into Plan documents constitute representations made in a fiduciary capacity.  *In re Enron*, 284 F. Supp. 2d at 555; In Re Xcel Energy, Inc. Secs, Deriv. & "ERISA" Litig., 312 F. Supp. 2d 1165, 1182 (D. Minn. 2004)*; Smith v. Aon Corp.*, No. 04-CV-6875,  2006 WL 1006052, at *6 (N.D. Ill. Apr 12, 2006); *Hill v. The Tribune Co.*, No. 05-CV-2602, 2006 WL 2861016, at *19 (N.D. Ill. Sept.29, 2006). ("[C]ases consistently hold that incorporating SEC filings into summary plan descriptions of ERISA plans makes the statements in the SEC filings statements made in the fiduciaries' ERISA capacity"); *Patten v. Northern Trust Co.*, No. 08-CV-5912, 2010 WL 894050, at *12 n. 16 (N.D.

Here, the Company's SEC filings were clearly incorporated into Plan documents. Complaint ¶ 94; Savings Plan SPD, Complaint, Ex. G (Dkt. No. 39-6) at 17. Having acted in a fiduciary capacity, Defendants are liable under ERISA for communicating misleading statements to Participants.

## E.   PLAINTIFFS HAVE PROPERLY ALLEGED A BREACH OF THE DUTY OF LOYALTY

ERISA provides a claim for breach of duty when fiduciaries engage in activities constituting a conflict of interest. *See McMahon v. McDowell*, 794 F.2d 100, 110 (3d Cir. 1986), *cert. denied* 459 U.S. 1069 (1982). ERISA fiduciaries must "avoid placing themselves in a position where their acts as directors or officers of the corporation will prevent their functioning with complete loyalty to participants demanded of them as trustees." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982); *Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361, 1369 (N.D. Ga. 2004) (quoting *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 251-52 (1993)); *see also* 29 U.S.C. § 1104(a)(1)(B) ("[F]iduciaries of an ERISA plan are to avoid any conflicts of interest with their duty to act 'solely in the interest of the participants and the beneficiaries' of an ERISA plan."). "This duty may, in some circumstances, require the fiduciary to step aside in favor of a neutral referee, or at the least, to conduct an explicit inquiry into the potential for conflict of interest." *McMahon*, 794 F.2d at 110 (citing *Donovan*, 680 F.2d at 27).

Plaintiffs have properly alleged that Defendants breached their fiduciary duty of loyalty. As set forth in the Complaint, the compensation of a number of Defendants, including Defendants Alter, Rosoff and Browne was in the form of stock awards and option awards.

---

Ill. March 9, 2010) ("ERISA fiduciaries, however, may violate their fiduciary obligations if they disseminate false information, including false SEC filings, to plan participants."). The cases cited by Defendants represent a small minority courts that have not been followed by the Courts within this Circuit.

Complaint at ¶ 198.   "Because the compensation of at least some of the Defendants was significantly tied to the price of Advanta stock, at least certain of the Defendants had incentive to keep the Plans' assets heavily invested in Advanta stock on a regular, ongoing basis."   *Id*. at ¶ 199.   Acting on that incentive, Defendants chose to protect their own interests by selling millions of dollars of their personal holdings of Company stock when they knew or should have known of significant financial problems and improprieties at Advanta.   *Id*. at ¶¶ 187-197; 202-205. Nonetheless, Defendants failed to exercise the same level of prudence with respect to Plan.   In particular, Defendants breached their duty of loyalty by (1) "failing to timely engage independent fiduciaries who could make independent judgments concerning the Plans' investments in the Company's own securities" (*id*. at ¶ 230) and (2) failing to inform participants of material negative information concerning their investments in the Company Stock Fund.   *Id*. at ¶ 202.

These allegations are more than sufficient to state a claim for breach of ERISA's duty of loyalty.   *See In re YRC Worldwide, Inc. ERISA Litig*., No. 09-CV-2593, 2010 WL 4386903, at *9 (D. Kan. Oct. 29, 2010) ("Plaintiffs respond, however, that defendants would benefit from an inflated stock price, while participants, who hold the stock as a long-term retirement fund, would prefer an uninflated stock.   The Court agrees that this theory of divergent interests is sufficiently plausible to support a conflict-of-interest claim at this stage."); *In re Pfizer Inc. ERISA Litig*., 2009 WL 749545, at *13 (upholding breach of loyalty claim where "Defendants engaged in a pattern of deception . . . and failed to obtain independent advice when conflicts of interest were present."); *Smith*, 2006 WL 1006052, at *7 (allowing conflict claim where Defendants concealed the company's bad business practices to boost Defendants' net worth, and to artificially inflate the company's stock price); *Woods v. Southern Co*., 396 F. Supp. 2d 1351, 1368 (N.D. Ga.

