# EXHIBIT A

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 27 2004

GREGORY C. LANGHAM
CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Case No. 02-RB-464 (CBS)
(Consolidated with Civil Action Nos. 02-RB-470, 02-RB-482, 02-RB-602, 02-RB-714)

In re QWEST SAVINGS AND INVESTMENT PLAN ERISA LITIGATION

---

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

---

**Blackburn, J.**

This matter is before me on the following motions: 1) the motion to dismiss of defendant the Qwest Defendants [# 171], filed June 30, 2003; 2) the motion to dismiss of defendant Bankers Trust, now known as Deutsche Bank, [# 172], filed June 30, 2003; 3) the motion to dismiss of defendant Nacchio [# 173], filed June 30, 2003; 4) the motion to dismiss of the Director Defendants [# 174], filed June 30, 2003; 5) the motion to dismiss of the Committee Defendants [# 175], filed June 30, 2003; and 6) the motion to dismiss of defendant Woodruff [# 176], filed June 30, 2003. The matter is fully briefed, and I find that oral argument is unnecessary.

### I. JURISDICTION

This plaintiffs' claims arise under the Employee Retirement Income and Security Act (ERISA). 29 U.S.C. §§ 1001 - 1461. I have jurisdiction over these claims under 29 U.S.C. § 1132(e)(1).

### II. STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), I must determine whether the allegations set forth in the complaint, if true, are sufficient to state a claim within the meaning of FED. R. CIV. P. 8(a). "[T]he complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim that would entitle him to relief." ***Conley***

***v. Gibson,*** 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); ***see Daigle v.***

***Shell Oil Co.***, 972 F.2d 1527, 1533 (10th Cir.1992). The complaint must be construed

in the light most favorable to plaintiff, and its allegations must be taken as true.

***Robinson v. City and County of Denver*** 39 F. Supp. 2d 1257, 1262-1263 (D. Colo.

1999) (citing ***Daigle v. Shell Oil Co.***, 972 F.2d 1527, 1533 (10th Cir.1992)). However,

the court need not assume that the plaintiff "can prove facts which he has not alleged or

that the defendants have violated the . . . laws in ways that have not been alleged."

***Assoc. Gen'l Contractors v. Calif. State Council of Carpenters***, 459 U.S. 519, 526

(1983).

As with all motions to dismiss, my evaluation of the defendants' motions to

dismiss simply will determine whether the plaintiffs' allegations are sufficient to state

ERISA claims against the various defendants. The question of whether or not the

plaintiffs can prove their allegations must be answered another day, in another context.

### III. BACKGROUND

The complaint at issue is the Second Amended Consolidated Complaint

(complaint) [# 164], filed May 29, 2003. The plaintiffs' suit is an ERISA civil

enforcement action. The plaintiffs seek relief on behalf of the Qwest Savings &

Investment Plan (QSIP or Plan) and all of the participants and beneficiaries of QSIP.

The plaintiffs seek to have this action certified as a class action under FED. R. CIV. P.

23. I have addressed class certification in a separate order. QSIP is an ERISA plan

established and operated by Qwest Communications International, Inc. (Qwest). QSIP

was formed in December, 2001, when two predecessor plans were merged. The

predecessor plans are 1) the US West Savings Plan & Employee Stock Ownership

2

Plan (US West Plan); and, 2) the Qwest Communications 401(k) Savings Plan. I will refer to these plans as the Predecessor Plans. The merger of the plans took place after US West and Qwest merged their businesses and began operating under the name Qwest.

The Plan has two major components that provide for the investment of Plan assets in Qwest stock. First, the Savings Plan provided eight different investment options to Plan participants, and permitted Plan participants to direct the investment of their Plan contributions among the investment options provided. Each participant maintained a separate account in the Plan. One of the investment options is referred to as the Qwest Shares Fund. Plan participants directed that their contributions be used to purchase Qwest stock when they directed that some or all of their contributions be invested in the Qwest Shares Fund.

Second, the Employee Stock Ownership Plan (ESOP) was designed to offer employees an ownership stake in the company, through the Plan. Plan documents require that contributions directed to the ESOP be invested in Qwest stock. Qwest provided voluntary matching contributions in the form of Qwest stock. It appears that the US West ESOP operated in a similar fashion.

The plaintiffs allege that each of the defendants took various actions as ERISA fiduciaries of QSIP and/or the US West Plan. In taking these actions, the plaintiffs allege, the defendants breached their fiduciary duties to the QSIP and the US West Plan, and the participants of those plans. These breaches of fiduciary duty, the plaintiffs claim, caused substantial financial losses to the QSIP, the US West Plan, and their participants. I summarize below the nature of the allegations against each group of defendants. However, I note that the amended complaint is 80 pages in length.

Thus, I do not describe in detail all of the allegations against the defendants. On various bases, the defendants argue that the plaintiffs' factual allegations are not sufficient to state ERISA enforcement claims against them.

To state a claim for breach of an ERISA fiduciary duty, the plaintiff must allege that the defendant 1) was a fiduciary of the ERISA plan; 2) was acting in his, her, or its fiduciary capacity; 3) was engaged in conduct constituting a breach of fiduciary duty; and 4) that the plan suffered losses as a result of the breach. 29 U.S.C. § 1109. *See, e.g., Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000) (ERISA claim requires proof that defendant acted as ERISA fiduciary); *Allison v. Bank One-Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002) (action as ERISA fiduciary, breach of duty, and resulting loss necessary to establish ERISA claim). Several of the defendants argue that the plaintiffs have not alleged facts that, if true, show that the defendants were fiduciaries of the Plan when they took the challenged actions. Several defendants argue also that the plaintiffs have not sufficiently alleged that the defendants' actions constitute a breach of fiduciary duty under the applicable ERISA standards.

For the most part, I conclude that the plaintiffs have alleged facts that, if true, show that the defendants were fiduciaries of the Plan when they took the challenged actions. With few exceptions, I conclude also that the facts alleged in the amended complaint, if true, sufficiently allege breaches of the defendants' ERISA fiduciary duties. The plaintiffs allege that the Plan suffered huge losses as a result of the defendants' breaches of their ERISA fiduciary duties. The fact that the Plan suffered losses is not contested. With few exceptions, the defendants do not argue that the plaintiffs have not sufficiently alleged a causal connection between the alleged breaches of duty and the alleged losses.

