# EXHIBIT B

\ **UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 07-61862-CIV-UNGARO

WILMINE ALMONOR, individual and on
behalf of others similarly situated,

       Plaintiff,

v.

BANKATLANTIC BANCORP, INC., et al.,

       Defendants.

_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendants' Motion to Dismiss the Second

Amended Class Action Complaint and Memorandum of Law, filed March 26, 2009 (D.E. 69, the

"Second Motion to Dismiss"). Plaintiff responded in opposition on April 13, 2009 (D.E. 73).

Defendants replied on March 23, 2009 (D.E. 74). The matter is now ripe for disposition.

THE COURT has considered the Motion, the pertinent portions of the record, and is

otherwise fully advised in the premises.

### Background[1]

Plaintiff filed this putative class action suit under the Employee Retirement Income

Security Act of 1972 ("ERISA"), 29 U.SC. § 1001, *et seq.*, on behalf of the BankAtlantic

---

[1]    Based on substantially the same facts alleged in this action, certain plaintiffs have also brought a suit for violations of federal securities laws and a shareholder derivative action. *See Hubbard v. BankAtlantic Bancorp, Inc., et al.,* Case No. 07-61542-CIV-UNGARO (S.D. Fla. Oct. 29, 2007); *Hugo v. Levan, et al.*, 08-60374-CIV-UNGARO (S.D. Fla. July 3, 2008).

    For purposes of this Second Motion to Dismiss, the Court takes the facts alleged in the Complaint as true. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). Accordingly, the Court will largely dispense with the use of "allegedly" in the following narrative.

Securities Plus Plan, seeking damages and equitable relief for Defendants' alleged breaches of

fiduciary duty beginning November 9, 2005 to the present (the "Class Period"). The original

complaint was filed on December 20, 2007, (D.E. 1), and an amended complaint was filed on

April 7, 2008 (D.E. 26). On January 29, 2009, this Court granted in part and denied in part

Defendants' Motion to Dismiss the Amended Complaint. (D.E. 53, the "Order".) The Court

also granted Plaintiff leave to file a second amended complaint. (*Id.*) On February 18, 2009,

Plaintiff filed her Second Amended Class Action Complaint (D.E. 57, the "Second Amended

Complaint"), which now is the subject of Defendants' Second Motion to Dismiss.

BankAtlantic Bancorp, Inc. (together with its subsidiaries, herein referred to as

"BankAtlantic") is a financial services company, which offers a variety of deposit products, and

its lending portfolio is comprised of commercial real estate loans, commercial business loans,

standby letters of credit and commitments, small business loans and residential loans. (Order 2.)

In May 1987, BankAtlantic adopted the BankAtlantic Security Plus Plan (the "Plan") for the

purpose of providing retirement and related benefits to eligible employees and their beneficiaries.

(Sec. Am. Compl. ¶ 33.) Plaintiff is a former employee of BankAtlantic and a participant in the

Plan. (*Id.* ¶ 13.)

The Plan maintains individual accounts for each participant, which are credited with the

participant's share of contributions, including participant and BankAtlantic contributions, and

any income, loss, appreciation, and depreciation on the participant's investments. (*Id.* ¶ 42.)

Plan fiduciaries provide a menu of investment options for participants, and participants direct

that their accounts be invested in specific assets, specific funds, or other investments. (*Id.* ¶ 45;

Order 5.) Plan fiduciaries may add, delete, or restrict the investments alternatives offered to

2

participants. (Sec. Am. Compl. ¶ 45.)

The Plan is permitted, but not required, to offer participants BankAtlantic stock as one of their investment alternatives. (*Id.*) From the beginning of the Class Period until January 1, 2008, Plan participants could choose to invest in the BankAtlantic stock fund. (*Id.* ¶ 2.) After January 1, 2008, participants who had invested in BankAtlantic stock fund were allowed to retain their stock, but it was no longer offered as an investment alternative in the Plan. (*Id.*) At all relevant times, participants were free to change their investment choices, and BankAtlantic did not provide any incentives to invest in any one fund or, in particular, the BankAtlantic stock fund.[2]

At the beginning of the Class Period, on November 9, 2005, BankAtlantic stock was trading at $14.52. (Sec. Am. Compl. ¶ 83.) During the Class Period, Defendants engaged in reckless and deceptive lending practices in an effort to grow BankAtlantic's market share of commercial real estate loans. (*Id.* ¶ 68.) These practices were never disclosed to BankAtlantic investors. (*See id.* ¶ 85.) Instead, Defendants repeatedly emphasized to the public that BankAtlantic adhered to conservative lending practices and maintained high quality loan portfolios. (*Id.*) Defendants also failed to adequately reserve for losses associated with these dubious loans during the Class Period, which allowed BankAtlantic to make loans beyond its actual capital capacity. (*Id.* ¶¶ 68, 86.) As a result, BankAtlantic's publicly-available financial statements during the Class Period contained materially understated loan loss reserves and materially overstated net income. (*See, e.g., id.* ¶¶ 93, 106.) In short, BankAtlantic stock

---

[2]     This undisputed fact and its supporting materials are found in Defendants' Memorandum in Opposition to Plaintiff's Motion for Class Certification (D.E. 61, the "Response to Class Certification") 3), which Defendant incorporated by reference into its Second Motion to Dismiss (*see* Motion 5).

appeared to be a better investment than it really was.

