**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

---

IN RE ADVANTA CORP. ERISA LITIGATION

:
:
:
:
:
:

Civil Action No. 2:09-04974-CMR

---

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION**
**TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Steven B. Feirson
Michael L. Kichline
J. Ian Downes
Sarah L. Wyatt
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

*Attorneys for All Defendants Other Than*
*John Moore*

Dated:  January 26, 2011

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.    THE DIRECTOR DEFENDANTS WERE NOT FIDUCIARIES WITH
      RESPECT TO EITHER PLAN'S INVESTMENTS IN EMPLOYER STOCK .............. 2

II.   BECAUSE DEFENDANTS POSSESSED NO DISCRETIONARY
      AUTHORITY WITH RESPECT TO THE ADMINISTRATION OF THE ESOP,
      PLAINTIFFS' CLAIM FAILS AS A MATTER OF LAW ............................................ 4

      A.    *Moench* and *Edgar* Hold That Where a Plan Requires Investment in
            Employer Stock, There Can Be No Claim of Breach of Fiduciary Duty. ............. 4

      B.    The ESOP Requires Investments In Advanta Stock ............................................. 7

III.  PLAINTIFFS' ALLEGATIONS FAIL TO OVERCOME THE *MOENCH*
      PRESUMPTION ..................................................................................................... 9

      A.    The *Moench* Presumption Applies to the Savings Plan and at the Motion-
            to-Dismiss Stage ................................................................................................. 9

      B.    Plaintiffs' Conclusory Allegations Are Insufficient to Overcome the
            *Moench* Presumption ..................................................................................... 12

      C.    Defendants' Section 404(c) Defense Is Valid ................................................... 15

IV.   *EDGAR* FORECLOSES PLAINTIFFS' DISCLOSURE CLAIM ............................... 16

V.    PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO STATE A CLAIM
      FOR BREACH OF THE DUTY OF LOYALTY ........................................................ 19

VI.   PLAINTIFFS' "MONITORING" CLAIM IS WITHOUT MERIT ............................. 20

CONCLUSION ...................................................................................................... 20

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*,
  --- U.S. ----, 129 S.Ct. 1937 (2009) ................................................................... 16

*Chevron USA Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ............................................................................................... 16

*Crowley v. Corning, Inc.*,
  234 F. Supp. 2d 222 (W.D.N.Y. 2002) ................................................................. 14

*Dann v. Lincoln National Corp.*,
  708 F. Supp. 2d 481 (E.D. Pa. 2010) .................................................... 9, 10, 14, 15

*Dudenhoeffer v. Fifth Third Bancorp*,
  -- F.Supp.2d --, 2010 WL 4970767 (S.D.Ohio Nov. 24, 2010) ........................... 7

*Edgar v. Avaya, Inc.*,
  503 F.3d 340 (3d Cir. 2007) ........................................................................*passim*

*Fischer v. Philadelphia Electric Company*,
  994 F.2d 130 (3d Cir. 1993) ................................................................................. 17

*Fisher v. JP Morgan Chase & Co.*,
  703 F.Supp.2d 374 (S.D.N.Y. 2010) ............................................................... 2, 10

*Gearren v. McGraw-Hill Cos., Inc.*,
  690 F. Supp. 2d 254 (S.D.N.Y. 2010) ................................................................. 18

*Harris v. Amgen, Inc.*,
  No. CV 07-5442, 2010 WL 744123 (C.D. Cal. Mar. 2, 2010) ............................ 14

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ................................................................................ 16

*Hecker v. Deere & Co.*,
  69 F.3d 708 (7th Cir. 2009) .................................................................................. 16

*Herrera v. Wyeth*,
  No. 08-4688, 2010 WL 1028163 (S.D.N.Y. Mar. 17, 2010) ..........................10, 18

*Howell v. Motorola, Inc.*,
  --- F.3d ---, 2011 WL 183966 (7th Cir. Jan. 21, 2011) ....................................... 16

*In re American Express Co. ERISA Litig.*,
   No. 08 Civ. 10834, 2010 WL 4371434 (S.D.N.Y. Nov. 2, 2010) .......................................... 6

*In re Bank of America Corp. Securities, Derivative, and ERISA Litig.*,
   No. 09-MD-2058, 2010 WL 344819 (S.D.N.Y. Aug. 27, 2010) ........................................... 2

*In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*,
   No. 08-MDL-1963 (S.D.N.Y. Jan. 19, 2011) ....................................... 2, 6, 8, 10, 15, 17, 19

*In re Citigroup ERISA Litig.*,
   No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) ..................................... 5, 6

*In re Dynegy, Inc. ERISA Litig.*,
   309 F. Supp. 2d 861 (S.D. Tex. 2004) ................................................................................ 19

*In re Huntington Bancshares Inc. ERISA Litig.*,
   620 F. Supp. 2d 842, 853 (S.D. Ohio 2009) ....................................................................... 13

*In re Lehman Brothers Securities and ERISA Litigation*,
   683 F. Supp. 2d 294 (S.D.N.Y. 2010) ........................................................................... 2, 14

*In re Merck & Co., Inc. Securities Derivative & ERISA Litig.*,
   No. 05-2369, 2006 WL 2050577 (D.N.J. July 11, 2006) .................................................... 11

*In re Morgan Stanley ERISA Litig.*,
   696 F. Supp. 2d 345 (S.D.N.Y. 2009) ............................................................................ 3, 4

*In re Qwest Savings & Inv. Plan ERISA Litig.*,
   No. 02-RB-464 (D. Colo. Sept. 24, 2004) ............................................................................ 4

*In re RCN Litig.*,
   NO.04-5068, 2006 WL 753149 (D.N.J. Mar. 21, 2006) ................................................... 2, 3

*In re Schering-Plough Corp. ERISA Litigation*,
   420 F.3d 231 (3d Cir. 2005) ............................................................................................... 10

*In re Wachovia Corp. ERISA Litig.*,
   No. 3:09-262, 2010 WL 3081359 (W.D.N.C. Aug. 6, 2010) ................................................ 3

*In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*,
   No. 09-md-1919 MJP, 2009 WL 3246994 (W.D. Wash. Oct. 5, 2009) .............................. 20

*Kirschbaum v. Reliant Energy*,
   526 F.3d 243 (5th Cir. 2008) .........................................................................................12, 13

*Lanfear v. Home Depot, Inc.*,
   718 F.Supp.2d 1364 (N.D. Ga. 2010) .................................................................................. 2

