# EXHIBIT D

No. 10-2302
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

RAYMOND M. PFEIL AND MICHAEL KAMMER,
Plaintiffs-Appellants,

v.

STATE STREET BANK AND TRUST COMPANY,
Defendant-Appellee.
_____

BRIEF OF THE SECRETARY OF LABOR, HILDA L. SOLIS, AS AMICUS
CURIAE IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REQUESTING
REVERSAL

_____

On Appeal from the United States District Court
for the Eastern District of Michigan
_____

M. PATRICIA SMITH
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor,
Plan Benefits Security Division

ELIZABETH HOPKINS
Counsel for Appellate and Special
Litigation

ELIZABETH S. GOLDBERG
Trial Attorney

U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
P.O. Box 1914
Washington, D.C.  20013
202-693-5796

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................ii

STATEMENT OF THE ISSUES ............................................................ 1

STATEMENT OF INTEREST.............................................................. 2

STATEMENT OF THE FACTS ............................................................ 3

SUMMARY OF THE ARGUMENT ..................................................... 8

DISCUSSION ...................................................................................... 10

    I.     PLAINTIFFS PLAUSIBLY ALLEGE THAT STATE
           STREET BREACHED ITS FIDUCIARY DUTIES BY
           MAINTAINING GM STOCK AS A PLAN
           INVESTMENT WHEN IT WAS NO LONGER
           PRUDENT FOR THE PLANS TO HOLD SUCH
           STOCK, RESULTING IN SIGNIFICANT PLAN
           LOSSES ......................................................................... 10

          A.    Plaintiffs have pled facts that, if taken as true, establish
                 that State Street breached its fiduciary duties by
                 continuing to offer GM stock as the company collapsed. ........ 12

          B.    State Street is not relieved of its liability for losses
                 resulting from its breaches of fiduciary duty in
                 continuing to offer and allow the Plans to hold GM stock
                 by the actions of the participants ............................................ 20

CONCLUSION ...................................................................................... 30

TABLE OF AUTHORITIES

Federal Cases:

Allison v. Bank One-Denver,
    289 F.3d 1223 (10th Cir. 2002) ............................................................ 23

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ........................................................................... 5

Auer v. Robbins,
    519 U.S. 452 (1997) ............................................................................. 28

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ...................................................................... 5, 18

Chase Bk. USA, N.A. v. McCoy,
    ___ S. Ct. ___, 2011 WL 197641 (Jan. 24, 2011) ............................... 28

Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
    487 U.S. 837 (1984) ............................................................................. 29

City of Milwaukee v. Illinois and Michigan.,
    451 U.S. 304 (1981) ...................................................................... 14, 15

DiFelice v. U.S. Airways Inc.,
    497 F.3d 410 (4th Cir. 2007) ............................................................... 24

Eaves v. Penn,
    587 F.2d 453 (10th Cir. 1978) ............................................................. 17

Fink v. Nat'l Sav. & Trust Co.,
    772 F.2d 951 (D.C. Cir. 1985) ............................................................. 17

Geier v. Am. Honda Motor Co., Inc.,
    529 U.S. 861 (2000) ............................................................................. 28

Hecker v. Deere & Co.,
    556 F.3d 575 (2009),
    reh'g denied 569 F.3d 708 (2009) .................................................. 8, 23

Federal Cases--(continued)

Hensley Mfg. v. ProPride, Inc.,
     579 F.3d 603 (6th Cir. 2009)........................................................... 17, 18

Howell v. Motorola, Inc.,
     __ F.3d __, 2011 WL 183966 (7th Cir. 2011) .......................... 21, 22, 24

In re AEP ERISA Litig.,
     327 F. Supp. 2d 812 (S.D. Ohio 2004) ........................................... 12 n.2

In re Ford Motor Co. ERISA Litig.,
     590 F. Supp. 2d 883 (E.D. Mich. 2008)............................. 14, 16, 19, 20

In re Goodyear Tire and Rubber Co. ERISA Litig.,
     438 F. Supp. 2d 783 (N.D. Ohio 2006)................................................. 14

In re General Motors Liquidation Company, et. al.,
     No. 09-50026 (S.D.N.Y. December 7, 2010),
     Debtors' Amended Joint Chapter 11 Plan,
     http://docs.motorsliquidationdocket.com/pdflib/8015_50026.pdf ......... 5

In re Regions Morgan Keegan ERISA Litig.,
     ___ F. Supp. 2d ___, 2010 WL 3833668
     (W.D. Tenn. June 30, 2010)............................................................ 12 n.2

In re Syncor ERISA Litig.,
     516 F.3d 1095 (9th Cir. 2008) ....................................................... 16, 17

In re Unisys Sav. Plan Litig.,
     74 F.3d 420 (3d Cir. 1996).................................................................. 23

Kuper v. Iovenko,
     66 F.3d 1447 (6th Cir. 1995)......................................................... passim

Long Island Care at Home Ltd. v. Coke,
     127 S. Ct. 2339 (2007) ........................................................................ 28

Mertens v. Hewitt Assocs.,
     508 U.S. 248 (1993)....................................................................... 15, 26

Federal Cases--(continued)

Moench v. Robertson,
    62 F.3d 553 (3d Cir. 1995)............................................................ 12, 14

National Cable & Telecommunications Ass'n
    v. Brand X Internet Services,
    545 U.S. 967 (2005)...................................................................... 28, 29

Pfeil v. State Street Bank and Trust Co.,
    2010 WL 3937165 (E.D. Mich. 2010).......................................... passim

Quan v. Computer Science Corp.,
    623 F.3d 870 (9th Cir. 2010)................................................................ 13

Rankin v. Rots,
    278 F. Supp. 2d 853 (E.D. Mich. 2003)............................................... 17

Shaw v. Delta Air Lines, Inc.,
    463 U.S. 85 (1983) ............................................................................... 2

Smiley v. Citibank (South Dakota), N.A.,
    517 U.S. 735 (1996).......................................................................... 29

Taylor v. Keycorp,
    678 F. Supp. 2d 633 (N.D. Ohio 2009)................................................ 11

Yellow Trans., Inc. v. Michigan,
    537 U.S. 36 (2002) ............................................................................. 28

Yost v. First Horizon National Corp.,
    2010 WL 4116986 (W.D. Tenn. 2010)......................................... 12 n.2

Young v. General Motors Inv. Mgmt. Corp.,
    2009 WL 1230350 (2nd Cir. 2009)............................................. 7, 29 n.6

Federal Statutes:

    Employee Retirement Income Security Act of 1974
        29 U.S.C. § 1001 et seq.

