# EXHIBIT E

No. 10-2029

———————————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————————

DAVID W. ALLEN, ROBERT M. COMINSKY, ROSE HANSEN,
ALAN A. HARDMAN, JERRY R. KELLEY, JR., DENISE A. TUTTLE,
and TODD A. WRIGHT,

Plaintiffs-Appellants,

v.

WACHOVIA CORP., et. al.

Defendants-Appellees.

———————————————————

On Appeal from the United States District Court
for the Western District of North Carolina

———————————————————

BRIEF FOR THE SECRETARY OF LABOR AS AMICUS CURIAE
SUPPORTING PLAINTIFFS-APPELLANTS

———————————————————

M. PATRICIA SMITH                    ELIZABETH HOPKINS
Solicitor of Labor                   Counsel for Appellate and
                                     Special Litigation

TIMOTHY D. HAUSER                    THOMAS TSO
Associate Solicitor for             Trial Attorney
Plan Benefits Security              U.S. Department of Labor
                                     200 Constitution Ave., N.W.,
                                      Room N-4611
                                     Washington, D.C. 20210
                                     (202) 693-5632

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT OF IDENTITY, INTEREST
        AND AUTHORITY TO FILE ....................................................1

QUESTIONS PRESENTED......................................................................1

      1.    Whether, under the circumstances alleged, the district court
          erred in concluding that none of the fiduciaries for these plans
          had any duty with the respect to the selection and retention of
          employer stock investments. ......................................................2

      2.    Whether the district court erred in holding that the plan
          fiduciaries were entitled to a presumption that they acted
          prudently in continuing to allow the Plans to purchase employer
          stock at inflated prices, and that the plaintiffs failed to plausibly
          plead facts overcoming the presumption. ...................................2

      3.    Whether the district court erred in concluding that the plan
          fiduciaries had no affirmative duty to disclose accurate
          information about the sponsoring company's rapidly
          deteriorating financial condition. ...............................................2

STATEMENT OF THE CASE................................................................2

SUMMARY OF ARGUMENT ..............................................................7

DISCUSSION ........................................................................................9

    I.    The Defendants Had A Duty To Disregard Plan Terms Requiring
       The Plan to Invest in Employer Stock If It Was Imprudent To
       Continue to Offer or Purchase Such Stock ...........................................9

    II.   The District Court Erred In Dismissing The Case Based On A
       Presumption That The Fiduciaries Acted Prudently In Allowing
       The Plan to Purchase Employer Stock at Allegedly Inflated
       Prices ................................................................................................16

A.     ERISA Does Not Include a Presumption of Prudence for Investments in Employer Stock. ...............................................16

B.     Any Presumption of Prudence Should Not Apply to Knowing Overpayment. ...........................................................................22

C.     Any Presumption of Prudence Should Not Apply at the Pleading Stage. ...........................................................................23

III.     Disseminating Misleading SEC Filings In Plan Documents Are Fiduciary Acts Subject To ERISA's Fiduciary Standards...................25

CONCLUSION ........................................................................30

CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE
CERTIFICATE OF IDENTICAL COMPLIANCE
    OF BRIEFS AND VIRUS CHECK

## TABLE OF AUTHORITIES

Federal Cases:

Adams v. Brink's Co.,
    261 F. App'x 583 (4th Cir. Jan 11, 2008) .......................................................28

Ballone v. Eastman Kodak Co.,
    109 F.3d 117 (2nd Cir. 1997) ........................................................................25

Bidwill v. Garvey,
    943 F.2d 498 (4th Cir. 1991) .........................................................................14

Braden v. Wal-Mart Stores, Inc.,
    588 F.3d 585 (8th Cir. 2009) ................................................................... 19, 24

Bunch v. W.R. Grace & Co.,
    555 F.3d 1 (1st Cir. 2009)....................................................................... 17 n.1

Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,
    472 U.S. 559 (1985)........................................................................................13

Chao v. Malkani,
    452 F.3d 290 (4th Cir. 2006) ................................................................... 14, 20

Coleman v. Interco Inc. Divisions' Plans,
    933 F.2d 550 (7th Cir. 1991) .........................................................................11

Condus v. Howard Sav. Bank,
    781 F. Supp. 1052 (D.N.J. 1992)...................................................................28

Darden v. Nationwide Mut. Ins. Co.,
    796 F.2d 701 (4th Cir. 1986) ................................................................... 11, 14

Devlin v. Empire Blue Cross & Blue Shield,
    274 F.3d 76 (2d Cir. 2001) ...........................................................................25

Federal Cases--(continued):

DiFelice v. U.S. Airways, Inc.,
    436 F. Supp. 2d 756 (E.D. Va. 2006) ...........................................................17

DiFelice v. U.S. Airways, Inc.,
    497 F.3d 410 (4th Cir. 2007) ........................................................ 8 & passim

Eaves v. Penn,
    587 F.2d 453 (10th Cir. 1978) ......................................................13

Edgar v. Avaya, Inc.,
    503 F.3d 340 (3d Cir. 2007) .................................................... 6, 25

Fink v. Nat'l Sav. & Trust Co.,
    772 F.2d 951 (D.C. Cir. 1985)......................................................13

Harzewski v. Guidant Corp.,
    489 F.3d 799 (7th Cir. 2007) ................................................ 13, 29

Herman v. Mercantile Bank, N.A.,
    143 F.3d 419 (8th Cir. 1998) .......................................................13

Herman v. NationsBank Trust Co.,
    126 F.3d 1354 (11th Cir. 1997) ...................................................11

Griggs v. E. I. Dupont de Nemours & Co.,
    237 F.3d 371 (4th Cir. 2001) ................................... 14, 25, 26, 27

Imel v. Laborers Pension Trust Fund for N. Cal.,
    904 F.2d 1327 (9th Cir. 1990) .....................................................11

In re Citigroup ERISA Litig.,
    2009 WL 2762708 (Aug. 31 2009) ............................................15

In re Dynegy, Inc. ERISA Litig.,
    309 F. Supp. 2d 861 (S.D. Tex. 2004)........................................26

Federal Cases--(continued):

In re Enron Corp. Sec., Derivative & "ERISA" Litig.,
284 F. Supp. 2d 511 (S.D. Tex. 2003)............................................................28

In re Halpin,
566 F.3d 286 (2d Cir. 2009) ...........................................................................23

In re Honeywell Int'l ERISA Litig., No. 03-1214,
2004 WL 3245931 (D.N.J. June 14, 2004)......................................................25

In re Mutual Funds Investment Litig.,
529 F.3d 207 (4th Cir. 2008) .........................................................................14

In re Schering-Plough ERISA Litig.,
420 F.3d 231 (3rd Cir. 2005)..........................................................................22

In re Sprint Corp. ERISA Litig.,
388 F.Supp.2d 1207 (D. Kan. 2004) ..............................................................25

In re Syncor ERISA Litig.,
516 F.3d 1095 (9th Cir. 2008) .................................................... 13, 14, 18, 22

