# EXHIBIT F

No. 10-11948-DD

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

KENT SEWRIGHT and DEADRE D. DIGGS,
on behalf of themselves and all others similarly situated,

Plaintiffs-Appellants,

v.

ING GROEP, N.V., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia
Case No. 1:09-CV-0400-JEC

Brief of the Secretary of Labor as amicus curiae in support of the
Plaintiffs-Appellants

M. PATRICIA SMITH
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

NATHANIEL I. SPILLER
Counsel for Appellate Litigation

THOMAS TSO
Attorney
U.S. Department of Labor
Office of the Solicitor
P.O. Box 1914
Washington, D.C. 20013
(202) 693-5632

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

THE SECRETARY'S INTEREST .............................................................1

STATEMENT OF THE ISSUES.................................................................1

    1.    Whether the district court erred in holding that the defendant
        plan fiduciaries had no duty to override plan terms mandating
        investment in stock issued by the employer, ING Groep and its
        subsidiaries ("ING"), where it would be imprudent to continue
        to permit investment in employer stock at allegedly inflated
        prices ..................................................................................................1

    2.    Whether the district court erred in its alternative holding that
        the defendants were entitled to a presumption of prudence in
        continuing to allow the plan to purchase employer stock at
        inflated prices, and that the plaintiffs failed to plausibly plead
        facts overcoming the presumption .......................................................2

    3.    Whether the district court erred in holding that the plaintiffs did
        not plausibly allege that the defendants breached their fiduciary
        duty to speak truthfully to plan participants by providing
        misleading information about the company's financial
        condition ..............................................................................................2

STATEMENT OF THE CASE...................................................................2

SUMMARY OF ARGUMENT .................................................................5

ARGUMENT ...........................................................................................7

    I.    Where It Was Imprudent To Continue To Offer Our Purchase
        Employer Stock, The Defendants Had A Duty To Override
        Plan Terms Requiring Them To Invest.................................................7

A.    Plans Cannot Mandate Conduct that Eliminates The Fiduciary Obligation to Act Prudently and Exclusively in the Partipants Interests ................................................................7

B.    ERISA's Fiduciary Standards Allow for Non-Diverse Investment in Employer Stock but not Permit Knowingly Overpaying for Such Sock ..........................................................11

C.    The District Court's Treatment of Plan Terms as Overriding ERISA's Fiduciary Standards Contradicts Circuit Precedent ..........................................................................14

II.    Where It Was Imprudent To Continue To Offer Or Purchase Employer Stock, The Defendants Had A Duty To Override Plan Terms Requiring Them To Invest ..........................................................17

A.    ERISA Does Not Include a Presumption of Prudence for Investments in Employer Stock ....................................................17

B.    Even Assuming a Presumption of Prudence, It Should Not Apply at the Pleadings Stage ........................................................22

III.    The Fiduciaries Had A Duty Not To Mislead Plan Participants And To Disclose Information If Necessary For The Protection Of Retirement Benefits................................23

A.    ERISA Imposes Upon Fiduciaries a Duty to Provide Truthful Information To Participants................................23

B.    Disseminating Misleading SEC Filings in Plan Documents Are Fiduciary Acts Subject to ERISA's Fiduciary Standards................................................................27

CONCLUSION………………......…………………………………………..30

CERTIFICATE OF SERVICE

CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS AND VIRUS CHECK

## TABLE OF AUTHORITIES

**Federal Cases:** ................................................................................................ **Page**

Alessi v. Raybestos-Manhattan, Inc.,
    451 U.S. 504 (1981) ............................................................................... 20 n.8

Board of Trustees of CWA/ITU Negotiated Pension Plan v. Weinstein,
    107 F.3d 139 (2d Cir. 1997)..............................................................27, 27 n.11

Braden v. Wal-Mart Stores, Inc.,
    588 F.3d 585 (8th Cir. 2009)............................................................................18

Brief of Defendants-Appellees, Lanfear v. Home Depot, Case No. 07-14362,
    2007 WL 4559545 (Dec. 5, 2007) .......................................................15, 16 n4

Bunch v. W.R. Grace & Co.,
    555 F.3d 1 (1st Cir. 2009) ..........................................................................17 n.6

Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,
    472 U.S. 559 (1985) .............................................................................................8

City of Milwaukee v. Illinois and Michigan,
    451 U.S. 304 (1981) ....................................................................................18, 19

Coleman v. Interco Inc. Divisions' Plans,
    933 F.2d 550 (7th Cir. 1991)..............................................................................8

Concha v. London,
    62 F.3d 1493 (9th Cir. 1995)............................................................................29

Cotton v. Mass. Mut. Life Ins. Co.,
    402 F.3d 1267 (11th Cir. 2005)........................................................................24

Deak v. Masters, Mates and Pilots Pension Plan,
    821 F.2d 572 (11th Cir. 1987)..........................................................................28

DiFelice v. U.S. Airways, Inc.,
    497 F.3d 410 (4th Cir. 2007)................................................................8, 11, 12

**Federal Cases—(continued):**

Donovan v. Cunningham,
  716 F.2d 1455 (5th Cir. 1983)............................................................................17

Eaves v. Penn,
  587 F.2d 453 (10th Cir. 1978)..........................................................................10

Edgar v. Avaya,
  503 F.3d 340 (3rd Cir. 2007) ............................................................................23

Ervast v. Flexible Prods. Co.,
  346 F.3d 1007 (11th Cir. 2003)...................................................................23, 24

Faircloth v. Lundy Packing Co.,
  91 F.3d 648 (4th Cir. 1996).........................................................................27 n.11

Fink v. Nat'l Sav. & Trust Co.,
  772 F.2d 951 (D.C. Cir. 1985) .....................................................................10, 11

Glaziers and Glassworkers Union Local 252 Annuity Fund v. Newbridge
  Sec., Inc.,
  93 F.3d 1171 (3d Cir. 1996)........................................................................26 n.10

Gochnauer v. A.G. Edwards & Sons, Inc.,
  810 F.2d 1042 (11th Cir. 1987)........................................................................29

Griggs v. E. I. Dupont de Nemours & Co.,
  237 F.3d 371 (4th Cir. 2001)............................................................................24

Hamilton v. Allen-Bradley Co., Inc.,
  244 F.3d 819 (11th Cir. 2001)..........................................................................25

Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.,
  530 U.S. 238 (2000) ...................................................................................8 n.1

**Federal Cases—(continued):**

Harzewski v. Guidant Corp.,
    489 F.3d 799 (7th Cir. 2007)....................................................................10, 28

Hearn v. McKay,
    603 F.3d 897 (11th Cir. 2010)..........................................................................20

Herman v. Mercantile Bank, N.A.,
    143 F.3d 419 (8th Cir. 1998)............................................................................10

Herman v. NationsBank Trust Co.,
    126 F.3d 1354 (11th Cir. 1997)........................................................... 6 & passim

Holloman v. Mail-Well Corp.,
    443 F.3d 832 (11th Cir. 2006)..........................................................................20

Horton v. Reliance Standard Life Ins. Co.,
    141 F.3d 1038 (11th Cir. 1998).........................................................................21

Imel v. Laborers Pension Trust Fund for N. Cal.,
    904 F.2d 1327 (9th Cir. 1990)............................................................................8

In re Dynegy, Inc. ERISA Litig.,
    309 F. Supp. 2d 861 (S.D. Tex. 2004) ............................................................28

In re Enron Corp. Securities, Derivative & ERISA Litig.,
    284 F.Supp.2d 511 (S.D. Tex. 2003) ..............................................................28

In re Ford Motor Company ERISA Litig.,
    590 F.Supp.2d 883 (E.D. Mich. 2008).............................................................22

In re Schering-Plough Corp. ERISA Litig.,
    420 F.3d 231 (3d Cir. 2005)............................................................................12

