# EXHIBIT B

Slip Copy, 2011 WL 1108661 (N.D.Tex.)
(Cite as: 2011 WL 1108661 (N.D.Tex.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas,
Dallas Division.
Bruce FULMER, et al., Plaintiffs,
v.
Scott KLEIN, et al., Defendants.

Civil Action No. 3:09–CV–2354–N.
March 16, 2011.

### ORDER

DAVID C. GODBEY, District Judge.

*1 This Order addresses Defendants' motion to dismiss [39]. Plaintiffs Bruce Fulmer and Randy Kopp, on their own behalf and on behalf of others similarly situated, bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") section 502(a)(2), 29 U.S.C. § 1132(a)(2). For the reasons explained below, the Court grants Defendants' motion.

### I. BACKGROUND

Plaintiffs were participants in the Idearc savings plans for its employees (the "Plan").[FN1] The Plan is an Eligible Individual Account Plan ("EIAP") under ERISA. Pls.' Am. Compl. ¶ 59[21]. Participants could contribute to the Plan and direct their contributions to one or more of the Plan's investment options. Id. at ¶ 60–61. The Plan specified that, barring prohibition by Sections 406 or 407 of ERISA, Idearc stock would be an investment option until it was "removed by a plan amendment." Defs.' Mot. to Dismiss App. 41 at 9[41]. The Plan Administrator and the Benefits Committee were fiduciaries, as the term is used in ERISA, of the Plan. Pls.' Resp. to Defs.' Mot. to Dismiss at 5, 12 [48].

> FN1. The Court will use the "Plan" to refer to the Idearc Savings Plan for Management Employees, Idearc Savings and Security Plan for New York and New England Associates, and the Idearc Savings and Security Plan for Mid–Atlantic Associates, collectively. See Pls.' Am. Compl. 2

Idearc was a spin-off from Verizon of Verizon's yellow pages business. Defs.' Mot. to Dismiss at 2. Idearc's SEC filings explained that it generated most of its revenue through local and small business advertisements. Id. at 4. The filings also showed that Idearc's reliance on local and small businesses exposed them to increased credit risks because those businesses generally have fewer resources and are more likely to fail than big businesses. Id. In the filings, Idearc disclosed that it may never collect debts from delinquent accounts. Id. The filings furthered warned that "a prolonged economic downturn could adversely materially affect [Idearc's] business." Id. Due to the recession, many of the small businesses that comprised Idearc's consumer base failed and Idearc had to file for bankruptcy. Id. at 4–5. Plaintiffs claim that Defendants made misleading statements about Idearc's viability in these SEC filings and incorporated the inaccurate statements in Idearc's Summary Plan Descriptions ("SPD"). Pls.' Resp. to Defs.' Mot. to Dismiss at 24.

Plaintiffs allege that various members of Idearc's board of directors and the Plan's benefits and human resource committees breached their fiduciary duties to Plan participants. More specifically, Count I alleges that the Defendants breached their fiduciary duties by continuing "to offer Idearc Stock as an investment alternative," and "failing to liquidate the Idearc Stock holdings when it became imprudent to continue to offer, hold, and purchase Idearc Stock." Pls.' Resp. to Defs.' Mot. to Dismiss at 11 n. 9. Count II alleges that Defendants breached their duty of candor by incorporating misleading statements in Idearc's SPD. Pls.' Am. Compl. ¶ 234. Count III alleges that Defendants breached their duty of loyalty. Id. at ¶ 242. Count IV alleges that Defendants imprudently failed to diversify. Id. at ¶ 249. Count V alleges that some Defendants failed to properly appoint, monitor, and inform other fiduciaries. Id. at ¶ 255. Count VI alleges that co-fiduciaries failed to prevent or otherwise remedy other fiduciaries' breaches. Id. at ¶ 260. Count VII alleges that Defendants failed to avoid conflicts on interests. Id. at ¶ 274. Thus Counts I, II, and IV state substantive claims, and Counts III, V, VI, and VII state derivative claims predicated on underlying violations in the substantive claims.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1108661 (N.D.Tex.)
(Cite as: 2011 WL 1108661 (N.D.Tex.))