2005); *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02-CV-8324, 2004 WL 407007, at *5 (N.D. Ill. Mar. 3, 2004).

Nonetheless, Defendants erroneously contend that Plaintiffs' have only alleged a "theoretical" or "potential" conflict.  Defs. Mem. at 55-56.  To the contrary, the Complaint contains extensive factual allegations regarding Defendants' conduct and trading activity to demonstrate an actual conflict between Defendants' personal financial interests and those of the Plan and Plan participants.  (Complaint ¶¶ 6; 198-205, 225-230).  Indeed, "[t]hroughout the Class Period, Company insiders sold 598,890 shares of their Advanta stock for proceeds of over $26.6 million."  (Complaint at ¶ 204).  Defendants Rosoff, Botel, Weisenstock, and Brown personally reaped millions of dollars from their individual stock sales.  *See* ¶¶ 115, 119, 205. While these Defendants were profiting from their investments, they did nothing to protect the Plans' investments.[36]

Ultimately, "the determination of a conflict is a question of fact, making it inappropriate for disposition at this stage of the pleadings."  *In re Westar Energy, Inc.*, No. 03-CV-4032, 2005 WL 2403832, at *22 (D. Kan. Sept. 29, 2005). Accordingly, Plaintiffs' conflict of interest claims have been appropriately stated.

## F.     THE MONITORING COUNT STATES A CLAIM

The fiduciary duty to monitor is firmly entrenched under ERISA.   An appointing fiduciary is required to evaluate an appointee's performance at regular intervals to insure that the plan is being properly managed in compliance with the plan terms and in accordance with

---

[36]     Defendants rely on numerous cases which are readily distinguishable from the facts alleged here.  *See* Defs. Mem. at 55-56.  Unlike those cases, Plaintiffs' conflict of interest claim is not based purely on the fact that Defendants' compensation was stock-based or that their compensation was tied to the performance of Advanta Stock.   Rather, as set forth above, Plaintiffs have pled additional facts with respect to Defendants' trading histories and conduct that demonstrate the existence of an actual conflict.

ERISA.  *See In re Schering-Plough ERISA Litig.*, 2010 WL 2667414, at *8 ("Implicit in the fiduciary duties attaching to persons empowered to appoint and remove plan fiduciaries is the duty to monitor appointees ... includ[ing the] duty to monitor appointees' actions."); *Merck*, 2006 WL 2050577, at *17 ("The power to appoint, retain, and remove members of the MPIC creates a fiduciary duty under ERISA to monitor the MPIC.").   An appointing fiduciary thus has an affirmative obligation to take "prudent and reasonable action to determine whether the [appointees] [a]re fulfilling their fiduciary obligations" and "to remedy any violations which might have already occurred."  *Honeywell*, 2004 WL 3245931, at *15 (upholding monitoring claim where Defendants "knew or should have known that those they appointed were breaching their fiduciary duties by deliberately misrepresenting or failing to disclose information, and by continuing to invest Plan assets in an imprudent manner"); *Pfizer*, 2009 WL 749545, at *9 (duty to monitor includes duty to review fiduciary performance).

The duty to monitor also includes the duty to keep appointees informed of material information that the appointees need in order to perform their responsibilities.  *See Glaziers v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1180-82 (3d Cir. 1996); *In re Enron*, 284 F. Supp. 2d at 657; *Rankin*, 2003 WL 21995176, at *20; *Stein v. Smith*, 270 F. Supp. 2d 157, 174 (D. Mass. 2003); *Polaroid*, 362 F. Supp. 2d at 477; *In re Syncor*, 351 F. Supp. 2d at  986; *In re WorldCom*, 263 F. Supp. 2d at 765 (finding failure to monitor claim sufficient where it was alleged that the appointing fiduciary "fail[ed] to disclose to the 'Investment Fiduciary' . . . material facts he knew or should have known about the financial condition of WorldCom"); *Cress v. Wilson*, No. 06-CV-2717, 2007 WL 1686687, at *8 (S.D.N.Y. June 6, 2007); *Shirk*, 2007 WL 1100429, at *17 (upholding claim for "failing to provide material information concerning Fifth Third's financial

and operating problems, which were necessary for the appointed fiduciaries to fulfill their responsibilities").