4

## IV.  APPLICABILITY OF Fed. R. Civ. P.  9(b)

Some of the defendants argue that the plaintiffs' claims sound in fraud, and that, therefore,  the plaintiffs must plead fraud with particularity, as required by Fed. R. Civ. P.  9(b).  These defendants argue that the plaintiffs have not satisfied the enhanced pleading standard of Rule 9(b).  I hold that the plaintiffs' claims are ERISA fiduciary duty claims, not fraud claims.  Thus, I conclude that the Rule 9(b) pleading standard is not applicable to the plaintiffs' claims.

## V.  DEFENDANTS' ALLEGED ERISA FIDUCIARY STATUS AND ALLEGED BREACH OF FIDUCIARY DUTIES

Each of the defendants has moved to dismiss the amended complaint for failure to state a claim on which relief can be granted.  Various groups of defendants have jointly filed motions to dismiss.  Some defendants have adopted arguments asserted by other defendants.  The currently pending motions to dismiss address the Second Amended Consolidated Complaint.  Many of the currently pending motions adopt arguments made in motions to dismiss the First Amended Consolidated Complaint.  I have reviewed all of the briefing relevant to the two rounds of motions to dismiss that have been filed in this case.

A person is a fiduciary with respect to an ERISA plan if "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets". 29 U.S.C. § 1002(21)(A)(i).  A "person" includes entities such as corporations. 29 U.S.C. § 1002(9).  A person is an ERISA fiduciary only as to those aspects of the plan over which the person exercises authority or control.  *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters.*, 793 F.2d 1456, 1459-60 (5th Cir.1986). ERISA defines the term fiduciary in "*functional* terms of control and authority over the

plan." ***Mertens v. Hewitt Assocs.***, 508 U.S. 248, 262 (1993) (emphasis in original). A person who exercises such control is an ERISA fiduciary even if the person is not formally designated as a fiduciary. An ERISA fiduciary must act with "an eye single" toward the interests of plan participants. ***Pegram v. Herdrich***, 530 U.S. 211, 235 (2000). However, a sponsor of an ERISA plan is generally free to design the terms of a plan, including the benefits offered, and to amend a plan without triggering fiduciary status. ***Lockheed Corp. v. Spink***, 517 U.S. 882, 890 (1996). Such design decisions often are referred to as settlor functions. ***Id***.

In any case charging a breach of an ERISA fiduciary duty, the threshold question is whether the defendant was acting as an ERISA fiduciary when taking the actions alleged in the complaint. ***Pegram v. Herdrich***, 530 U.S. 211, 226 (2000). If the person was acting as an ERISA fiduciary, then it must be determined if their actions constitute a breach of fiduciary duty, and whether any breach caused the plaintiff to suffer losses.

### A. Qwest Defendants

The defendants who have grouped themselves under the name Qwest Defendants are Qwest Communications International, Inc. (Qwest), Qwest Asset Management Company, Qwest Plan Design Committee, and Debbie Jean Colia. I note that Colia has been dismissed from this action. However, the order of dismissal, which reflects the stipulation that led to the dismissal of Colia, provides that the court shall "evaluate (her) acts and omissions, if any, and determine whether such acts or omissions, if any, give rise to liability under ERISA, as if (she) remained (a defendant) in this case." *Order regarding joint and unopposed motion to dismiss* [# 251], filed April 28, 2004. Thus, I will address the claims against Colia as if she still was a defendant.

6

Qwest is the corporation that merged with U.S. West, and which now operates under the name Qwest. Qwest is the plan sponsor and administrator of the relevant plans. Qwest Asset Management (QAM) is a Colorado corporation, and a wholly owned subsidiary of Qwest. QAM is the successor in interest to the US West Investment Management Company. QAM is a registered investment advisor and a named fiduciary of the Plan for the purposes of management and investment of Plan assets. The plaintiffs allege that QAM is an alter-ego of Qwest which acts as a mere instrumentality of Qwest. On this basis, the plaintiffs allege that Qwest is subject to the liabilities of QAM. *Complaint*, ¶ 18. The Plan Design Committee is a committee designated by the Qwest Board of Directors in about February, 2001, to have shared responsibility with other entities to amend the Plan and to advocate needed plan design changed.

The plaintiffs allege that Qwest breached its ERISA fiduciary duties when it 1) maintained the Qwest Shares Fund as an investment option in the Savings Plan, knowing that Qwest stock was not a prudent investment; 2) exerted undue influence on Plan participants to maintain their investments in the Qwest Shares Fund; 3) delayed lifting restrictions on the sale of certain Fund Shares; 4) provided Qwest stock to the Plan, or directing the Plan to purchase Qwest stock; 5) made company matching contributions in stock rather than cash; 6) repeatedly communicated false and misleading material information relevant to the value of Qwest stock to Plan participants; and 7) failed to supervise Plan fiduciaries, and creating a management structure that made adequate supervision difficult or impossible.

The plaintiffs allege that QAM violated its ERISA fiduciary duties by 1) failing to investigate the advisability of the merger of US West and Qwest, and the effect of the

7

merger on the value of shares held by US West Plan participants; 2) failing to investigate Qwest's reported financial results, and failing to provide sufficient information to Plan participants to permit them to fairly evaluate their investments in the Qwest Shares Fund, and to achieve the purposes of the Plan; and 3) failing to remove itself from the confialt of interest presented when QAM's CEO also served as a member of the Investment Committee, which directed QAM, and Investment Committee members also served as directors of QAM.

The plaintiffs' claims against the Design Committee and Colia are limited. The plaintiffs allege that these defendants breached their fiduciary duties when they failed to amend the Plan in a timely manner to lift restrictions on trading on Qwest stock in individual accounts, and when they retained the Qwest Shares Fund as an investment option during times when that fund was an imprudent investment. *Complaint*, ¶ 176. The plaintiffs allege that Colia had authority, along with other committee members, to make amendments to the Plan. *Complaint*, ¶ 21. The Plan Design Committee is alleged to have had "shared responsibility" to amend the Plan. *Complaint*, ¶ 31.