On October 25, 2007, BankAtlantic issued a press release that finally revealed the full extent of impairment in the company's commercial real estate lending portfolio as a result of Defendants' deceptive and reckless lending and accounting practices. (*Id.* ¶146.) For the first time, investors were informed that the credit quality of BankAtlantic's largest loan portfolio had substantially deteriorated. (*Id.* ¶¶ 68, 146-148.) BankAtlantic stock dropped that day from an opening price of $7.45 to a closing price of $4.72. (*Id.* ¶ 150.) On February 17, 2009, (the day before Plaintiff filed her Second Amended Complaint) BankAtlantic stock closed at $1.30. (*Id.* ¶ 151.)

Plaintiff does not represent in her Second Amended Complaint when, if ever, she invested in the BankAtlantic stock fund as a participant in the Plan, or at what price she bought or sold units in the BankAtlantic stock fund. The record, however, reflects that Plaintiff filled out a Plan enrollment form in 2004 wherein she elected to direct 20% of her withheld wages into the BankAtlantic stock fund.[3] By November 9, 2005 (the beginning of the Class Period), Plaintiff had $240.32 invested in the BankAtlantic stock fund.[4] Plaintiff never changed her investment elections before or during the Class Period.[5] As a result, she received monthly credits of units in the BankAtlantic stock fund until June 8, 2007, when she sold all of her assets in the

---

[3]    This undisputed fact and its supporting materials are found in Defendants' Response to Class Certification (D.E. 61 ("Defs' Resp. Class Cert.") 4), which has been incorporated into their Second Motion to Dismiss. The Court has considered these materials to satisfy itself that there is subject matter jurisdiction. *See Lawrence v. Dubar,* 919 F.2d 1525, 1529 (11th Cir. 1990).

[4]    Defs' Resp. Class Cert. at 4. It is not clear, however, how many units Plaintiff held in the BankAtlantic stock fund at this time.

[5]    *Id.*

Plan, including 47.040 units in the BankAtlantic stock fund.[6]  The value of the 47.040 units at the time of the sale was $407.87.

Plaintiff now seeks, on behalf of the Plan, damages and equitable relief under Sections 502(a)(2) and 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(2)-(3).  The Second Amended Complaint contains six, somewhat overlapping, counts.  First, Plaintiff claims Defendants breached their duty to loyally and prudently manage the Plan because they continued to offer BankAtlantic stock as an investment alternative despite knowing that it was artificially inflated. Second, Plaintiff claims that certain insider Defendants breached their duty to inform Plan participants of material information regarding the value of BankAtlantic stock and the company's financial health, thereby depriving participants the opportunity to make informed investment decisions.  Third, Plaintiff claims certain Defendants breached their duty to monitor the actions of their co-fiduciaries by failing to provide information to their co-fiduciaries that was necessary for them to prudently manage the Plan and to appreciate the risk that the artificially-inflated BankAtlantic stock posed to investors.  Fourth, Plaintiff claims Defendants breached their duty of loyalty by placing their own interests before those of the Plan and its participants.  Fifth, Plaintiff claims that certain insider Defendants are liable for their co-fiduciaries' breaches.  Finally, Plaintiff claims that equitable relief is appropriate to the extent that BankAtlantic is not found to have been a Plan fiduciary because BankAtlantic benefitted from the breach of fiduciary duties of other Defendants.

## **Standard of Review**

**A.      Lack of Subject Matter Jurisdiction - Rule 12(b)(1)**

---

[6]      *Id.*  Plaintiff left her employment with BankAtlantic in the spring of 2007. *Id.*

5

The plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A Rule 12(b)(1) motion may be in the form of a "facial attack" on the complaint, which "requires the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citations omitted). Or, the motion may take the form of a "factual attack," which challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Dunbar*, 919 F.2d at 1529. Because a factual Rule 12(b)(1) motion challenges the trial court's power to hear the claim, the court must closely examine the plaintiff's factual allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* The court is not limited to the allegations contained in the complaint, and it may consider materials outside the pleadings to determine whether it has jurisdiction. *Id.* "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating itself the merits of jurisdictional claims." *Id.*

**B.     Failure to State a Claim - Rule 12(b)(6)**

In order to state a claim, Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rule 8 does nots require detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937,1949 (2009) (citing *Bell Atlantic Corp v. Twombly*, 127 S.Ct. 550 U.S. 544, 555 (2007). A pleading cannot simply offer naked assertions devoid of factual enhancement. *Id.* at 1950.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Id.* A court must identify the allegations in the complaint that are not entitled to a presumption of truth because they constitute bare assertions that amount to nothing more than formulaic recitation of the elements of plaintiff's cause of action, or conclusory allegations masquerading as facts and legal conclusions. *Id.* at 1949-1951. The court must next ask whether there are sufficient factual allegations to plausibly suggest that plaintiff is entitled to relief. *Id.* A claim has facial plausibility when a plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. A plaintiff must "nudge his claim across the line from conceivable to plausible," but the plausibility standard is not akin to a "probability requirement." *Id.* at 1949, 1952. Making this determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft v. Iqbal*, 129 S.Ct. 1937,1950 (2009).