*Lockheed Corp. v. Spink,*
    517 U.S. 882 (1996)............................................................................................. 4

*Moench v. Robertson,*
    62 F.3d 553 (3d Cir. 1995)...........................................................................*passim*

*Pegram v. Herdrich,*
    530 U.S. 211 (2000)........................................................................................... 19

*Pugh v. Tribune Co.,*
    521 F.3d 686 (7th Cir. 2008)........................................................................... 14

*Quan v. Computer Sciences Corp.,*
    623 F.3d 870 (9th Cir. 2010)........................................................................... 13

*Schering-Plough. Urban v. Comcast Corp.,*
    No. 08-773, 2008 WL 4739519 (E.D. Pa. Oct. 28, 2008) ..............................10, 17

*Seborowski v. Pittsburgh Press Co.,*
    188 F.3d 163 (3d Cir. 1999)............................................................................. 3

*U.S. Express Lines, Ltd. v. Higgins,*
    281 F.3d 383 (3d Cir. 2002)............................................................................. 4

*Wright v. Medtronic, Inc.,*
    No. 09-0443, 2010 WL 1027808 (D. Minn. March 17, 2010)........................... 11

*Wright v. Medtronic, Inc.,*
    No. 09-CV-0443, 2011 WL 31501 (D. Minn. Jan. 05, 2011)........................... 17

## STATUTES AND REGULATIONS

29 U.S.C. §§ 1002(34)............................................................................................ 7

29 U.S.C. § 1104(c).............................................................................................15, 16

29 C.F.R. 2550.404c-1............................................................................................ 15

## INTRODUCTION

In their Opposition to Defendants' Motion to Dismiss ("Pls.' Opp."), Plaintiffs disregard clear Third Circuit standards, misinterpret the plain terms of Advanta's Plans and overstate their allegations.  When ERISA's basic principles and the requirements of Third Circuit law are properly applied to the Plans and the circumstances alleged in the Consolidated Class Action Complaint ("Complaint"), it is clear that:

- The Director Defendants had no fiduciary responsibility with respect to: (1) the ESOP; (2) the offering of Advanta stock as an investment alternative under the Savings Plan; or (3) communications with participants in the Savings Plan concerning the investment of the contributions to their accounts.  As such, all claims against the Director Defendants must be dismissed;

- The ESOP required that all of its assets be invested in Advanta stock. Consequently there can be no valid claim against any alleged fiduciary based on those investments;

- The Savings Plan does far more than "simply permit" the offering of Advanta stock as an investment option and therefore the Third Circuit's *Moench* presumption of prudence applies.  Applying the presumption to Plaintiffs' claims, the allegations in the Complaint fail to support the conclusion that the members of the Plan's Administrative Committee (the "Committee Defendants") knew that Advanta was facing impending collapse at any time during the class period, as is required to avoid dismissal;

- Defendants did not breach any duty of disclosure under ERISA, either by making alleged affirmative misstatements or by their alleged silence concerning Advanta's financial circumstances because: (1) statements contained in Advanta's SEC filings and made to investors generally were not fiduciary statements by either the Director Defendants or the Committee Defendants; and (2) Plaintiffs' contention that the Committee Defendants had a duty to disclose alleged non-public information concerning Advanta's financial circumstances to Plan participants is plainly inconsistent with the Third Circuit's *Edgar* decision, in which the court dismissed a claim virtually identical to Plaintiffs' here; and

- Plaintiffs' conflict of interest and duty to monitor claims are baseless, both because they are derivative of Plaintiffs' other meritless claims and for independent reasons.

For these reasons, Defendants' Motion to Dismiss should be granted.

## ARGUMENT

I.   **THE DIRECTOR DEFENDANTS WERE NOT FIDUCIARIES WITH RESPECT TO EITHER PLAN'S INVESTMENTS IN EMPLOYER STOCK.**

Plaintiffs offer no justification for their contention that the Director Defendants possessed any fiduciary responsibility under the Savings Plan with respect to the conduct at issue in Count I of the Complaint.[1]  The Plan itself demonstrates that the Director Defendants possessed no responsibility for selecting the investments offered under the Savings Plan or for communicating with participants concerning those investments.  Specifically, the Plan states that the authority of Advanta's Board of Directors is limited to "appointing and removing the Committee and the Trustee and for amending or terminating the Plan and the Trust Agreement."  2001 Savings Plan Document (Ex. D to Defendants' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.")), § 2.5.1.  Indeed, Plaintiffs' Complaint contains no allegations concerning the Director Defendants' responsibility for the Savings Plan other than that they were "responsible for selecting, monitoring and removing members of the Administrative Committee."  Compl., ¶ 78; *see also id.*, ¶¶ 47-55, 79-83.  Accordingly, insofar as it relates to the Savings Plan, Count I should be dismissed as to the Director Defendants.

Plaintiffs' defense of their "imprudent investment" claim against the Director Defendants under the ESOP is equally futile.  Plaintiffs' argument is based on the allegation that the Director Defendants "had ultimate discretion whether and in what amount contributions were to be made

---

[1]   Although Plaintiffs claim that determining fiduciary status is a "highly fact intensive inquiry," Pls.' Opp. at 16, where, as here, a plan clearly identifies its fiduciaries and their specific responsibilities, courts routinely determine on a motion to dismiss whether individual defendants are fiduciaries and, if so, for what purposes.  *See, e.g., In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*, No. 08-MDL-1963, Slip Op., at 336 (S.D.N.Y. Jan. 19, 2011); *In re Bank of America Corp. Securities, Derivative, and ERISA Litig.*, No. 09-MD-2058, 2010 WL 344819, at *14 (S.D.N.Y. Aug. 27, 2010); *Lanfear v. Home Depot, Inc.*, 718 F.Supp.2d 1364, 1377 (N.D. Ga. 2010); *Fisher v. JP Morgan Chase & Co.*, 703 F.Supp.2d 374, 382 (S.D.N.Y. 2010); *In re Lehman Brothers Securities and ERISA Litigation*, 683 F. Supp. 2d 294, 299 (S.D.N.Y. 2010); *In re RCN Litig.*, NO.04-5068, 2006 WL 753149, at *8 (D.N.J. Mar. 21, 2006).

in the form of Company stock." Pls.' Opp., at 16 (citing Compl., ¶ 91). This theoretical authority, *see* ESOP Plan Document (Ex. A to Defs.' Mem.), § 4.2, does not save Plaintiffs' claim for three reasons. First, as discussed in Section II below, the discretionary "contributions" that the Director Defendants allegedly possessed the authority to make are not at issue in this case. Rather, the investments in Advanta stock that are at issue in the case are those that were released to participants from the ESOP's suspense account as the ESOP repaid the 1998 loan pursuant to which it initially acquired shares of Advanta stock. *Id.*, §§ 1.1, 4.1, 6.1, 7.7; *see also* ESOP SPD (Ex. B to Defs.' Mem.), at 6 (stating that the "Board of Directors has the discretion whether and in what amount contributions shall be made," but also noting that Advanta is required to make contributions "sufficient…for the repayment of the loan the Plan's trust incurred for the purpose of purchasing company stock"); Defs.' Mem., at 11-13.