Federal Statutes--(continued)

Section 2, 29 U.S.C. § 1001 ...................................................................... 1

Section 2(a), 29 U.S.C. § 1001(a) ........................................................... 10

Section 2(b), 29 U.S.C. § 1001(b) ............................................. 2, 10, 26

Section 3(21), 29 U.S.C. § 1002(21) ..................................................... 26

Section 3(34), 29 U.S.C. § 1002(34) ....................................................... 3

Section 3(38), 29 U.S.C. § 1002(38) ....................................................... 3

Section 404, 29 U.S.C. § 1104 ......................................................... 10, 26

Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) ........................... 2, 11

Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) ............... 2, 11, 19, 22

Section 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C) ......................... 29 n.6

Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) ......................... 15, 16

Section 404(a)(2), 29 U.S.C. § 1104(a)(2) ........................................... 11

Section 404(c), 29 U.S.C. § 1104(c) .............................................. passim

Section 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B) ........................... 22, 24

Section 405, 29 U.S.C. § 1105 ................................................................ 21

Section 405(c)(1), 29 U.S.C. § 1105(c)(1) ........................................... 26

Section 409, 29 U.S.C. § 1109 ............................................................... 10

Section 409(a), 29 U.S.C. § 1109(a) ..................................................... 21

Section 502(a)(2), 29 U.S.C. § 1132(a)(2) ................................ 2, 10, 21

Section 502(a)(3), 29 U.S.C. § 1132(a)(3) ........................................... 2

Miscellaneous:

H.R. Conf. Rep. No. 93-1280,
     reprinted in 1974 U.S.C.C.A.N. 5038............................................ 23 n.4

25 C.F.R. § 406(b)(1)........................................................................ 26

25 C.F.R. § 408b-2(e)(2) .................................................................. 26

29 C.F.R. § 2550.404c-1 ........................................................... 23 n.4, 24

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(1)(i)..................................... 25

29 C.F.R. § 2550.404c-1(d)(2)(i)................................................. 25

29 C.F.R. § 2550.404c-1(d)(2)(iv)......................................... 27 n.5

Fed.R.Civ.P. 12(b)(6) ................................................................. 5, 7

Fed.R.App.P. 29(a) ......................................................................... 3

56 Fed. Reg. 10,724 (Mar. 31, 1991)........................................ 27

56 Fed. Reg. 10,832 (Mar. 31, 1991)........................................ 27

57 Fed. Reg. 46,922 (Oct. 13, 1992) ......................................... 25

73 Fed. Reg. 43,014 (July 23, 2008).................................... 27 n.5

73 Fed. Reg. 43,018 (July 23, 2008).................................... 27 n.5

75 Fed. Reg. 64,910 (Oct. 20, 2010) ................................... 27 n.5

75 Fed. Reg. 64,946 (Oct. 20, 2010) ................................... 27 n.5

Department of Labor Field Assistance Bulletin No. 2004-03 ............... 17 n.3

## STATEMENT OF THE ISSUES

This appeal stems from a class action lawsuit that alleges that a fiduciary for two 401(k) pension plans breached its duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., by allowing the plans to maintain investments in company stock when this stock was such a risky investment that a prudent man would not have held the stock as an investment for the plans during the relevant period.  The questions that the Secretary addresses are:

1.  Whether the district court correctly held that plaintiffs alleged sufficient facts to state a claim for fiduciary breach and to rebut the presumption of prudence that attaches to employer stock investments under this Court's decision in Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir. 1995).

2.  Whether, after finding that plaintiffs plausibly alleged that the plans' fiduciary breached its duty of prudence by allowing the plans to continue to hold company stock, the district court erred in dismissing the case based on its conclusion that the plans' losses on its GM investment were not caused by the fiduciary's imprudence, but rather by the actions of plan participants in choosing GM stock.

STATEMENT OF INTEREST, IDENTITY AND AUTHORITY TO FILE

ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans, Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983), primarily by imposing a number of stringent duties on fiduciaries, including a duty of loyalty, and a duty of care grounded in traditional trust law's prudent man standard.  29 U.S.C. § 1104(a)(1)(A), (B).  Although the Secretary has authority to enforce these standards, participants and beneficiaries play a primary role in policing ERISA fiduciaries.  Not only does ERISA give participants standing to bring private actions on behalf of plans to remedy losses suffered as a result of fiduciary breaches and to obtain appropriate equitable relief for statutory violations, see id. § 1132(a)(2), (3), but a stated purpose of the Act is to provide them with "ready access to the Federal courts."  Id. § 1001(b).  That purpose is impaired if the pleading standard is set so high that the complaint in this case – which the court below recognized plausibly alleges that State Street violated its statutory duties by continuing to offer and hold General Motors stock as an investment even after the company's ability to survive as an ongoing concern was called into doubt – does not suffice to state a claim. The Secretary has a strong interest in urging the Sixth Circuit to correct the district court's error in this regard.

The Secretary files this brief pursuant to her authority Fed.R.App.P. 29(a).

## STATEMENT OF FACTS

1. Plaintiffs are participants in two 401(k) plans sponsored by General Motors Corporations ("GM") – the Personal Savings Plan for Hourly Rate Employees and the GM Corporation Savings-Stock Purchase Program for Salaried Employees (the "Plans") – which are defined contribution plans under ERISA section 3(34), 29 U.S.C. § 1002(34), and tax-qualified 401(k) plans.  Compl. ¶¶ 1, 18.  They purport to represent a class of participants and beneficiaries in the Plans whose accounts held GM stock during the relevant time period.  Id. ¶ 1.

The Plans offer participants several investment options for their individual accounts, including the GM $1-2/3 Par Value Common Stock Fund ("Fund"), an employee stock ownership plan ("ESOP"), which invests exclusively in GM stock.  Compl. ¶ 5; Pfeil v. State Street Bank and Trust Co., 2010 WL 3937165, *1 (E.D. Mich. 2010).  Participants must affirmatively elect to invest in this Fund.  Id.