In re The Goodyear Tire & Rubber Co. ERISA Litig.,
438 F. Supp. 2d 783 (N.D. Ohio 2006) ..........................................................24

In re Wachovia Corp. ERISA Litig.,
2010 WL 3081359 (W.D.N.C. Aug. 6, 2010) ................................ 1 & passim

J.E.M. Ag. Supply, Inc. v. Pioneer High-Bred Int'l,
534 U.S. 124 (2001)........................................................................................29

Kenny v. Quigg,
820 F.2d 665 (4th Cir. 1987) .........................................................................17

Kirschbaum v. Reliant Energy, Inc.,
526 F.3d 243 (5th Cir. 2008) ................................................................ 17 n.1

Kuper v. Iovenko,
66 F.3d 1447 (6th Cir. 1995) ........................................................... 13, 17 n.1

Federal Cases--(continued):

Laborer's Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.,
        173 F.3d 313 (5th Cir. 1999) ........................................................................11

LaLonde v. Textron, Inc.,
        369 F.3d 1 (1st Cir. 2004).............................................................................24

Levy v. Local Union Number 810,
        20 F.3d 516 (2d Cir. 1994) ...........................................................................12

Martin v. Feilen,
        965 F.2d 660 (8th Cir. 1992) ............................................................ 16, 22, 23

Mass. Mut. Life Ins. Co. v. Russell,
        473 U.S. 134 (1985)......................................................................................14

Mertens v. Hewitt Assocs.,
        508 U.S. 248 (1993)................................................................................ 18, 21

Metro. Life Ins. Co. v. Pettit,
        164 F.3d 857 (4th Cir. 1998) ........................................................................18

Metro. Life Ins. Co., v. Glenn,
        128 S. Ct. 2343 (2008).................................................................................28

Moench v. Robertson,
        62 F.3d 553 (3d Cir. 1995) .............................................................. 1 & passim

Morton v. Mancari,
        417 U.S. 535 (1974)......................................................................................29

Powell v. Chesapeake and Potomac Telephone Co. of Virginia,
        780 F.2d 419 (4th Cir.1985) .........................................................................18

Quan v. Computer Sciences Corp.,
        --- F.3d ----, 2010 WL 3784702 (9th Cir. Sept. 30, 2010) ........ 17 n.1, 20 n.2

Federal Cases--(continued):

Rankin v. Rots,
    278 F. Supp. 2d 853 (E.D. Mich. 2003) ........................................................24

Rogers v. Baxter Int'l, Inc.,
    521 F.3d 702 (7th Cir. 2008) .........................................................................29

Secretary of Labor v. Fitzsimmons,
    805 F.2d 682 (7th Cir. 1986) (en banc) ..........................................................1

Smith v. Sydnor,
    184 F.3d 356 (4th Cir. 1999) ......................................... 17 n.1, 18, 19, 20 n.2

Steinman v. Hicks,
    352 F.3d 1101(7th Cir. 2002) .......................................................................24

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002)......................................................................................24

Varity Corp. v. Howe,
    516 U.S. 489 (1996)............................................................................... 25, 26

Federal Statutes:

Employment Retirement Income Security Act of 1974,
    as amended, 29 U.S.C. 1001 et seq:

Section 2, 29 U.S.C. § 1001 ..........................................................................1

Section 2(b), 29 U.S.C. § 1001(b) ...................................................... 20 n.3, 24

Section 3(34), 29 U.S.C. § 1002(34) .............................................................16

Section 402(a)(1), 29 U.S.C. § 1102(a)(1) ........................................ 8, 11, 12

Section 403, 29 U.S.C. § 1103 ......................................................................12

Section 403(a), 29 U.S.C. § 1103(a) ....................................................... 8, 12

Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A)................................... 8, 11

Federal Statutes--(continued):

Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) .................. 8, 11, 18, 18, 21

Section 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C) .........................................17

Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) .......................................6, 8

Section 404(a)(2), 29 U.S.C. § 1104(a)(2) ....................................................15

Section 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(E)..........................................15

Section 407(a)(1), 29 U.S.C. § 1107(a)(1) ....................................................15

Section 510, 29 U.S.C. § 1110 .............................................................. 12, 19

Section 412(a), 29 U.S.C. 1112(a) ...............................................................15

Federal Regulations:

29 C.F.R. § 2509.75-8........................................................................................15

Miscellaneous:

H.R. Rep. No. 93-553,
        as reprinted in 1974 U.S.C.C.A.N. 4639 .......................................................24

H.R. Rep. No. 93-553,
        as reprinted in 1974 U.S.C.C.A.N. 4655 .......................................................24

S. Rep. No. 93-127 (1973),
        as reprinted in 1974 U.S.C.C.A.N. 4838 ................................................ 12, 19

S. Rep. No. 93-127 (1973),
        as reprinted in 1974 U.S.C.C.A.N. 4863 .......................................................24

S. Rep. No. 93-127 (1973),
        as reprinted in 1974 U.S.C.C.A.N. 4864 .......................................................24

Miscellaneous—(continued):

Fed. R. App. P. 29(a) ............................................................................1, 5

Fed. R. Civ. P.
    8(a) ...........................................................................................24
    12(b)(6) ............................................................................... 23, 24

U.S. Dep't of Labor Opinion Letter No. 90-05A,
    1990 WL 172964 (Mar. 29, 1990) ................................................13

U.S. Dep't of Labor Field Assistance Bulletin,
    2004-03 (Dec. 17, 2004) .............................................................23

Restatement (Third) § 173 cmt.c-d. .......................................................25

Restatement (Third) § 205 cmt.e, illus. 9. ..............................................23

<u>STATEMENT OF IDENTITY, INTEREST AND AUTHORITY TO FILE</u>

As the head of the federal agency with primary responsibility for Title I of

ERISA, the Secretary of Labor has a strong interest in ensuring that courts

correctly interpret ERISA.  <u>See</u> <u>Secretary of Labor v. Fitzsimmons</u>, 805 F.2d 682,

692-693 (7th Cir. 1986) (en banc).  The district court's decision, <u>In re Wachovia</u>

<u>Corp. ERISA Litigation</u>, 2010 WL 3081359 (W.D.N.C. Aug. 6, 2010),

misinterprets ERISA in three respects.  First, it immunizes plan fiduciaries from

liability for investing in employer stock even if the investment is imprudent, so

long as the plan documents require investment in employer stock.  Second, the

decision alternatively relies on a presumption of prudence, established in <u>Moench</u>

<u>v. Robertson</u>, 62 F.3d 553 (3d Cir. 1995), which the Fourth Circuit has not yet

adopted and which conflicts with ERISA's language and purposes.  Third, the

decision permits fiduciaries to evade the venerable trust-law duty to speak

truthfully to plan participants and beneficiaries.  The Secretary has a compelling

interest to assure that these substantial errors are corrected.