In re Syncor ERISA Litig.,
    516 F.3d 1095 (9th Cir. 2008)...........................................................10, 11, 12

In re Xcel Energy Inc., Securities, Derivative & ERISA Litig.,
    312 F. Supp 2d 1165 (D. Minn. 2004)......................................................20, 23

**Federal Cases:** ................................................................................................... **Page**

ITPE Pension Fund v. Hall,
    334 F.3d 1011 (11th Cir. 2003)................................................................10, 20

John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank,
    510 U.S. 86 (1993) .........................................................................................11

Jones v. Am. Gen. Life and Acc. Ins. Co.,
    370 F.3d 1065 (11th Cir. 2004)......................................................24, 25, 26, 28

Kirschbaum v. Reliant Energy, Inc.,
    526 F.3d 243 (5th Cir. 2008)....................................................................17 n.6

Konst v. Florida East Coast Ry. Co.,
    71 F.3d 850 (11th Cir. 1996)..........................................................................22

Kuper v. Iovenko,
    66 F.3d 1447 (6th Cir. 1995)............................................................10, 17 n.6

Laborer's Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.,
    173 F.3d 313 (5th Cir. 1999)............................................................................8

Lanfear v. Home Depot,
    536 F.3d 1217 (11th Cir. 2008)...............................................15, 16, 16 n.4, 24

Ledbetter v. First State Bank & Trust Co.,
    85 F.3d 1537 (11th Cir. 1996).........................................................................13

Levy v. Local Union Number 810,
    20 F.3d 516 (2d Cir. 1994)................................................................................9

Martin v. Feilen,
    965 F.2d 660 (8th Cir. 1992)....................................................................12, 21

Massachusetts Mut. Life Ins. Co. v. Russell,
    473 U.S. 134 (1985) .......................................................................................10

Mertens v. Hewitt Associates,
    508 U.S. 248 (1993) .......................................................................................19

**Federal Cases—(continued):**

Metro. Life Ins. Co., v. Glenn,
  128 S.Ct. 2343 (2008) ......................................................................28

Moench v. Robertson,
  62 F.3d 553 (3d Cir. 1995)................................................. 1 & passim

Nachwalter v. Christie,
  805 F.2d 956 (11th Cir. 1986)..........................................................19

Pedraza v. Coca-Cola Co.,
  456 F. Supp. 2d 1262 (N.D. Ga. 2006) .....................................16 n.5

Quan v. Computer Sciences Corp.,
  --- F.3d ---, 2010 WL 3784702 (9th Cir. 2010) ........................17 n.6

Rogers v. Baxter Int'l, Inc.,
  521 F.3d 702 (7th Cir. 2008)............................................................29

Secretary of Labor v. Fitzsimmons,
  805 F.2d 682 (7th Cir. 1986) (en banc)............................................1

Snap-Drape, Inc. v. C.I.R.,
  98 F.3d 194 (5th Cir. 1996).......................................................19 n.7

Sprague v. Gen. Motors Corp.,
  133 F.3d 388 (6th Cir. 1998)...............................................26, 27 n.11

Steinman v. Hicks,
  352 F.3d 1101 (7th Cir. 2003)..............................................12, 17 n.6

Swierkiewicz v. Sorema N.A.,
  534 U.S. 506 (2002) .......................................................................23

U.S. Liab. Ins. Co. v. Selman,
  70 F.3d 684 (1st Cir. 1995) .......................................................14 n.3

**Federal Cases—(continued):**

Varity Corp. v. Howe,
516 U.S. 489 (1996) ........................................................... 1 & passim

**State Cases:**

First Alabama Bank, N.A. v Spragins,
475 So.2d 512 (Ala. 1985) ..............................................................12

Matter of Estate of Janes,
90 N.Y.2d 41 (N.Y. 1997)................................................................12

**Federal Statutes:**

15 U.S.C. 78u-4(e)(1) ................................................................29

Employee Retirement Income Security Act of 1974 (Title I),
as amended, 29 U.S.C. 1001 et seq:.

Section 2(b), 29 U.S.C. 1001(b).......................................................19

Section 3(34), 29 U.S.C. 1002(34)...................................................21

Section 101, 29 U.S.C. 1021 ...........................................................25

Section 102, 29 U.S.C. 1022 ...........................................................25

Section 103, 29 U.S.C. 1023 ...........................................................25

Section 104, 29 U.S.C. 1024 ...........................................................25

Section 402(a)(1), 29 U.S.C. 1102(a)(1).......................................5, 9

Section 403(a), 29 U.S.C. 1103(a) ......................................5, 9, 9 n.2

Section 403(b), 29 U.S.C. 1103(b)...............................................9 n.2

Section 404(a)(1), 29 U.S.C. 1104(a)(1).........................................28

Section 404(a)(1)(A), 29 U.S.C. 1104(a)(1)(A)...........................5, 7

**Federal Statutes—(continued):**.................................................................**Page**

Section 404(a)(1)(B), 29 U.S.C. 1104(a)(1)(B) ....................5, 7, 16 n.5, 17, 18

Section 404(a)(1)(C), 29 U.S.C. 1104(a)(1)(C) ...................................11, 12, 17

Section 404(a)(1)(D), 29 U.S.C. 1104(a)(1)(D)............................5, 7, 14, 15

Section 404(a)(2), 29 U.S.C. 1104(a)(2)........................................................11

Section 406(a)(1)(E), 29 U.S.C. 1106(a)(1)(E) .........................................21 n.9

Section 406(a)(2), 29 U.S.C. 1106(a)(2)...................................................21 n.9

Section 407(a)(1), 29 U.S.C. 1107(a)(1)...................................................21 n.9

Section 407(d)(6), 29 U.S.C. 1107(d)(6) .........................................................14

Section 409, 29 U.S.C. 1109 ...........................................................................29

Section 410, 29 U.S.C. 1110 .......................................................................9, 18

Section 412(a), 29 U.S.C. 1112(a) ..................................................................21

Section 502(a)(2), 29 U.S.C. 1132(a)(2)........................................................29

**Federal Regulations:**

29 C.F.R. 2509.75-8 (FR 12-15).......................................................................9

**Miscellaneous:**

H.R. Rep. No. 93-533
        as reprinted in  1974 U.S.C.C.A.N. 4838 (1973)................................19, 20, 21

S. Rep. No. 93-127,
        as reprinted in 1974 U.S.C.C.A.N. 4838 (1973)....................................8 n.1, 18

**Miscellaneous—(continued):**

Fed. R. Civ. P.
    8(a)..................................................................................................23
    9(b) .................................................................................................29
    12(b)(6)........................................................................................4, 23

Fiduciary Requirements for Disclosure in Participant-Directed Individual
    Account Plans, 75 Fed. Reg. 64909 (Oct. 20, 2010) .......................................26

U.S. Dep't of Labor Opinion Letter No. 90-05A,
    1990 WL 172964, at *3 (Mar. 29, 1990) ....................................................9, 10

U.S. Dep't of Labor, In the Context of Publicly Traded Securities, What Are the
    Fiduciary Responsibilities of a Directed Trustee, Field Assistance Bulletin
    2004-03 (Dec.17, 2004), available at
    http://www.dol.gov/ebsa/regs;fab_2004-3.html.               13

Restatement (Second) of Trusts § 173 cmt.c-d.(1959) ...........................................24

Restatement (Second) of Trusts § 205 cmt.e. (1959) ...........................................12

Restatement (Third) of Trusts § 91 cmt.a.(2007) ...............................................8 n.1

## THE SECRETARY'S INTEREST

As the head of the federal agency with primary responsibility for enforcing ERISA, the Secretary of Labor has a strong interest in ensuring ERISA's correct interpretation.  See Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 692-693 (7th Cir. 1986) (en banc).  The district court's decision,  In re ING Groep, N.V. ERISA Litigation, No. 09-cv-00400, slip op. (N.D. Ga. Mar. 31, 2010) ("Op."), misinterprets ERISA in three respects.  First, it immunizes plan fiduciaries from liability for investments in employer stock even if such investment is imprudent, so long as the plan documents direct investment in employer stock.  Second, the decision alternatively relies on a presumption of prudence, established in Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995), which has no basis in ERISA's language or purposes and which presents a novel question in this Court.  Third, the decision permits fiduciaries to evade the trust-law duty, recognized in Varity Corp. v. Howe, 516 U.S. 489 (1996), to communicate truthful material information to plan participants and beneficiaries.  The Secretary has a compelling interest to see that these substantial errors are corrected.