## II. MOTION TO DISMISS STANDARD

*2 When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact [s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949–50 (2009). A plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). To avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. *Kane Enters. v. MacGregor (USA) Inc.,* 322 F.3d 371, 374 (5th Cir.2003); *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir.1989).

As the Supreme Court recently observed:

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [ *Twombly,* 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." FED. RULE CIV. PROC. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*3 *Iqbal,* 129 S.Ct. at 1949–50.

In ruling on a Rule 12(b)(6) motion, courts generally limit their review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir.1999). A court may also consider documents attached to a motion to dismiss that are referred to in the plaintiff's compliant and are central to the plaintiff's claim, *Scanlan v. Tex. A & M Univ.,* 343 F.3d 533, 536 (5th Cir.2003), as well as the contents of documents filed with the Securities and Exchange Commission. *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1018 (5th Cir.1996).

## III. STOCK OFFERING AND DIVESTITURE

Defendants did not have a fiduciary duty to stop offering Idearc stock as an investment option. Plaintiffs allege that Defendants breached their fiduciary duties by continuing to permit investment in Idearc stock. While Defendants may have been fiduciaries of the Plan for some purposes, "an ERISA fiduciary for one purpose is not necessarily a fiduciary for other purposes." *Kirschbaum v. Reliant Energy, Inc.,* 526 F.3d 243, 251 (5th Cir.2008). "Rather a person is a fiduciary only 'to the extent' he has or exercises specified authority, discretion, or control over a plan or its assets." *Id.* "If Plan fiduciaries would violate the Plan by deviating from the mandatory retention and acquisition of [Company] stock ..., they have no discretion and so no fiduciary duty, to deviate." *Id.* at 250. Furthermore, a decision to amend the plan is a settlor function not a fiduciary responsibility. *See id.* The

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1108661 (N.D.Tex.)
(Cite as: 2011 WL 1108661 (N.D.Tex.))

Trust agreement mandated that Idearc stock had to be an investment option unless and until that requirement was removed by a Plan amendment. Fiduciaries cannot amend the Plan. Therefore, the Defendants had no discretion over whether to offer Idearc stock and consequently no fiduciary duty to divest or not offer the stock.

Idearc stock was a mandatory investment option in the Plan. Plaintiffs try to distinguish the circumstances in the case at hand from the facts in *Kirschbaum* by asserting that the *Kirschbaum* trust agreement "directed the plan trustee to invest *all* contributions to the company stock fund into common stock," while here a portion of Idearc stock could "also be invested in short-term money market instruments or other short-term investment funds." Pl.'s Resp. to Defs.' Mot. to Dismiss at 12–13. This distinction has no bearing on the fact that Idearc stock was a required investment option in the Plan itself. In fact the Plan actually presumes the existence of an Idearc stock option. Plan documents provide that "the Company Stock Portfolio *will* be invested principally in Company Shares." Defs.' Reply at 3 (emphasis added) [50]; *see Kirschbaum, 526 F.3d at 250* ("The Plan presumes the existence of [a fund]," when it includes provisions for how contributions to the fund should be invested).[FN2] The Plan does not equivocate about whether to offer Idearc stock as an investment option, therefore Defendants had no discretion and consequently no fiduciary duty to stop offering Idearc stock. The Court therefore grants the motion to dismiss Count I.

> FN2. Plaintiffs argue that Defendants had discretionary authority over whether to liquidate Idearc stock because the Benefits Committee, acting as Plan Administrator, allegedly decided to liquidate Idearc stock. Pls.' Resp. to Defs.' Mot. to Dismiss at 11. However, the liquidation never occurred. Perhaps such a liquidation would have been a de facto plan amendment; perhaps not. The Court need not decide this issue given that the proposed liquidation was cancelled.