Whether the duty to monitor has been breached is a fact-based determination that is not appropriately resolved on a motion to dismiss. *Sprint*, 388 F. Supp. 2d at 1232; *In re JDS Uniphase Corp. ERISA Litig.*, No. 03-CV-04743, 2005 WL 1662131, at *10 (N.D. Cal. July 14, 2005) ("whether a defendant's duty to monitor included the duty to provide information to his appointees requires a fact intensive analysis that is inappropriate at this stage of the proceeding"); *Syncor*, 351 F. Supp. 2d at 986 (declining to determine the scope of the duty to monitor "at this stage of the litigation"); *Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1099 (N.D. Ill. 2004) ("The question of whether Director Defendants breached their duty to monitor Committee Defendants is a question that will require extensive discovery and factual development.").

Here, the Plaintiffs allege that Director Defendants who had appointing responsibilities breached the above duties. The Complaint provides that the Director Defendants violated their fiduciary duty to monitor by failing to: monitor and evaluate the performance of their appointees with respect to Plan investments, establish proper procedure to monitor their appointees; provide complete and accurate information to their appointees such that they could make informed decisions with respect to Plan investments; ensure that the monitored fiduciaries understood the true extent of Advanta misrepresentations concerning its financial condition; and remove those appointees whose performance was inadequate. *See* Compl. ¶¶ 233-242. Relying on *In re Washington Mutual, Inc. Securities, Derivative & ERISA Litigation*, No. 08-MD-1919, 2009 WL 3246994 (W.D. Wash. Oct. 5, 2009), Defendants argue that Count III should be dismissed because the Complaint does not contain enough information on the Directors' appointment and

review procedures.  This argument misses the mark.  First, the Court in *Washington Mutual* sustained Plaintiffs' monitoring claim on the ground that the WaMu Directors failed to provide material information to their appointees.  Second, unlike the complaint in *Washington Mutual*, the Complaint here contains specific allegations regarding the Directors' appointment and monitoring procedures.  It is undisputed that the Director Defendants had the authority to appoint the Administrative Committee.  Complaint at ¶ 79.  Pursuant to the Charter of the Compensation Committee, the Board, through its Compensation Committee, had the responsibility to review and approve all company-wide benefit programs.  *Id*. at ¶ 80.  In connection with those obligations, the Compensation Committee was charged with the responsibility to "review major changes to the Company's Benefit Programs including fiduciary issues, major plan revisions." *Id*. at ¶ 80.  In light of the dire circumstance set forth in the Complaint, it is reasonable to infer that the Director Defendants breached their fiduciary obligations by failing to properly review Plan investment issues in connection with the Company Stock Fund.

Next, Defendants argue that the monitoring claim should be dismissed because the Director Defendants are not required to "give investment advice" or "opine on a stock's condition."  Defs. Mem. at 59-60.  This argument plainly mischaracterizes Plaintiffs' claim.  The Complaint does not allege that the Director Defendants were obligated to provide investment consulting; however, they were required to protect the Plans and their participants by monitoring the fiduciaries and providing them with complete and accurate information that fiduciaries must have in order to prudently manage a plan and its assets.  *See* Complaint at ¶¶ 237-39. Accordingly, Count III states a claim.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety.  To the extent that the Motion is granted in whole or in part, Plaintiffs respectfully move for leave to file an amended Complaint.

DATED:  December 20, 2010                    Respectfully submitted,


/s/ Edward W. Ciolko
**BARROWAY TOPAZ KESSLER**
   **MELTZER & CHECK, LLP**
Edward W. Ciolko
Mark K. Gyandoh
Julie Siebert-Johnson
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

*Interim Class Counsel*

Robert A. Izard
William Bernarduci
IZARD NOBEL LLP
29 South. Main Street, Suite 215
West Hartford, CT 06107
Tel.:  (860) 493-6292
Fax.:  (860) 493-6290

*Attorneys for Plaintiff Paula Hiatt*

Michael D. Donovan
DONOVAN SEARLES, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Tel:  (215) 732-6067
Fax:  (215) 732-8060

Edwin J. Mills.
Michael J. Klein
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Tel:  (212) 687-7230

Fax:  (212) 490-2022

Gregory M. Egleston
EGLESTON LAW FIRM
360 Furman Street, Suite 443
Brooklyn, NY 11201
Tel: (646) 227-1700
Fax: (646) 227-1701

*Attorneys for Plaintiffs Pamela Yates & Joann Claflin*

**BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
Telephone:  (610) 667-6200
Facsimile:  (610) 667-9029

*Attorney for Plaintiff Mathew Ragan*

**CERTIFICATE OF SERVICE**

I certify that, on December 20, 2010, I caused the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint to be filed with the Clerk of the Court via the CM/ECF system, which will deliver notification of filing to all counsel of record.

/s/ Edward W. Ciolko
Edward W. Ciolko