1. Fiduciary Actions Versus Settlor Functions - The Qwest defendants argue that several of their alleged actions are settlor functions, not actions by an ERISA fiduciary. These actions are a) retention of the Qwest Shares Fund as an investment option; b) delay in removing restrictions on participants' sale of shares from the Qwest Shares Fund; c) improper limitations on purchases of Qwest stock; and d) grants of Qwest stock, or cash for the purchase of Qwest stock, to the ESOP.

Again, the plaintiffs' claims against the Design Committee and Colia are limited. The plaintiffs allege that these defendants breached their fiduciary duties when they failed to amend the Plan in a timely manner to lift restrictions on trading on Qwest stock

8

in individual accounts, and when they retained the Qwest shares fund as an investment option during times when that fund was an imprudent investment. *Complaint*, ¶ 176. The Design Committee and Colia argue that these actions are settlor functions, not ERISA fiduciary actions.

The plaintiffs allege that the Qwest Defendants knew, or reasonably should have known, that continued investment in Qwest shares, and continued holding of Qwest shares by the Plan, was a highly risky investment. A loyal fiduciary, the plaintiffs allege, would have concluded that diversification or divestiture was the only prudent course if the security of the Plan's investment was the goal. The plaintiffs claim the Qwest defendants had discretion to act to prevent further investment by Plan participants in highly risky Qwest shares, and to permit divestiture from this highly risky investment. Failure by the Qwest Defendants to exercise their discretion to minimize this alleged risk arguably implicates actions by the Qwest defendants as ERISA fiduciaries because the alleged actions involve functional authority and control over the Plan and its assets.

Decisions to retain the Qwest Shares Fund as an investment option, to delay the removal of restrictions on participants' sale of shares from the Qwest Shares Fund, and to place improper limitations on purchases of Qwest stock, are decisions that arguably have a direct effect on Plan assets. The same is true of the alleged decisions to retain the Qwest Shares Fund as an investment option, when the defendants allegedly knew this option was highly risky, and when they had to ability to remove this investment option. Thus, it is conceivable that the plaintiffs could prove that such actions constituted ERISA fiduciary actions, and that the defendants' alleged actions constitute a breach of their fiduciary duties.

2. Business Statements - The Qwest Defendants also argue that they cannot be liable as ERISA fiduciaries for business statements. The plaintiffs allege that certain documents Qwest filed with the SEC contained material falsehoods. These SEC documents were, according to the plaintiffs, incorporated into prospectuses and summary plan description documents issued to Plan participants. The plaintiffs also allege that the defendants conveyed similar false information to Plan participants in other forms.

Conveying information about the value and likely future of plan benefits and assets is a fiduciary act under ERISA. *Varity Corp. v Howe*, 516 U.S. 489, 502 (1996). To the extent SEC documents were incorporated into Plan documents, as the plaintiffs allege, those statements are subject to analysis as fiduciary acts under ERISA. In *Varity*, the Court noted that a corporate official's statements about the company's financial condition generally are not fiduciary acts under ERISA. However, if such statements are sufficiently tied to the assets and administration of an ERISA plan, the statements can constitute fiduciary acts. *Id.* at 503 - 06. In the context of the facts alleged by the plaintiffs, it is conceivable that the plaintiffs could prove facts showing that the statements allegedly made by the Qwest Defendants were sufficiently tied to the Plan participants' ERISA benefits to bring those statements within the Qwest Defendants' ERISA fiduciary duties.

Knowing deception of a plan's participants concerning matters significant to the plan's assets violates a fiduciary's duty to act solely in the interest of plan participants. *Id.* at 505 - 06. The plaintiffs allege that the defendants made statements that were materially false and misleading, including statements about the value of the Plan's

portfolio of Qwest stock and the risk of holding that stock. Such statements may be shown to constitute a breach of the defendants' fiduciary duties.

3. Failure to Supervise and Interlocking Committees - The plaintiffs allege that the Qwest Defendants failed to adequately monitor and supervise the fiduciaries they appointed to administer the Plan. Further, the plaintiffs allege that the Qwest Defendants appointed interlocking committee members between and among Qwest, the named fiduciaries of the Plan, and Qwest Asset Management. This structure, the plaintiffs claim, precluded appropriate monitoring of QAM by the fiduciaries, and established a conflict of interest. The Qwest Defendants argue that these actions do not constitute ERISA fiduciary actions.

Again, a sponsor of an ERISA plan generally is free to design the terms of a plan, including the benefits offered, and to amend a plan without triggering fiduciary status. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). However, the exercise of the power to appoint, retain, and remove plan fiduciaries constitutes discretionary authority over the management or administration of the Plan. *Coyne & Delany Co. V. Selman*, 98 F.3d 1457, 1464-65 (4th Cir. 1996) (collecting cases). This power includes a duty to monitor plan fiduciaries to ensure that their performance complies with the plan, and with the applicable legal standards. *Id*. The defendants note that ERISA permits an officer, employee, or agent of a plan sponsor also to hold a position as a plan fiduciary. 29 U.S.C. § 1108(c)(3). The fact that such an arrangement is permissible, however, does not mean that all such arrangements necessarily are immune from claims that the fiduciaries, or the sponsor acting as a fiduciary, breached their duties. If the Qwest Defendants did not adequately supervise Plan fiduciaries, and created a management structure that precluded adequate supervision, they may have

11

violated their duties as Plan fiduciaries. Assuming the facts alleged in the amended complaint to be true, it is conceivable that the plaintiffs could prove facts that would entitle them to relief based on these allegations.

4. Voting of Plan Shares - The plaintiffs allege that several of the defendants violated their ERISA fiduciary duties when they failed to vote US West stock held by the US West ESOP against the merger of Qwest and US West. In essence, the plaintiffs allege that these fiduciaries knew or should have known that the merger of Qwest and US West would harm the value of the value of the US West stock held by the US West ESOP, and the fiduciaries should have acted to avert that harm by voting the ESOPs stock against the merger. According to the plaintiffs, the ESOP held about 38.7 million shares of US West stock, about 7.7 percent of outstanding stock, at the time of the merger vote. Over 30 million of those shares were voted in favor of the merger. In the end, nearly 374 million shares, about 74 percent of all outstanding US West shares, were voted in favor of the merger. *Qwest's motion to dismiss First Amended Consolidated Complaint*, filed August 22, 2002, p. 12, n. 20.