## Analysis

Defendants raise several arguments in their Second Motion to Dismiss. First, Defendants argue that this Court does not have subject matter jurisdiction because Plaintiff lacks both constitutional and statutory standing.[7] Second, Defendants argue that the Second Amended Complaint fails to state a claim under ERISA for breach of fiduciary duty.

**A.     Standing**

---

[7]     Defendants do not explicitly make their standing argument under Fed. R. Civ. P. 12(b)(1). In fact, they fail to articulate the legal standard for their standing argument altogether. It is clear, however, that a motion to dismiss for lack of standing is a motion for lack of subject matter jurisdiction, brought pursuant Fed. R. Civ. P. 12(b)(1). *Region 8 Forest Serv. Timber Purchasers Counsel v. Alcock*, 993 F.2d 800, 807 n.8 (11th Cir. 1993).

Defendants argue that Plaintiff did not suffer an injury-in-fact because she was a net seller of BankAtlantic stock during the Class Period and because she sold all of her units in the BankAtlantic stock fund at a time when she alleges the stock was artificially inflated. Consequently, Defendants argue that Plaintiff actually *benefitted* from any artificial inflation in BankAtlantic stock caused by Defendants' breaches of fiduciary duty. Moreover, Defendants argue the Second Amended Complaint contains a conclusory allegation that Plaintiff was a Plan participant, but does not allege that she personally suffered any particularized injury that a favorable judgment will redress.

To meet the Article III constitutional standing requirement at the pleading stage, a plaintiff must allege facts that support the three standing requirements. First, plaintiff must allege that she personally suffered an invasion of a legally protected interest resulting in a "concrete and particularized" injury. *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade County School Bd.,* 557 F.3d 1177, 1190 (11th Cir. 2009) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). Her injury must be "distinct and palpable," as opposed to merely abstract, conjectural or hypothetical. *Whitemore v. Arkansas,* 495 U.S. 149, 155 (1990). Second, her injury must have been caused by the defendant's complained-of actions. *Am. Civil Liberties,* 557 F.3d at 1190. Third, her injury must likely be redressible by a favorable court decision. *Id.* In sum, the critical question is whether the plaintiff "has alleged such a personal stake in the outcome of the controversy as to warrant [*her*] invocation of federal court jurisdiction." *Horne v. Flores,* -- S.Ct. -- , 2009 WL 1789470 (2009) (citation omitted) (emphasis in original).

To have statutory standing under ERISA, Congress must have accorded the *injured* plaintiff the right to sue the defendant to redress his injury. *See Graden v/ Conexan Sys., Inc.,* 496 F.3d 291, 295 (3d Cir. 2007). "When a plaintiff makes a plausible argument that a federal

statute creates his right to relief, the district court has subject-matter jurisdiction over the complaint." *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1221 (11th Cir. 2008) (holding district court erroneously dismissed former employees' complaint for lack of subject matter jurisdiction because the determination of whether former employees qualify as "participants" eligible to bring a claim under ERISA involved the merits of the case, not subject matter jurisdiction, and plaintiffs made a plausible argument that ERISA created their right to relief).

The Court finds that Plaintiff has constitutional standing because she has alleged an injury-in-fact and otherwise satisfied the standing requirements. Each alleged breach of fiduciary duty constitutes an "injury-in-fact" because each is an invasion of personal entitlements she holds as a participant in the Plan – the fiduciary duties of care, loyalty, and good faith. *Bendaoud v. Hodgson*, 578 F.Supp.2d 257, 272 (D. Mass. 2008); *see also Ziegler v. Conn. Gen. Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir. 1990) ("Under 29 U.S.C. § 1104(a) . . . an ERISA plaintiff may prosecute a plan fiduciary who fails to perform for the exclusive benefit of participants and their beneficiaries *regardless of the cost or loss to the participants* and their beneficiaries." (emphasis added)). Defendants had a legal duty to prudently and loyally manage the Plan and to provide prudent investment options to Plan participants; therefore, their failure to carry out that duty creates an injury-in-fact that is both concrete and specific, as well as traceable to them. *See Moore v. Accenture, LLP*, 2007 WL 3313152, *2 (11th Cir. Nov. 9, 2007) (unpublished decision) ("As long as Defendant had a legal duty under the [American with Disabilities Act] to engage in the interactive process of finding Plaintiff an accommodated position, its failure to engage in that process would create an injury that is both concrete and specific."); *see, e.g., DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007) (collecting cases recognizing that an ERISA fiduciary has a duty to assemble a prudent menu of investment options for plan participants).