Second, the making of contributions to the ESOP is not a fiduciary act. *See In re Wachovia Corp. ERISA Litig.*, No. 3:09-262, 2010 WL 3081359, at *11 (W.D.N.C. Aug. 6, 2010) ("Decisions regarding the amount of company contributions are funding decisions, and funding decisions are settlor functions which do not implicate fiduciary duties."); *In re RCN Litig.,* No. 04-5068, 2006 WL 753149, at *6 n. 4 (D.N.J. Mar. 21, 2006) (rejecting argument that RCN was a fiduciary due to its authority to make profit sharing contributions and to change the amount of the company's matching contributions because those acts were "not functions undertaken in the Company's role of plan administrator and do not implicate ERISA's fiduciary duties"); *see also Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 170 n.1 (3d Cir. 1999) (where plan did not specify contribution to be made by employer "the decision as to what the employer's contribution would be was not a decision made in a fiduciary capacity").[2]

_____

[2]     Plaintiffs' reliance on *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345 (S.D.N.Y. 2009), is unavailing. The contributions at issue in *Morgan Stanley* were employer matching

Finally, regardless of the Director Defendants' authority to make contributions to the ESOP, there can be no claim of breach because, as demonstrated by the IRS Form 5500's filed for the ESOP for the period covering the class period, relevant excerpts of which are attached hereto as Exhibits A-D,[3] all of the employer contributions to the ESOP were made in <u>cash</u>, not Advanta stock. Thus, Plaintiffs' assertion that the Director Defendants breached their alleged fiduciary duty by making contributions to the ESOP in the form of Advanta stock, Pls.' Opp., at 16, is patently false.

For these reasons, the Director Defendants cannot be found to have been fiduciaries of either the ESOP or the Savings Plan for the purposes of Count I of the Complaint.

## II.   BECAUSE DEFENDANTS POSSESSED NO DISCRETIONARY AUTHORITY WITH RESPECT TO THE ADMINISTRATION OF THE ESOP, PLAINTIFFS' CLAIM FAILS AS A MATTER OF LAW.

### A.   *Moench* and *Edgar* Hold That Where a Plan Requires Investment in Employer Stock, There Can Be No Claim of Breach of Fiduciary Duty.

While Plaintiffs assert that it is "preposterous" to hold that Defendants' compliance with the clear terms of the ESOP cannot form the basis for a claim of breach of fiduciary duty, this is precisely what the Third Circuit has held. *See Edgar v. Avaya, Inc.*, 503 F.3d 340, 346 (3d Cir.

---

contributions that were compelled by terms of the plan at issue and the alleged discretion possessed by the fiduciaries with respect to those contributions related to the form in which they were made. *Id.* at 351. The same appears to have been true in the unpublished decision from the District of Colorado, *In re Qwest Savings & Inv. Plan ERISA Litig.*, cited by Plaintiffs. *See* Exhibit A to Pls.' Opp., at 3, 14. Here, in contrast, the Director Defendants' authority to make supplemental contributions to the ESOP was discretionary and any exercise of that authority was a non-fiduciary settlor decision concerning whether to confer a benefit upon Advanta's employees. *Accord Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) ("Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan.") (emphasis added).

[3]   Plaintiffs specifically rely on the ESOP's Form 5500's in their Complaint, Compl. ¶¶ 46, 63; *see also* Pls.' Opp. at 24 (citing ESOP Financial Statements). Accordingly, the Court may appropriately consider the Forms in deciding Defendants' Motion. *See U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

2007); *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995).  As noted in Defendants' opening

brief, the court in *Edgar* held that under the tripartite standard articulated in *Moench*, "if the trust

'requires' the trustee to invest in a particular stock, then the trustee is '<u>immune from judicial</u>

<u>inquiry</u>.'" 503 F.3d at 346 (emphasis added).  Indeed, a number of courts in this district and

elsewhere have interpreted *Moench* and *Edgar* precisely as Defendants advocate here.  *See*

Defs.' Mem. at 31-32 (collecting authority).

      Plaintiffs' attempt to escape *Edgar*'s holding by manufacturing a false conflict between

the above legal principles and the *Edgar* court's conclusions with respect to the specific plan

involved in that case fails.  *Edgar*'s conclusion that the presumption of prudence (rather than

immunity from judicial scrutiny) applied to the Avaya plan at issue was based on the fact that

that plan did not absolutely require that Avaya stock be offered as an option: "[t]here is no

dispute that, as in *Moench*, defendants retained limited discretion not to offer Avaya common

stock as an investment option." *Edgar*, at 347 n.11.  Here, in contrast, Defendants possessed <u>no</u>

discretion not to invest the ESOP in Advanta stock.  *See* Section II(B) *infra*.

      Plaintiffs also attempt to avoid the effects of *Moench* and *Edgar* by arguing that the rules

these cases established are inconsistent with ERISA.  While this Court need not revisit what the

Third Circuit, after careful analysis of ERISA and ESOP's purposes, has already twice decided,

even if it were to do so, it should find no inconsistency.  The principle that "ESOP fiduciaries are

still required to act in accordance with the duties of loyalty and care," *Edgar*, at 346, extends

only to acts taken *in a fiduciary capacity*.  Where a plan absolutely requires investments in

employer stock, however, individuals who are otherwise responsible for administering the plan

possess no discretion with respect to such investments, and therefore have no fiduciary

responsibility with respect to those investments.  As the court in *In re Citigroup ERISA Litig.*,

No. 07 Civ. 9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) held, "ERISA's language, structure and purpose" establish that fiduciaries have no "duty to override" the requirements of a plan:

> [Plaintiffs] argue that the terms of an ERISA plan are void insofar as they eviscerate a fiduciary's duty of prudence. … Plaintiffs' analysis, however, is at odds with ERISA's provisions regarding EIAPs and ESOPs. … The correct interpretation of ERISA simply requires fiduciaries to adhere to a plan's terms regarding employer stock, even if the price of employer stock falls. … Here, therefore, neither the Investment Committee nor any other fiduciary had discretion to override the Plans' requirement that Citigroup stock be offered as an investment option.