In June 2006, GM appointed the defendant, State Street Bank and Trust Company ("State Street") as the independent fiduciary and investment manager (see 29 U.S.C. § 1002(38)), for the Plans, including the Fund.

Compl. ¶¶ 2-4.  Among other things, plaintiffs allege that State Street had a fiduciary duty to determine whether GM stock was a prudent investment for the Plans, and to stop offering and divest GM stock if it ever became imprudent.  Compl. ¶¶ 2-4, 8, 20, 22.  State Street's contract with GM (and the Plans) provided that the Fund shall be invested exclusively in GM stock "unless State Street, using an abuse of discretion standard, determines from reliable public information that (i) there is a serious question concerning the Company's short term viability as a going concern without resort to bankruptcy proceedings; or that (ii) there is no possibility in the short-term of recouping any substantial proceeds from the sale of stock in bankruptcy proceedings."  Pfeil, 2010 WL 3937165, at *2.  According to plaintiffs, GM appointed State Street specifically to take over this fiduciary role when the deterioration of GM's business left the company unable to evaluate independently whether the Plans could prudently retain company stock investments.  Compl. ¶ 21.

Plaintiffs brought suit on the grounds that State Street violated its fiduciary duties by allowing the Plans to continue to hold GM Stock until March 31, 2009.  Compl. ¶¶ 7-9.  Plaintiffs argued that a reasonably prudent fiduciary would have known by July 15, 2008, if not sooner, that GM's deteriorating business and financial prospects, which reached crisis level in

the months after State Street's appointment as an independent fiduciary,

made the stock an imprudent investment for the Plans.  Pfeil, 2010 WL

39737165, *6.  To support their claim, plaintiffs cite numerous facts that

should have raised serious questions about GM's ability to continue as a

going concern during the relevant period, Compl. ¶¶ 8, 20-50, including the

fact that State Street itself stopped offering GM stock as an option for both

Plans on November 21, 2008 based on GM's dire financial situation.  Id. ¶¶

49-50.  Nevertheless, State Street did not take the additional step of

liquidating the Plans' "fifty million plus shares of GM stock" until April 24,

2009, by which time the stock was virtually worthless.  Id. ¶¶ 50-51.  Six

weeks later, GM filed for bankruptcy protection, wiping out the nearly all

value of the Plans' GM holdings.[1]

    2.    The district court dismissed the case for failure to state a claim,

pursuant to Fed.R.Civ.P. 12(b)(6).  Pfeil, 2010 WL 3937165, *6.  After

noting that Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), require plaintiffs to plead facts

---

[1]  The GM Bankruptcy Plan of Reorganization cancels GM's existing
company stock.  In re General Motors Liquidation Company, et. al., No. 09-
50026 (S.D.N.Y. December 7, 2010), Debtors' Amended Joint Chapter 11
Plan, p. 57-58,
http://docs.motorsliquidationdocket.com/pdflib/8015_50026.pdf.  The GM
Initial Public Offering that occurred in November 2010 was for stock in the
new and separate reorganized General Motors.  Id.

that are "'plausibly suggestive' of a claim entitling a plaintiff to relief" (2010 WL 3937165, *3), the court held that plaintiffs only partially satisfied that pleading standard.

The court held first, that plaintiffs pled sufficient facts to plausibly suggest that State Street should have divested the GM stock holdings much sooner. Pfeil, 2010 WL 3937165, *5. In arriving at this conclusion, the court held that the defendant's decision to offer the company stock enjoys a presumption of prudence. Id. at *3. Although the court recognized that plaintiffs can usually rebut that presumption by pleading facts that plausibly suggest that a "prudent fiduciary acting under similar circumstances would have made a different investment decision," the court agreed with State Street that where, as here, the fiduciary's discretion to sell company stock is limited by contract, plaintiffs can only rebut the presumption by pleading facts that show that the defendant failed to sell in accordance with the contract because a "fiduciary's duty is limited to those aspects of the plan over which he exercises authority or control." Id. at *4. Because State Street's contract required it to invest in GM stock at all times, except when "there is a serious question concerning the Company's short term viability as a going concern" or "no possibility in the short-term of recouping any substantial proceeds from the sale of stock in bankruptcy proceedings"

(Pfeil, 2010 WL 3937165, at *2), the court held that plaintiffs could only rebut the presumption of prudence, and survive a 12(b)(6) motion, by alleging facts that plausibly satisfy one of these circumstances.  Id. at *4. The court found, however, that plaintiffs did so by plausibly alleging "that GM was in serious financial trouble on June 30, 2006 when State Street became the ESOP plan Fiduciary and Investment Manager and on the verge of bankruptcy shortly thereafter."  Id.  See also id. at *6 ("The Complaint alleges sufficient 'red flags' that should have placed State Street on notice of a need to cease offering GM stock to Plan participants or to liquidate the ESOP fund prior to March 2009.").

Despite this finding of a plausibly pled breach, the court dismissed the complaint because it found that plaintiffs had not properly pled causation. Although plaintiffs had not alleged a breach of the duty to diversify, the court somewhat incongruously noted that in another case involving the GM plans, the Second Circuit held that "[t]he complaint's narrow focus on a few individual funds, rather than the plan as a whole, is insufficient to state a claim for lack of diversification."  Pfeil, 2010 WL 3937165, *5 (quoting Young v. General Motors Inv. Mgmt. Corp., 2009 WL 1230350 (May 6, 2009)).  Moreover, the court pointed out that the Seventh Circuit "has also affirmed a dismissal of a breach of fiduciary duty claim because the plan, as

in this case, offered a sufficient range of options 'so that the participants have control over the risk of loss.'" Id. at *6 (quoting Hecker v. Deere & Co., 556 F.3d 575 (2009), reh'g denied, 569 F.3d 708 (2009)).  After noting that the Plans "allow the participants to change the allocation of the assets from one account to another," the court held that State Street "cannot be held liable for actions which Plaintiffs controlled."  Id. at *6.  In reaching this conclusion, the court pointed to ERISA section 404(c), 29 U.S.C. § 1104(c), which, the court noted, "provides that a plan trustee is not liable for any loss caused by any breach which results from the participant's exercise of control over those assets."  Id. at *5.  The court concluded that the participants "controlled" their allocation of assets, and could satisfactorily plead causation only if they identified facts establishing that the participants had no means whatsoever of avoiding the loss.  Id. at *5.  Because their complaint did not do so, the court held that plaintiffs failed to adequately plead causation, and dismissed the case on this ground.