The Secretary files this brief as amicus curiae pursuant to her authority

under Fed. R. App. P. 29(a).

<u>QUESTIONS PRESENTED</u>

This case is about pension plan fiduciaries who allegedly knowingly allowed

the plans to purchase stock from the sponsoring employer at inflated values and to

continue to hold stock during a period when the company's risky and undisclosed lending practices predictably lead the stock to lose much of its value.  The questions that the Secretary addresses in her amicus brief are as follows:

1.  Whether, under the circumstances alleged, the district court erred in concluding that none of the fiduciaries for these plans had any duty with respect to the selection and retention of employer stock investments.

2.  Whether the district court erred in holding that the plan fiduciaries were entitled to a presumption that they acted prudently in continuing to allow the Plans to purchase employer stock at inflated prices, and that the plaintiffs failed to plausibly plead facts overcoming the presumption.

3.  Whether the district court erred in concluding that the plan fiduciaries had no affirmative duty to disclose accurate information about the sponsoring company's rapidly deteriorating financial condition.

<u>STATEMENT OF THE CASE</u>

1.  The plaintiffs are former employees of Wachovia Corporation ("Wachovia") and participants in the Wachovia Savings Plan ("Wachovia Plan") and the A.G. Edwards Retirement and Profit Sharing Plan ("AGE Plan," collectively the "Plans").  2010 WL 3081359, at *2.  Defendants are various individuals and entities associated with the Plans, including the individuals charged with administering the Plans and selecting the investment options offered through

the Plans.  Id. at *3.  The Plans are defined contribution plans that provide for voluntary contributions and allow participants to manage and direct investment in their own accounts.  Id.  The Wachovia Plan states that the Wachovia Stock Fund "shall be made available to Participants for investment" and that these funds "shall invest primarily in Wachovia Stock."  Id. at *4.  Similarly, the AGE Plan states that the funds offered "shall include the [Wachovia Stock Fund]" and states, somewhat differently than the Wachovia Plan, that such fund "shall be invested exclusively in Wachovia common stock."  Id.   The Plans constitute eligible individual account plans (EIAPs), which are exempted from ERISA's diversification provision with respect to employer stock, 29 U.S.C. § 1104(a)(2). Id. at *3.

The plaintiffs allege that the defendants knew that Wachovia would inevitably sustain heavy losses from its subprime loans, but withheld truthful information or misled participants about Wachovia's significant exposure to these loans and its ability to weather the subprime crisis.  Consolidated Complaint ("Compl.") ¶ 216.  Moreover, the plaintiffs allege that while commentators predicted a housing market collapse throughout 2005, Wachovia continued to increase its exposure to the subprime mortgage market by acquiring AmNet Mortgage, Inc. that year, a company heavily invested in the wholesale mortgage market, including subprime lending.  Id. ¶¶ 119, 180-85.  Moreover, during 2006,

just prior to when the housing bubble burst, id. ¶¶ 187-191, Wachovia purchased Golden West, a company with $125 billion in assets composed almost entirely of high-risk mortgages. Id. ¶ 124.  From 2006 to the end of the Class Period, Wachovia's losses related to these mortgages on its income statement increased fifty-one-fold.  Id. ¶ 132.

The plaintiffs allege that the defendant-fiduciaries knew or should have known about the actual extent of its loss exposure during the Class Period.  Compl. ¶¶ 172-213.  In support, the plaintiffs point to numerous facts, including that, on January 22, 2008, Wachovia changed its accounting policy so that write-downs from adjustable-rate mortgages ("ARM"), which consisted significantly of sub-prime mortgages, would not be reported, as before, when they were 180 days past due, but rather would be reported only when the bank took over the property.  Id. ¶¶ 103-106, 133, 208.   Thus, Wachovia did not fully divulging the total loss exposure that would likely occur.  Id. ¶ 208.

Moreover, even as late as September 15, 2008, in midst of the subprime crisis, and after numerous internal red flags arose concerning subprime mortgages, Wachovia's CEO still publicly remarked that Wachovia's "total loan portfolio exposure was only $10 billion and that Wachovia had 'a great future as an independent company.'"  Compl. ¶¶ 145-47.  Yet, less than two weeks later, "Wachovia faced the choice of filing for bankruptcy or being sold to a competitor

in a forced sale." Id. ¶¶ 147-49.  During those last days, the FDIC Chairman told

the CEO that the FDIC was considering a takeover if Wachovia was not sold.  Id.

"On September 26, 2008, Wachovia entered into Confidentiality Agreements with

Citigroup and Wells Fargo for a possible acquisition."  Id.  Wells Fargo then

acquired Wachovia for $15.1 billion at a severe discount from Wachovia's stated

value of over $75 billion in its second-quarter 2008 report.  Id. ¶¶ 149-51.  Wells

Fargo initially wrote down its loans by $65 billion, an amount much larger than the

$10 billion exposure that Wachovia's CEO had described a mere two weeks earlier,

and inconsistent with the rosy picture painted by company officials during the

Class Period.  Id.

     The plaintiffs claim that prudence under ERISA required defendants to take

steps to withdraw Wachovia stock as an investment option for participants during

this period or disclose the true extent of Wachovia's risk exposure and financial

health.  Compl. ¶¶ 238-50.  They also claim that the defendants should have

accurately informed participants of Wachovia's risks related to these practices and

taken other steps, such as monitoring co-fiduciaries and disclosing necessary

information to them.  Compl. ¶¶ 271-75.

     2.  The district court dismissed the plaintiffs' claims pursuant to Fed. R.Civ.

P.12(b)(6).  First, the court found that "[t]he plain language of these Plans makes

clear that none of the Defendants had the discretion to eliminate the Wachovia

Stock Fund as an investment option within the Plans."  2010 WL 3081359, at *9.
The court concluded that closing the stock fund as an option would constitute
modifying the Plans' terms, a settlor function beyond the scope of any fiduciary
duty or authority.  Id.

The court also rejected the plaintiffs' argument that the defendant-fiduciaries
had a "fiduciary obligation to override the Plans' terms and divest the Wachovia
Stock Fund of Company stock" in compliance with section 404(a)(1)(D), 29
U.S.C. § 1104(a)(1)(D).  2010 WL 3081359, at *11.  The court reasoned that
because "textual markers" in ERISA indicate a congressional intent to encourage
investment in company stock, plan documents that require such investments are
consistent with ERISA and cannot be overridden by fiduciaries.  Id. (citation
omitted).