## STATEMENT OF ISSUES

1.  Whether the district court erred in holding that the defendant plan fiduciaries had no duty to override plan terms mandating investment in stock issued by the employer, ING Groep and its subsidiaries ("ING"), where it would be

imprudent to continue to permit investment in employer stock at allegedly inflated prices.

2.   Whether the court erred in its alternative holding that the defendants were entitled to a presumption of prudence in continuing to allow the plan to purchase employer stock at inflated prices, and that the plaintiffs failed to plausibly plead facts overcoming the presumption.

3.   Whether the court erred in holding that the plaintiffs did not plausibly allege that the defendants breached their fiduciary duty to speak truthfully to plan participants by providing misleading information about the company's financial condition.

<u>STATEMENT OF THE CASE</u>

1.   Plaintiffs are participants in the ING Savings Plan, or "Americas" Plan. Op. at 2; Consolidated Class Action Complaint, at 5-6 ("Compl.").  The Americas Plan is an eligible individual account plan ("EIAP"), a form of defined contribution plan that allows participants to manage investments in their own accounts.  The Plan includes an employer stock option.  Compl. at 21, 62.  Plan documents state that an employer stock fund "shall always be an investment option under the Plan, and the Committees shall have no discretion with respect to investments in or disposition of [ING] stock."  Op. at 3-4.

The defendants are various individuals and entities associated with the Americas Plan, including the individuals charged with the selection of the Plan's investment options. ING, a Dutch corporation and the plan sponsor, is a global financial institution with approximately 3.1 billion euros worth of investments backed by sub-prime mortgage assets. Compl. at 6, 38. The plaintiffs allege that the defendants knew of the heavy losses that the company would inevitably sustain from subprime loans, but misled participants about ING's loss exposure by incorporating into plan documents Securities and Exchange Commission ("SEC") filings that misrepresented the extent of the company's exposure to the subprime mortgage market and its ability to weather the subprime mortgage crisis. Id. at 35-53. This failure to speak truthfully allegedly inflated the stock price. Id. at 51.

ING acknowledged in a February 2009 press release that it needed to "further reduce asset exposures" and "reallocat[e] investments towards less risky assets." Compl. at 49. ING also acknowledged that it had "a sharp deterioration in financial results and the necessity to reinforce our capital base with the support of the Dutch State." Id. at 48. The Dutch State's support specifically targeted ING's mortgage-backed securities. Id. at 49. Subsequently, the stock dropped 73% between April 28, 2008 and March, 5, 2009. Id. at 50. The Plan suffered significant losses as a result. Id. at 63.

Plaintiffs claim that ERISA required the defendants to withdraw ING stock as an investment option for participants during this period or disclose the true state of ING's risk exposure and financial health.  Compl. at 53.  Plaintiffs also claim that defendants should have informed participants of ING's financial condition and taken other steps, such as monitoring the plan fiduciaries and disclosing necessary information to them.  Id. at 71-75.

2.  The district court dismissed all claims pursuant to Fed.R.Civ.P. 12(b)(6).  Op. at 26-27.  The court found that the Plan mandated inclusion of a company stock option and, therefore, the defendants lacked discretion to eliminate it.  Id. at 3-4.  Accordingly, the court held that the defendants were not fiduciaries with respect to the selection and retention of employer stock.  Id. at 16-17.  The court also characterized the complaint as alleging a violation of ERISA's duty to diversify, a duty from which EIAPs investing in employer stock are exempt.  Id. at 17-18.

Alternatively, the court recognized that this Court has not adopted what it termed the rebuttable "presumption of prudence/abuse of discretion standard," but concluded that "at the very least, defendants are entitled to a presumption that they acted prudently in complying with the terms of the Americas Plan and offering ING stock as an investment option."  Op. at 14-16.   The court concluded that the plaintiffs had not rebutted the presumption.  Id.

The court additionally held that the complaint failed to state a claim for failure to provide accurate information to participants.  Op. at 18-22.  The court concluded that the alleged misrepresentations were directed to the "market as a whole and not at ERISA plan participants," and thus non-actionable under ERISA. Id. at 18 n.6.  The court also found representations in SEC filings to be non-actionable because "preparation of SEC filings is not ... a discretionary act," but rather a corporate act legally mandated under securities laws.  Id. at 19 & n.7. Finally, the court concluded that "ERISA does not impose an obligation to disclose broad categories of non-public financial information regarding publicly traded securities."  Id.

## SUMMARY OF THE ARGUMENT

The district court erred in concluding that the fiduciaries had no duty to stop purchasing imprudent investments in company stock because the plan terms mandate continued investment.  To the contrary, ERISA requires that all plan assets, including employer stock owned by EIAPs, be under the control of fiduciaries bound by the duties of prudence and loyalty, 29 U.S.C. 1102(a)(1), 1103(a), 1104(a)(1)(A),(B).  Fiduciaries cannot opt out of these statutory duties by inserting contract-based exemptions into plan documents.

ERISA also expressly provides that fiduciaries must override plan terms if they conflict with ERISA, id. § 1104(a)(1)(D).  This Court previously recognized

the duty to override plan terms that contravene ERISA fiduciary duties in Herman v. NationsBank Trust Co., 126 F.3d 1354 (11th Cir. 1997).   Accordingly, fiduciaries must make prudent investment decisions regarding employer stock even if plan documents require such investment.

The district court also erred in alternatively holding that ERISA supports a presumption of prudence with respect to the Plan's purchase of employer stock.  A presumption of prudence finds no basis in ERISA's text and contravenes ERISA's purposes.  Certainly, no presumption should apply to the purchase of stock that the fiduciaries allegedly knew was inflated.  Known overpayments are categorically imprudent under ERISA and trust law, and violate fiduciary duties that apply to all plans and investment options.  In any event, the application of a presumption at the pleadings stage, foreclosing development of rebuttal evidence, was improper.

Finally, the court erred in dismissing the misrepresentation claim.  The obligation to truthfully communicate to participants material information for the protection of their plan investments does not permit fiduciaries to hide behind their corporate roles to evade this duty and mislead participants.  This obligation includes a duty to correct misrepresentations made in SEC filings subsequently incorporated into disseminated plan documents.

<u>ARGUMENT</u>

I. WHERE IT WAS IMPRUDENT TO CONTINUE TO OFFER OR PURCHASE EMPLOYER STOCK, THE DEFENDANTS MUST OVERRIDE PLAN TERMS REQUIRING THEM TO INVEST IN SUCH STOCK

   A. <u>Plans Cannot Mandate Conduct that Eliminates The Fiduciary Obligation to Act Prudently and Exclusively in the Participants' Interests</u>

The district court erred in holding that the "defendants cannot be liable for breach of fiduciary duty on their decision to offer ING stock" "[a]s the ING option was mandated by the Plan." Op. at 16. If affirmed, this holding eliminates fiduciary responsibility for all decisions to invest in company stock whenever plan documents require the stock investment, thereby immunizing fiduciaries from responsibility for even the most imprudent and disloyal investments in such stock.