### IV. FIDUCIARY DUTY OF CANDOR
*4 Plaintiffs do not plead facts that show that Defendants breached their duty of candor. Plaintiffs allege that Defendants breached their duty to provide complete and accurate information. "To recover for [alleged misrepresentations] under ERISA, as opposed to the securities laws, [Plaintiffs] must demonstrate that the representations were made in a fiduciary capacity." *Kirschbaum, 526 F.3d at 256*. Plaintiffs allege that Defendants made misrepresentations in Idearc's SEC filings and incorporated the misrepresentations by reference in Idearc's SPD. Pls.' Resp. to Defs.' Mot. to Dismiss 23–24. Individuals act in their corporate capacity while making statements in SEC filings, however statements made in the SPD are fiduciary communications. *See id. at 257.* Therefore, SEC filings can be fiduciary statements if fiduciaries sufficiently incorporate the filings in the SPD. *See In re Dynergy, Inc. ERISA Litig., 309 F.Supp.2d 861, 880 (S.D.Tex.2004)*. The *Dynergy* defendants distributed an SPD, which encouraged plan participants "to carefully review" SEC filings that misrepresented the company's financial condition. *Id.* The *Dynergy* Court held that the defendants breached their fiduciary duties because they were not required "to encourage participants to carefully review SEC filings." *Id.*

Here, Defendants merely said that Idearc's SPD "constitutes part of a prospectus covering securities that have been registered under the Securities Act of 1933." Pls.' Am. Compl. ¶ 92. This statement facially does not incorporate SEC filings by reference into the SPD or direct reader to SEC filings for further information. It simply and truthfully states that the SPD involves registered securities. Moreover, this statement does not rise to a *Dynergy* level of encouragement. Plaintiffs do not allege that Idearc's SPD encouraged them to review or rely on allegedly misleading SEC filings and therefore have not shown that the alleged misrepresentations in the SEC filings were incorporated in the SPD or were made in the Defendants' fiduciary capacity. The Court therefore grants the motion to dismiss Count II.

### VI. FIDUCIARY DUTY OF PRUDENCE
Defendants did not violate their duty of prudence by investing in and holding Idearc stock. Plaintiffs allege that Defendants breached their fiduciary duty of prudence by failing to diversify the Plan's assets. *See* Pls.' Am. Compl. ¶ 249. But ERISA provides a safe harbor for holding employer securities:

> In the case of an eligible individual account plan ..., the diversification requirement ... and the prudence requirement (only to the extent that it requires diversification) ... is not violated by acquisition or

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1108661 (N.D.Tex.)
(Cite as: 2011 WL 1108661 (N.D.Tex.))

holding of ... qualifying employer securities.

ERISA § 404(a)(2), 29 U.S.C. § 1104(a)(2). Plaintiffs try to limit this safe harbor by arguing that it only protects Defendants from failing to diversify, not from failing to "divest" Idearc stock. *See* Pls.' Resp. to Defs.' Mot. to Dismiss 18. This argument fails for two reasons. First, Plaintiffs actually alleged that Defendants breached their duty of prudence by failing to "diversify" not "divest." *See* Pls.' Am. Compl. ¶ 249. Second, divestment is simply the extreme case of diversifying. A diversification claim alleges defendants held too much employer stock; a divestment claim simply adds that even one share is too much. *See Kirschbaum*, 526 F.3d at 249. In either case, the gravamen of the claim is the same. If Defendants do not violate their fiduciary duties by holding *too much* Idearc stock and failing to balance funds among other securities, then they likewise do not violate their duties by possessing *any* Idearc stock.