The Qwest Defendants and Bankers Trust make several arguments against this claim. I will address only one. These defendants argue that the plaintiffs could not prove that the voting of the ESOP's shares in favor of the merger caused any loss to the Plan or to the plaintiffs. In order to establish a claim for breach of ERISA fiduciary duty, the plaintiffs must establish some causal link between the alleged breach of duty and the loss the plaintiffs seek to recover. *Allison v. Bank One-Denver*, 289 F.3d 1223, 1239 (10th Cir. 2002).

Even if all of the ESOP's shares had been voted against the merger, the merger still would have passed by an overwhelming margin. Even if the defendants had voted

12

the ESOP shares as the plaintiffs allege they should have, the merger would have been approved, and the Plan and the plaintiffs still would have incurred the losses they allege were caused by the merger.  The plaintiffs allege that the ESOP, holding 7.7 percent of outstanding US West stock, "was in a position to exercise considerable influence in the proxy vote on the proposed merger." *Complaint*, ¶ 82.  Thus, they claim they may be able to prove that the defendants' failure to exercise this alleged influence was a breach of fiduciary duty that caused a loss to the Plan and its participants. *Plaintiffs' Response to Motions to Dismiss First Amended Consolidated Complaint*, filed October 31, 2002, p. 41.

I conclude that the plaintiffs could not prove facts demonstrating that the defendants' voting of the ESOP shares, or their alleged failure to exercise the "influence" associated with the shares, caused a loss to the Plan, or to the other plaintiffs.  Again, even if all of the ESOP shares were voted against the merger, the merger would have been approved.  The proposition that the defendants could have stopped the merger by exercising their influence is far too speculative to support the plaintiff's claim.  Proof of this proposition would require speculative hindsight testimony from numerous US West shareholders indicating that they would have voted differently had the defendant ESOP fiduciaries voted differently, or had the ESOP fiduciaries exercised their alleged influence differently.  I conclude that the plaintiffs can prove no set of facts in support of this claim that would entitle them to relief.

## B. Director Defendants

In their Fifth Claim for Relief, the plaintiffs allege that the defendant directors of Qwest, including former Qwest CEO Nacchio, breached their fiduciary duties to the Plan and its participants by 1) repeatedly communicating "false and misleading material

13

information relevant to the value of the Company and of Fund Shares to employee-participants"; 2) establishing a structure for the Plan that created inherent conflicts of interest and inadequate protections of participant interests; and, 3) failing to monitor and supervise those to whom the directors delegated their fiduciary duties. *Complaint*, ¶ ¶ 166-167. In addition, the plaintiffs allege that the directors decided to 1) issue Qwest stock for sale to the Plan, rather than having the Plan buy stock on the open market; 2) treat certain documents filed with the SEC, which contained material inaccuracies, as a Plan document; and 3) make company matching contributions to the Plan in stock rather than in cash. *Complaint*, ¶¶ 15(a), 24, 28, 55, 92.

In their motion to dismiss, the directors argue that the plaintiffs have not alleged conduct by the directors that gives rise to ERISA fiduciary status, and that the alleged actions are not a beach of ERISA fiduciary duties. The directors are not named fiduciaries of the Plan. They argue that the actions they allegedly took cannot be seen as ERISA fiduciary actions because they cannot be seen as exercises of discretionary authority or responsibility in the administration of the Plan. I disagree.

Decisions to issue Qwest stock for sale to the plan, and to make matching contributions with Qwest stock rather than cash, are decisions that arguably have a direct effect on Plan assets. This is particularly true when the defendants allegedly knew that Qwest stock was a highly risky investment. Thus, it is conceivable that the plaintiffs could prove that such actions constituted ERISA fiduciary actions. Further, in the context of the other allegations in the Complaint, it is conceivable that the plaintiffs could prove that those actions breached the Director Defendants' fiduciary duties. The plaintiffs also allege that certain documents that Qwest filed with the SEC contained material falsehoods. These allegations are essentially the same as those discussed in

14

Section V-A-2, above, and these allegations are sufficient to state a claim for breach of the Director Defendants' ERISA fiduciary duties. This includes the plaintiffs' allegations concerning various statements allegedly made by Nacchio which, the plaintiffs allege, were sufficiently tied to the assets and administration of the Plan.

As with the Qwest Defendants, the plaintiffs also allege that the directors failed to adequately monitor and supervise the fiduciaries they appointed to administer the Plan. Further, the plaintiffs allege that the directors appointed interlocking committee members between and among Qwest, the named fiduciaries fo the Plan, and Qwest Asset Management. This structure, the plaintiffs claim, precluded appropriate monitoring of QAM by the fiduciaries, and established a conflict of interest. For the reasons discussed in Section V-A-3, above, I conclude that the plaintiffs' allegations are sufficient to state a claim that these actions were fiduciary actions, and that the Director Defendants breached their ERISA fiduciary duties in taking these actions.

### C. Committee Defendants

The defendants who have grouped themselves under the name Committee Defendants are the Investment Committee of the Qwest Savings and Investment Plan (Investment Committee), the Plan Administration Committee of the Qwest Communications 401(k) Savings Plan (Administration Committee), Kimberly Walker, Ian Ziskin, Allen R. Spies, Janet K. Cooper, Sean P. Foley, Thomas J. Matthews, Scott A. Berman, Todd Stanelle, and Mark Evans. I note that the listed individual defendants have been dismissed from this action. However, the order of dismissal, which reflects the stipulation that led to the dismissal of these defendants, provides that the court shall "evaluate their acts and omissions, if any, and determine whether such acts or omissions, if any, give rise to liability under ERISA, as if they remained defendants in

15

this case." *Order regarding joint and unopposed motion to dismiss* [# 251], filed April 28, 2004. Thus, I will address the claims against these individuals as if they still were defendants.

The Investment Committee is a named fiduciary of the Plan charged, *inter alia*, with responsibility for investments of the Plan, asset allocation, monitoring and review of trust performance, appointment and removal of trustees, and selecting investment options under the Plan. It appears that the Investment Committee's predecessor was a similar committee associated with the US West Plan. *Complaint*, ¶¶ 29, 34. The named individuals served on the Investment Committee and had other roles in Qwest and/or in Plan Administration Committee. Both the Investment Committee and the Administration Committee are named fiduciaries of the Plan and/or its predecessor plans. Much of the Committee Defendants' motion to dismiss is based on their argument that they were not acting as ERISA fiduciaries when they took the specific actions alleged in the amended complaint.