9

Finally, ERISA provides redress when an ERISA fiduciary breaches his or her statutory duties.

The Court also finds that Plaintiff has sufficiently alleged statutory standing. Although the Second Amended Complaint does not specifically state that Plaintiff received units in BankAtlantic stock fund during the Class Period, the record reflects that she did. Moreover, the Second Amended Complaint contains factual allegations that Defendants have breached their fiduciary duties, which were owed to her as an ERISA plan participant, and these breaches caused her to suffer losses. (*See, e.g.*, Sec. Am. Compl. ¶¶ 175, 181,193, 202.) Such allegations constitute a "plausible argument" that ERISA provides Plaintiff with a right to relief. *Lanfear,* 536 F.3d at 1222.

While it may be true that Defendants' alleged breaches actually conferred a net benefit on Plaintiff, that fact is irrelevant to whether Plaintiff suffered an injury-in-fact or whether Plaintiff suffered a compensable loss under ERISA. *See* 13A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE &PROCEDURE § 3531.4 (3d ed. 2008) ("Once an injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff enjoyed from the relationship with the defendant. Standing is recognized to complain that some particular aspect of the relationship is unlawful and has caused injury."). Rather, the question of whether Plaintiff benefitted from Defendants' alleged breaches is a question of *damages* – not of injury. Furthermore, the determination of whether Plaintiff suffered a loss that is compensable under ERISA implicates the merits of her ERISA claim and is not an appropriate inquiry at the motion to dismiss stage. *See Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (stating factual attacks on subject matter jurisdiction may not proceed under Rule 12(b)(1) if they implicate the merits of plaintiff's cause of action); *Lanfear,* 536 F.3d at 1221 (holding district court erroneously dismissed ERISA complaint under Rule

12(b)(1) because the question of whether plaintiffs were "participants" eligible to sue under

ERISA involved the merits of the case).

In reaching this conclusion, the Court is not persuaded by the cases from outside this

circuit that have held ERISA plaintiffs lack standing when breaches of fiduciary duty artificially

inflate the employers' stock and plaintiffs sell the stock during the period of inflation. *See, e.g.,*

*Brown v. Medtronic, Inc.*, --- F.Supp.2d --- , 2009 WL 1458259 (D. Minn. May 26, 2009); *In re*

*Boston Scientific Corp. ERISA Litig.*, 254 F.R.D. 24 (D. Mass. 2008). In *Brown v. Medtronic*,

the court held that because the plaintiff did not suffer any damages, he did not suffer an injury.

2009 WL 1458259 at *4. This analysis, however, inappropriately conflates the threshold

standing inquiry with a determination of the merits of the plaintiff's claim at the motion to

dismiss stage. *See Moore,* 2007 WL 3313152 at *3.

The Court is also not persuaded that the Eleventh Circuit case, *Piazza v. EBSCO*

*Industries, Inc.*, 273 F.3d 1341, 1353 (11th Cir. 2001), compels dismissal. Read broadly, *Piazza*

arguably stands for the proposition that plan participants who benefit from a fiduciary's breach of

duty suffer no injury and have no standing. *See Brown*, 2009 WL 1458259 at *5 n.6 (citing

*Piazza*); *Boston Scientific*, 254 F.R.D. at 31 (same). However, the *Piazza* panel opinion does not

expressly reference constitutional standing and its conclusion the that plaintiff had standing

appears to be based on the perception that the plaintiff suffered no compensable harm under

ERISA. Whether Plaintiff in this case can ultimately secure relief under ERISA appears to the

undersigned to be relevant, if at all, to the issue of statutory standing and intertwined with the

merits such that it cannot be decided at this juncture. In this regard, the Court notes that Plaintiff

has suggested a plausible measure of damages: the difference between what she would have

earned from an equivalent investment in a more prudent option and what she earned from her

investment in the BankAtlantic stock fund. *Cf. Bendaoud*, 578 F.Supp.2d at 272.  As the

Eleventh Circuit recognized in another ERISA case, a plaintiff holding a defined contribution

account under ERISA is entitled to seek the difference between the benefits actually received and

the benefits that would have been received if the plan management had fulfilled its statutory

obligations." *Lanfear*, 536 F.3d at 1223.  Whether that difference ends up being a loss or a gain

is not relevant at this stage of the proceedings.

      Defendants are essentially advocating that the Court use hindsight to find that Plaintiff's

ERISA account was not impaired by their conduct, and, therefore, she lacks standing to raise an

ERISA claim.  But determining whether Plaintiff suffered an ERISA loss goes to the merits of

Plaintiff's claim, and Plaintiff has suffered an injury-in-fact because Defendants' alleged conduct

constitutes a breach of a legal duty of a type for which redress is traditionally available.  The

eventual results of their conduct (*i.e.*, whether the breach benefitted or actually harmed Plaintiff's

account) is relevant to the issue of damages, but not injury.

      In sum, the Court finds that Plaintiff presents the Court with a case and controversy

where Defendants allegedly breached a cognizable legal duty owed to her as a Plan participant.