*Id.* at *12-13; *see also In re Bear Stearns*, *supra* n.1, at 342 (dismissing prudence claim where plan documents demonstrated that "the ESOP Committee did not have the authority, discretion or duty to divest or diversify Plan assets");[4] *In re American Express Co. ERISA Litig.*, No. 08 Civ. 10834, 2010 WL 4371434, at *9 (S.D.N.Y. Nov. 2, 2010) ("Because they have no discretion regarding the existence of the Company Stock Fund, the defendants are not liable for breaches of fiduciary duty with respect to whether the Company Stock Fund is maintained as part of the Plan."). Accordingly, there is no inconsistency between ERISA's general fiduciary principles and *Edgar*'s holding that where an ESOP requires investments in employer stock, fiduciaries are immune from judicial scrutiny.[5]

---

[4]   The *Bear Stearns* decision is approximately 400 pages in length. Although the opinion is not yet available electronically, in order to avoid burdening the Court with excessive paper, Defendants have not attached a copy of the decision as an exhibit to this Reply. If, however, the Court would like Defendants to submit a copy of the decision, they are of course happy to do so.

[5]   Plaintiffs also attempt to avoid the impact of *Moench* and *Edgar* by asserting that "whether the ESOP here is truly an ESOP in practice—as Defendants argue—can and *should* only be determined after fact discovery…." Pls.' Opp., at 25 (emphasis in original). However, courts in this and other districts routinely address whether a plan qualifies as an ESOP at the pleading stage. *See, e.g., Dann v. Lincoln National Corp.*, 708 F. Supp. 2d 481, 487-88 (E.D. Pa. 2010) (holding that the "pertinent portions" of the plans at issue were ESOPs); *Dudenhoeffer v. Fifth Third Bancorp*, -- F.Supp.2d --, 2010 WL 4970767, at *4 (S.D.Ohio Nov. 24, 2010) (holding at motion to dismiss stage that plan was an ESOP). "A plan is an ESOP if it is 'formally designated

**B.      The ESOP Requires Investments In Advanta Stock.**

Plaintiffs' argument that the ESOP did not require that the Plan's assets be invested entirely in Advanta stock rests primarily on the statement in the ESOP SPD that Advanta's Board possesses "discretion whether and in what amount contributions shall be made, [and] there is no set amount which must be contributed each year by the Company."  Pls.' Opp. at 21.[6]  This selective quotation, however, omits the critical language of the SPD: "Notwithstanding the foregoing, Company contributions will be sufficient, when combined with other Plan assets and earnings, for the repayment of the loan the Plan's trust incurred for the purpose of purchasing Company stock."  ESOP SPD (Ex. B to Defs.' Mem.) at 6.

As described in Defendants' initial Memorandum of Law, the ESOP's plan design affords neither Defendants nor anyone else discretion concerning the process by which the loan that funded the ESOP is repaid and by which shares of Advanta stock are distributed to participants.  *See* Defs.' Mem., at 34-35.  Every step of the process is dictated by the clear language of the ESOP: As Advanta makes contributions to the ESOP, those contributions are used to repay the 1998 loan that funded the acquisition of shares by the Plan.  Upon the making

---

as such in the plan document' and is 'designed to invest primarily in employer securities.'" *Dann*, at 487 (quoting 29 U.S.C. § 1107(d)(6)).  The ESOP unquestionably meets these criteria. *See* ESOP Plan Document (Ex. A to Defs.' Mem.), §§ 1.1, 1.2.  Indeed, Plaintiffs neither plead in their Complaint nor assert in their Opposition that the ESOP does not in fact qualify as an employee stock ownership plan.  In any event, Plaintiffs' argument is ultimately irrelevant as the court in *Edgar* held that the principles announced in that case and in *Moench* apply to all "eligible individual account plans" ("EIAPs"), not just those that formally qualify as ESOPs.  *See Edgar*, at 347.  There can be no dispute that the ESOP is an EIAP.  *See* 29 U.S.C. §§ 1002(34) (defining "individual account plan"); 1107(d)(3)(A) (defining EIAP).

[6]      Plaintiffs also attempt to establish that the Defendants possessed discretion with respect to the ESOP by citing to language in Sections 16.3 and 16.4 of the Plan providing that "the Employer" may "suspend" or "discontinue" employer contributions to the ESOP in its discretion.  Pls.' Opp., at 21.  This language does not help Plaintiffs because the suspension or discontinuation of contributions is a corporate rather than a fiduciary act and because the "Employer" under the ESOP is Advanta Corporation, which is not a defendant in this case.  *See id.*

of the loan payments, shares of Advanta stock are released from the Plan's suspense account and distributed to participants.  *Id.*  Significantly, the ESOP explicitly states that "the securities becoming available for allocation…shall be allocated in <u>nonmonetary units</u>" to participants' accounts.  ESOP Plan Document (Ex. A to Defs.' Mem.), § 7.7 (emphasis added).[7]

In their Opposition, Plaintiffs completely ignore this structure and focus on the right of Advanta's Directors to make *additional* discretionary contributions pursuant to § 4.2 of the ESOP.  This effort fails, however, for three reasons.  First, as discussed above, the making of discretionary contributions to the ESOP is not a fiduciary act.  Second, as also discussed above, all of the contributions that were in fact made to the ESOP were in cash, not Advanta stock.  Third, Plaintiffs do not allege that any discretionary additional contributions to the Plan were made during the class period.  *Accord In re Bearn Stearns* at 345 (dismissing prudence claim against alleged ESOP fiduciaries where plaintiffs failed to allege that defendants exercised right to make discretionary contributions during class period).  Indeed, as demonstrated by the Department of Labor Form 5500's that were filed for the ESOP for the period covering the class period, no such discretionary contributions were in fact made.  *See* 2006 Form 5500 at 2, 2006 ESOP Form 5500 Financial Statements, at 7, 10 (Ex. A hereto) (stating that Advanta's contributions to the ESOP were used to "make payments of principal and interest due on the loan," and showing that, in 2006, Advanta made $507,490 in contributions to the ESOP, but $1,118,945 in loan repayments); *see also* 2007 Form 5500 (Ex. B hereto), Schedule H at 2, Financial Statements at 7, 10; 2008 Form 5500 (Ex. C), Schedule H at 2, Financial Statements at 8, 12; 2009 Form 5500 (Ex. D), Schedule H at 2 (showing employer contributions of $618,568).