SUMMARY OF THE ARGUMENT

The district court correctly concluded that plaintiffs adequately pled that State Street breached its fiduciary duties.  However, in arriving at this conclusion, the district court misconstrued the presumption of prudence afforded to ESOP fiduciaries who invest plan assets in company stock.  In

8

this Court, a plaintiff rebuts this presumption by showing that a prudent fiduciary would not invest in the stock under the circumstances.  Plaintiffs were not required, as the district court found, to plead the more extreme circumstances specified in State Street's contract in order to establish that State Street acted imprudently under the circumstances in maintaining the stock as an investment for the Plans.  Fiduciaries cannot contract out of the statutory prudent man standard and they remain under continuing obligation to consider whether an investment in company stock, even one mandated by plan documents, is one that a prudent fiduciary would make in like circumstances.  Nevertheless, because plaintiffs did in fact plead facts that plausibly suggested that there was a serious question about GM's short-term viability, State Street acted imprudently even if the contractual standard governs, as the district court held.

Plaintiffs also adequately pled that State Street's imprudence caused the Plans to lose hundred of millions of dollars.  Plan fiduciaries are held to strict standards of conduct under ERISA and held personally liable for the consequences of their failure to meet these standards.  The fact that the Plans at issue here, like nearly all defined contribution 401(k) plans, allowed the participants to choose between different investment options, did not absolve State Street of its duty to ensure that the employer stock fund remained a

9

prudent investment options for the Plans, or of its liability in failing to do so.
Even in the limited circumstances where ERISA section 404(c) provides a
fiduciary safe harbor for losses that result from a plan participant's exercise
of control over his or her individual retirement account, fiduciaries must still
select and maintain prudent investment options and, under the Secretary's
regulation, plan fiduciaries are liable for any resulting plan losses if they do
not.

<u>DISCUSSION</u>

I.   PLAINTIFFS PLAUSIBLY ALLEGE THAT STATE STREET
     BREACHED ITS FIDUCIARY DUTIES BY MAINTAINING GM
     STOCK AS A PLAN INVESTMENT WHEN IT WAS NO LONGER
     PRUDENT FOR THE PLANS TO HOLD SUCH STOCK,
     RESULTING IN SIGNIFICANT PLAN LOSSES

Congress enacted ERISA expressly to safeguard the "financial
soundness" of employee benefit plans "by establishing standards of conduct,
responsibility, and obligation for fiduciaries of employee benefit plans, and
by providing appropriate remedies, sanctions, and ready access to the
Federal courts."  29 U.S.C. § 1001(a), (b).  To this end, ERISA imposes on
all fiduciaries the familiar trust law standards of prudence and loyalty, and
provides that plan participants and fiduciaries may bring suit to recover plan
losses stemming from the breach of those duties.  29 U.S.C. §§ 1104, 1109,
1132(a)(2).  Thus, ERISA requires fiduciaries for all plans to act "for the

exclusive purpose" of paying plan benefits and defraying reasonable expenses, and with the same level of care that "a prudent man acting in like capacity and familiar with such matters would use" in similar circumstances. 29 U.S.C. § 1104(a)(1)(A), (B).  Although Congress intended to encourage ESOPs and other employer stock ownership by pension plans, and therefore eliminated the duty to diversify with respect to such investments, and the duty of prudence to the extent that it requires diversification, 29 U.S.C. § 1104(a)(2), as this Court has recognized, ERISA does not otherwise modify, eliminate or change section 404's standards of loyalty and care.  Kuper v. Iovenko, 66 F.3d 1447, 1458 (6th Cir. 1995).  Accordingly, ESOP fiduciaries, like all fiduciaries, owe "an unwavering duty to act both as a prudent person would act in a similar situation and with single-minded devotion to those same plan participants and beneficiaries," and they may offer and retain a plan's investment in company stock only if a prudent fiduciary in similar circumstances would do the same.  Kuper, 66 F.3d at 1458 (citations removed); Taylor v. Keycorp, 678 F. Supp. 2d 633, 639, n.1 (N.D. Ohio 2009) ("ESOPs are still governed by ERISA requirements for fiduciaries" including "the prudent man obligation which imposes an obligation to act both as a prudent person would act in a similar situation and with single-minded devotion to the plan participants and beneficiaries.").

A. Plaintiffs have pled facts that, if taken as true, establish that State Street breached its fiduciary duties by continuing to offer GM stock as the company collapsed

As the district court held, plaintiffs pled facts that are sufficient to support their claim that State Street breached its fiduciary duties under ERISA by failing to divest the Plans' holding in GM stock prior to March 2009.  The complaint alleges that a prudent fiduciary would not have waited until March 31, 2009 to "begin divesting the GM stock in the Plans," ¶ 8, detailing at great length the factual support for this contention.  Id. ¶¶ 20-52. These allegations more than suffice to rebut the presumption of prudence that this Court bestows on ESOP fiduciaries when they offer company stock. Kuper, 66 F.3d at 1459 (citing Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995).[2]

_____

[2]  The court also erred by applying the Kuper presumption to a motion to dismiss.  Kuper itself was decided on a motion for summary judgment and the presumption that it creates may be rebutted based on the evidence.  66 F.3d at 1459.  It is thus an evidentiary matter, not a pleading requirement, and for this reason, district courts in the Sixth Circuit "have overwhelmingly declined to apply the presumption of prudence at the pleading stage."  In re Regions Morgan Keegan ERISA Litig., ___ F. Supp. 2d ___, 2010 WL 3833668, at *2 (W.D. Tenn. June 30, 2010) (listing cases).  See also Yost v. First Horizon National Corp.,  2010 WL 4116986, *1, *3 (W.D. Tenn. 2010) ("Kuper presumption is an evidentiary, and not a pleading, standard"); In re AEP ERISA Litig., 327 F. Supp. 2d 812, 829 (S.D. Ohio 2004) (presumption of prudence "determinations are appropriate only after discovery leads to a developed factual record").