In the alternative, the court concluded that "[e]ven if the Plans' fiduciaries
had some discretion in eliminating this investment," their prudence claim "would
still fail," based upon application of the Moench presumption of prudence.  2010
WL 3081359, at *12.  The court rejected the plaintiffs' characterization of Moench
as an evidentiary standard and, instead, relying on Edgar v. Avaya, Inc., 503 F.3d
340, 349 (3d Cir. 2007), concluded that a Moench presumption could be applied on
a motion to dismiss.  Id. at *12-*13.  The court then adopted an "impending
collapse" test, under which fiduciaries are not liable for continuing to purchase or

hold employer stock unless "'persuasive and analytically rigorous facts'" give "rise to a reasonable belief that the viability of the company itself is threatened." Id. at *13 (citation omitted).  While the court acknowledged that there was a "significant decline during the alleged Class Period, Wachovia continued to have real value" after it was merged into Wells Fargo.  Id. at *14.  Accordingly, applying the presumption, the court concluded that "[p]rudence … did not require a massive sell-off of Wachovia stock at 'rock bottom' prices, in contravention of the Plan design, nor did it warrant measures to prevent additional stock acquisitions by Plan participants."  Id.  Nor, according to the court, did the fiduciaries have any duty to investigate the prudence of the investments.  Id. at *15.

The district court also rejected the plaintiffs' disclosure claim.  2010 WL 3081359, at *15-*16.  First, the court concluded that "courts routinely have dismissed ERISA fiduciary claims when the challenged statements consisted of SEC filings and other public statements made to the market, as such communications were made in a corporate capacity, not as an ERISA fiduciary." Id. at *16.  Second, the court noted that "[t]he Plan documents make clear that Plan participants are responsible for the selection of their investments and that the Wachovia Stock Fund was undiversified (and thus the riskiest of the available investment options)" and the fiduciaries were not additionally obligated to disclose non-public information to them.  Id.

7

## SUMMARY OF THE ARGUMENT

The district court erred in concluding that the fiduciaries had no duties with regard to the selection and retention of company stock investments simply because the plan terms mandated such investment.  To the contrary, ERISA provides that fiduciaries may follow plan terms only if they are consistent with ERISA's requirements, including its requirements that fiduciaries act with the utmost prudence and loyalty.  29 U.S.C. § 1104(a)(1)(D).  ERISA also requires that all plan assets, including employer stock, be controlled by fiduciaries bound by these twin duties.  Id. §§ 1102(a)(1), 1103(a), 1104(a)(1)(A),(B).  Accordingly, fiduciaries must consider the prudence of all plan investments, including those in employer stock, regardless of any mandate in the plan documents.

The district court also erred in alternatively holding that ERISA supports a "judicial presumption of prudence," 2010 WL 3081359, at *13, with respect to the Plans' purchase of employer stock.  This presumption contravenes ERISA's text and purposes.  As this Court held in DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 422-23 (4th Cir. 2007), ERISA itself sets forth the statutory prudence standard that must be applied to employer stock investment decisions without any judicial alteration.  Moreover, whatever the utility of a presumption of prudence in some circumstances, no such presumption should apply to the purchase of stock that the fiduciaries knew was inflated, as the plaintiffs allege in this case.  Known

8

overpayments are always imprudent under ERISA and trust law.  Additionally, the application of a presumption at the pleadings stage, foreclosing development of rebuttal evidence, was improper.

Finally, the court erred in dismissing the misrepresentation claim.  The obligation to truthfully communicate to participants material information for the protection of their plan investments does not permit fiduciaries to hide behind their corporate roles to evade this duty and mislead participants.  This obligation includes a duty to correct misrepresentations made in SEC filings subsequently incorporated into disseminated plan documents.

<u>DISCUSSION</u>

I.   THE DEFENDANTS HAD A DUTY TO DISREGARD PLAN TERMS REQUIRING THE PLAN TO INVEST IN EMPLOYER STOCK IF IT WAS IMPRUDENT TO CONTINUE TO OFFER OR PURCHASE SUCH STOCK

The district court erred in holding that defendants could not be plan fiduciaries with respect to the selection and retention of the Wachovia Stock Fund because the plan documents specifically required that the Fund be offered as an investment option, and that they therefore could not be held liable for any imprudence with regard to offering the Fund.  2010 WL 3081359, at *9.   If affirmed, this holding eliminates fiduciary responsibility for all decisions to invest in company stock whenever plan documents require the stock investment, thereby

immunizing fiduciaries from responsibility for even the most imprudent and disloyal investments in such stock.

In reaching the erroneous conclusion that plan fiduciaries in such circumstances have no fiduciary duties with regard to the selection and retention of company stock, the court reasoned that "[b]ecause the Plans require the maintenance of the Wachovia Stock Fund as an available investment option, elimination of that Fund would have required a modification of the Plans[,] ... [which] is not a fiduciary function." 2010 WL 3081359, at *9.  This fundamentally misreads the plaintiffs' claim, however.  The plaintiffs do not claim that the defendants should have formally exercised its discretion to amend or terminate the plan.  Instead, they argue that, as fiduciaries, the defendants were required under ERISA section 404(a)(1)(D) to override plan terms in order to prevent a fiduciary breach, in this case by removing employer stock as an investment option because this option had become an imprudent one for the Plans. Compl. ¶ 239.

Under ERISA section 404(a)(1)(D), fiduciaries are permitted to follow plan terms only "insofar as such documents and instruments are consistent with the provisions" of Title I of ERISA.  29 U.S.C. § 1104(a)(1)(D).  Other subsections of 404, itself a part of Title I, impose upon fiduciaries the trust-law duties of loyalty and care.  Thus, section 404 requires plan fiduciaries to act exclusively in the

interests of the participants and beneficiaries and exercise the level of "care, skill, prudence, and diligence … that a prudent man acting in a like capacity and familiar with such matters would use."  29 U.S.C. § 1104(a)(1)(A)-(B).  Together these provisions provide that ERISA's prudence and loyalty provisions cannot be contractually overridden, and require that only those plan terms that are otherwise consistent with ERISA be given effect.  See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 568 (1985); Herman v. NationsBank Trust Co., 126 F.3d 1354, 1368-69 & n.15 (11th Cir. 1997); Laborer's Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc., 173 F.3d 313, 322 (5th Cir. 1999); Coleman v. Interco Inc. Divisions' Plans, 933 F.2d 550, 551 (7th Cir. 1991) ("ERISA trumps" divergent plan language).  Irrespective of plan documents, therefore, fiduciaries always retain a duty under the statute to override plan terms that are inconsistent with a fiduciary's statutory obligations. NationsBank, 126 F.3d at 1371; see also Darden v. Nationwide Mut. Ins. Co., 796 F.2d 701, 704 n.4 (4th Cir. 1986) (noting that courts must consider whether "ERISA might preempt or override the intention of the parties"); Imel v. Laborers Pension Trust Fund for N. Cal., 904 F.2d 1327, 1330 (9th Cir. 1990) ("[p]rivate parties may not agree to alter statutory duties").