This holding flatly contradicts ERISA section 404(a)(1)(D). Under that provision's plain terms, fiduciaries are permitted to follow plan terms only "insofar as such documents and instruments are consistent with the provisions" of Title I of ERISA. 29 U.S.C. 1104(a)(1)(D). Other subsections of 404, itself a part of Title I, impose upon fiduciaries the trust-law duties of loyalty and care. Thus, section 404 requires plan fiduciaries to act exclusively in the interests of the participants and beneficiaries and exercise the level of "care, skill, prudence, and diligence … that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. 1104(a)(1)(A)-(B). Together these provisions provide that ERISA's

prudence and loyalty provisions cannot be contractually overridden, and require that only those plan terms that are otherwise consistent with ERISA be given effect.  See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 568 (1985); NationsBank, 126 F.3d at 1368-69 & n.15; accord DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 420 (4th Cir. 2007); Laborer's Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc., 173 F.3d 313, 322 (5th Cir. 1999); Coleman v. Interco Inc. Divisions' Plans, 933 F.2d 550, 551 (7th Cir. 1991) ("ERISA trumps" divergent plan language); cf. Imel v. Laborers Pension Trust Fund for N. Cal., 904 F.2d 1327, 1330 (9th Cir. 1990) ("[p]rivate parties may not agree to alter statutory duties").[1]

Other statutory provisions and ERISA's overall structure comport with this straightforward reading of section 404 requirements.  ERISA requires that plan assets be managed at all times by fiduciaries, a mandate fundamentally inconsistent with the district court's conclusion that no fiduciary was responsible for assessing the prudence of the employer stock investment because Plan terms required such

---

[1]  Under trust law, trust terms can generally override statutory fiduciary obligations.  See Restatement (Third) of Trusts § 91 cmt. a. (2007).  ERISA departs from the trust law on these matters.  See Harris Trust & Sav. Bank v. Salomon Smith Barney Inc., 530 U.S. 238, 250 (2000) (trust law is irrelevant if "'it is inconsistent with the language of the statute, its structure, or its purposes'") (citation omitted); S. Rep. No. 93-127, 93rd Cong., 2d Sess. 1974, 1974 U.S.C.C.A.N. 4838, 4864-865 (1973) (ERISA's fiduciary duty provisions, unlike state trust law, bar "deviations" based on settlor's intent).

investments.  See generally 29 C.F.R. 2509.75–8 (FR 12-15).   Section 402(a)(1)

provides that plans must be maintained pursuant to plan documents that provide for

"one or more fiduciaries who jointly or severally shall have authority to control and

manage the operation and administration of the plan."  29 U.S.C. 1102(a)(1).

Similarly, Section 403(a) mandates that "all assets of an employee benefit plan

shall be held in trust by one or more trustees" who "have exclusive authority and

discretion to manage and control the assets of the plan."  29 U.S.C. 1103(a)

(emphasis added).[2]  Moreover, section 410, 29 U.S.C. 1110, "void[s] as against

public policy" "any provision in an agreement or instrument which purports to

relieve a fiduciary from responsibility or liability for any responsibility, obligation,

or duty under this part."  Under these provisions, plan documents can allocate, but

not eliminate, fiduciary duties with respect to ERISA plans and the management of

their assets.  See Levy v. Local Union Number 810, 20 F.3d 516, 519 (2d Cir.

1994).

     The Department's longstanding position is that these fiduciary standards

apply equally to plan investments in employer stock funds.  See U.S. Dep't of

---

[2] ERISA excepts some assets from the trust requirement, but no such exception
applies to employer stock.  29 U.S.C. 1103(b).  29 U.S.C. 1103(a) also provides
that trustees may be subject to the directions of named fiduciaries and that
investment authority may be delegated to investment managers.  They too are plan
fiduciaries.  In this manner, a plan's stock holdings are always subject to fiduciary
authority and control.

Labor Opinion Letter No. 90-05A, 1990 WL 172964, at *3 (Mar. 29, 1990).

Likewise, every circuit court to consider the issue recognizes that fiduciaries of

plans that own employer stock are under a continuing obligation to consider

whether such investment is prudent, notwithstanding plan terms requiring

investment in employer stock.  See, e.g., Kuper v. Iovenko, 66 F.3d 1447, 1458-59

(6th Cir. 1995); Harzewski v. Guidant Corp., 489 F.3d 799, 808-09 (7th Cir. 2007);

Herman v. Mercantile Bank, N.A., 143 F.3d 419, 421 (8th Cir. 1998); In re Syncor

ERISA Litig., 516 F.3d 1095, 1102-1103 (9th Cir. 2008); Fink v. Nat'l Sav. &

Trust Co., 772 F.2d 951, 954-56 (D.C. Cir. 1985); Eaves v. Penn, 587 F.2d 453,

459 (10th Cir. 1978).

　　　ERISA's obligations of prudence and loyalty are "the highest known to the

law."  ITPE Pension Fund v. Hall, 334 F.3d 1011, 1013 (11th Cir. 2003) (citation

omitted).  Plan drafters may not opt out of ERISA's fiduciary structure, and deprive

participants of critical statutory protections, by the simple expedient of mandating

investment in a particular asset.  Cf.  Mass. Mut. Life Ins. Co. v. Russell, 473 U.S.

134, 140 n.8 (1985) (recognizing that fiduciary oversight is the "crucible" of

ERISA's protections).  ERISA thus bars any conclusion that a plan sponsor can

place the employer stock option on "automatic pilot," so that no fiduciary is

responsible for assessing the prudence of continued investment in employer stock

regardless of changed circumstances affecting its continued suitability.  Syncor,

516 F.3d at 1102-1103.  Rather, the plain statutory text, the prevailing case-law and the Department's interpretations all support one conclusion: the district court erroneously concluded that the defendants were not fiduciaries and "can not be liable" because the Plan's terms required employer stock investments.

> ### B.  ERISA's Fiduciary Standards Allow for Non-Diverse Investment in Employer Stock but do not Permit Knowingly Overpaying for Such Stock

Section 404(a)(2) exempts EIAPs from "the diversification requirement of [section 404(a)(1)(C)] and the prudence requirement (only to the extent that it requires diversification)."  29 U.S.C. 1104(a)(2) (emphasis added).  This provision's clear meaning is that the prudence (and loyalty) requirement otherwise applies to the fiduciaries' actions with regard to employer stock. See, e.g., DiFelice, 497 F.3d at 422-4; Fink, 772 F.2d at 955-956. The district court therefore erred in construing this expressly limited exception as generally exempting EIAPs that hold employer stock from ERISA's fiduciary obligations of prudence and loyalty, not just the duty to diversify.  Cf. John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86, 97 (1993) (courts "'usually read [statutory] exception[s] narrowly in order to preserve the primary operation'" of the general rule) (citation omitted).

When fiduciaries fail to diversify, they generally expose plans to the undue risk commonly posed by fluctuations in a single asset's market value as a result of

investment concentration.  <u>See</u> 29 U.S.C. 1104(a)(1)(C); <u>Steinman v. Hicks</u>, 352 F.3d 1101, 1104-1105 (7th Cir. 2003).  Trust law differentiates between general prudence obligations and the more specific diversification obligation, which only protects against risks associated with investment concentration.  <u>Matter of Estate of Janes</u>, 90 N.Y.2d 41, 50-52 (N.Y. 1997) (differentiating between the "hazard" of concentration that diversification protects and other risks of loss that prudence safeguards); <u>First Alabama Bank v Spragins</u>, 475 So.2d 512, 515-16 (Ala. 1985) (recognizing the continued obligation to prudently manage investments when trust documents exempt fiduciaries from a duty to diversify).  Courts recognize this distinction for fiduciaries of EIAPs with employer stock.  <u>DiFelice</u>, 497 F.3d at 423-24.