*5 Furthermore, Plaintiffs do not overcome Defendants' presumption of prudence. A fiduciary in an EIAP has a presumption of prudence when investing in company stock. *See Kirschbaum*, 526 F.3d at 254 (citing *Moench v. Robertson*, 62 F.3d at 571(3rd Cir.1995)). The Plan in this case was an EIAP and allowed participants to invest in company stock. The presumption of prudence is a substantial shield and cannot be lightly overcome. *Id.* at 256. "[P]laintiffs may state a claim only where a fiduciary's knowledge of *nonpublic information* did or should have made the fiduciary aware that investment in company stock was not only a risky investment, but a bad one—that it was imprudent for the plan to hold even one share of [company] stock, because the price was artificially inflated." *Halaris v. Viacom*, 2008 WL 3855044, at *2 (N.D.Tex Aug. 19, 2008) (emphasis added) (quoting *Kirschbaum*, 526 F.3d at 249). While Plaintiffs allege that Defendants knew or should have know about the precarious financial state of Idearc, *see* Pls.' Am. Compl. ¶ 103, 105, 112, 118, 123, 128, 136, 145, 155, 161, 165, 184, 189, Plaintiffs also argue that Idearc's bankruptcy rebuts the presumption of prudence. *See* Pls.' Resp. To Defs.' Mot. to Dismiss at 17. However neither allegation shows that Defendants had knowledge of *nonpublic information* that would alert them about the imprudence of holding Idearc stock. While Plaintiffs allege that Defendants knew or should have know that Idearc was heading to financial ruin, this pleading alone is not sufficient to overcome a Rule 12(b)(6) motion because Idearc's financial instability and potential bankruptcy was *public information*. Idearc's SEC filings showed that the company relied on businesses that might not survive a prolonged economic downturn. If this public information should have alerted Defendants of the imprudence of holding Idearc stock, it also should have alerted the Plaintiffs, who had access to the filings and the autonomy to direct the investments of their Plan contributions. Plaintiffs have not alleged that the Defendants had any knowledge of nonpublic information that would have alerted them that continuing to invest in Idearc stock was imprudent.

Finally, the *Moench* analysis is not premature. Plaintiffs allege that a *Moench* analysis of prudence is premature when resolving a motion to dismiss. *See* Pls.' Resp. to Mot. to Dismiss at 13. Other courts in this circuit have applied the *Moench* presumption when ruling on a motion to dismiss. *See Halaris v. Viacom*, 2008 WL 3855044 (N.D. Tex Aug. 19, 2008); *In re Dell ERISA Litig.*, 563 F.Supp.2d 681 (W.D.Tex.2008); *In re RadioShack Corp. ERISA Litig.*, 547 F.Supp.2d 606 (N.D.Tex.2008). The resolution of a motion to dismiss requires the court to analyze whether the Plaintiffs have pled enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 556, 570 (2007). Here, Plaintiffs have not pled enough facts to overcome the *Moench* presumption because they have failed to allege that Defendants had access to nonpublic information that would have compelled them to diversify or divest. *See Halaris v. Viacom*, No. 3:06–CV1646–N, 2008 WL 3855044, at *2 (N.D.Tex. Aug. 19, 2008). There is no reason to delay that decision until summary judgment after substantial sums have been spent on discovery and class certification. The Court therefore grants the motion to dismiss Count IV.

### VII. DUTY TO MONITOR, AVOID CONFLICTS, AND OTHER DERIVATIVE SUITS

*6 Counts III, V, VI, and VII allege that Defendants failed to properly monitor other fiduciaries and otherwise prevent other fiduciary breaches. Plaintiffs also allege that Defendants breached their duties of loyalty and avoidance of conflicts. To prevail on these derivative claims, Plaintiffs must prevail in the underlying allegations of breaches of fiduciary duties. Because the Court holds that Plaintiffs' have failed to allege any underlying breaches, the derivative claims likewise fail. The Court therefore grants the motion to

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1108661 (N.D.Tex.)
**(Cite as: 2011 WL 1108661 (N.D.Tex.))**

dismiss Counts III, V, VI, and VII.

## CONCLUSION

For the reasons stated, the Court grants Defendants' motion to dismiss. The Court also grants Plaintiffs' request for leave to amend their complaint and orders the Plaintiffs' amended complaint be filed within fourteen (14) days of the date of this Order.

N.D.Tex.,2011.
Fulmer v. Klein
Slip Copy, 2011 WL 1108661 (N.D.Tex.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.