The plaintiffs allege that the Committee Defendants breached their ERISA fiduciary duties when they: 1) failed to investigate the advisability of the merger of US West and Qwest, and the effect of the merger on the value of shares held by US West Plan participants; 2) maintained the Qwest Shares Fund as an investment option in the Savings Plan, knowing that Qwest stock was not a prudent investment; 3) failed to direct the voting of Plan shares against the merger of US West and Qwest; 4) appointed QAM as the investment manager; 5) failed adequately to monitor the actions of Bankers Trust and QAM; 6) failed to investigate Qwest's financial performance and provide sufficient independent information to Plan participants; 7) decided to match employee contributions with company stock; 8) decided to require the ESOP to invest

16

exclusively in Qwest securities; and 9) failed to identify and resolve the conflict of interest presented when QAM's CEO also served as a member of the Investment Committee, which directed QAM, and Investment Committee members also served as directors of QAM.

The Committee Defendants argue that some of their alleged actions constitute settlor functions, which are not subject to the fiduciary duty provisions of ERISA. These actions include: 1) the designation of QAM as the investment manager; 2) the decision to match employee contributions with company stock; 3) the decision to require the ESOP to invest exclusively in Qwest securities; 4) and the decision to include a Qwest Shares Fund as a Plan investment option. As discussed above, concerning the Director Defendants, designation of QAM as the investment manager for the Plan was an exercise of power to appoint, retain, or remove a Plan fiduciary. The decision to match employee contributions with company stock, rather than cash, is a decision that arguably has a direct effect on Plan assets. These actions can constitute fiduciary action. If Qwest stock was a highly risky investment, as the plaintiffs allege, these actions also may be shown to be breaches of the Committee Defendants ERISA fiduciary duties.

The plaintiffs claim also that the Committee Defendants failed to provide Plan participants with the opportunity to obtain sufficient information to make an informed decisions about the participants' Plan investments. On various bases, the Committee Defendants argue that such actions do not amount to actions as an ERISA fiduciary. They argue that ERISA does not impose a duty to disclose financial information about a plan sponsor, to violate insider trading laws by investing plan assets based on insider information, to investigate a plan sponsor's statements, or to interfere with the

17

sponsor's basic business decisions. There may be truth in these statements, but I conclude that these arguments read the plaintiffs' allegations too broadly.

In essence, the plaintiffs allege that the Committee Defendants knew, or reasonably should have known, that continued investment of Plan contributions in Qwest shares, and continued holding of Qwest shares by the plan, was a highly risky investment. The plaintiffs allege that these defendants failed to relay information which reflected this risk to Plan participants and, instead, relayed materially false information to Plan participants. Further, the plaintiffs allege that the Committee Defendants were aware that the Plan assets were overly concentrated in Qwest stock. The plaintiffs claim that ERISA fiduciaries acting solely for the benefit of the Plan and its participants would have acted to minimize this risk, but the Committee Defendants did not act to minimize this risk. With this focus, the plaintiffs' allegations are sufficient to support the plaintiffs' claim that the Committee Defendants were acting as fiduciaries with regard to the Plan's decisions concerning the Plan's investments in Qwest shares. With this focus, the plaintiff's allegations do not seek to impose the wide ranging liability described by the Committee Defendants.

The Committee Defendants argue also that they cannot be seen as ERISA fiduciaries in relation to the requirement that the ESOP invest solely in Qwest stock, and the maintenance of the Qwest Shares Fund and an investment option in the Plan. They argue that they simply complied with the terms of the relevant plans with regard to these investments, and that they could not have been acting as fiduciaries when acting in compliance with the terms of the Plan. I disagree. Again, the plaintiffs allege that the Committee Defendants knew, or reasonably should have known, that continued investment Qwest shares, and continued holding of Qwest shares by the Plan, was a

18

highly risky investment. A loyal fiduciary, the plaintiffs allege, would have concluded
that diversification or divestiture was the only prudent course if the security of the Plan's
investment was the goal. Failure by the Committee Defendants to act to minimize this
alleged risk implicates their status as ERISA fiduciaries.

### D. Robert Woodruff & Robin Szeliga

Defendants Woodruff and Szeliga both held the position of Chief Financial
Officer (CFO) of Qwest at different relevant times. They named members of the
Investment Committee and served on the Investment Committee at various relevant
times. The allegations against Woodruff and Szeliga are generally the same as the
allegations against the Committee Defendants. Szeliga is alleged also to have had
control over all matters brought to the Investment Committee for decision while she was
CFO, and to have had "ultimate responsibility" for QAM during some or all relevant
times. *Complaint*, ¶ 34. Finally, Szeliga is alleged to have participated in one or more
of the all-employee meetings allegedly conducted by Nacchio in which false and
misleading statements were made with the intent and effect of causing Plan participants
to make discretionary investments in the Qwest Shares Fund. *Id.*

Szeliga and Woodruff adopt the arguments made by Qwest, the individual
directors, and the Committee Defendants. For the reasons outlined in this order, I
conclude that these arguments do not demonstrate that the plaintiffs' allegations are
insufficient to state ERISA fiduciary claims against Szeliga and Woodruff.

Woodruff argues also that the plaintiffs cannot state a claim against him for
events occurring after his tenure on the Investment Committee, or after his retirement
from Qwest. I conclude that the plaintiffs' factual allegations against Woodruff are

19

limited to specified dates, and do not seek to impose liability on Woodruff for actions Woodruff took after he left Qwest.

### E. Bankers Trust / Deutsche Bank

Defendant Bankers Trust Company served as the trustee of the Plan. Bankers Trust now is known as Deutsche Bank Trust Company Americas. I will refer to this defendant as Bankers Trust.