Additionally, Plaintiff makes a plausible argument that ERISA provides her with a right to relief.

Therefore, this Court has subject-matter jurisdiction over the Second Amended Complaint.

**B.**    **Breach of Fiduciary Duty**

      Defendants advance several arguments attacking the Second Amended Complaint for

failure to state a claim.  Many of these arguments are a retread the arguments Defendants

advanced in its First Motion to Dismiss, which the Court fully addressed and rejected in its Order

on that motion.  The Court will briefly address, however, Defendants' arguments below to the

extent that they are new or the Court finds that they have merit.

### (i)    Prudent and Loyal Management

First, Defendants argue that despite their representations (or lack of objections) at the

January 23, 2009 hearing on their First Motion to Dismiss, the Plan is an eligible individual

account plan ("EIAP") under 29 U.S.C. § 1104(a)(2) because the Plan provides for investment in

employer securities.[8] Accordingly, Defendants argue that Plaintiff's allegation that they should

have stopped Plan participants from investing in BankAtlantic is nothing more than an attempt to

assert a veiled diversification claim, which is barred by Section 1104(a)(2).[9] (Mot. 10-11.) In

the alternative, Defendants argue that they are entitled to a presumption of reasonableness, and

Plaintiff has failed to alleged "the sort of extreme circumstances necessary" to rebut this

presumption. (*Id.* 12-13)

The Court rejects Defendants' veiled diversification argument, regardless of whether the

Plan is characterized by an EIAP or not, because the Court is not persuaded by Defendants'

---

[8]       Defendants agreed with Plaintiff at the January 23, 2009 hearing that the Plan was
"pure 401(k) Plan," which was self-directed by each employee. MTD Hr'g Tr. 13:5-22; 14:7-11.
Defendants never objected to Plaintiff's argument that the Plan was not an EIAP at the hearing, or
later by supplemental filing. *See id.* 24:6-14. Rather, Defendants' arguments at the hearing focused
on the fact that Plan participants had a choice to invest in BankAtlantic stock fund, and, to the extent
that they have suffered damages, their claim arises under the securities laws for inadequate
disclosures. *See id.* 34:14-25; 35:1-3; 36:24-25; 39:2-13; 44:6-14; 48:2-24; 49:1-5; 52:19-25,

[9]       The diversification requirement is contained in Section 1104(a)(1)(c), which states
that a fiduciary must diversify "the investment of the plan so as to minimize the risk of large losses,
unless under the circumstances it is clearly not prudent to do so."
        Section 1104(a)(2) provides and exception to this diversification requirement where
the ERISA plan is an EIAP. Specifically, this section provides that "the diversification requirement
of paragraph (1)(c) and the prudence requirement (only to the extent that it requires diversification)
of paragraph (1)(b) is not violated by acquisition or holding of . . . qualifying employer securities.
. . ."

argument or the authority on which it rests.[10]  Plaintiff does not allege that Defendants failed to

diversify Plan assets, or that the Plan invested too heavily in BankAtlantic stock.  Instead, the

Second Amended Complaint alleges that Defendants breached their duties to act prudently and

loyally when they continued to offer BankAtlantic stock as an investment option and when they

failed to prevent investment in BankAtlantic stock.  In other words, there is no disagreement

about investment concentration - only investment *options.*  Indeed, Defendants themselves

recognized that there is no need for protection from the duty to diversify because the participants

*had* options. MTD Hr'g Tr. 34:14-22.  The Court views the argument that there should have

been more investment options on the table in an effort to minimize risk (*i.e.,* a question of

diversification) as distinct and different from an argument that the options on the table were

imprudent investments (*i.e.,* a question of proper asset management).[11]  *See Shirk v. Fifth Third*

---

[10]      The Court held in its previous Order that Defendants' veiled diversification argument
was irrelevant because of their subsequent acknowledgment that the Plan was not an EIAP.  (Order
at 17.)  The Court did not hold, however, that it would have otherwise succeeded.

[11]      The Court has considered *Mellot v. ChoicePoint, Inc.,* 561 F.Supp.2d 1305, 1311
(N.D. Ga. 2007) and *Smith v. Delta Air Lines, Inc.,* 422 F.Supp.2d 1310 (N.D. Ga. 2002), but
declines to follow their reasoning.  The *ChoicePoint* case involved similar allegations that EIAP
fiduciaries breached their duties by failing to remove and failing to halt additional investment in the
employer while the employer's stock was artificially inflated as a result of undisclosed material
adverse company information. 561 F.Supp.2d at 1311.  The court held that Plaintiff's argument was
simply another form of a diversification argument because if defendants ceased investing in
employer securities, then they would presumably invest elsewhere – essentially diversifying their
assets, which was something they were not required to do under 20 U.S.C. § 1104(a)(2). *Id.* at 1311-
12.  The Court is not persuaded by this logic.  Investing in Security X because investing Security Y
(*i.e.,* employee securities) is imprudent does not necessarily make for a diverse portfolio – all
investments are still concentrated only in Security X.  In other words, investing in securities other
than employer securities does not make for diversified portfolio *per se.*  Plaintiff here is not alleging
that Defendants should have diversified their investments by investing in a stock other than
BankAtlantic; Plaintiff is alleging that offering the option to invest in BankAtlantic at the relevant
time periods was imprudent.
         The court in *Smith v. Delta Air Lines, Inc.* arrived at a similar holding to *ChoicePoint,*
but only by stating that plaintiff's allegations "just amounts to another form of diversification
argument." 422 F.Supp.2d at 1327.  The *Smith* court offered no explanation as to how these two