---

[7]     The lack of discretion afforded by the ESOP is further exhibited by the fact that the Plan contains no provision for the handling of Plan assets in the event they are not invested in Advanta stock.

Accordingly, the only contributions and distributions of Advanta stock to ESOP participants that are at issue in this case are those that were made pursuant to the ESOP's mandatory loan repayment process.  Because Defendants possessed no discretion whatsoever with regard to that process, that is, because the ESOP "absolutely required" that the Plan's assets be invested in Advanta stock, Defendants cannot be found to have breached any fiduciary duty.

## III.   PLAINTIFFS' ALLEGATIONS FAIL TO OVERCOME THE *MOENCH* PRESUMPTION.

### A.   The *Moench* Presumption Applies to the Savings Plan and at the Motion-to-Dismiss Stage.

In *Edgar*, the court held that because proof of circumstances sufficient to overcome the *Moench* presumption is an "essential element" of a plaintiff's claim for breach of fiduciary duty, the presumption is properly applied at the motion-to-dismiss stage.  503 F.3d at 349.  The court also concluded that the plan at issue was subject to the presumption because it did more than "simply permit[ ]" investments in Avaya stock.  *Id.* at 347.  Notwithstanding these holdings, Plaintiffs contend that it would be "premature" for the Court to determine at this stage whether the presumption applies to the Savings Plan (or to the ESOP in the event that the Court concludes that the ESOP did not require that its assets be invested in Advanta stock).  Plaintiffs' arguments must be rejected.

*Edgar* establishes that the presumption of prudence can and must be applied in considering a motion to dismiss.  Because *Edgar* is controlling with respect to the applicability of the *Moench* presumption in the 12(b)(6) context, Plaintiffs' argument is meritless.  *Accord Dann v. Lincoln Nat'l Corp.*, 708 F.Supp.2d 481, 488 n.7 (E.D. Pa. 2010) ("The Third Circuit and other courts in this district, however, have required that plaintiffs allege facts sufficient to satisfy *Moench*.").

9

Plaintiffs' argument that the Savings Plan is not subject to the *Moench* presumption because it did not "mandate or require[ ]" investment in Advanta stock, Pls.' Opp., at 22, is equally baseless. *Moench* explicitly held that the presumption of prudence applies any time that a plan "encourages" or does "more than simply permit" investments in employer stock and that a strict mandate or requirement to invest in company stock is not necessary. *Moench,* 62 F.3d at 571. [8] Here, the Savings Plan unquestionably does more than "simply permit" investments in Advanta stock.

The Savings Plan's Plan Document specifically states that "[t]he [Plan Administration] Committee *shall* establish an Investment Category consisting solely of Company Stock" and the Plan's Summary Plan Descriptions reflect that one of the primary purposes of the Plan is to promote employee ownership of Advanta. 2001 Savings Plan Document (Ex. D to Defs.' Mem.), § 6.2 (emphasis added); *see also* 2007 Savings Plan SPD (Ex. G to Defs.' Mem.), at 7; 2009 Savings Plan SPD (Ex. H to Defs.' Mem.), Art. XIV(A). Thus, when properly viewed "as a whole," it cannot be disputed that the Savings Plan goes well beyond merely permitting Advanta stock to be offered as an investment option and that the *Moench* presumption therefore applies. *See Dann*, *supra*, at *7; *see also In re Bear Stearns*, at 356; *Herrera v. Wyeth,* No. 08-

---

[8]     *In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231 (3d Cir. 2005), does not support Plaintiffs' position. As the court noted in *Edgar*, *Schering-Plough* did not directly address the scope of *Moench*, but instead merely addressed the "narrow question" of the standing of certain participants to prosecute a derivative action on behalf of the plan as a whole. 503 F.3d at 347 n.12. While the *Schering-Plough* court stated, in dicta, that the presumption did not apply to the plan at issue in the case because the fiduciaries "were 'simply permitted to make…investments in employer securities,'" 420 F.3d at 238, this language hardly supports a conclusion that the presumption of prudence only applies where a plan explicitly requires that the employers' stock be offered to the employees. Accordingly, as the *Edgar* court recognized, *Moench*'s holding – that the presumption applies where the plan encourages the purchase of employer stock – was not touched by *Schering-Plough*. *Urban v. Comcast Corp.*, No. 08-773, 2008 WL 4739519 (E.D. Pa. Oct. 28, 2008), is likewise distinguishable as the plan in that case "merely provided that investment options '*may* include Company stock.'" *Id.* at *12 (emphasis added).

4688, 2010 WL 1028163, at *6 (S.D.N.Y. Mar. 17, 2010); *Fisher v. JPMorgan Chase & Co.*,

703 F. Supp.2d 374, 383 (S.D.N.Y. 2010); *In re Merck & Co., Inc. Securities Derivative &*

*ERISA Litig.*, No. 05-2369, 2006 WL 2050577, at *6-7 (D.N.J. July 11, 2006).

      Plaintiffs argue that because Committee Defendants may have possessed the authority to

discontinue offering Advanta stock as an investment option under certain circumstances, they

"retained a great deal of power to administer the Savings Plan."  Pls.' Opp., at 21.  In attempting

to support this argument, Plaintiffs misstate the terms of the Plan.  Specifically, while Plaintiffs

assert in their Opposition that the Committee Defendants were required to monitor the Advanta

Stock Fund "for the purpose of recommending levels of Advanta stock for investment or for

elimination of Advanta stock as a Plan investment," Pls.' Opp. at 7, the Plan document they rely

on to support this contention—the Savings Plan's Investment Policy Statement (Ex. I to Defs.'

Mem.)—states <u>precisely the opposite</u>.  That is, the Investment Policy Statement states that the

Administrative Committee's responsibility is to "monitor the performance of Advanta stock <u>not</u>

for the purpose of recommending levels of Advanta stock for investment in the Plan or for

elimination of Advanta stock as a Plan investment...."  Investment Policy Statement, at 1

(emphasis added).

      In any event, as noted above, the *Moench* presumption applies even if a fiduciary

possesses some discretion with respect to the offering of employer stock.  Thus, even if the

Committee Defendants could have eliminated the Advanta Stock Fund in extraordinary

circumstances, the *Moench* presumption still governs Plaintiffs' claims.  *Accord Wright v.*

*Medtronic, Inc.*, No. 09-0443, 2010 WL 1027808, at *7 (D. Minn. March 17, 2010) (holding that

*Moench* applies even though fiduciaries had discretion to eliminate employer stock option

because "[a] plan can encourage investment in employer stock and yet leave open the possibility of eliminating that option under unusual circumstances").