In adopting a presumption of prudence for employer stock investments, this Court has made clear that "ESOPs cannot override ERISA's goal of ensuring the proper management and soundness of employee benefit plans." Kuper, 66 F.3d at 1457.  Consequently, although this Court will "review an ESOP fiduciary's decision to invest in employer securities for an abuse of discretion" and "presume that a fiduciary's decision to remain invested in employer securities was reasonable," plaintiffs can "rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision." Kuper, 66 F.3d at 1459 (citations omitted).  In other words, under this Court's approach, a plaintiff may rebut the presumption of prudence by showing that the fiduciary failed to act as a reasonable fiduciary in like circumstances would act and thus did not meet the statutory standard of prudence.

Accordingly, this Court should not adopt the "impending collapse" standard applied by some district courts, and indeed doing so would be inconsistent with Kuper's application of the statutorily-derived prudent man standard.  See Quan v. Computer Science Corp., 623 F.3d 870, 882 (9th Cir. 2010) (to rebut the presumption, plaintiffs must show that the company is on the brink of collapse or is undergoing serious mismanagement, and "[i]t will

13

not be enough for plaintiffs to prove that the company's stock was not a 'prudent' investment").  While <u>Kuper</u> places some additional emphasis on the fact that the plaintiff bears the burden of proving imprudence, its statutorily-based approach cannot be squared with a standard, like "impending collapse," under which a showing of imprudence is not enough.  <u>See</u> <u>In re Ford Motor Co. ERISA Litig.</u>, 590 F. Supp. 2d 883, 892, 907 (E.D. Mich. 2008) (rejecting an impending collapse standard as contrary to the statutory prudent man standard, and also noting that "nowhere in the [<u>Kuper</u>] opinion does the Sixth Circuit use the words 'impending collapse'") (citations omitted); <u>In re the Goodyear Tire and Rubber Co. ERISA Litig.</u>, 438 F. Supp. 2d 783, 794 (N.D. Ohio 2006) ("<u>Moench</u> does not limit its holding to companies facing an 'impending collapse'" and <u>Kuper</u> "never uses the words 'impending collapse.'").

Moreover, reading <u>Kuper</u> to call for an "impending collapse" standard is contrary to numerous Supreme Court decisions that cabin the federal courts' discretion to adopt federal common law.  "Federal courts . . . are not general common-law courts and do not possess a general power to develop and apply their own rules of decision."  <u>City of</u> <u>Milwaukee v. Illinois and Michigan</u>, 451 U.S. 304, 312 (1981).  They should only resort to federal common law when "compelled to consider federal questions which cannot

be answered from federal statutes alone." Id. at 314 (citations omitted).  In the ERISA context in particular, "the authority of courts to develop a 'federal common law' . . . is not the authority to revise the text of the statute." Mertens v. Hewitt Assocs., 508 U.S. 248, 259 (1993) (citations omitted). Here the statute clearly and unambiguously articulates a prudent man test for gauging the prudence of a fiduciary's behavior, and there is no basis to formulate and apply a more forgiving standard, untethered to the statute, that would allow even imprudent investments in company stock so long as the company was not facing "impending collapse."

For these same reasons, the district court erred in concluding that, regardless of how a prudent fiduciary would act under the circumstances, State Street was bound to follow the requirement in its contract with GM that it continue to offer the GM stock Fund unless "there is a serious question concerning the Company's short-term viability as a going concern" or "no possibility in the short-term of recouping any substantial proceeds from the sale of stock in bankruptcy proceedings." Pfeil, 2010 WL 3937165, at *2.  Prudence is defined by the statue and does not mean, as State Street argues, what "the plan's drafters would have intended." See State Street's Motion to Dismiss, September 4, 2009, pp. 10.  Moreover, ERISA section 404(a)(1)(D) forbids fiduciaries from contracting out of the

statutory prudent man standard.  See 29 U.S.C. § 1104(a)(1)(D) (although

plan fiduciaries are required to follow plan documents, they may do so only

"insofar as such documents and instruments are consistent with the

provisions" of Title I and Title IV of ERISA); see also In re Ford Motor Co.

ERISA Litig., 590 F. Supp. 2d at 889 ("ERISA would be almost impotent if

it permitted settlors to exempt their fiduciaries from its requirements with a

simple stroke of the pen.").  Thus, "a fiduciary may only follow plan terms

to the extent that the terms are consistent with ERISA."  Kuper, 66 F.3d at

1457 (citing 29 U.S.C. § 1104(a)(1)(D)) (other citations omitted).

    This rule applies equally to ESOPs.  As this Court made clear in

Kuper, even though ESOPs are designed to invest primarily or exclusively in

company stock, such a plan cannot prohibit a fiduciary from trading out of

such stock.  Kuper, 66 F.3d at 1457.  Any such prohibition would be

"inconsistent with ERISA as much as it constrained the fiduciary's ability to

act in the best interest of the beneficiaries."  Id. at 1457 (citations omitted).

Instead, ESOP fiduciaries remain under continuing obligations to consider

whether an investment in company stock, even one mandated by the plan

documents, is prudent, and can follow plan terms mandating investment in

employer stock only if doing so complies with their duty of prudence.  Id. at

1458.  See also In re Syncor ERISA Litig., 516 F.3d 1095, 1102-1103 (9th

Cir. 2008) (ESOP fiduciaries remain subject to prudent man standard); Fink

v. Nat'l Sav. & Trust Co., 772 F.2d 951, 955-6 (D.C. Cir. 1985) (fiduciaries

for eligible individual account plan comprised solely of employer stock still

subject to duty of prudence and loyalty); Eaves v. Penn, 587 F.2d 453, 459

(10th Cir. 1978) (same); Rankin v. Rots, 278 F. Supp. 2d 853, 879 (E.D.