Other statutory provisions and ERISA's overall structure comport with this straightforward reading of section 404 requirements.  Section 402(a)(1) provides

that plans must be maintained pursuant to plan documents that provide for "one or more fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Similarly, Section 403(a) mandates that, subject to exceptions inapplicable here, "all assets of an employee benefit plan shall be held in trust by one or more trustees" who "have exclusive authority and discretion to manage and control the assets of the plan." 29 U.S.C. § 1103(a) (emphasis added). Although these trustees may be subject to the directions of named fiduciaries and the investment authority may be delegated to investment managers, all of these entities are plan fiduciaries. 29 U.S.C. § 1103. Moreover, ERISA "void[s] as against public policy" "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part." 29 U.S.C. § 1110. Under these provisions, plan documents can allocate, but not eliminate, fiduciary duties with respect to ERISA plans and the management of their assets. See Levy v. Local Union Number 810, 20 F.3d 516, 519 (2d Cir. 1994).

There are equally strong indications from legislative history that Congress intended all plan fiduciaries to abide by the statutory fiduciary duties, regardless of the settlor's intent as embodied in plan documents. S. Rep. No. 93-127, 93rd Cong., 2d Sess. 1974, 1974 U.S.C.C.A.N. 4838, 4863, 4866 (1973) ("the core

principles of fiduciary conduct ... place a ... duty on every fiduciary: to act in his relationship to the plan's fund as a prudent man in a similar situation and under like conditions would act"); Id. at 4864-865 (ERISA's fiduciary duty provisions, unlike state trust law, bar "deviations" based on settlor's intent).  Thus, ERISA requires that plan assets be managed at all times by fiduciaries, a mandate fundamentally inconsistent with the district court's conclusion that no fiduciary was responsible for assessing the prudence of the employer stock investment because Plan terms required such investments.  See 29 C.F.R. § 2509.75–8 (FR 12-15).

For these reasons, the Secretary has consistently taken the position that fiduciary standards apply with equal force to plan investments in employer stock funds.  See U.S. Dep't of Labor Opinion Letter No. 90-05A, 1990 WL 172964, at *3 (Mar. 29, 1990).  Likewise, every circuit court to consider the issue recognizes that fiduciaries of plans that own employer stock are under a continuing obligation to consider whether such investment is prudent, notwithstanding plan terms requiring investment in employer stock.  See, e.g., Kuper v. Iovenko, 66 F.3d 1447, 1458-59 (6th Cir. 1995); Harzewski v. Guidant Corp., 489 F.3d 799, 808-09 (7th Cir. 2007); Herman v. Mercantile Bank, N.A., 143 F.3d 419, 421 (8th Cir. 1998); In re Syncor ERISA Litig., 516 F.3d 1095, 1102-1103 (9th Cir. 2008); Fink v. Nat'l Sav. & Trust Co., 772 F.2d 951, 954-56 (D.C. Cir. 1985); Eaves v. Penn, 587 F.2d 453, 459 (10th Cir. 1978).

So too, this Court has recognized that "'Congress intended by § 404(a) to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits.'" Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 380 (4th Cir. 2001) (citation omitted). Plan drafters may not opt out of ERISA's fiduciary structure, and deprive participants of critical statutory protections, by the simple expedient of mandating investment in a particular asset. Cf. Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 152-53 (1985) (recognizing that fiduciary oversight is the "crucible" of ERISA's protections); Bidwill v. Garvey, 943 F.2d 498, 505 (4th Cir. 1991) (noting ERISA's "cardinal purpose of serving beneficiaries"); Chao v. Malkani, 452 F.3d 290, 293 (4th Cir. 2006) ("ERISA's primary aim is to protect individuals who participate in employee benefit plans"). Participants under ERISA have a right to expect the fiduciary's prudent management of their plan investments, including the employer stock fund. See In re Mutual Funds Investment Litig., 529 F.3d 207, 216 (4th Cir. 2008) (recognizing that participants in defined contribution pension plans have the "'entitlement to prudent management'") (citation omitted). The district court's holding that a plan's requirement that an employer stock fund be offered can relieve the fiduciary from all fiduciary oversight over the employer stock fund is "precisely that sort of employer-imposed condition on the employee's anticipations

that Congress intended to outlaw with the enactment of ERISA." <u>Darden</u>, 796 F.2d at 707 n.7.

Nevertheless, the district court rejected the Plaintiffs' contention "that the Defendants had the fiduciary obligation to override the Plans' terms and divest the Wachovia Stock Fund of Company stock," reasoning that for plans such as these, "'investment in employer stock is consistent with ERISA's other provisions'" because the statute contemplates that such plans will invest in company stock, "'and do so without diversifying, [29 U.S.C.] § 1104(a)(2).'"  2010 WL 3081359, at * 11 (quoting <u>In re Citigroup ERISA Litig.</u>, 2009 WL 2762708, at *11 (Aug. 31 2009)).  However, as the district court also recognized, the statutory pass from diversification does "'not relieve [a] fiduciary of his general obligation to discharge his responsibilities in a prudent fashion.'"  2010 WL 3081359, at *8 (citation omitted); <u>accord</u> <u>DiFelice</u>, 497 F.3d at 423-25 ("a fiduciary must initially determine, and continue to monitor, the prudence of each investment option available to plan participants").

Nor do any other provisions in ERISA implicitly or explicitly support that fiduciaries may entirely disregard their duties of loyalty and care with regard to employer stock investments.  To the contrary, several ERISA provisions specifically impose restrictions on investments in employer securities inapplicable to any other type of plan investment.  <u>See</u> 29 U.S.C. §§ 1106(a)(1)(E)-(a)(2),

1107(a)(1);  1112(a).   Moreover, non-diverse employer stock investments put "employee retirement assets at much greater risk than does the typical diversified ERISA plan," Martin v. Feilen, 965 F.2d 660, 664 (8th Cir. 1992).  In individual account plans such as these Plans, workers' retirement benefits are entirely dependent on the plan investments' earnings.   29 U.S.C. § 1002(34).   Thus, ERISA's other protections, including its standards of prudence, are all the more necessary in this context.  There is simply nothing in the text of ERISA or its legislative history or purposes that would absolve fiduciaries of all responsibility for such employer stock investments and thereby put at risk the billions of dollars in plan assets in such investments.

II.   THE DISTRICT COURT ERRED IN DISMISSING THE CASE BASED ON A PRESUMPTION THAT THE FIDUCIARIES ACTED PRUDENTLY IN ALLOWING THE PLAN TO PURCHASE EMPLOYER STOCK AT ALLEGEDLY INFLATED PRICES

A.   ERISA Does Not Include a Presumption of Prudence for Investments in Employer Stock

The district court applied in this case a "judicial presumption of prudence" that "substantially raises the threshold for holding plan fiduciaries responsible for investment losses arising from employer stock investments."  2010 WL 3081359, at *13.  To rebut the presumption, in the Court's view, the plaintiffs were required to present in their Complaint "'persuasive and analytically rigorous facts' . . . giving rise to a reasonable belief that the viability of the company itself is threatened."  Id.