A fiduciary who knowingly overpays for an asset for the plan is personally liable for breaching his duties of prudence and loyalty.  <u>Martin v. Feilen</u>, 965 F.2d 660, 671 (8th Cir. 1992); Restatement (Third) of Trusts § 205 cmt. e. (noting that if a "trustee is authorized to purchase property for the trust, but in breach of trust he pays more than he should pay, he is chargeable with the amount he paid in excess of its value") and illus. 9; <u>see also</u> <u>In re Schering-Plough Corp. ERISA Litig.</u>, 420 F.3d 231, 233, 237-38 (3d Cir. 2005); <u>Syncor</u>, 516 F.3d at 1102.  Such overpayment is a breach wholly apart from the concentration risk mitigated by diversification.  In <u>Feilen</u>, 965 F.2d at 671, the Eighth Circuit correctly held that

ERISA fiduciaries violated ERISA both when they caused the plan to overpay for employer stock and when they allowed the plan to pay another corporation's obligations without consideration.  Cf. U.S. Dep't of Labor, In the Context of Publicly Traded Securities, What Are the Fiduciary Responsibilities of a Directed Trustee, Field Assistance Bulletin 2004-03 (Dec. 17, 2004), available at http://www.dol.gov/ebsa/regs/fab_2004-3.html. (directed trustee cannot "simply follow a direction to purchase [employer] stock at an artificially inflated price"). Moreover, fiduciaries' continued purchase of employer stock at an inflated price disserves plan interests and, instead, serves the company's interest by propping up the stock price through purchases for more than the stock's actual worth to the plan. See Ledbetter v. First State Bank & Trust Co., 85 F.3d 1537, 1545 (11th Cir. 1996) (trustee may be disloyal by diluting the value of a beneficiary's shares in trustee's affiliated company).

Consequently, if the defendants knew or should have known that the ING stock was inflated, it was imprudent for the fiduciaries to knowingly buy even a single share at the inflated price.  Therefore, diversification is not at issue here; and the limited pass from spreading risk through diversifying a plan's holdings that applies to an EIAP's employer stock holdings is inapplicable.[3]  The district court's

---

[3]  The difference between the diversification risk and the overpayment risk may be analogized to the difference between having the proverbial "too many eggs in one basket" and having a "bad egg."  In the former situation, dropping the basket can

failure to distinguish between the diversification risk and the overpayment risk thus misreads the statute.  So long as the plaintiffs plausibly alleged that the fiduciaries' continued investment in ING stock was imprudent because the fiduciaries knew the market price was inflated, dismissal of their fiduciary breach claim was erroneous.

### C.   The District Court's Treatment of Plan Terms as Overriding ERISA's Fiduciary Standards Contradicts Circuit Precedent

The district court similarly disregarded the plain meaning of section 404(a)(1)(D) and  this Court's holding in NationsBank that ERISA's fiduciary obligations override requirements in the plan documents, such as a directive to invest in employer stock, when such requirements as applied violate ERISA's fiduciary obligations.  Op. at 16-17.  Section 404(a)(1)(D), 29 U.S.C. 1104(a)(1)(D), requires fiduciaries to follow plan terms insofar as they "are consistent with the [ERISA] provisions."

NationsBank concerned an employer stock ownership plan ("ESOP"), which is an EIAP that invests "primarily" in "qualifying employer securities."  29 U.S.C. 1107(d)(6).  The ESOP's plan documents included a "mirror voting provision" that

be catastrophic regardless of each individual egg's quality; the risk lies in having them all in one place.  In the latter situation, it is unwise to buy even a single egg even if they are kept in different baskets.  With respect to employer stock, ERISA protects EIAP participants from the second but not the first kind of risk.  Cf. U.S. Liab. Ins. Co. v. Selman, 70 F.3d 684, 690 (1st Cir. 1995) (recognizing that, under insurance law's "known loss" doctrine, insurance ceases to serve its purpose for risk-spreading via diversification if the insured "knows in advance" "that a specific loss has already happened or is substantially certain to happen").

"instructed [NationsBank] to tender unallocated shares held by the plan in the same proportion as it tenders allocated shares."  126 F.3d at 1357.  This Court determined that "ERISA dictates that a mirror voting provision that leads to an imprudent result is invalid as applied. Therefore, the trustee must disregard the provision, just like it would have to disregard any other plan provision controlling the disposition of plan assets which leads to an imprudent result."  Id. at 1369 & n.15 (emphasis added) (citing 29 U.S.C. 1104(a)(1)(D)).  The Court held that the plan's instructions must yield to the fiduciary's plain statutory duty to independently "determine whether the plan provisions ... [are] contrary to ERISA" either facially or "as applied," 126 F.3d at 1367-69, and that the fiduciary "was required to override the plan's ... provision if necessary to achieve a prudent result," id. at 1371.  The as applied prudence claim in NationsBank is analogous to the plaintiffs' as applied prudence claim here, alleging that the defendant-fiduciaries, rather than blindly following the Plan's terms, should have independently ascertained the prudence of investing in ING stock when the fiduciaries knew the market price was artificially inflated.  Compl. at 51-52.

In Lanfear v. Home Depot, this Court similarly permitted plaintiffs to proceed with their fiduciary breach claims despite plan documents requiring an employer stock fund.  See Brief of Defendants-Appellees, Lanfear v. Home Depot, Case No. 07-14362, 2007 WL 4559545, at *4 (Dec. 5, 2007).  The Lanfear

plaintiffs alleged that the fiduciary "violated its fiduciary duty by allowing the plan to invest in [employer] stock even though corporate officials were [engaging in misrepresentation], which artificially inflated the value of [the employer] stock." Lanfear v. Home Depot, 536 F.3d 1217, 1220 (11th Cir. 2008). [4]   For subject-matter jurisdiction and exhaustion purposes, this Court considered the claims as "plausible" breaches of fiduciary duty and as claims "governed by ERISA," notwithstanding plan documents directing investment in the employer stock.  Id. at 1221-24.

The district court's refusal in this case to recognize the plaintiffs' claims as ERISA-governed fiduciary breach claims cannot be squared with the controlling case-law.  Despite the plan terms, the fiduciaries had a duty to stop offering the employer stock fund if they had actual or constructive knowledge that the stock was overpriced, making it an imprudent investment. [5]

---

[4]  Lanfear is pending in this Court (No. 10-13002), after the district court, on remand, dismissed the claims on similar grounds as presented in this case.

[5]  The district court mistakenly relies on Pedraza v. Coca-Cola Co., 456 F. Supp. 2d 1262 (N.D. Ga. 2006). Using a policy-based rationale, Pedraza stated that prudence obligations leave fiduciaries "with no meaningful guidance as to when they should, or should not, ignore an ERISA plan's requirement to offer company stock." Id. at 1276.  Such prudence obligations are no different from the obligations recognized in NationsBank that guide fiduciaries when choosing among bids for the plan's employer stock.  Moreover, here, the fiduciaries' prudence obligation is plain; they should not buy stock at inflated prices. The question in all prudence cases is whether the fiduciary acted according to the trust law's long-standing prudence standard, embodied in 29 U.S.C. 1104(a)(1)(B), a

II.     THE DISTRICT COURT ERRED IN RECOGNIZING A
        PRESUMPTION THAT THE FIDUCIARIES ACTED
        PRUDENTLY IN ALLOWING THE PLAN TO PURCHASE
        EMPLOYER STOCK DESPITE INFLATED PRICES

A.     ERISA Does Not Include a Presumption of Prudence for Employer
       Stock Investments

The "Moench presumption" presumes the prudence of employer stock

investment and then requires plaintiffs to overcome the presumption by showing

that the investment was, under the circumstances, an abuse of discretion.  Moench,

62 F.3d at 571, and its progeny.[6]  The presumption, however, contradicts a

straightforward reading of ERISA.  Other than the requirement to "diversify[] the

investments of the plan so as to minimize the risk of large losses," 29 U.S.C.

1104(a)(1)(C), ERISA's fiduciary standards of prudence and loyalty, as previously

discussed, are unaltered for plans with employer stock options.  NationsBank, 126

F.3d at 1361; accord Donovan v. Cunningham, 716 F.2d 1455, 1467 (5th Cir.