Bankers Trust served as the trustee for the US West Savings Plan/ESOP and, after the merger of Qwest and US West, as trustee of the Qwest Savings and Investment Plan. The plaintiffs allegations against Bankers Trust can be categorized into two groups. First, the plaintiffs allege that Bankers Trust violated its ERISA fiduciary duties when it continued to acquire Qwest stock for the Plan, failed to reduce the Plan's concentration in Qwest stock, failed to eliminate the Plan's holdings of Qwest stock, failed to properly evaluate information indicating that Qwest stock was a highly risky investment, and failed to properly convey this information to plan participants. Second, the plaintiffs allege that Bankers Trust improperly voted US West shares held by the US West Savings Plan/ESOP in favor of the merger of Qwest and US West. The plaintiffs claim this action violated Bankers Trust fiduciary duty and constituted a prohibited transaction under ERISA. I conclude that the first group of allegations state an arguable ERISA claim against Bankers Trust. However, I conclude that the second group of allegations do not constitute arguable claims against Bankers Trust.

Under the applicable trust agreement, Bankers Trust was required to follow employee designations with respect to investment choices in the Savings Plan, and to follow the company's decisions to invest matching contributions in Qwest stock. Banker's Trust says also that the trust agreement required it to vote Plan stock as

instructed by the Plan participant, and to vote shares as to which it received no direction in a particular manner. Bankers Trust argues that the plaintiffs have not alleged that Bankers Trust had any discretionary authority as to the actions allegedly taken by Bankers Trust, as described in the amended complaint. Rather, Bankers Trust says it acted solely as a directed trustee, and exercised no discretion concerning the actions in question. Bankers Trust argues that it cannot be liable for breach of ERISA fiduciary duties if it did not have discretionary authority concerning its actions.

Based on the plan document provisions and trust agreement provisions cited by Bankers Trust, it appears likely that Bankers Trust acted as a directed trustee under at least some relevant circumstances. However, with regard to the first group of allegations, the plaintiffs allege that Bankers Trust also played an active role in the operation of the Plan and exercised discretion concerning the Plan and its assets. The plaintiffs allege that Bankers Trust exercised authority or control over plan assets because it determined whether the Plan should purchase and hold Qwest shares on behalf of the Savings and ESOP accounts, evaluated the performance of Plan funds, had responsibility for communicating investment information to Plan participants, and advised other fiduciaries concerning the disposition and control of Plan assets. *Complaint*, ¶ 19. In essence, the plaintiffs allege that Bankers Trust took on discretionary duties in addition to its trustee duties, as limited by the trust agreement. Bankers Trust hotly contests these claims. However, assuming the plaintiffs can prove these allegations, and related allegations in the Complaint, it is conceivable that the plaintiffs could prove facts that would entitle them to relief against Bankers Trust on these claims. Claims based on the first group of allegations are not subject to dismissal under Rule 12(b).

For the reasons discussed in Section V-A-4, above, I find that the plaintiffs allegations do not state a claim against Bankers Trust for its alleged failure to vote shares held by the US West shares fund against the merger of Qwest and US West. This claim is dismissed.

Further, I conclude that the plaintiffs allegations do not state a claim against Bankers Trust for its alleged failure to institute shareholder derivative suits on behalf of the US West Shares Fund in an effort to prevent the merger with Qwest, or on behalf of the Qwest Shares Fund, to obtain damages for the decline in Fund Shares after the merger. In its brief, Bankers Trust quotes a portion of the applicable trust agreement which provides that Bankers Trust shall have no duty to commence or maintain any legal action on behalf of the trust based on any investment made in or for a directed fund, unless the trustee has been directed to do so by the Asset Manager or the Company. *Memorandum of law in support of Bankers Trust's motion to dismiss*, filed September 5, 2002, p. 31. The plaintiffs do not allege that Bankers Trust took any action which might be seen as taking on responsibility for instituting such legal actions, even though the trust agreement explicitly placed that responsibility on other parties. Assuming the allegations in the amended complaint to be true, the plaintiffs can not prove that Bankers Trust had a duty to institute the shareholders derivative actions described in the Complaint. *Complaint*, ¶ 160 b - c.

Finally, I find that the plaintiffs allegations do not state a prohibited transaction claim against Bankers Trust. Under 19 U.S.C. § 1106(a)(1)(D), a plan fiduciary may not cause the plan to engage in a transaction that constitutes a direct or indirect use of a plan asset for the benefit of a party in interest. In their Fourth Claim for Relief, the plaintiffs allege that Bankers Trust engaged in a transaction prohibited by this statute

when Bankers Trust voted some of the US West ESOP shares in favor of the US West's merger with Qwest. The plaintiffs claim this was the use of a plan asset - the US West ESOP shares voting proxies - "for the benefit of a party in interest, the Company." "Company" is defined in the amended complaint to mean Qwest. *Complaint*, ¶ 1.

As Bankers Trust notes, the term "party in interest" is defined in 29 U.S.C. § 1002(14). That definition includes "employers," but an employer means an employing entity whose employees are covered by the relevant plan. For the purpose of the transaction addressed in the plaintiff's prohibited transaction claim, US West was the employer. Qwest was not a "party in interest" when Bankers Trust voted the US West ESOP shares. In short, the allegation that this transaction was undertaken for the benefit of Qwest does not indicate that the transaction was undertaken for the benefit of a party in interest, as that term is used in § 1106(a)(1)(D). The plaintiffs allegations, if true, do not state a prohibited transaction claim under § 1106(a)(1)(D).

### VI. 29 U.S.C. § 1104(c) DEFENSE

The Qwest Defendants and Bankers Trust argue that they were not fiduciaries with regard to the Plan participants' decisions to invest in the Qwest Shares Fund. This is so, these defendants argue, because the Qwest Savings Plan, under which participants could choose to invest in the Qwest Savings Plan, met the requirements of 29 U.S.C. § 1104(c) (ERISA § 404(c)). Under § 1104(c), an ERISA fiduciary is not liable for any losses suffered by a plan participant as a result of the participant's investment decisions if the plan provides for individual accounts, provides a range of investment options, and permits the participant to exercise control over the assets in the

23

participant's account. To qualify under § 1104(c), a plan must comply with the requirements of the statute and certain regulations of the Department of Labor.

Although the Plan documents indicate that the Savings Plan was designed to be a qualifying plan under § 1104(c), that fact alone does not establish that the plaintiffs cannot state a claim against the defendants. The plaintiffs allege that the defendants misrepresented and failed to disclose material facts to the plaintiffs concerning the Qwest Shares fund, one of the investment options under the Savings Plan. They also allege undue influence, and the purchase of Qwest stock by the plan at unreasonable values. Assuming these allegations to be true, the plaintiffs could prove that the defendants are not entitled to the protections of § 1104(c).