*Bancorp*, No. 05-cv-49, 2007 WL 1100429, *10 (S.D. Ohio Apr. 10, 2007) ("Plaintiffs'

allegations that any investment in Fifth Third stock was imprudent in light of what the

Defendants knew about Fifth Third's lack of meaningful internal controls and the risk of

investing in Fifth Third stock is distinguished from a simple allegation [that] Defendants

breached a duty to diversify . . . ."); *In re JDS Uniphase Corp. ERISA Litig., No.,* C 03-04743

CW, 2005 WL 1662131, *7 (N.D. Cal. July 14, 2005) (finding plaintiff's claim that *any*

investment in company stock was imprudent is different from a diversification claim).

Accordingly, the Court finds that Plaintiff has not alleged a veiled diversification claim.

  The Court also finds that, regardless of whether the Plan is an EIAP or not, Defendants

had a duty to offer prudent investment options, and their decision to offer the BankAtlantic stock

fund is not entitled to a "strong presumption of reasonableness." (Mot. 12.)  This strong

presumption of reasonableness has been applied in cases where "the fiduciary is not absolutely

required to invest in employer securities but is *more than* simply permitted to make such

investments . . . ." *Moench v. Robertston*, 62 F.3d 553, 571 (3d Cir. 1995) (emphasis added).

Such is not the case here.  Defendants had <u>full</u> discretion to offer or not offer the participants the

BankAtlantic stock fund. *Cf. Edgar v. Avaya, Inc.*, 503 F.3d 340, 346-347 n.11 (3d Cir. 2007)

(applying the *Moench* presumption to EIAP fiduciaries' decisions, but recognizing that the

fiduciaries retained only *limited* discretion not to offer employer securities as an investment

option).  In such cases, fiduciaries' decisions are subject to *de novo* judicial review.  *See id.* at

346 (citing *Moench* and general trust principles).  Therefore, the Court concludes that Defendants

---

allegations are one in the same. Meanwhile, the Court finds, for the reasons stated above, that these
allegations are distinct.

are not entitled to this "strong presumption of prejudice" at this stage in the proceedings. *See In*

*re Cardinal Health, Inc. ERISA Litig.,* 424 F.Supp.2d 1002, 1034 (S.D. Ohio 2006) (reviewing

an EIAP fiduciary's investment decision under the prudent person standard and the liberal notice

pleading requirements at the motion to dismiss stage).

### (ii)   Disclosure

ERISA sets forth certain disclosure requirements (*see* 29 U.S.C. §§ 1021 through 1031

and 29 C.F.R. §§ 2520.101-1 through 2520.107-1), which include providing participants with a

summary plan description, annual reports for the ERISA plan, and financial statements. Plaintiff,

however, does not appear to argue that Defendants breached any of these delineated disclosure

obligations or the regulations promulgated thereunder. Instead, Plaintiff alleges that Defendants'

breaches of the duty to disclose stem from their core fiduciary responsibility to act in the interests

of participants by furnishing full and complete information. Specifically, Plaintiff alleges that

certain Defendants (the "Insider Defendants") issued a "multitude of inaccurate statements

through SEC filings and press releases regarding the value of BankAtlantic stock and the

financial health of the Company." (Sec. Am. Compl. ¶¶ 186-89.)

As noted in the Court's earlier Order, an ERISA "fiduciary's duty to disclose is an area of

developing and controversial law." (Order 23 (citing *In re Enron Corp. Securities, Derivative,*

*and & ERISA Litig.*, 285 F.Supp.2d 511, 555 (S.D. Tex. 2003)). Some courts recognize the

decision to incorporate SEC filings into ERISA plan documents as a fiduciary act because it

involves an exercise of discretion in deciding to refer to the SEC filings, and Plaintiff appeared to

be proceeding on this theory in her earlier complaint. *See, e.g., Pedraza v. Coco-Cola Co.,* 456

F.Supp.2d 1262 (N.D. Ga. 2006). The Court dismissed Count II without prejudice, however, for

two reasons.  First, Plaintiff failed to cite to a provision in the Plan where BankAtlantic' SEC

filings were incorporated by reference.  (Order 24.)  Second, Plaintiff failed to allege sufficient

factual allegations as to each of the Defendants' *individual* knowledge about the "adverse

information" that they acquired in their corporate capacities such that they could be held liable

for the material misrepresentations and omissions in the SEC filings.  Plaintiff argues in her

Response to Defendants' Second Motion to Dismiss that the Second Amended Complaint has

cured these two pleading deficiencies.