### B.   Plaintiffs' Conclusory Allegations Are Insufficient to Overcome the *Moench* Presumption.

In their initial Memorandum, Defendants demonstrated that Plaintiffs' Complaint does little more than recount Advanta's publicly announced financial results and the *post hoc* reactions of selected financial analysts to the company's performance. *See* Defs.' Mem., at 39-44. Plaintiffs' response to this showing is two-fold. First, they suggest that Defendants are attempting to "shirk their fiduciary duties" and impose a "draconian" pleading standard on Plaintiffs. Pls.' Opp. at 27, 32. This is untrue. Defendants ask the Court to do nothing more than recognize that, because of the "unique status" of EIAPs under ERISA and because an EIAP fiduciary who divests a plan of employer stock "risk[s] liability for having failed to follow the terms of [a plan]", *Edgar*, at 346, 348-49, the *Moench* presumption requires that a plaintiff plead "persuasive and analytically rigorous facts," *Kirschbaum v. Reliant Energy*, 526 F.3d 243, 246 (5th Cir. 2008), that show that a fiduciary "could not have believed reasonably that continued adherence to [a plan's] direction was in keeping with the settlor's expectations of how a prudent trustee would operate." *Moench*, at 571. Application of the presumption in this fashion is in no way inconsistent with ERISA; rather it is compelled by both ERISA's policies and language.

Plaintiffs' second response to Defendants' Motion is to devote a few scant paragraphs to arguing that their Complaint "more than sufficiently alleges the 'dire circumstances' befalling Advanta....." Pls.' Opp. Mem., at 33. However, while Plaintiffs' Complaint describes, with the benefit of hindsight, the declines in Advanta's stock price and its ultimate bankruptcy filing, it fails to allege facts supporting the conclusion that Defendants knew in advance that the company's collapse was likely to occur. Plaintiffs identify five alleged circumstances that they

contend rendered Advanta's stock imprudent.  *See* Pls.' Opp., at 33-34.  But the impact of each

of these alleged circumstances is apparent only in hindsight (*e.g.*, that Advanta's customer

default rate "would be" higher than the industry average, that customers "would continue to

leave the Company" and that the company's portfolio "would have" large charges to reflect

impairments) and Plaintiffs' Complaint contains no allegations establishing that Defendants

foresaw this impact, yet failed to take any action.  As numerous courts have recognized, "[a]

fiduciary cannot be placed in the untenable position of having to predict the future of the

company's stock performance."  *Kirschbaum*, 526 F.3d at 256; *see also Quan v. Computer*

*Sciences Corp.*, 623 F.3d 870 (9th Cir. 2010) ("Fiduciaries are not expected to predict the future

of the company stock's performance…."); *In re Huntington Bancshares Inc. ERISA Litig.*, 620 F.

Supp. 2d 842, 853 (S.D. Ohio 2009) ("Defendants cannot be held to a standard that would

require them to predict the future of the financial markets so as not to breach their fiduciary

duties under ERISA.").

      Plaintiffs' Complaint is also deficient because it fails to offer any allegations

demonstrating <u>when</u> Defendants should have ceased investing in Advanta stock or <u>what</u> each

Defendant allegedly knew about the "dire circumstances" supposedly facing Advanta during the

class period.[9]  To state a valid claim a complaint must "allege facts that permit a determination of

---

[9]    At one point Plaintiffs assert that Defendants should have known that Advanta stock was an
imprudent investment "by at least 2008" based on a disclosure contained in the financial
statements to the Form 5500 filed by the ESOP in early 2009.  Pls.' Opp. at 24.  However, the
statement to which Plaintiffs refer—stating that Advanta faced potential failure "if [it] is unable
to develop and implement a new business opportunity that will generate revenues and profits
or…if it is unable to access sufficient funding," *id.*—in fact supports Defendants' position that
they had no reason to foresee Advanta's ultimate demise.  The statements cited by Plaintiffs show
that, as of the end of 2008, Advanta was still engaged in efforts to improve its business and
increase its stock price.  While it is now known that those efforts were unsuccessful, nothing in
Plaintiffs' Complaint shows that this result was clear at the time.  Had Defendants followed the
course that Plaintiffs now suggest—discontinuation of the Plans' investments in employer
stock—and Advanta's plan proved successful, Defendants would have faced almost certain
liability for failure to adhere to the Plans' mandates concerning investments in Advanta stock.

when [an employer's] financial condition reached that point." *In re Lehman Bros.*, 683 F. Supp.

2d at 302.  Similarly, "a conclusory statement that all defendants should have known specific

facts about a company is generally insufficient to state a claim; it must be alleged that each

defendant was in a position to know or learn of the information." *Pugh v. Tribune Co.*, 521 F.3d

686, 700-701 (7th Cir. 2008); *see also Lehman Bros.*, at 301 (dismissing claim because

complaint failed to allege specific facts suggesting that individual defendant was in a position to

know of Lehman's alleged "imminent collapse"); *Harris v. Amgen, Inc.*, No. CV 07-5442, 2010

WL 744123, at *8 (C.D. Cal. Mar. 2, 2010) ("Plaintiffs fail to allege with sufficient specificity

how the Individual Defendants breached their purported fiduciary duties."); *Crowley v. Corning,

Inc.*, 234 F. Supp. 2d 222, 230 (W.D.N.Y. 2002) (dismissing claim because there was "no

allegation that Committee members themselves had any knowledge of any misinformation but

made allegations against all defendants without specifying when the adverse information was

available or known" to any indvidual defendant).  Here, Plaintiffs' allegations are wholly

conclusory, effectively consisting of nothing more than a contention that "defendants 'knew or

should have known' about [Advanta's] true financial state throughout the class period." *In re

Lehman Bros.*, 683 F. Supp. 2d at 301.  Therefore, those allegations fail to state valid claim.

 Plaintiffs rely heavily on *Dann v. Lincoln National Corporation* to support their

contention that their Complaint allegations are sufficient to overcome the *Moench* presumption.