Mich. 2003) ("the fact that the Plan requires investment in [company] stock

will not ipso facto relieve the Outside Directors of their fiduciary obligations

to prudently invest") (citing Kuper)).  Therefore, the standard that governed

State Street's fiduciary duties was not the "serious question" standard

delineated in State Street's contract,[3] but the statutory prudent man test.

Nevertheless, as the district court found, plaintiffs, in fact, pled a

sufficient factual basis in this case to conclude that, at the very least, there

was a serious question about the company's short-term viability as early as

June 2006, when State Street became the fiduciary for the Plans.  See

---

[3]  State Street argues that this language in its contract was derived from language in the Secretary of Labor's Field Assistance Bulletin describing the fiduciary duties of directed trustees.  However, directed trustees generally have a more circumscribed fiduciary role than other fiduciaries such as State Street, which was not a directed trustee.  Indeed, one of the justifications for more limited review of directed trustees' decisions is the fact that they receive directions from another discretionary fiduciary, like State Street, that is obligated to act in accordance with ERISA's high standards of prudence and loyalty.  Moreover, even in the directed trustee context, the Secretary has recognized that impending collapse is not the only circumstance where a duty to override plan terms and eliminate a company stock fund might arise from public information.  Field Assistance Bulletin 2004-03 (Dec. 17, 2004).

Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) (plaintiffs need only "allege facts, that if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and 'to state a claim to relief that is plausible on its face'") (quoting Twombly, 550 U.S. at 570). Even at that time, numerous securities analysts and financial experts were publicly stating that a GM bankruptcy was highly probable based on the company's declining credit ratings, multi-billion dollar annual losses, and unfunded health care obligations of $64 billion. Compl. ¶¶ 23, 24.

And, as it turned out, things went from bad to worse, as GM suffered "historic" losses in 2008, Compl. ¶¶ 9, 29, and experts began questioning whether GM would have enough liquidity to get through 2008. Id. ¶¶ 30, 31, 32. After GM warned in its third quarter 2008 financial results that it would run out of cash by mid-2009, and that auditors had "substantial doubt" about GM's "ability to continue as a going concern," the credit rating agencies cut GM's credit to junk status and predicted an imminent GM restructuring or bankruptcy. Id. ¶¶ 45-46. By November 21, 2008, GM's collapse was sufficiently imminent that State Street decided that it would no longer purchase GM's stock for the Plans, having concluded that it was no longer appropriate "to allow additional investments by participants in the GM Common Stock Fund." Id. ¶ 49. Nevertheless, State Street did not

begin to divest the Plans of GM stock until March 31, 2009 (a process completed on April 24, 2009), by which time the company was about to go into bankruptcy and the stock was virtually worthless.

Thus, the complaint describes much more than a mere decline in stock value, and instead plausibly alleges that GM's stock was such a risky investment, and the company's collapse so likely, that "a prudent man acting in a like capacity and familiar with such matters" would not have held the stock as an investment for the Plans during the relevant period.  29 U.S.C. § 1104(a)(1)(B).  As independent fiduciary and investment manager, State Street's job was to evaluate the riskiness of GM stock.  Ford, 590 F. Supp. 2d at 891 ("the risk involved in a stock" is "one of the key factors that an ERISA fiduciary (or any investor) must consider in deciding whether to buy or hold it").  Indeed, the premise of State Street's contract – that a sell-off could be necessary if financial circumstances called into question the company's short-term viability or the possibility of recouping losses in bankruptcy – was met long before State Street finally began to divest in the Spring of 2009.  Accordingly, plaintiffs have plausibly alleged facts sufficient to overcome the Kuper presumption of prudence and to indicate that State Street breached its fiduciary duties when it failed to divest the Plans of GM stock.  See Ford, 590 F. Supp. 2d at 890 (holding that Kuper

19

presumption of prudence can be rebutted on public information alone where that information makes the risk of buying the stock "so <u>great</u> that, efficiently priced or not, it [is] imprudent under the circumstances to subject the plan's assets to it.") (emphasis in original).

   B. State Street is not relieved of its liability for losses resulting from its breaches of fiduciary duty in continuing to offer and allow the Plans to hold GM stock by the actions of the participants

Not only did plaintiffs plausibly plead a breach, they also pled sufficient facts to plausibly state a claim that State Street caused the Plans to lose hundreds of millions of dollars.  Although this Court requires plaintiffs to prove a "causal connection" "between a breach of fiduciary duty and the loss alleged," <u>Kuper</u>, 66 F.3d at 1459-60 (citations omitted), it is far from clear that plaintiff must plead this causal connection in order to survive a motion to dismiss on the pleadings.  Assuming that they must, however, plaintiffs have done so here by alleging that because State Street allowed the Plans to continue to hold GM stock long after it had become imprudent to do so, the Plans lost hundreds of millions of dollars.  Compl. ¶¶ 7-10, 71-72.

The district court erred in holding to the contrary.  Despite its recognition that State Street acted imprudently by failing to divest the GM stock sooner, the court nevertheless held that the loss that the Plans suffered when this stock lost nearly all its value was caused by the participants whose

accounts held the stock and not by the fiduciary whose job it was to select and maintain only prudent investment options for the Plans.  This conclusion turns the statutory scheme on its head.

ERISA imposes strict duties on those who act as ERISA fiduciaries and makes them personally liable for any losses to the plan stemming from their breaches, as well as jointly and severally liable for breaches of other fiduciaries of which they have knowledge.  See 29 U.S.C. §§ 1132(a)(2), 1109(a), 1105.  As this Court recognizes, these duties are "the highest known to the law."  Kuper, 66 F.3d at 1453 (citations omitted).  If the district court were correct that ERISA fiduciaries are nevertheless absolved of liability for any resulting losses simply because a 401(k) plan provides, as most do, that the plan participants and beneficiaries may allocate the assets in their individual accounts among different plan investments, then most fiduciaries to such plans would never be liable for losses stemming from lapses of their duties.  As this case demonstrates, such a holding would immunize even egregious fiduciary misconduct for most 401(k) plans.  This is a far cry from the highest duty known to the law.