(citation omitted).  The court thus presumed the defendant-fiduciaries' prudence in continuing to offer and allegedly overpay for Wachovia stock even though red flags allegedly warned of a collapse in the stock price, which ultimately amounted to "approximately 87%," and forced Wachovia's sale to Wells Fargo at a fraction of its prior valuations.  Id. at *14 & n.9.  This Court in DiFelice, however, correctly rejected the notion that fiduciaries may continue to offer employer stock without regard to normal prudence considerations, 497 F.3d at 422-23, simply because company stock investments are favored by ERISA.  DiFelice v. U.S. Airways, Inc., 436 F. Supp. 2d 756, 789 (E.D. Va. 2006).

This is because, despite the fact that several Circuits have now adopted some version of the presumption,[1] such a presumption of prudence finds no support in the text of ERISA.  Other than the requirement to "diversify[] the investments of the plan so as to minimize the risk of large losses," 29 U.S.C. 1104(a)(1)(C),

---

[1]  The Fifth, Sixth, and Ninth Circuits adopted some version of the Third Circuit's Moench presumption.  See, e.g., Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 254 (5th Cir. 2008); Kuper, 66 F.3d at 1457; Quan v. Computer Sciences Corp., --- F.3d ----, 2010 WL 3784702, at *8 (9th Cir. Sept. 30, 2010) (adopting an "impending collapse" version), pet. for rehearing pending.  But see Syncor, 516 F.3d at 1102 (declining to apply the presumption to a claim that the fiduciaries breached their duties by allowing the purchase of "artificially inflated Syncor stock for the ERISA Plan").  The Seventh Circuit has not explicitly adopted it but agreed with some of its reasoning.  See, e.g., Steinman v. Hicks, 352 F.3d 1101, 1103 (7th Cir. 2003); see also Bunch v. W.R. Grace & Co., 555 F.3d 1, 10 (1st Cir. 2009) (declining to apply presumption to fiduciary's decision against company stock investment).

ERISA's fiduciary standards of prudence and loyalty are unaltered for plans with employer stock options.  DiFelice, 497 F.3d at 418; cf. Kenny v. Quigg, 820 F.2d 665, 666-667 (4th Cir. 1987) (applying fiduciary provisions to fiduciary valuation of privately-held employer stock).  Thus, this Court correctly recognized that "ERISA itself sets forth the only test of a fiduciary's duties: the requirement that fiduciaries act 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'"  DiFelice, 497 F.3d at 418 (quoting 29 U.S.C. § 1104(a)(1)(B)); Powell v. Chesapeake and Potomac Telephone Co. of Virginia, 780 F.2d 419, 424 (4th Cir. 1985) (recognizing that section 404 "expressly incorporates a general 'prudent man' standard of care for ERISA fiduciaries").  And prudence, this Court recognized, must be gauged based on a "totality of circumstances" 497 F.3d at 418, not simply presumed absent impending collapse.  Accord Syncor, 516 F.3d at 1102 ("[a] prudent man standard based only upon a company's alleged financial viability does not take into account the myriad of circumstances that could violate the standard").

Accordingly, the statute leaves no room for the creation, as a matter of federal common law, of an alternative "judicial presumption of prudence," 2010 WL 3081359, at *13, with its heightened threshold based solely on the company's viability, and which precludes the straightforward application of the statutory

prudence standard.  See Mertens v. Hewitt Assocs., 508 U.S. 248, 259 (1993)

("[t]he authority of courts to develop a 'federal common law' under ERISA ... is not

the authority to revise the text of the statute"); Metro. Life Ins. Co. v. Pettit, 164

F.3d 857, 864 & n.7 (4th Cir. 1998) ("ERISA directly addresses the topic at hand,

and there is no room for us to countermand the statutorily expressed intent of

Congress").

　　　　Here, the district court found support for the presumption in the premise that

continued investment in employer stock was consistent with the settlor's

"'expectations of how a prudent trustee would operate.'"  2010 WL 3081359, at *12

(citation omitted).  ERISA, however, does not contemplate any consideration of a

settlor's subjective expectations when applying the prudence standard.  See 29

U.S.C. § 1104(a)(1)(B) (adopting an objective standard of the "prudent man acting

in a like capacity and familiar with such matters"); Braden v. Wal-Mart Stores,

Inc., 588 F.3d 585, 595 (8th Cir. 2009) (describing ERISA's  prudence standard as

"an objective standard"); 29 U.S.C. § 1110; S. Rep. No. 93-127, 1974

U.S.C.C.A.N. at 4864-865 (ERISA's fiduciary duties bar "deviations" based on

settlor's intent).   Moreover, this Court has recognized that fiduciary claims are

statutory claims not contractual claims, and therefore a party's (settlor's) subjective

expectations are irrelevant.  Smith v. Sydnor, 184 F.3d 356, 365 (4th Cir. 1999)

(noting for fiduciary breach claims, "'[t]here is a strong interest in judicial

resolution of these … claims, for the purpose of providing a consistent source of law to help plan fiduciaries and participants predict the legality of proposed actions'") (citation omitted).[2]

In the end, the district court justified application of the presumption solely on two policy rationales: (1) the "settlor's expectations;" and (2) a perceived need to protect the defendant-fiduciaries.  2010 WL3081359, at *12-*13.  Not only are both rationales inconsistent with ERISA,[3] but such policy considerations cannot, in any event, justify overriding the statutorily-created scheme, which makes the trust-law's prudence standard applicable to all fiduciary conduct.  Just as this Court in Malkani, 452 F.3d at 297-98, rejected the fiduciaries' request to "reconfigure th[e] carefully crafted balance – and in the process to place a heavy weight on the

---

[2]  Even if one considers the Moench presumption simply a particularized application of a deferential "standard of review," see, e.g., Quan, 2010 WL 3784702, at *5, this Court has rejected any deference in fiduciary breach claims.  See Sydnor, 184 F.3d at 365.  Instead, as a "general principle," this Court does not "give full credence to an ERISA fiduciary's assessment of his own allegedly wrongful conduct."  Id. at 365 n.9.

[3]  As described above, the settlor intent rationale is inapplicable with respect to statutory requirements.  And the second rationale – the desire to protect fiduciaries by lowering their standard of conduct – is in considerable tension with much of the text of ERISA, beginning with the statutory statement of purpose in ERISA's very first section.  29 U.S.C. § 1001(b) (ERISA is designed to protect "the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation of fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts").

employers' side of the scale," with regard to liability for failing to forward contributions, this Court should likewise reject application of a judicially created presumption favoring fiduciaries with regard to plan investments in company stock.  "It is Congress's job to set the appropriate equilibrium; judges must ensure its proper enforcement."  Id.; Mertens, 508 U.S. at 263 (Court will not "adjust the balance between those competing goals that the text adopted by Congress has struck").  Congress has done so in this context by making fiduciaries subject to the prudent man standard, a high but by no means unattainable standard of conduct.  See DiFelice, 497 F.3d at 422-23 (finding that the fiduciaries had acted prudently under the statutory standard).