1983).  In specifically adopting the "prudent man" standard, defined as the duty to

question that fiduciaries and courts are accustomed to answering in numerous
contexts.

[6]  The Fifth, Sixth, and Ninth Circuits adopted different versions of the Moench
presumption.  See, e.g., Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 254
(5th Cir. 2008); Kuper, 66 F.3d at 1457; Quan v. Computer Sciences Corp., ---
F.3d ----, 2010 WL 3784702, at *8 (9th Cir. Sept. 30, 2010) (adopting an
"impending collapse" version), pet. for rehearing pending.  The Seventh Circuit has
not explicitly adopted it but agreed with some of its reasoning.  See, e.g.,
Steinman, 352 F.3d at 1103; see also Bunch v. W.R. Grace & Co., 555 F.3d 1, 10
(1st Cir. 2009) (declining to apply presumption to fiduciary's decision against
company stock investment).

act "with the care, skill, prudence, and diligence under the circumstances then prevailing" that a fiduciary in like circumstances "would use in the conduct of an enterprise of like character and with like aims," 29 U.S.C. 1104(a)(1)(B), ERISA stated the applicable standard.  There is accordingly no basis for the judicial creation of a new "abuse of discretion" framework that precludes the straightforward application of the prudence standard set forth explicitly in ERISA's text.

Here, the district court described the presumption as founded upon the premise that the fiduciaries' continued investment in employer stock was presumably consistent with the settlor's "expectations of how a prudent trustee would operate."  Op. at 15.  ERISA, however, does not contemplate any consideration of a settlor's subjective expectations when applying the prudence standard.  See 29 U.S.C. 1104(a)(1)(B) (adopting an objective standard of the "prudent man acting in a like capacity and familiar with such matters"); Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 595 (8th Cir. 2009) (describing ERISA's prudence standard as "an objective standard"); 29 U.S.C. 1110; S. Rep. No. 93-127, supra, n.1 (ERISA's fiduciary duties bar "deviations" based on settlor's intent).

Accordingly, the statute leaves no room for the establishment, as federal common law, of a special presumption of prudence for fiduciaries of EIAPs that own employer stock.  See City of Milwaukee v. Illinois and Michigan, 451 U.S.

18

304, 314 (1981) (courts may resort to federal common law only when they are "compelled to consider federal questions which cannot be answered from federal statutes alone"); Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir. 1986) ("we cannot create federal common law . . . because ERISA specifically addresses the issue before this court"); H.R. Rep. No. 93-533 (1973) reprinted in 1974 U.S.C.C.A.N. 4639, 4655 (ERISA aims to eliminate "jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary duties"); 29 U.S.C. 1001(b).  "The authority of courts to develop a 'federal common law' under ERISA ... is not the authority to revise the text of the statute," Mertens v. Hewitt Associates, 508 U.S. 248, 259 (1993), nor is it the authority to substitute a court's policy preferences for the statute's plain policy goals.

Thus, even if this Court considers encouraging employers to offer employer stock options as one of ERISA's goals, the Moench presumption is an unsuitable means to achieve it.[7]  Not only does the presumption excuse fiduciaries from statutory fiduciary duties unrelated to the limited diversification exemption but it contravenes ERISA's legislative purpose of protecting retirement savings through

---

[7]  The Secretary does not quarrel with the view that Congress encouraged plans to facilitate investment in employer stock, other things being equal.  Congress, however, explicitly used other means such as favorable tax treatment to encourage plans' ownership of employer stock that are not detrimental to participant interests. See e.g., Snap-Drape, Inc. v. C.I.R., 98 F.3d 194, 201-02 (5th Cir. 1996).

the imposition of stringent fiduciary obligations. "The [fiduciary] bears an

unwavering duty of complete loyalty to the beneficiary of the trust, to the

exclusion of the interests of all other parties," including the employer.  Hearn v.

McKay, 603 F.3d 897, 902 (11th Cir. 2010) (citation omitted); H.R. Rep. No. 93-

533 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4647-648 ("the legislative

approach of establishing minimum standards and safeguards for private pensions is

not only consistent with retention of the freedom of decision-making vital to

pension plans, but in furtherance of the growth and development of the private

pension system"); Hall, 334 F.3d at 1013 ("[t]he responsibility attaching to

fiduciary status has been described as 'the highest known to law.'") (citation

omitted).[8]   When Congress deviates from these fiduciary obligations to promote

particular plans, it explicitly does so.  E.g., Holloman v. Mail-Well Corp., 443 F.3d

832, 837 (11th Cir. 2006) ("[t]op hat plans . . . are excluded from many individual

ERISA provisions on the basic assumption that high-level employees . . . do not

require the same substantive protections that are necessary for other employees") .

---

[8]  The Supreme Court recognized that ERISA's goal was to establish minimum
fiduciary standards to protect employee expectations in response to the "enormous
growth" in employee benefit plans.  See Alessi v. Raybestos-Manhattan, Inc., 451
U.S. 504, 510 n.5 (1981).  The courts act contrary to Congressional intent when
they presume, without determining, that minimum fiduciary standards are met.
Nothing in ERISA or its history allows courts to encourage the growth of employer
stock funds at the expense of employee expectations that fiduciaries fulfill
minimum obligations.

Nothing in ERISA implicitly or explicitly singles out fiduciary conduct with regard to employer stock investments for especially limited review at the expense of the participants' interests in statutory safeguards when such assets are most at risk.  Cf. 29 U.S.C. 412(a) (requiring plans with employer securities to have a higher maximum fidelity bond).[9]  Non-diverse employer stock investments put "employee retirement assets at much greater risk than does the typical diversified ERISA plan," Feilen, 965 F.2d at 664.  In EIAPs, including this Plan, workers' retirement benefits are entirely dependent on the plan investments' earnings.  See 29 U.S.C. 1002(34).  When such plans disproportionately hold employer stock, loss of the diversification safeguard makes ERISA's other protections, including its standards of prudence,  all the more necessary.

Accordingly, this Court should decline to adopt the Moench presumption because it undermines the "protection of the interests of employees and their beneficiaries" and "uniformity in the administration of employee benefit plans." Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1041 (11th Cir. 1998) (holding that federal common law must promote such interests).  At a minimum,

---

[9]  Several ERISA provisions specifically impose restrictions on investments in employer securities inapplicable to any other type of plan investment.  See 29 U.S.C. 1106(a)(1)(E)-(a)(2), 1107(a)(1).  These rules indicate Congress' concern with the dangers of allowing employer stock investments and underscore that Congress did not intend to relieve fiduciaries of any obligation (other than diversification) relating to those investments.

there is no rationale for adopting a presumption of prudence where the plaintiff alleges that the fiduciaries knew or should have known that the stock's price was artificially inflated. Such knowledge makes this type of imprudence wholly different from the risk from normal market fluctuations that a failure to diversify worsens. Even if the presumption were to be applied, the allegations here, if proven, overcome any presumption that the fiduciaries acted reasonably. The fiduciaries' knowledge concerning the stock's inflated price, their conflicting loyalties, and the fact that any overpayment would be categorically imprudent are "changed circumstances" that rebut any presumption barring deviation from the plan's instructions to invest in employer stock. See Moench, 62 F.3d at 572. The employer stock need not become virtually worthless nor must the company face imminent financial collapse in order for such imprudence to be actionable. See In re Ford Motor Company ERISA Litig., 590 F.Supp.2d 883, 907-08 & n.9 (E.D. Mich. 2008) (plaintiff need not allege the company's "impending collapse").