Finally, § 1104(c) is "akin to an exemption from or a defense to ERISA's general rule" concerning the duties of ERISA fiduciaries. *Allison v. Bank One-Denver*, 289 F.3d 1223, 1238 (10th Cir.2002). The burden of establishing entitlement to the protection of § 1104(c) must be borne by the party seeking that protection. *Id*. Assuming the allegations in the Complaint to be true, I cannot conclude on the current record that the defendants are entitled to the protections of § 1104(c).

## VII. CO-FIDUCIARY BREACH CLAIMS

ERISA explicitly imposes "knowing participation" liability on co-fiduciaries. 29 U.S.C. § 1105(a). The plaintiffs allege that each of the defendant fiduciaries knowingly participated in the fiduciary breaches of their co-fiduciaries, enabled their co-fiduciaries to commit fiduciary breaches by the defendants' own failure to comply with ERISA, and failed to make reasonable efforts to remedy the breaches of their co-fiduciaries of which the defendants were aware. The defendants argue that the plaintiffs have not sufficiently alleged claims for co-fiduciary breach. I disagree.

24

The plaintiffs allege particular types of fiduciary breach by each defendant. They further allege that the defendants were aware of breaches by their co-fiduciaries. Further, they allege that the defendants participated in the breaches of their co-fiduciaries, enabled those breaches, or failed to make reasonable efforts to stop those breaches. Assuming these factual allegations to be true, it is conceivable that the plaintiffs could prove facts that would entitle them to relief for co-fiduciary breaches under § 1105(a). The plaintiffs' co-fiduciary breach allegations are general, but sufficient to state a claim. Via discovery, the defendants can require the plaintiffs to focus their co-fiduciary breach claims as to each defendant, and to provide evidence to circumstantiate their particular claims.

### VIII.  RELIEF UNDER ERISA 29 U.S.C. § 1132(a)(2) & (3)

Several of the defendants argue that the individual plaintiffs are not entitled to individualized monetary awards or other individualized relief based on the defendants' alleged violations of their ERISA fiduciary duties. The plaintiffs seek relief generally under both 29 U.S.C. § 1132(a)(2) and (a)(3). *Complaint*, First, Second, Third, Fifth, Sixth, and Seventh Claims for Relief. In their prayer for relief, the plaintiffs seek an award to "the Plan and/or plaintiffs and members of the Class (of) restitution, disgorgement, reimbursement, and/or remedial relief." *Complaint*, Prayer For Relief, ¶ 4. The defendants argue that neither subsection (a)(2) or (a)(3) permits awards of individualized relief to the plaintiffs.

29 U.S.C. § 1132(a)(2) authorizes participants and beneficiaries of an ERISA plan to bring a civil action on behalf of the plan for relief under § 1109. Section 1109 provides for broad relief on behalf of the plan, including recovery of any losses to the plan resulting from a defendant's breach of fiduciary duty. Section 1132(a)(3) provides

25

that a participant or beneficiary of a plan may bring an action to remedy violations of
ERISA or of the plan.  Section 1132(a)(3) relief is limited to 1) an injunction that
prohibits any act or practice that violates ERISA or the relevant plan; and 2) "other
appropriate equitable relief" to redress such violations, or to enforce ERISA or the
relevant plan.  Subsection (a)(2) is read generally as permitting relief only on behalf of
the plan, while subsection (a)(3) generally is read as permitting relief on behalf of
individual plan participants.  To the extent a plaintiff obtains adequate relief on behalf of
a plan under subsection (a)(2), his concomitant claim for appropriate equitable relief
under subsection (a)(3) is limited.  *Varity Corp. v Howe*, 516 U.S. 489, 515 (1996).

        As discussed above, the plaintiffs adequately have alleged breaches of fiduciary
duty by the defendants.  They also have alleged facts that, if proven, conceivably could
establish a right to relief under subsections (a)(2) and (a)(3).  At this point, it is far from
clear what relief the plaintiffs may obtain on behalf of the Plan under subsection (a)(2).
Thus, it is not clear what, if any, equitable relief may or may not be appropriate under
subsection (a)(3).  Taking the allegations of the amended complaint as true, I cannot
conclude now that the plaintiffs cannot establish entitlement to any kind of "appropriate
equitable relief" under subsection (a)(3).

        The defendants are correct that individualized relief in the nature of
compensatory damages is not available under subsection (a)(3).  Examining the scope
of equitable relief available under subsection (a)(3), the Supreme Court has held that
"appropriate equitable relief" under subsection (a)(3) is limited to "those categories of
relief that were *typically* available in equity (such as injunction, mandamus, and
restitution, but not compensatory damages)." *Mertens v. Hewitt Assoc.*, 508 U.S. 248,
256-57 (1993) (emphasis in original). The *Mertens* Court held that the relief available

26

under subsection (a)(3) was significantly more narrow than the broad scope of relief a common law court of equity could award based on a breach of trust. *Id*. As the Court noted, a common law court of equity could grant legal remedies, including money damages, when enforcing a trust, and in other circumstances. *Id*., at 256. The *Mertens* Court held that this broad scope of equitable relief is not authorized by subsection (a)(3). Rather, subsection (a)(3) relief is limited to "those categories of relief that were *typically* available in equity. *Id*. at 356-57. Since *Mertens*, the courts have continued to refine the nature of equitable relief available under subsection (a)(3). *See, e.g., Great West Life v. Knudson*, 534 U.S. 204 (2002); *Milsap v. McDonnell Douglas Corp*, 368 F.3d 1246 (10th Cir. 2004). Still, I find the holding in *Mertens* to be the holding that most directly defines the type of relief available to the plaintiffs under subsection (a)(3).

The plaintiffs deny that they are seeking relief in the nature of compensatory damages under subsection (a)(3). Rather, they claim they seek only appropriate equitable relief. To the extent the plaintiffs seek appropriate equitable relief under this subsection, their claims are not subject to dismissal for failure to state a claim. A determination of what, if any, relief may be available to the plaintiffs under subsection (a)(3) must await further development of the record.