     As an initial matter, it is clear that ERISA fiduciaries may be held liable in the Eleventh

Circuit for material misrepresentations made to plan participants.  *See Jones v. Am. Gen. Life &*

*Accident Ins. Co.*, 370 F.3d 1065, 1072 (11th Cir. 2004) (recognizing generally that an ERISA

participant has a right to accurate information regarding its plan, and that an ERISA plan

administrator's withholding of information may give rise to a cause of action for breach of

fiduciary duty).  This Court finds that there is ERISA liability when (i) fiduciaries decide to

incorporate SEC filings into plan documents and (ii) the fiduciaries knew or should have known

that the SEC filings contained material misrepresentations and omissions.  *Accord Pedraza v.*

*Coca-Cola Co.*, 456 F.Supp.2d 1262, 1279 (N.D. Ga. 2006).  As the Court stated in its previous

Order, it found the following language in *In re Worldcom, Inc.* persuasive:

> [Defendant's] potential liability to employees who invested in WorldCom stock
> through the Plan for violations of the federal securities laws cannot shield him from
> suit over his alleged failure to perform his quite separate and independent ERISA
> obligation. When [defendant] wore his ERISA "hat" he was required to act with all
> the care, diligence, and prudence required of ERISA fiduciaries. <u>When a corporate
> insider puts on his ERISA hat, he is not assumed to have forgotten adverse
> information he may have acquired while acting in his corporate capacity.</u> Plaintiff's
> allegation that [defendant] failed to disclose to the . . . investing fiduciaries material
> information he had regarding the prudence of investing in Worldcom stock is
> sufficient to state a claim.

17

263 F.Supp.2d 745, 765 (S.D.N.Y. 2003) (emphasis added).  (Order 24.)  The parties do not

dispute that the Plan's Summary Plan Description ("SPD") incorporates by reference

BankAtlantic's SEC filings,[12] and the Court finds that their decision to incorporate such filings

into a Plan document as a means of communicating with participants is a fiduciary decision.

      The Court holds, however, that Plaintiff has not entirely cured the pleading deficiencies

contained in Count II.  As the Court pointed out in its previous Order, Plaintiff has to plead facts

as to each of the Defendants' *individual* knowledge, if any, about the "adverse information" they

would have acquired in their corporate capacities.  (Order 24.)  Plaintiff limited the defendants

named in Count II of the Second Amended Complaint to only the following seventeen "Insider

Defendants": John E. Abdo, David A. Lieberman, Charlie C. Winningham, D. Keith Cobb,

Bruno L. Digiulian, Alan B. Levan, Jared S. Levan, Steven M. Coldren, Mary E. Ginestra, Willis

N. Holcombe, Lewis F. Sarrica, Susan D. McGregor, Kathleen M. Howell, Patrick Lefebvre,

Jeffrey Mindling, Gerry Lachnicht, and James. A. White.  (Sec. Am. Compl. ¶ 183.)

      The Second Amended Complaint does not contain sufficient factual matter, accepted as

true, to "state a claim to relief that is plausible on its face" that all seventeen of the Insider

Defendants knew or should have known that the SEC filings incorporated into the Plan were

materially misleading. *Twombly*, 127 S.Ct. 1955, 1978.  Rather, it is only reasonable to infer

from the facts alleged that the following Insider Defendants knew or should have known that

during the Class Period BankAtlantic deviated from its stated lending guidelines, maintained

materially understated loan loss reserves, carried greater risk exposure in its lending portfolios

than what was publicly disclosed, or any of other facts and circumstances resulting in

---

[12]     *See, e.g.*, Motion at 14; MTD Hr'g Tr. 52:19-22.

BankAtlantic stock becoming artificially inflated and an imprudent investment alternative for the

Plan: John E. Abdo, David A. Lieberman, Charlie C. Winningham, D. Keith Cobb, Bruno L.

Digiulian, Alan B. Levan, Jared S. Levan, Steven M. Coldren, Mary E. Ginestra, Willis N.

Holcombe, and James. A. White.  Such an inference is reasonable as to these eleven Insider

Defendants because Plaintiff alleged that they received BankAtlantic's monthly "Exception

Reports," which were internal reports that documented the underwriting deficiencies in

BankAtlantic's loans during the Class Period.  (*See* Sec. Am. Compl. ¶¶ 15-24, 31.)

Additionally, certain of the aforementioned Insider Defendants served on BankAtlantic's "Major

Loan Committee," which approved of BankAtlantic's riskiest loans with full knowledge of the

underwriting deficiencies.[13]  Thus, Plaintiff has put forth enough factual matter for this Court to

reasonably infer that these Insider Defendants knew of, or should have known of, BankAtlantic's

poor financial condition and exposure to risk due to its lending practices, all of which were not

adequately disclosed and made BankAtlantic stock an imprudent investment alternative.