However, their reliance on that case is misplaced.  In *Dann*, the court permitted the plaintiffs'

case to proceed to discovery because the complaint contained "*specific allegations* explaining

---

*See Edgar*, at 348-49 ("Indeed, had defendants divested the Plans of Avaya common stock during
the Class Period, they would have risked liability for having failed to follow the terms of the
Plans."); *Moench*, 62 F.3d at 571-72 ("[C]ourts must recognize that if the fiduciary, in what it
regards as an exercise of caution, does not maintain the investment in the employer's securities, it
may face liability for that caution, particularly if the employer's securities thrive.").

why Defendants knew or should have known that the value of LNC common stock would seriously deteriorate, resulting in losses to the Plans unanticipated by the settlors." 708 F. Supp. 2d at 491 (emphasis added). Here, in contrast, Plaintiffs' allegations are vague and conclusory and fail to identify the alleged causes of Advanta's collapse or the reasons why Defendants allegedly should have foreseen that collapse with the same level of specificity as the allegations found sufficient by the *Dann* court. Accordingly, Plaintiffs' analogy to *Dann* does not save their claim. *Accord In re Bear Stearns*, at 362 (finding allegations that "Bear Stearns was mismanaged, experienced a substantial decline in its stock price, and was at risk of collapse" were insufficient to "carry the heavy burden" imposed by *Moench*).

For these reasons and the reasons stated in Defendants' opening Memorandum of Law, the allegations in Plaintiffs' Complaint fail to overcome the *Moench* presumption, and Plaintiffs' duty of prudence claim must be dismissed.

### C.      Defendants' Section 404(c) Defense Is Valid.

Plaintiffs argue: (1) that § 404(c) "is not a defense to a fiduciary's selection or retention of imprudent investment options," Pls.' Opp., at 35-38; and (2) that the defense is not properly asserted on a motion to dismiss, Pls.' Opp., at 38-40. Neither of these arguments is valid.

In support of their first assertion, Plaintiffs rely on language in a footnote to the Department of Labor's preamble to its final regulation concerning § 404(c). Pls.' Opp., at 36-37. However, this language (which does not appear in the final regulation itself, 29 C.F.R. 2550.404c-1) and Plaintiffs' argument are inconsistent with the plain language of § 404(c). Section 404(c) states that an EIAP fiduciary shall not be liable "for any loss…which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c)(1)(A). Any losses experienced by a plan participant that could have been avoided by making different selections from among a variety of investment alternatives are losses that "results from such participant's…

exercise of control," regardless of the nature of any particular investment option offered by a plan. Plaintiffs' attempt to challenge the application of § 404(c) to their Complaint by discrediting the reasoning of the Seventh Circuit in *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) ("*Hecker I*"), by citing to its subsequent opinion, 69 F.3d 708 (7th Cir. 2009) ("*Hecker II*") (denying rehearing *en banc*), is similarly unavailing. *Hecker II* affirmed the application of § 404(c) at the motion to dismiss stage and concluded that the Supreme Court's post-*Hecker I* decision in *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009), confirmed the propriety of the conclusion that § 404(c) banned plaintiffs' claims.[10]

Accordingly, for the reasons stated in Defendants' initial Memorandum of Law, Plaintiffs' duty of prudence claim is precluded by § 404(c) of ERISA.

## IV.    *EDGAR* FORECLOSES PLAINTIFFS' DISCLOSURE CLAIM.

According to their Opposition, Plaintiffs' claim for breach of ERISA's duty to provide information to plan participants is based upon: 1) "numerous allegations…arising from Defendants' failure to disclose complete information to Participants"; and 2) alleged misstatements contained in Defendants' SEC filings and incorporated by reference into the Plans' SPDs. These purported bases for Plaintiffs' ERISA disclosure claims are meritless.

Plaintiffs' "failure to disclose" claim fails for two primary reasons. First, the *Edgar* court clearly ruled that disclosures like those made by Defendants in this case were sufficient as a

---

[10]    *Hecker II* also rejected the argument that the preamble to the DOL's § 404(c) regulation upon which Plaintiffs rely is due deference under *Chevron USA Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984).  569 F.3d at 709-10 ("[T]he panel did not ignore any language in the regulation proper.  Instead, it did not give the weight that the Secretary believes is due to some language in a footnote to the preamble to the regulation…With respect, we cannot agree with the Secretary that the footnote in the preamble is entitled to full *Chevron* deference."). While the Seventh Circuit recently concluded that § 404(c) is inapplicable to the selection of plan investment options, *Howell v. Motorola, Inc.,* --- F.3d ---, 2011 WL 183966, at *15 (7th Cir. Jan. 21, 2011), its decision did not abandon the *Hecker II*'s conclusion concerning the lack of deference due to the preamble.

matter of law to satisfy a plan fiduciary's duty of disclosure and that, because "[fiduciaries] d[o] not have a duty to 'give investment advice' or to 'opine on' [a] stock's condition," ERISA does not impose a generalized duty to disclose non-public business information to plan participants. 503 F.3d at 350. As one court recently recognized:

> ERISA does not impose an affirmative duty on a corporate insider who acts as a fiduciary of a defined-contribution plan to disclose to plan participants nonpublic (i.e., 'inside') information about the corporation that might affect the value of the corporation's stock. Instead, employee-investors who believe that material information has been unlawfully withheld must, like every other member of the investing public, seek redress under the securities laws.

*Wright v. Medtronic, Inc.*, No. 09-CV-0443, 2011 WL 31501, at *7 (D. Minn. Jan. 05, 2011)*; see also In re Bear Stearns*, at 368 (finding that fiduciaries "have no duty to disclose information about the financial condition of the companies the plans are invested in") (citing *Edgar*).[11]

Second, Plaintiffs mischaracterize Defendants' loss causation argument and thereby ignore the controlling analysis of the Third Circuit in *Edgar*. The basis of Defendants' argument is not that Plaintiffs sold their holdings of Advanta stock at an artificially inflated price and therefore suffered no harm from later disclosures that caused a drop in the value of Advanta stock. Rather, Defendants assert that, as in *Edgar*, Plaintiffs' claims are deficient because any disclosure of material information "would have resulted in a swift market adjustment," regardless of its timing. *Edgar*, at 350. Accordingly, Savings Plan participants "would not have been able to sell their [] stock holdings at the higher, pre-announcement price, and…would have sustained the same losses they incurred." *Id. See also Urban v. Comcast Corp.*, 2008 WL

---

[11]   Plaintiffs' reliance on the Third Circuit's decision in *Fischer v. Philadelphia Electric Company*, 994 F.2d 130 (3d Cir. 1993), is misplaced as the issue in that case was whether the defendants had made affirmative misrepresentations to plan participants. *Id.* at 135. Here, with the exception of their allegations concerning Advanta's SEC filings, Plaintiffs have not alleged any affirmative misstatements by Defendants.