But the district court is not correct.  In any 401(k) plan, participants are entitled to the prudent selection and oversight of the investment options available to them.  Howell v. Motorola, Inc., __ F.3d __, 2011 WL 183966,

*15 (7th Cir. 2011).  State Street's contract with GM reflects this by specifying that it was State Street's job to monitor whether GM stock continued to be a prudent investment for the Plans.  Compl. ¶ 21.  Thus, if it was imprudent for the Plans to hold and retain GM stock as a plan option, State Street is liable for that imprudence.

The limited exception to this rule, arising under ERISA section 404(c), does not apply in this case.  Section 404(c) identifies a narrow set of circumstances that will absolve fiduciaries of their personal liability for plan losses caused by the actions of plan participants.  Specifically, section 404(c)(1)(B) provides that "in the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (<u>as determined under regulations of the Secretary</u>) . . . no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, <u>which results from</u> such participant's or beneficiary's exercise of control."  29 U.S.C. § 1104(c)(1)(B) (emphasis added).

The district court seemed to assume, without deciding (and indeed without basis) that the Plans at issue in this case were 404(c) plans that met

the requirements of the Secretary's regulation.[4]  However, the applicability

of section 404(c) is an affirmative defense that must be raised and proved by

defendants.  In re Unisys Sav. Plan Litig., 74 F.3d 420, 446 (3d Cir. 1996);

Allison v. Bank One-Denver, 289 F.3d 1223, 1238 (10th Cir. 2002).  Here,

the defendants did not assert, let alone prove, the applicability of the

affirmative defense, and the court considered no evidence on the Plans'

compliance with the standards set forth in the Secretary's regulation.  For

their part, plaintiffs neither expressly nor implicitly conceded the

applicability of section 404(c) to the Plans, and, thus, the Seventh Circuit's

decision in Hecker v. Deere, which the district court cited, is distinguishable.

See Hecker, 556 F.3d at 588 (holding that plaintiffs in that case effectively

pled that plans at issue were 404(c) plans).

Moreover, even if these are 404(c) plans, section 404(c) only shields

fiduciaries from losses "which result[] from" the participant's exercise of

---

[4]  Not all individual account plans fall under 404(c).  Department of Labor
regulations set forth the circumstances under which a plan qualifies as a
404(c) plan, and is eligible for the 404(c) defense.  The regulation includes
over twenty-five detailed requirements, including that the participants have
been provided "an explanation that the plan is intended to constitute a plan
described in section 404(c) and [the regulations]."  See 29 C.F.R. §
2550.404c-1.  In fact, ERISA's legislative history suggests that Congress
was reluctant to include stock funds within the scope of 404(c)'s safe harbor,
H.R. Conf. Rep. No. 93-1280, at 305, reprinted in 1974 U.S.C.C.A.N. 5038,
5086, and the regulation, accordingly, includes particularly stringent
protections with respect to stock funds.

control and not from losses caused by their own fiduciary misconduct. 29

U.S.C. § 1104(c)(1)(B); 29 C.F.R. § 2550.404c-1. Critically, section 404(c)

does not give fiduciaries a defense for their own imprudence in the selection

or monitoring of investment options available under the plan. "[T]he

selection of plan investment options and the decision to continue offering a

particular investment vehicle are acts to which fiduciary duties attach, and

that the [404(c)] safe harbor is not available." Howell, 2011 WL 183966,

*15 (agreeing "with the position taken by the Secretary of Labor in her

*amicus curiae* brief"). Section 404(c) therefore only relieves the fiduciary

from responsibility for losses that "result from" participants' exercise of

authority if the fiduciary abides by its duties "to screen investment

alternatives and to ensure that imprudent options are not offered to plan

participants." Id. If, on the other hand, the fiduciary acts imprudently in

choosing or retaining investment options for a plan, as is alleged here,

404(c) does not provide a defense and the fiduciary is liable for the losses

attributable to its own imprudence. Id.; DiFelice v. U.S.Airways Inc., 497

F.3d 410, 418 n.3 (4th Cir. 2007) ("although section 404(c) does limit a

fiduciary's liability for losses that occur when participants make poor

choices from a satisfactory menu of options, it does not insulate a fiduciary

from liability for assembling an imprudent menu in the first instance.").

This straightforward interpretation of the statute is reflected in a Department of Labor regulation interpreting the provision, which provides: "[I]f a plan participant or beneficiary of an ERISA section 404(c) plan exercises independent control over assets in his individual account in the manner described in [the regulation]," then the fiduciaries may not be held liable for any loss or fiduciary breach "that is the direct and necessary result of that participant's or beneficiary's exercise of control." 29 C.F.R. § 2550.404c-1(d)(2)(i); see also 29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(1)(i). The preamble to the regulation emphasizes this point, stating that "the act of designating investment alternatives . . . in an ERISA section 404(c) plan is a fiduciary function to which the limitation on liability provided by section 404(c) is not applicable." 57 Fed. Reg. 46,922 (Oct. 13, 1992). As the preamble elaborates, the fiduciary act of "limiting or designating investment options . . . is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant direction of such plan." Id. at 46,922 n.27 (emphasis added). Fiduciaries therefore have "a fiduciary obligation to prudently select . . . [and] periodically evaluate the performance of [investment] vehicles to determine . . . whether [they] should continue to be available as participant investment options." Id.

This regulatory interpretation is consistent with ERISA's purposes and structure, which place stringent trust-based fiduciary duties at the heart of the statutory scheme.  <u>See</u> 29 U.S.C. §§ 1001(b), 1104.  Under the statute, fiduciaries are defined not simply by their titles, but also functionally, based on the discretionary authority they are granted and the control they exercise over the plan and its assets.  <u>See</u> 29 U.S.C. § 1002(21).  Thus, the Supreme Court has correctly noted that ERISA "allocates liability for plan-related misdeeds in reasonable proportion to the respective actor's power to control and prevent the misdeeds."  <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 262 (1993).  Consistent with these principles, ERISA generally relieves a fiduciary from liability only in the limited circumstances where the control they would otherwise have exercised is properly delegated to and exercised by someone else.  <u>E.g.</u>, 29 U.S.C. § 1105(c)(1) (permitting the named fiduciary to designate other fiduciaries to carry out specific functions, and relieving them of all duties except with respect to appointing and monitoring); 25 C.F.R. § 408b-2(e)(2) (no breach for self-dealing under section 406(b)(1) if "the fiduciary does not use any of [their fiduciary] authority, control, or responsibility ").  The 404(c) regulation, and the Secretary's interpretation of her regulation, are consistent with, and indeed best serve, these statutory principles.