Affirming the district court's holdings would permit fiduciaries to sit idly by until the company is on the verge of collapse despite numerous red flags indicating that plan investments in employer stock are in danger of losing much or all of their value.  2010 WL 3081359, at *14-*15.  At the very least, as this Court already has recognized, fiduciaries always retain a duty to investigate whether or not the stock is an imprudent investment in light of the red flags.  Compare 2010 WL 3081359, at *15 with DiFelice, 497 F.3d at 421.  And, under no circumstances, would a reasonable man acting with requisite statutory level of "care, skill, prudence, and diligence," 29 U.S.C. 1104(a)(1)(B)), ignore the grave dangers to plan participants

merely because the company was not expected to completely collapse and destroy the total value of the stock investment.

    B.  <u>Any Presumption of Prudence Should Not Apply to Knowing Overpayment</u>

At a minimum, there is no rationale for adopting a presumption of prudence where the plaintiffs allege that the fiduciaries knew or should have known that the stock's price was "artificially inflated," and thus that the plan was overpaying for its investment.  2010 WL 3081359, at *14.  The question in <u>Moench</u> was not whether the fiduciaries paid the wrong price for the stock, but was instead whether they should have purchased and retained the stock at all, whatever the price.  62 F.3d at 571; <u>see also</u> <u>Syncor</u>, 516 F.3d at 1102 (declining to apply the presumption because there was an issue of genuine material fact as to whether "the fiduciaries breached the prudent man standard by knowing of, and/or participating in, the illegal scheme while continuing to hold and purchase artificially inflated Syncor stock for the ERISA Plan").

Accordingly, the <u>Moench</u> presumption should not apply to a case, like this one, that challenges the prudence and loyalty of purchasing company stock in light of information that the stock's price was "unlawfully and artificially inflated." <u>In re Schering-Plough</u>, 420 F.3d 231, 233 (3rd Cir. 2005).  In this context, presuming that the fiduciaries acted prudently is unwarranted, and the company's viability is irrelevant. Knowingly overpaying for an asset is neither prudent nor in the interest

of plan participants and beneficiaries.  See, e.g., Martin v. Feilen, 965 F.2d 660, 671 (8th Cir. 1992).  This follows from the well-established rule that a fiduciary breaches his duties by knowingly paying too much for an asset for the plan.  See Feilen, 965 F.2d at 671; Restatement (Third) of Trusts § 205 cmt. e, illus. 9. Whether the plan gets nothing in return for its payment or too little, the breach is the same.  Cf. U.S. Dep't of Labor Field Assistance Bulletin 2004-03 (Dec. 17, 2004) ("if a directed trustee has non-public information indicating that a company's public financial statements contain material misrepresentations that significantly inflate the company's earnings, the trustee could not simply follow a direction to purchase that company's stock at an artificially inflated price"); In re Halpin, 566 F.3d 286, 290 n.2 (2d Cir. 2009) (applying Skidmore deference to Field Assistance Bulletins).

C.  Any Presumption of Prudence Should Not Apply at the Pleadings Stage

Even assuming that a presumption of prudence applies, the Moench presumption by its terms may be rebutted based on the evidence, and it is thus an evidentiary matter, not a pleading requirement.  See Moench, 62 F.3d at 571 (to rebut the presumption, "plaintiff may introduce evidence") (emphasis added). Fact-intensive questions concerning the state of the fiduciary's knowledge and the economic circumstances surrounding the investment may arise when determining whether the presumption applies or has been rebutted.  Id. at 571.  Invocation of

the presumption thus lends itself to evidentiary development but is an inappropriate

basis for Rule 12(b)(6) dismissal.  Accordingly, inserting the Moench presumption

of fact into the pleadings stage is generally inconsistent with the notice pleading

requirements of Rule 8(a) of the Federal Rules of Civil Procedure.  See

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); Braden, 588 F.3d at 595-

596 (holding that ERISA plaintiffs need only plead facts that give defendants a

"fair notice" of "acts indirectly showing unlawful behavior" but need not "rebut"

"lawful reasons" for such behavior).  It is also inconsistent with congressional

intent expressed in ERISA section 2(b) to provide "ready access" to the courts.  29

U.S.C. § 1001(b); see also H.R. Rep. No. 93-553, 93d Cong., 1st Sess. 17 (1973),

1974 U.S.C.C.A.N. 4639, 4655 (ERISA designed, among other things, to eliminate

"jurisdictional and procedural obstacles which in the past appear to have hampered

effective enforcement of fiduciary duties").

 For these reasons, numerous decisions have correctly refused to apply

Moench when deciding a motion to dismiss.  See, e.g., In re Goodyear, 438 F.

Supp. 2d 783, 794 (N.D. Ohio 2006); In re Elec. Data Sys. Corp. "ERISA" Litig.,

305 F. Supp. 2d 658, 670 (E.D. Tex. 2004); Rankin v. Rots, 278 F. Supp. 2d 853,

879 (E.D. Mich. 2003).  Other courts, while stopping short of a categorical rule

against applying Moench at the motion to dismiss stage, have correctly found

allegations similar to the ones made in this case to be sufficient to "clear the Rule

12(b)(6) hurdle."  LaLonde v. Textron, Inc., 369 F.3d 1, 6, 7 (1st Cir. 2004)

(plaintiffs alleged that "Textron artificially inflated its stock price by concealing"

numerous problems at the company that were also the subject of a shareholders'

derivative action against the company); Sprint, 388 F. Supp. 2d at 1223-24; In re

Honeywell Int'l ERISA Litig., No. 03-1214, 2004 WL 3245931, at *11 n.16

(D.N.J. June 14, 2004).  The Third Circuit's contrary decision in Edgar is

erroneous.  503 F.3d at 349.

III.    DISSEMINATING MISLEADING SEC FILINGS IN PLAN
        DOCUMENTS ARE FIDUCIARY ACTS SUBJECT TO ERISA'S
        FIDUCIARY STANDARDS

        A fiduciary has "'a duty to deal fairly and honestly with its beneficiaries.'"

See, e.g., Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 88 (2d Cir.

2001) (quoting Ballone v. Eastman Kodak Co., 109 F.3d 117, 123-24 (2d Cir.

1997)).  See also Varity Corp. v. Howe, 516 U.S. 489, 506 (1996).   Thus, as this

Court has recognized, an ERISA fiduciary "'is under a duty to communicate to the

beneficiary material facts affecting the interest of the beneficiary which he knows

the beneficiary does not know and which the beneficiary needs to know for his

protection.'"  Griggs, 237 F.3d at 381 (quoting Restatement (Second) of Trusts §

173, cmt. c-d).  Inaction or silence may breach this duty as much as affirmative

misstatements, and fiduciaries may not, therefore, "remain silent" knowing that the

participants "labor[] under a material misunderstanding . . . especially when that

misunderstanding was fostered by the fiduciary's own material representations or omissions."  Griggs, 237 F.3d at 381 (citation omitted).