B.    Even Assuming a Presumption of Prudence, It Should Not Apply at the Pleadings Stage

The Moench presumption is a presumption of fact, which involves shifting burdens of proof. See Moench, 62 F.3d at 571 (to rebut the presumption, "plaintiff may introduce evidence") (emphasis added); see generally Konst v. Florida East Coast Ry. Co., 71 F.3d 850, 851 n.1 (11th Cir. 1996) (recognizing that presumptions of fact are rebuttable and "mere inference[s] of fact" that "must be

weighed with all the other circumstances of the case" by the fact-finder). Fact-intensive questions concerning the state of the fiduciary's knowledge and the economic circumstances surrounding the investment may arise when determining whether the presumption applies or has been rebutted. Moench, 62 F.3d at 571.

Invocation of the presumption thus lends itself to evidentiary development but is an inappropriate basis for Rule 12(b)(6) dismissal. Accordingly, inserting the Moench presumption of fact into the pleadings stage is generally inconsistent with Rule 8(a), Fed. R. Civ. P. E.g., In re XCEL Energy, Inc. Sec., Derivative & "ERISA" Litig., 312 F. Supp. 2d 1165, 1179-80 (D. Minn. 2004); see generally Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). The Third Circuit's contrary decision in Edgar v. Avaya is erroneous. 503 F.3d 340, 349 (3d Cir. 2007).

III.   THE FIDUCIARIES HAD A DUTY NOT TO MISLEAD PLAN PARTICIPANTS AND TO DISCLOSE INFORMATION IF NECESSARY FOR THE PROTECTION OF RETIREMENT BENEFITS

A.   ERISA Imposes Upon Fiduciaries a Duty to Provide Truthful Information To Participants

A fiduciary's duty of loyalty includes an "affirmative duty to communicate material facts to the beneficiary which will allow for an informed decision," Ervast v. Flexible Prods. Co., 346 F.3d 1007, 1016 n.10 (11th Cir. 2003) (citation omitted), as well as an obligation not to materially mislead plan participants. Id.;

see also, e.g., Jones v. Am. Gen. Life and Acc. Ins. Co., 370 F.3d 1065, 1072 (11th Cir. 2004); see generally Varity, 516 U.S. at 506; Restatement (Second) of Trusts § 173, cmt. c-d (1959). Inaction or silence may breach this duty as much as affirmative misstatements. Ervast, 346 F.3d at 1016 n.10 (citing authorities); accord Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 381 (4th Cir. 2001).

The plaintiffs properly allege that the defendants knowingly engaged in fiduciary acts when they disseminated falsely optimistic descriptions that artificially inflated the participants' anticipated benefits. See Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1293 (11th Cir. 2005) ("[t]o prevail on a similar theory [to the theory in Varity], the plaintiffs would have needed to show that [the fiduciary], acting in its fiduciary capacity, presented falsely optimistic policy illustrations that it essentially knew overstated the benefits that the policies could be expected to produce"); Lanfear, 536 F.3d at 1223 (recognizing that prudent employer stock investments constitute anticipated "benefits"). Allegations that the defendants here knowingly distributed plan documents with false information and permitted participants to continue to buy the stock at prices artificially inflated by known material misstatements in public filings thus state a viable fiduciary breach claim.

Accordingly, given these well-established duties, the district court erred in holding that the plan fiduciaries had no affirmative duty to disclose material information about the Plan's employer stock investments.  The court's reasoning that the fiduciaries breached no duties in this case because ERISA's specific reporting and disclosure provisions do not specifically mandate disclosure about the stock's value, Op. at 21-22, is inconsistent with the statement in Varity that "the primary function of the fiduciary duty is to constrain the exercise of discretionary powers which are controlled by no other specific duty imposed by the trust instrument or the legal regime."  516 U.S. at 504.

ERISA's disclosure and reporting provisions require plan sponsors and administrators to disclose to the participants and their beneficiaries information describing and summarizing the benefit plan (summary plan descriptions).  29 U.S.C. 1021, 1022.  Sponsors and administrators are also required to file with the Secretary and make available to participants annual reports describing the benefit plans, and providing other specific information.  29 U.S.C. 1023, 1024.   In addition to these specific disclosure and reporting obligations, however, a plan administrator has general obligations under ERISA's fiduciary duty provisions to speak truthfully about benefits and correct misrepresentations when it knows the participants labor under a mistaken understanding.  Jones, 370 F.3d at 1072; Hamilton v. Allen-Bradley Co., Inc., 244 F.3d 819, 827 (11th Cir. 2001).  The

25

district court thus disregarded this Court's precedents in dismissing claims stating that the defendants had fiduciary obligations to disclosure information beyond the obligations imposed by specific disclosure provisions.  See "Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans," 75 Fed. Reg. 64909, 64910 (Oct. 20, 2010) (interpreting ERISA's fiduciary provisions to require "plan fiduciaries [to] take steps to ensure that participants and beneficiaries are made aware of their rights and responsibilities with respect to managing  their individual plan accounts and are provided sufficient information regarding the plan").

Under the case-law, the plaintiffs sufficiently allege that the defendants breached their fiduciary duties by misrepresenting to the participants material information affecting the company stock's investment value, i.e., the company's exposure to subprime mortgages and its ability to weather the subprime mortgage crisis.[10]  Moreover, even if they had not violated their obligations by affirmatively making misrepresentations to plan participants, the fiduciaries could not simply stand idly by in mute disregard of the dangers posed by public filings that they knew to be false.  The fiduciaries had an obligation to protect participants from a

_____

[10]  The plaintiffs also plausibly claim that the fiduciaries breached their duty to disclose to other fiduciaries their knowledge about the prudence of company stock investments.  See e.g., Glaziers and Glassworkers Union Local 252 Annuity Fund v. Newbridge Sec., Inc., 93 F.3d 1171, 1181-82 (3d Cir. 1996).

danger known to the plan's fiduciaries, but not its participants.   <u>Jones</u>, 370 F.3d at

1072.  <u>Sprague v. Gen. Motors Corp.</u>, 133 F.3d 388, 405 n.15 (6th Cir. 1998), and

<u>Board of Trustees of CWA/ITU Negotiated Pension Plan v. Weinstein</u>, 107 F.3d

139 (2d Cir. 1997), upon which the district court mistakenly relied, are not to the

contrary.  Neither decision supports the conclusion that fiduciaries need never

disclose nonpublic financial information about plan investments.[11]

      B.    <u>Disseminating Misleading SEC Filings in Plan Documents Are</u>
              <u>Fiduciary Acts Subject to ERISA's Fiduciary Standards</u>

The district court also erroneously concluded that because the alleged

misrepresentations were primarily found in SEC filings, the defendants acted

solely in their corporate capacities and thus did not breach their ERISA fiduciary

duties.  Op., at 19.  The district court recognized, however, that SEC filings are

"incorporated by reference" in Form S-8s, which are "disseminated to employees . .

. for stock issued through the [ERISA] plan."  <u>Id.</u> at 19 n.7.

---

[11]  In <u>Sprague</u>, the Sixth Circuit found the failure to disclose a possible change in
benefits as not a breach, while distinguishing cases, like this one, involving a
fiduciary's misrepresentations.  133 F.3d at 406.  Likewise, the Second Circuit in
<u>Weinstein</u> refused to infer from ERISA's fiduciary duties provisions an "unlimited"
general disclosure requirement that required disclosure without evidence of
fiduciary misconduct, but did not question that there could be a duty where, as
here, there are fiduciary misconduct allegations, such as fiduciary
misrepresentation about plan investments and the knowing overpayment for plan
assets.  107 F.3d at 146-07 (citing <u>Faircloth v. Lundy Packing Co.</u>, 91 F.3d 648,
657 (4th Cir. 1996)); <u>see</u> <u>Faircloth</u>, 91 F.3d at 657-58 (distinguishing its facts from
cases involving fiduciary misrepresentations).