### ORDERS

**THEREFORE IT IS ORDERED** as follows:

1) That the motion to dismiss of the Qwest Defendants [# 171], filed June 30, 2003, is **GRANTED** as to the plaintiffs' claim that the Qwest defendants violated their ERISA fiduciary duties when they failed to vote US West stock against the merger of Qwest and US West;

27

2) That the motion to dismiss of the Qwest Defendants [# 171], filed June 30, 2003, otherwise is **DENIED**;

3) That the motion to dismiss of defendant Bankers Trust [# 172], filed June 30, 2003, is **GRANTED** as to the plaintiffs claims that Bankers Trust engaged in a prohibited transaction under 19 U.S.C. § 1106(a)(1)(D), and that Bankers Trust violated its ERISA fiduciary duties when it failed to vote US West stock against the merger of Qwest and US West, and when Bankers Trust failed to file shareholder derivative suits on behalf of the Plan;

4) That the motion to dismiss of defendant Bankers Trust [# 172], filed June 30, 2003, otherwise is **DENIED**;

5) That the motion to dismiss of defendant Nacchio [# 173], filed June 30, 2003, is **DENIED**;

6) That the Director Defendants' motion to dismiss [# 174], filed June 30, 2003, is **DENIED**;

7) That the motion to dismiss of the Committee Defendants [# 175], filed June 30, 2003, is **DENIED**; and

8) That the motion to dismiss of defendant Woodruff [# 176], filed June 30, 2003, is **DENIED**.

Dated September 24, 2004, at Denver, Colorado.

BY THE COURT:

Rob Blackburn

Robert E. Blackburn
United States District Judge

28

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CERTIFICATE OF SERVICE

Civil Case No. 02-RB-464 (CBS)
(Consolidated with Civil Action Nos. 02-RB-470, 02-RB-482, 02-RB-602, 02-RB-714)

The undersigned certifies that a copy of the foregoing _Order_ was served on _Sept. 27_, 2004, by:

(X) delivery to:

Magistrate Judge Craig B. Shaffer

William T. Hankinson, Esq.
William A. Wright, Esq.
Sherman & Howard
**DC Box 12**

George B. Curtis, Esq.
Gregory J. Kerwin, Esq.
Jessica Bolger Lee, Esq.
Gibson, Dunn & Crutcher
**DC Box 18**

Alan D. Schuchman, Esq.
Geraldine A. Brimmer, Esq.
Holland & Hart, LLP
**DC Box 6**

James M. Lyons, Esq.
Frederick J. Baumann, Esq.
Cindy C. Oliver, Esq.
Rothgerber Johnson & Lyons, LLP
**DC Box 11**

Bruce F. Black, Esq.
Michael J. Hofmann, Esq.
Martin D. Litt, Esq.
Holme Roberts & Owen, LLP
**DC Box 7**

(X) by electronic mail to the addressed to:

bhankinson@sah.com
ahefty@steptoe.com
jgs@branstetterlaw.com
jbs@branstetterlaw.com
ekelman@brauerfirm.com
tvr@birdmarella.com
mtd@birdmarella.com
jlc@birdmarella.com
horton@nqwlaw.com
jquinn@cwa-union.org

(X) depositing the same in the United States Mail, postage prepaid, addressed to:

Ellen M. Kelman, Esq.
Brauer, Buescher, Goldhammer &
    Kelman, & Dodge, P.C.
1563 Gaylord Street
Denver, CO 80206

Richard Rosenblatt, Esq.
Richard Rosenblatt & Associates, LLC
8085 East Prentice Ave.
Greenwood Village, CO 80111-2745

Stephen Kirk Ingebretsen, Esq.
Moye, Giles, O'Keefe, Vermeire &
    Gorrell
1225 - 17th Street, Ste. 2900
Denver, CO 80202-5529

Gerald L. Bader, Jr, Esq.
Bader & Associates, PC
14426 East Evans Ave., Ste. 200
Denver, CO 80014-1160

Michael S. Beaver, Esq.
Holland & Hart, LLP
8390 East Crescent Parkway, Ste. 400
Greenwood Village, CO 80111

Robert A. Izard, Esq.
Shatz & Nobel, PC
330 Main Street
Hartford, CT 06106

Marc L. Ackerman, Esq.
Scott & Scott, LLC
2 Bala Plaza
333 E. City Ave., Ste. 602
Bala Cynwyd, PA 19004-1516

Gordon E. Krischer, Esq.
Matthew P. Eastus, Esq.
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, CA 90071-2899

Joe R. Whatley, Jr., Esq.
Whatley Drake, LLC
2323 2nd Ave., North
P.O. Box 10647
Birmingham, AL 35202–0647

James G. Stranch, III, Esq.
C. Dewey Branstetter, Jr., Esq.
Jane B. Stranch, Esq.
Branstetter, Kilgore, Stranch & Jennings
227 Second Avenue, North, 4th Floor
Nashville, TN 37201-1631

James D. Baskin, Esq.
The Baskin Law Firm
300 West 6th Street, Ste. 1950
Austin, TX 78701

F. Michael Kail, Esq.
Anthony C. Epstein, Esq.
Paul J. Ondrasik, Jr., Esq.
Steptoe & Johnson, LLP
1330 Connecticut Ave., N.W.
Washington, DC 20036

John Carroll, Esq.
David Meister, Esq.
Clifford Chance US LLP
200 Park Avenue
New York, NY 10166-0153

Terry W. Bird, Esq.
Vincent J. Marella, Esq.
Mark T. Drooks, Esq.
Thomas V. Reichert, Esq.
Jennifer L. Coon, Esq.
Bird, Marella, Boxer & Wolpert, PC
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561

James Raborn, Esq.
Maria Boyce, Esq.
Shira Yoshor, Esq.
Baker Botts, LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995

Lee Squitieri, Esq.
Squitieri & Fearon, LLP
32 East 57th Street, 12th Floor
New York, NY 10022

Charles A. Stillman, Esq.
Michael J. Grudberg, Esq.
Kimo S. Peluso, Esq.
Stillman & Friedman, PC
425 Park Ave.
New York, NY 10017

Joseph Haver
5332 Roundup Drive
Colorado Springs, CO 80918

John L. Quinn, Esq.
Leslie J. Horton, Esq.
2204 Lakeshore Drive, Ste. 130
Birmingham, AL 35209

Wesley R. Powell, Esq.
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019

_____
Deputy Clerk