Meanwhile, Plaintiff has not alleged sufficient facts to state a plausible claim against the

remaining six Insider Defendants: Lewis F. Sarrica, Susan D. McGregor, Kathleen M. Howell,

Patrick Lefebvre, Jeffrey Mindling, and Gerry Lachnicht.  Plaintiff only states that these six

Insider Defendants held various management-level positions at BankAtlantic and "had

---

[13]     Plaintiff's Second Amended Complaint refers to and relies on certain allegations
contained in the related securities class action complaint, *Hubbard v. BankAtlantic Bancorp., Inc.*,
et al., Case No. 07-61542. (*See, e.g.,* Sec. Am. Compl. ¶ 15.)  The *Hubbard* complaint details the
members of the Major Loan Committee.  Importantly, however, it <u>does not</u> state that Jeffrey
Mindling (a named Defendant in this action) is a member of that committee.  Plaintiff's Second
Amended Complaint does not make such a representation either.  Therefore, the Court finds footnote
18 in Plaintiff's Response inaccurate and unsupported.  Accordingly, Plaintiff has failed to allege
sufficient facts showing that it is reasonable to infer Jefferey Mindling is liable for a breach of the
duty to inform and disclose as an Insider Defendant.

knowledge of the Company's precarious loan portfolio and the attendant material risk of same to

Company's financial condition and valuation." (*See* Sec. Am. Compl. ¶¶ 25(b) – (d), (f) – (g),

(l).)  This conclusory allegation regarding knowledge is not entitled to a presumption of truth,

and Plaintiff has failed to allege any facts that would allow the Court to infer such knowledge.

For example, Plaintiff fails to allege any facts to support a reasonable inference that Defendant

McGregor, as Chief Talent Officer, knew or should have know about BankAtlantic's risky

lending and deceptive accounting practices.  Nor does Plaintiff explain why Defendant Lachnicht

would have such knowledge when he is simply alleged to be "an officer at an affiliated company

of the Company. (*See id.* ¶ 25(l).)  Instead, Plaintiff simply asserts that BankAtlantic's

precarious loan portfolio was "widely known." (*See, e.g., id.*)  Such "naked assertions devoid of

further factual enhancement" are not entitled to the presumption of truthfulness.  *Iqbal,* 129 S.Ct.

at 1949.  As Plaintiff pled no other facts to support a plausible claim against Lewis F. Sarrica,

Susan D. McGregor, Kathleen M. Howell, Patrick Lefebvre, Jeffrey Mindling, and Gerry

Lachnicht, the Court dismisses these six Defendants from Count II of the Second Amended

Complaint.

**C.    Plaintiff's Section 502(a)(3) Claims**

The Court now considers Defendants' final argument: the Court should dismiss Plaintiff's

claims under Section 502(a)(3) because it is a catch-all provision that is generally inapplicable if

a plaintiff has a cause of action under Section 502(a)(2).  (Motion 19-20.)

Section 502(a)(3) authorizes an ERISA plan participant "to obtain other appropriate

equitable relief" to enforce any provision of the ERISA statute.  29 U.S.C. § 1132(a)(3).  *See also*

*Variety Corp. v. Howe,* 516 U.S. 489, 512 (1996) (explaining that Section 502(a)(3) of ERISA

"act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [section] 502 does not elsewhere adequately remedy"). The Supreme Court has held that "equitable relief" under Section 502(a)(3) refers only to those categories of relief that are typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993). Meanwhile, Section 502(a)(2) authorizes participants to seek recovery of benefits on behalf of an ERISA plan for breaches of fiduciary duty. 29 U.S.C. § 1132(a)(2).

Plaintiff has alleged her Section 502(a)(3) claims in the alternative to her Section 502(a)(2) claims, and Plaintiff is permitted to plead in the alternative and assert inconsistent claims in her pleadings. The Court need not determine at this stage whether Plaintiff, if successful, is entitled to relief under Section 502(a)(2) and not Section 502(a)(3). *See Shirk v. Fifth Third BankCorp*, 2008 WL 4449024, *19 (S.D. Ohio Sept. 26, 2008). To the extent that Plaintiff seeks relief that is unavailable to her under Section 503(a)(3), "Defendants may renew their objections on summary judgment or on a motion limine, once discovery provides a basis for assessing the potential losses and relief available to Plaintiff[]." *Kanawi v. Bechtel Corp.*, 2007 WL 5787490, *5 (N.D. Cal. May 15, 2007).

### Conclusion

ORDERED AND ADJUDGED that Defendants' Motion (D.E. 69) is GRANTED IN PART. Defendants Lewis F. Sarrica, Susan D. McGregor, Kathleen M. Howell, Patrick Lefebvre, Jeffrey Mindling, and Gerry Lachnicht are DISMISSED from Count II of the Second Amended Complaint. It is further

ORDERED AND ADJUDGED that Defendants' Request for Oral Argument (D.E. 70) is

DENIED AS MOOT.

DONE AND ORDERED in Chambers, in Miami, Florida this 14th day of July, 2009.

_Ursula Ungaro_

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record

22