4739519, at *14 (dismissing claim based on loss causation because "[w]e see no meaningful

basis on which to distinguish the disclosure claim dismissed by our Court of Appeals in *Avaya*

from that advanced by plaintiff here").

Plaintiffs' "misrepresentation" claim also fails.  The misrepresentation claim is based

exclusively on alleged misstatements contained in Advanta's SEC filings and appears now to

target the Committee Defendants, rather than the Director Defendants.[12]  However, in their

Opposition Memorandum, Plaintiffs do not identify any Committee Defendant member who

allegedly made any misrepresentation.  Instead, Plaintiffs point only to the Committee

Defendants' alleged act of incorporating Advanta's allegedly misleading SEC filings into the

Savings Plan's SPD.  *See* Pls.' Opp. at 50.  Merely incorporating a company's public filings into

a summary plan description (as required by securities law) does not constitute a fiduciary

representation.  *See Gearren v. McGraw-Hill Cos., Inc.*, 690 F. Supp. 2d 254, 272-73 (S.D.N.Y.

2010) ("'Although the [SPD] incorporates SEC filings by reference and is part of the Section

10(a) prospectus, those connections are insufficient to transform those documents into a basis for

ERISA claims against their signatories.'") (citation omitted); *Herrera*, 2010 WL 1028163, at *7

("'Defendants who incorporated the SEC documents by reference into the Summary Plan

Description did not intentionally connect the content of those SEC filings to statements about

plan benefits.'") (quoting *Gearren*).

Accordingly, Plaintiffs' claim for breach of ERISA's fiduciary duty of disclosure fails.

---

[12]     To the extent that Plaintiffs continue to attempt to assert their disclosure claim against the
Director Defendants who allegedly issued the statements contained in Advanta's SEC filings,
such efforts fail for the reasons stated in Defendants' initial Memorandum of Law.  *See* Defs.'
Mem. of Law, at 53-54.

## V.    PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO STATE A CLAIM FOR BREACH OF THE DUTY OF LOYALTY.

In attempting to plead a claim for breach of ERISA's duty of loyalty, it is not enough for Plaintiffs merely to allege that a particular Defendant's compensation was tied to the price of Advanta stock or that some Defendants allegedly sold personal holdings of company stock during the class period.  *See* Defs.' Mem., at 54-57.[13]  Instead, particularly in light of the Supreme Court's explicit recognition that "[u]nder ERISA ... a fiduciary may have financial interests adverse to beneficiaries," *Pegram v. Herdrich,* 530 U.S. 211, 225 (2000), Plaintiffs must specifically allege "an identifiable conflict that either benefited the defendants or caused an identifiable harm to the Plan."  *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 897–98 (S.D. Tex. 2004).  Plaintiffs have not met this requirement.

Plaintiffs assert that they have stated a valid claim because they allege that "Defendants chose to protect their own interests by selling millions of dollars of their personal holdings of Company stock when they knew or should have known of significant financial problems and improprieties at Advanta."  Pls.' Opp., at 52.[14]  The fatal flaw in this argument is that selling personal holdings in Advanta stock is not a fiduciary act.  In order to state a valid claim, Plaintiffs must at the very least allege that Defendants caused harm to the Plans *while acting in a fiduciary capacity*.  Here, they concede they have not done so, and their claim fails as a result. *See In re Bear Stearns*, at 376 (rejecting conflict of interest claim based in part of sales of Bear

---

[13]    Plaintiffs' Complaint does not identify the specific Defendants that are alleged to have possessed an actionable conflict of interest.  In their Opposition, however, Plaintiffs seem to suggest that their claim is limited to Defendants Alter, Rosoff and Browne.  Pls.' Opp., at 51.  Because Plaintiffs make no attempt to support their claim against any other Defendant, their claim against such Defendants should be dismissed for this independent reason.

[14]    Significantly, Plaintiffs make no allegation that Defendant Alter, Advanta's Chairman and CEO, sold any shares during the class period.  Compl. ¶¶ 200-207.

Stearns stock by alleged fiduciaries and finding that plaintiffs "do no adequately allege that Defendants' conflict caused them to take actions adverse to the Plan participants")

## VI.    PLAINTIFFS' "MONITORING" CLAIM IS WITHOUT MERIT.

Plaintiffs defend their claim that the Director Defendants breached their fiduciary duty to monitor the individuals they appointed to the Board's Compensation Committee or the Plans' Administrative Committees on the basis that "[i]n light of the dire circumstances set forth in the Complaint, it is reasonable to infer that the Director Defendants breached their fiduciary obligations by failing to properly review Plan investment issues…." Pls.' Opp., at 56.  This assertion is without merit for several reasons.  First, the fiduciary duty to monitor does not encompass an obligation to ensure that plan fiduciaries possess non-public information concerning an employer's business circumstances.  *See* Defs.' Mem. of Law, at 59-60.  Second, Plaintiffs fail to identify specific facts showing that the Director Defendants *knew* of the alleged "dire circumstances" that allegedly rendered Advanta stock an imprudent investment.  Indeed, by their own admission, they allege nothing more than that the duty to monitor "must have been breached by the precipitous fall in [Advanta's] stock price." *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, No. 09-md-1919 MJP, 2009 WL 3246994, at *11 (W.D. Wash. Oct. 5, 2009).[15]  This is wholly insufficient to state a claim.  *Id.*  Accordingly, Plaintiffs' claim for breach of the fiduciary duty to monitor against the Director Defendants should be dismissed.

## <u>CONCLUSION</u>

For the reasons stated above and in Defendants' initial Memorandum of Law, all of the claims asserted in Plaintiffs' Consolidated Class Action Complaint should be dismissed with prejudice.

---

[15]     Plaintiffs' duty to monitor claim should also be dismissed because it is derivative of their meritless claim for breach of the duty of prudence.  *See* Defs.' Mem. at 57-58.

Respectfully submitted,

   s/ J. Ian Downes
Steven B. Feirson
Michael L. Kichline
J. Ian Downes
Sarah L. Wyatt
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104

*Attorneys for All Defendants Other Than John Moore*

   s/ Jeffery A. Dailey
David L. Comerford
Jeffery A. Dailey
Akin Gump Strauss Hauer & Feld LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA  19103

*Attorneys for Defendant John Moore*

Dated:  January 26, 2011