The regulation was issued after notice-and-comment rulemaking pursuant to an express delegation of authority to the Secretary to determine the circumstances under which "a participant or beneficiary exercises control over the assets in his account."  29 U.S.C. § 1104(c).  The preamble language explaining the scope of the regulatory and statutory exemption, and declining to shield fiduciaries from liability for losses attributable to their own imprudent selection and monitoring of investment options, represents the Secretary's authoritative interpretation of her own regulation and was itself the product of the same notice-and-comment rulemaking.  See 56 Fed. Reg. 10724, 10832 n.21 (Mar. 13, 1991).[5]  It is entitled to the highest degree of deference because it is longstanding and consistently held, thoroughly thought out, and based on the Secretary's consideration of relevant policy

_____

[5]  Not only is this the longstanding and consistently held view of the Secretary, the Secretary recently reiterated this view in promulgating, through notice-and-comment rulemaking, a disclosure regulation which, among a number of other things, amends the 404(c) regulation.  The text of the 404(c) regulation now provides that the safe harbor provision "does not serve to relieve a fiduciary from its duty to prudently select and monitor any service provider or designated investment alternative offered under the plan."  Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans, 75 Fed. Reg. 64,910, 64,946 (Oct. 20, 2010) (to be codified at 29 C.F.R. § 2550.404c-1(d)(2)(iv)).  In proposing this amendment, the Department explained that the new language would serve to "reiterate [the Department's] long held position that the relief afforded by section 404(c) and the regulation thereunder does not extend to a fiduciary's duty to prudently select and monitor . . . designated investment alternatives under the plan."  73 Fed. Reg. 43,014, 43,018 (July 23, 2008).

concerns.  E.g., Yellow Trans., Inc. v. Michigan, 537 U.S. 36, 45 (2002)

(giving controlling deference to the ICC's interpretation of the Intermodal

Surface Transportation Efficiency Act that was made in explanatory

statement announcing the promulgation of the regulation rather than the

regulatory text).  The Supreme Court has stressed the strength and

importance of deference in such circumstances, Geier v. Am. Honda Motor

Co., Inc., 529 U.S. 861, 877-80 (2000) (giving controlling deference to

interpretation in preamble), and continues to give controlling weight even to

interpretations of regulations that were made later in much less formal

settings.  See Chase Bk. USA, N.A. v. McCoy, ___ S. Ct. ___, 2011 WL

197641, *8-*9 (Jan. 24, 2011) (controlling deference to agency's

interpretation of regulation in amicus brief); Long Island Care at Home Ltd.

v. Coke, 127 S. Ct. 2339, 2349-50 (2007) (controlling deference to agency's

interpretation of regulation set out in an advisory memorandum in response

to litigation); Auer v. Robbins, 519 U.S. 452, 462 (1997) (controlling

deference to an interpretation made for the first time in brief).  Thus even to

the extent that the statutory language — which limits the section 404(c)

defense to losses that "result[] from a participant's exercise of control" —

leaves open how strict a standard of causation ought to apply, the Secretary's

resolution of that issue ought to prevail.  See National Cable &

Telecommunications Ass'n v. Brand X Internet Services, 545 U.S. 967, 982 (2005) (Chevron established a "'presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.'") (quoting Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 740-41(1996)).

Therefore, the district court erred in dismissing the case. If plaintiffs' allegations are true, the staggering losses that the Plans suffered when the GM stock became virtually worthless were the result of State Street's imprudence, as a fiduciary and investment manager for the Plans, in failing to act more quickly to divest the GM stock, and the allegations suffice to plead causation.[6]

---

[6] Although the district court cited the Second Circuit's unpublished decision in Young v. General Motors Inv. Management Corp., 2009 WL 1230350, *1 (2nd Cir. 2009), as additional authority, Young has no bearing on this case. In Young, the plaintiffs asserted that the fiduciary defendants had violated their duty of diversification under ERISA section 404(a)(1)(C) by failing to diversify two funds in an array of 401(k) plan options that was diversified overall. Id. at *1. The plaintiffs here do not allege a violation of the duty to diversify that was at issue in Young, and the Second Circuit, for its part, did not address the circumstances or issues raised in the present case. For the same reason, the plaintiffs here are not, as the district court suggested, bound in any manner by the decision in Young, which alleged a totally different theory of liability (lack of diversification) with respect to a totally different set of plan funds (funds holding stock in non-GM companies).

CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the

Court reverse the district court's decision.

Respectfully submitted,


M. PATRICIA SMITH
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor of Labor

ELIZABETH HOPKINS
Counsel for Appellate and Special
Litigation


/s/ Elizabeth Goldberg
ELIZABETH GOLDBERG
Trial Attorney
U.S. Department of Labor
Office of the Solicitor
P.O. Box 1914
Washington, D.C.  20013
Phone:  (202) 693-5796

CERTIFICATE OF COMPLIANCE
WITH FED. R. APP. P. 32(A)(7)(B)

I certify that the foregoing brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a) (7) (B) (i).  The brief contains 6,999 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  The brief was prepared by using Microsoft Office Word, 2003 edition.

Dated:  February 15, 2011

/s/ Elizabeth Goldberg
Elizabeth Goldberg
Trial Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2011, I electronically filed the forgoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

> Geoffey M. Johnson
> Scott & Scott LLP
> 12434 Cedar Road, Suite 12
> Cleveland Heights, OH 44106
>
> Wilber H. Boies, P.C.
> Nancy G. Ross
> M. Soledad Galmarini
> McDermott Will & Emery LLP
> 227 West Monroe Street
> Suite 4400
> Chicago, IL 60606
>
> James D. Vandewyngearde
> Pepper Hamilton LLP
> 100 Renaissance Center
> Suite 3600
> Detroit, MI 48243
>
> Chris C. Scheithauer
> McDermott Will & Emery LLP
> 18191 Von Karman Avenue
> Suite 500
> Irvine, CA 92612

/s/ Elizabeth Goldberg
Elizabeth Goldberg
Trial Attorney