In Griggs, this Court found a defendant-fiduciary liable for failing to correct the plaintiff's misunderstanding concerning the tax consequences of a benefits distribution after permitting him to take the distribution with that misunderstanding. Id. at 381-84.  The plaintiffs here allege not only that the defendant-fiduciaries failed to correct misunderstandings created by securities filings, but that they themselves fostered these misunderstandings by knowingly distributing plan documents with false information and permitting participants to continue to buy stock at prices artificially inflated by those known material misstatements.  2010 WL 2427413, at *13.  As in Griggs, if these allegations are borne out, the fiduciaries have breached their duties to the plan participants.

It is true enough, as the district court recognized, that a company and its officers do not become ERISA fiduciaries merely by filing SEC forms.  2010 WL 2427413, at *13.  However, when plan fiduciaries distribute SPDs to plan participants, as alleged here, Compl. ¶¶ 155-169, 271, they are acting in a fiduciary capacity, and breach their fiduciary duties to the extent that they know the documents incorporate false and misleading SEC filings.  See In re Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d 861, 888 (S.D. Tex. 2004).  Whatever the original source of the information, "lying is inconsistent with the duty of loyalty owed by

26

all fiduciaries and codified in section 404(a)(1) of ERISA." <u>Varity</u>, 516 U.S. at 506.

In insisting that the materials distributed to participants be accurate, the plaintiffs are not, as the district court reasoned, attempting to impose a fiduciary obligation to "'give investment advice'" or "'opine on' the stock's condition.'" 2010 WL 3081359, at *18 (citation omitted). In <u>Griggs</u>, the defendant protested that, in attempting to hold the defendants liable for the tax consequences that resulted from their earlier misrepresentations, the plaintiffs were asking the Court to impose a general obligation to provide tax advice to each participant. 237 F.3d at 383. This Court soundly rejected that argument. <u>Id.</u> Likewise, the plaintiffs here allege that the defendant-fiduciaries violated their fiduciary duties by failing to correct their misrepresentations made in plan documents given to plan participants.

Nor did it suffice that "[t]he Plan documents make clear that Plan participants are responsible for the selection of their investments and that the Wachovia Stock Fund was undiversified (and thus the riskiest of the available investment options)." Emphasizing this kind of generalized risk of diversification, while incorporating misleading SEC filings into ERISA disclosures, is not the same as disclosing known misconduct or overpricing. <u>Cf.</u> <u>DiFelice</u>, 497 F.3d at 422 (fiduciaries do not necessarily meet their duties by giving "true and accurate information regarding the risk/return characteristics of [] investment options").

The plaintiffs allege they were not informed about the company's own misconduct and the impact it would have on the company's stock when it became known.

Moreover, there were a number of corrective actions the fiduciaries could have taken that would be perfectly consistent with the securities laws.  For instance, nothing in the securities laws would have prohibited them from disclosing the information to other shareholders and the public at large, or from forcing the company to do so.  Second, it would have been consistent with the securities laws for the defendants to have eliminated employer stock as an option.  See Condus v. Howard Sav. Bank, 781 F. Supp. 1052, 1056 (D.N.J. 1992).  The defendants had no duty under securities laws to injure the plan by continuing to purchase artificially inflated stock. Yet another option would have been to alert the appropriate regulatory agencies, such as the SEC and the Department of Labor, to the misstatements.  See In re Enron Corp. Sec., Derivative & "ERISA" Litig., 284 F. Supp. 2d 511, 566 (S.D. Tex. 2003).

Finally, given ERISA's "higher-than-marketplace quality standards," Metro. Life Ins. Co., v. Glenn, 128 S. Ct. 2343, 2350 (2008), corporate disclosure obligations to marketplace investors under the securities law are distinct from the obligations of truthfulness and disclosure that ERISA imposes on plan fiduciaries when dealing with the participants and beneficiaries whom they are bound to protect.   Unlike securities fraud, ERISA misrepresentation claims do not require

plaintiffs to show any "intent to deceive."  Adams v. Brink's Co., 261 F. App'x 583, 595 (4th Cir. Jan 11, 2008) (recognizing that an intent to deceive is not required for fiduciary misrepresentation claims); accord Harzewski, 489 F.3d at 805 (noting that ERISA does not require proof of fraud).

Thus, the fact that the defendants may be governed by the securities laws does not mean that they are not also governed by ERISA.  The Supreme Court has consistently held that "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."  J.E.M. Ag. Supply, Inc. v. Pioneer High-Bred Int'l, 534 U.S. 124, 143-44 (2001) (quoting Morton v. Mancari, 417 U.S. 535, 551 (1974)) (internal quotations omitted).  Neither ERISA nor securities law provides that the rights and remedies available to ERISA participants are superseded or limited by possible securities law claims that they might be entitled to bring as investors.  See Rogers v. Baxter Int'l, Inc., 521 F.3d 702, 705 (7th Cir. 2008).  And while the same course of conduct might violate both securities laws and ERISA, any ERISA claims are based upon violations of obligations that ERISA separately imposes upon plan fiduciaries acting as such.

<u>CONCLUSION</u>

For these reasons, the district court's decision should be reversed.

Respectfully submitted,


M. PATRICIA SMITH
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

ELIZABETH HOPKINS
Counsel for Appellate
And Special Litigation

__/s/ Thomas Tso_____
THOMAS TSO
Attorney
U.S. Department of Labor
Plan Benefits Security Division
200 Constitution Ave., N.W.
Room N-4611
Washington, D.C. 20210

CERTIFICATE OF COMPLIANCE

1.This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [6,937] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ] this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [Microsoft Word 2007] in [14pt Times New Roman]; or

[ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Dated: November 24, 2010

___/s/ Thomas Tso_____
Thomas Tso
Attorney for Amicus Curiae

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 24, 2010, I caused true and correct copies of the Secretary of Labor's Amicus Curiae Brief in paper form and in the Adobe Acrobat PDF Format to be served via CM/ECF and UPS to the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit and the Amicus Curiae Brief to be served via US Mail and email to counsels at the addresses listed below:

Keller Rohrback LLP
Lynn Lincoln Sarco
Derek W. Loeser
Elizabeth A. Leland
Erin M. Riley
1201 Third Ave. Ste. 3200
Seattle, WA 98101-3052

Keller Rohrback LLP
David S. Preminger
770 Broadway, 2nd Fl.
New York, NY 10003

Keller Rohrback, PLC
Ron Kilgard
3101 N. Central Ave.
Suite 1400
Phoenix, AZ 85012

Myron D. Rumeld
Russell Laurence Hirschhorn
PROSKAUER ROSE, LLP
1585 Broadway
New York, NY 10036-8299

Howard Shapiro
Nicole A. Eichberger
PROSKAUER ROSE, LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130

/s/ Thomas Tso_____
Thomas Tso
Attorney

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS AND
VIRUS CHECK

I certify that the digital version and hard copies of the Secretary's

Brief are identical.  I further certify that a virus scan was performed on the

Brief using McAfee, and that no viruses were detected.


/s/ Thomas Tso_____
Thomas Tso
Trial Attorney