A company and its officers do not become ERISA fiduciaries merely by filing SEC forms.  See Varity, 516 U.S. at 505.  However, when fiduciaries distribute plan documents to participants, Complaint, at 29, they are acting as fiduciaries, and breach their fiduciary duties to the extent that they know the documents incorporate misleading information from SEC filings.  See In re Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d 861, 888 (S.D. Tex. 2004).  Whatever the original source of the information, "lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." Varity, 516 U.S. at 506.  Moreover, the defendant-fiduciaries violated their fiduciary duties by failing to take any protective measures, even as participants continued to obtain stock at inflated prices based upon misrepresentations.  Jones, 370 F.3d at 1072.

Defendants could have taken actions consistent with the securities laws.  See In re Enron Corp. Securities, Derivative & ERISA Litigation, 284 F.Supp.2d 511, 566 (S.D. Tex. 2003) (securities laws do not prohibit fiduciaries with inside information from disclosing the information to other shareholders and the public, forcing the employer-company to do so, alerting regulatory agencies, or eliminating employer stock as an option); see also Deak v. Masters, Mates and Pilots Pension Plan, 821 F.2d 572, 580 (11th Cir. 1987) (ERISA's obligations are not subordinate to securities law obligations).  The Supreme Court has recognized

that ERISA's fiduciary duties impose "higher-than-marketplace quality standards." Metro. Life Ins. Co., v. Glenn, 128 S.Ct. 2343, 2350 (2008) (citing 29 U.S.C. 1104(a)(1)).

Corporate disclosure obligations to marketplace investors under the securities law are distinct from ERISA's higher-than-marketplace quality standards imposed on behalf of participants in a plan that owns employer stock.  This Court distinguished, in Gochnauer v. A.G. Edwards & Sons, Inc., 810 F.2d 1042, 1050 (11th Cir. 1987), between a breach of fiduciary duty and securities fraud because "the focus differs for each cause of action" and a fiduciary breach claim may require a lesser evidentiary burden.  Accord Harzewski, 489 F.3d at 805 (noting that ERISA does not require proof of fraud).  Because ERISA fiduciary breach claims differ from fraud claims, Rule 9(b) is inapplicable.  Concha v. London, 62 F.3d 1493, 1502-503 (9th Cir. 1995).  Neither ERISA nor securities law provides that the rights and remedies available to ERISA participants are superseded or limited by the possibility of securities law claims.  See Rogers v. Baxter Int'l, Inc., 521 F.3d 702, 705 (7th Cir. 2008).  For example, under ERISA, breaching fiduciaries are liable to restore all losses caused by their breaches, disgorgement of profits, and other equitable remedies.  See 29 U.S.C. 1109, 1132(a)(2).  Under the securities laws, defendants are not necessarily liable for all such losses.  See 15 U.S.C. 78u-4(e)(1).  The district court erroneously dismissed the misrepresentation

claims by relying on a misreading of non-binding authorities and inapplicable securities law.  Under the applicable precedents, the plaintiffs properly plead an ERISA misrepresentation claim.

<u>CONCLUSION</u>

For these reasons, the district court's decision should be reversed.

Respectfully submitted,


M. PATRICIA SMITH
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

NATHANIEL I. SPILLER
Counsel for Appellate Litigation

/s/  Thomas Tso_____
THOMAS TSO
Attorney
U.S. Department of Labor
Rm. N-4611
200 Constitution Ave. N.W.
Washington, DC 20210

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(B), I certify that the attached Brief of the Secretary of Labor As Amicus Curiae in Support of the Plaintiff-Appellant contains 6,983 words.  The brief has been prepared in a proportionally-spaced typeface using Microsoft XP in Times New Roman 14-point font size.


/s/ Thomas Tso_____
THOMAS TSO
Attorney

Dated:  November 12, 2010

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In compliance with Eleventh Circuit Rule 26.1, U.S. Secretary of Labor Hilda L. Solis, amicus curiae, through her undersigned counsel, certifies that (1) this appeal seeks the reversal of the March 31, 2010 Order & Opinion issued by the Honorable Julie E. Carnes and Judgment entered in the Northern District of Georgia; and (2) that the Secretary is aware of the following persons and entities have or may have an interest in the outcome of this appeal:

- **Francis A. Bottini, Jr., Counsel for Appellants**

- **Phyllis C. Borzi, Assistant Secretary for Employee Benefits Security of the United States Department of Labor**

- **Henk Breukink, Appellee**

- **Byron Scott Burton, Appellee**

- **Albert Y. Chang, Counsel for Appellants**

- **William Delahanty, Appellee**

- **Patrick C. DiCarlo, Counsel for Appellees**

- **Deadre D. Diggs, Appellant**

- **Peter A.F.W. Elverding, Appellee**

- **Evangelista & Associates, LLC, Counsel for Appellants**

- **James M. Evangelista, Counsel for Appellants**

- **Gainey & McKenna, Counsel for Appellants**

- **Eric Boyer de la Giroday, Appellee**

- Darryl Harris, Appellee

- Dick Harryvan, Appellee

- Timothy D. Hauser, Counsel for Amicus Curiae U.S. Dep't of Labor

- John C.R. Hele, Appellee

- Claus Dieter Hoffmann, Appellee

- Piet Hoogendoorn, Appellee

- Elizabeth Hopkins, Counsel for Amicus Curiae U.S. Dep't of Labor

- Jan H.M. Hommen, Appellee

- ING Groep, N.V., Appellee

- ING North America Insurance Corporation, Appellee

- ING Life Insurance and Annuity Company, Appellee

- ING U.S. Pension Committee, Appellee

- Johnson Bottini, LLP, Counsel for Appellants

- Neal K . Katyal, Acting Solicitor General

- Piet C. Klaver, Appellee

- Wim Kok, Appellee

- Mitchell A. Lowenthal, Counsel for Appellees

- Tom McInerney, Appellee

- Thomas J. McKenna, Counsel for Appellants

- Christopher P. Moore, Counsel for Appellees

- Hans van der Noordaa, Appellee

- **Kent Sewright, Appellant**

- **Kimberly Shattuck, Appellee**

- **Catherine H. Smith, Appellee**

- **M. Patricia Smith, Solicitor of Labor, U.S. Dep't of Labor**

- **Hilda Solis, Secretary of Labor, U.S. Dep't of Labor**

- **Nathaniel I. Spiller, Counsel for Amicus Curiae U.S. Dep't of Labor**

- **Michel J. Tilmant, Appellee**

- **Koos Timmermans, Appellee**

- **Thomas Tso, Counsel for Amicus Curiae U.S. Dep't of Labor**

- **U.S. Department of Labor**

- **Jacques de Vaucleroy, Appellee**

- **Karel Vuursteen, Appellee**

- **David A. Wheat, Appellee**

- **David J. Worley, Counsel for Appellant**

Date:  11/18/2010                    _/s/ Thomas Tso_____

                                     Thomas Tso
                                     Attorney
                                     U.S. Department of Labor
                                     P.O Box 1914
                                     Washington, D.C. 20210
                                     (202) 693-5632

## CERTIFICATE OF SERVICE

I hereby certify that one copy of the foregoing Brief of the Secretary of

Labor As Amicus Curiae in Support of the Plaintiffs-Appellants and a copy of the

brief were served by email and UPS overnight courier service, this 12th day of

November, 2010, upon:

Johnson Bottini, LLP                    Gainey & McKenna
Francis A. Bottini Jr.                  Thomas J. McKenna
Albert Y. Chang                         295 Madison Avenue
501 West Broadway                       4th Floor
Suite 1720                              New York, NY 10017
San Diego, CA 92101


Evangelista &                           Christopher P. Moore, Esq.
Associates, LLC                         Cleary Gottlieb Steen
James M. Evangelista                     & Hamilton LLP
David J. Worley                         One Liberty Plaza
One Glenlake Parkway                    New York, NY 10006-1470
Atlanta, GA 30328


Patrick C. DiCarlo
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309


Dated: November 12, 2010

                                        /s/ Thomas Tso_____
                                        Thomas Tso