**EXHIBIT C**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DEBRA GRIFFIN and JOY GARDNER, on
Behalf of Themselves and a Class of Persons
Similarly Situated,

Case Number: 2:10-cv-10610

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Plaintiffs,

v.

FLAGSTAR BANCORP, INC.; REBECCA
A. LUCCI; ERIN ENGLAND; JOHN DOES
1-10, AND; RICHARD ROES 1-20,

Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

This case comes before the Court on defendants Flagstar Bancorp, Inc. ("Flagstar" or the "Company"), Erin England and Rebecca Lucci (the "Executive Defendants"), John Does 1-20, and Richard Roes 1-20's (collectively "Defendants") motion to dismiss. (Dkt. No. 17.) Plaintiffs have filed a response (Dkt. No. 19), and Defendants have filed a reply (Dkt. No. 21.) Oral arguments were heard on February 2, 2011 at 2:00 p.m. For the following reasons, Defendants' motion is GRANTED.

## I.       Background

This action arises from Debra Griffin and Joy Gardner's ("Plaintiffs") claim, on behalf of themselves and a class of persons similarly situated (the "Participants" or "Employees"), that their former employer Flagstar breached its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, by failing to prudently and

independently administer the Flagstar Bank 401(k) Plan (the "Plan") since December 31, 2006 (the "Class Period"). (Compl. ¶¶ 1-4.) Plaintiffs bring this action under § 502(a)(2) and (3) of ERISA, 29 U.S.C. § 1132(a)(2), (3). (*Id.* ¶ 1.) Specifically, Plaintiffs allege that Defendants violated the duties imposed upon plan fiduciaries under ERISA section 404, 29 U.S.C. § 1104. (*Id.*)

A.    **The Plan**

During most of the Class Period, the governing document for the Plan was The Corporate Plan for Retirement Fidelity Basic Plan Document No. 02 (the "Plan Document"). (Defs.' Mot. 4; Ex. 1.) In 2008, the Plan Document was superseded by the Volume Submitter Defined Contribution Plan Fidelity Basic Plan Document No. 14 (the "Amended Plan Document"). (Defs.' Mot. 4; Ex. 5.) Under the Plan, each Participant was provided with their own individual account. Each Employee chose how much of their salary was withheld from a given paycheck and deposited into their account. (Compl. ¶ 27.) Flagstar also made employer "matching" contributions. (Defs.' Mot. 1.) As a result, the Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). (Compl. ¶ 27.)

The Plan allowed Participants to invest in a variety of investment options, of which Flagstar stock (or "Company Stock") was one choice. (Def.'s Mot. 4.) Participants could choose from among 23 investment options that were selected by Flagstar, the Plan's Administrator. (Defs.' Mot. 4; Ex. 2 at 28.) While the investment options were chosen by Flagstar, each Participant directed the Plan's trustee where to invest the funds in his or her individual account. (Defs.' Mot. 4.) Section 1.23 of Plan Document states "Participant Accounts shall be invested . . . in accordance with the investment *directions provided* to the Trustee *by each Participant* for allocating his entire Account among the options listed in the Service Agreement." (*Id.*) (emphasis added).

Thus, each employee participant was given a "menu" containing 23 investment options, and it was totally the participant's choice as to which option(s) to exercise.

**B.    The Parties**

Plaintiff Debra Griffin lives in the State of Georgia. (Compl. ¶ 10.) She was employed by Flagstar (or a subsidiary or division of Flagstar) for several years, and she directed an investment in Flagstar common stock through her individual account in the Plan during the Class Period. (*Id.*) Plaintiff Joy Gardner is also a resident of the State of Georgia. (*Id.* ¶ 11.) She too was employed by Flagstar (or one of its subsidiaries or divisions), and she directed an investment in Flagstar common stock through her Plan account during the Class Period. (*Id.*)

Defendant Flagstar is a Michigan-based savings and loan holding company. (*Id.* ¶ 12.) Flagstar operates through its subsidiary, Flagstar Bank, FSB which is a federally chartered stock savings bank. (*Id.*) At the end of 2008, Flagstar operated 175 banking centers in Michigan, Indiana, and Georgia. (*Id.*) It also operates 104 home loan centers located in 27 states. (*Id.*) Flagstar is incorporated in Michigan and maintains its principal place of business at 5151 Corporate Drive Troy, MI 48098. (*Id.*) Plaintiffs allege that Flagstar managed and administered the Plan's assets and acted as the named fiduciary with respect to the Plan, or appointed a committee to do so. (*Id.* ¶ 13.)

Defendant Rebecca A. Lucci ("Lucci") allegedly is, or was, First Vice President, Director of Human Resources at Flagstar and signed the Plan's Form 11-K Annual Reports for the fiscal years ending on December 31, 2006 and 2008 on behalf of the Company as "Plan Administrator." (*Id.* ¶ 14; Pls.' Resp. Ex. E at 15.) She also signed the Plan's 5500 Annual Return/Report of Employee Benefit plan for the fiscal years 2006 and 2007 (the "5500 Reports") on behalf of

3

Flagstar. (Compl. ¶ 14; Pls.' Resp. Ex. H at 3.) Plaintiffs allege that these actions indicate that Lucci was a Plan fiduciary during the Class Period. (Compl. ¶ 14.)

Defendant Erin England ("England") served as First Vice President of Human Resources, Employee Benefits Manager of the Flagstar as of July 10, 2006. (*Id.* ¶ 15.) She signed the Plan's 5500 Reports as "Plan Administrator." (*Id.*; Pls.' Resp. Ex. H at 3.) Accordingly, Plaintiffs allege that England was a Plan fiduciary during the Class Period. (Compl. ¶ 15.)

Plaintiffs allege that defendants John Does 1-20[1] were "an investment committee and any other committee(s) which administered the Plan and all members thereof." (*Id.* ¶ 16.) Plaintiffs claim that while they currently do not know the identities of these defendants, they are believed to be employees of the Company and fiduciaries of the Plan who were responsible for carrying out its provisions. (*Id.*) Plaintiffs allege that defendants Richard Roes 1-20 (the "Monitoring Defendants") were "persons who had the duty and responsibility to properly appoint, monitor, and inform the John Doe defendants (as defined herein) and/or other persons who exercised day-to-day responsibility for the management and administration of the Plan and its assets." (*Id.* ¶ 17.)

## C.   ERISA

Congress enacted ERISA in 1974 after studying the nation's private pension and other benefit plans for almost a decade. *Rankin v. Rots*, 278 F. Supp. 2d 853, 869 (E.D. Mich. 2003) (quoting *Central States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 569 (1985)). Congress sought to assure the financial soundness and equitable character of employee benefit plans. *Id.* To that end, ERISA requires plans to name fiduciaries, to whom strict and

---

[1] The use of unidentified defendants is permissible at this stage in the litigation, as evidenced in other cases. *See, e.g.,In re Goodyear Tire & Rubber Co. ERISA Litig.*, 438 F. Supp. 2d 783, 787 (N.D. Ohio 2006).

4

detailed duties and obligations are assigned. *Id.* at 870. ERISA requires benefit plans to "provide for one  or more named fiduciaries who jointly or severally shall have authority to control and manage the operations and administration of the plan." 29 U.S.C. § 1102(a)(1).

Under section 404, a plan fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: providing benefits to participants and their beneficiaries; and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). This must be done "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man" would use. § 1104(a)(1)(B). If a fiduciary breaches these duties, he "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate." § 1109(a).

Under ERISA, a person is a plan's fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." § 1002(21)(A).

### D.    The Claims

#### 1.    Count One - Breach of Fiduciary Duties

Plaintiffs' complaint alleges that Defendants violated their fiduciary duties in several ways. (Compl. ¶ 2.) Plaintiffs contend that Defendants failed to prudently and loyally manage the Plan's investments by: "(1) continuing to invest Plan assets in Company stock when it was imprudent to do so; (2) failing to provide complete and accurate information to Plan participants regarding the Company'[s] financial condition and the prudence of investing in company stock; and (3)

maintaining the Plan's pre-existing heavy investment in Flagstar equity when Company stock was no longer a prudent investment for the Plan." (*Id.*) Plaintiffs allege that Defendants knew or should have known that investing in Flagstar stock was imprudent because of Flagstar's significant credit risks, and uncertainty about how devastating the recession would get, which made Flagstar stock "a particularly risky and imprudent investment for the Plan's participants' retirement savings." (*Id.* ¶ 5.) Plaintiffs aver that Defendants had the discretion to establish and change what investment options Participants had, and that by continuing to offer Flagstar stock as an option they acted imprudently. (*Id.* ¶¶ 34-36, 39.)

In support of their allegations, Plaintiffs claim Defendants knew Flagstar was heavily exposed to concentrations of credit risk in areas of the country that were hardest hit by the credit collapse such as Michigan, California, and Florida; Flagstar was not profitable and did not have "good prospects;" Flagstar's credit costs and loan losses continually increased throughout the Class Period; there were serious concerns about the Company's capital levels throughout the Class Period and several multi-million dollar cash infusions from the government and private parties were needed to avoid bankruptcy; Flagstar was unable to pay dividends during the Class Period; and finally, Flagstar's debt and equity were downgraded repeatedly during the Class Period. (*Id.*) As a result of these factors, Flagstar's stock plummeted in value over the Class Period. (*Id.*) At the beginning of the Class Period the stock was trading at $14.95 per share. (Pls.' Resp. 3.) When Plaintiffs filed their response on August 13, 2010, it was trading at just $0.274 per adjusted share.[2] Over the Class

---

[2] On May 27, 2010, Flagstar ordered a 1:10 reverse stock split. (Pls.' Resp. 3.) The $0.274 per adjusted share was based on the stock's closing price on August 13, 2010 which was $2.74 per share. (*Id.*) The Court notes that Citigroup had also ordered a 1:10 reverse stock split. WALL ST. J., Mar. 26-27, 2011, at A5.

Period, Flagstar stock's value dropped over 95%. (*Id.*)

Additionally, Plaintiffs cite many press releases and SEC filings Flagstar made during 2007 and 2008 which described Flagstar's losses as more significant than previously projected. (*Id.* ¶¶ 40, 42, 43, 45, 49, 53, 54, 62.) The Complaint also described how Flagstar's credit ratings had been downgraded several times (*id.* ¶¶ 50, 61), and analysts' poor evaluation of the stock or Flagstar's future prospects (*id.* ¶¶ 47, 48, 56, 60, 64, 68).

The Plaintiffs also highlighted the fact that the Company repeatedly sought and received large infusions of capital from private investors and the government. (*Id.* ¶¶ 67, 70, 74, 75.) In particular, Flagstar applied for an exception to the New York Stock Exchange's ("NYSE") rule requiring shareholder approval prior to the issuance of securities worth more than twenty percent of a corporation's outstanding shares. (*Id.* ¶ 67.) The exception only applies "in cases in which the delay involved in getting shareholder approval would seriously jeopardize the financial viability of the listed company." (*Id.*) On January 2, 2009, Flagstar announced that the NYSE granted its request to forgo the shareholder vote. (*Id.* ¶ 71.) By February, Flagstar arranged for an infusion of capital consisting of over $266 million from the Federal government's TARP fund and $250 million from private equity investors. (*Id.* ¶ 74.) Flagstar stock continues to trade on the NYSE.

Plaintiffs allege that despite this infusion, Flagstar announced that it continued to perform poorly throughout 2009. (*Id.* ¶¶ 76, 78, 81.) On August 14, 2009, Bloomberg News published an article entitled "Toxic Loans Topping 5% may Push 150 Banks to Point of No Return." (*Id.* ¶ 79.) Bloomberg described how a bank's economic outlook depended on, among other things, what percent of its loans are nonperforming and its equity-to-asset ratio. (*Id.*) The article described how it can be fatal for a bank to have 5% of its loans nonperforming and that "[o]nce it gets around 10

percent, you're likely toast." (*Id.* (quotation marks omitted).) A high percentage of nonperforming loans is exacerbated by a low equity-to-asset ration. (*Id.*) At the time of the article, Flagstar reported that 11.2% of its loans were nonperforming and that its equity-to-assets ration was 5.4%. (*Id.*) Flagstar reported only having an allowance for loan losses of 5.4% of total loans. (*Id.*)

After its fifth straight quarterly loss, Flagstar filed a proxy statement asking shareholders to increase the number of outstanding shares from 750 million to three billion in an effort to raise more capital. (*Id.* ¶ 82.). Again, on December 14, 2009, Flagstar announced it was short on funds and intended to commence a rights offering for up to 704 million shares of its common stock. (*Id.* ¶ 84.) On January 27, 2010, Flagstar entered into a supervisory agreement with the United States Office of Thrift Supervision. (*Id.* ¶ 86.) The agreement required Flagstar to "enact sweeping changes that are intended to shore up its risky banking practices and to adhere to strict reporting obligations to the OTS." (*Id.*)

Plaintiffs claim that Defendants acted imprudently by continuing to offer Flagstar stock as an investment option from January 2007 to the present despite the financial conditions described above. (*Id.* ¶ 100.)

In support of their claim that Defendants breached their fiduciary duties by failing to provide complete and accurate information to Plan Participants, Plaintiffs allege that Defendants filed several SEC documents that contained "numerous material misrepresentations and omitted to state material facts." (*Id.* ¶ 88.) These SEC documents were incorporated by reference into summaries Defendants distributed to Plaintiffs describing the Plan. (*Id.*) Furthermore, Plaintiffs allege that Defendants knew or should have known that the information contained in the SEC filings was inaccurate and misleading. (*Id.* ¶ 90.) Plaintiffs also claim that Defendants breached their fiduciary duties because

8

they "fostered a positive attitude toward the Company's stock, and/or allowed participants in the Plan to follow their natural bias towards investment in the equities of their employer." (*Id.* ¶ 101.) Plaintiffs state that the fiduciary communications Defendants sent to Participants did not adequately explain the risk/return profile of the Flagstar stock option. (*Id.*) Plaintiffs contend that had Defendants fully and accurately disclosed Flagstar's true financial and operating condition, Participants would not have chosen Flagstar stock as an investment option to the same extent they did. (*Id.* ¶ 32.)

### 2.    Count Two - Failure to Avoid Conflicts of Interest

Plaintiffs next allege that Defendants violated their fiduciary duties of loyalty and "exclusive purpose" to manage the Plan solely for the Participants and their beneficiaries' benefits. (*Id.* ¶ 107.) Plaintiffs contend  Defendants breached this duty by failing to "timely engage independent fiduciaries who could make independent judgments concerning the Plan's investments in the Company's own securities;" and "by otherwise placing their own and/or the Company's interests above the interests of the Participants with respect to the Plan's investment in the Company's securities." (*Id.* ¶ 108.)

### 3.    Count Three - Failure to Monitor

This claim is only directed at Flagstar and the Monitoring Defendants. (*Id.* ¶ 113.) Plaintiffs claim the Monitoring Defendants failed to properly appoint, monitor, and inform the John Doe defendants about the true financial and operating condition of Flagstar. (*Id.* ¶ 17) Plaintiffs further contend that the Monitoring Defendants allowed the John Doe defendants to imprudently continue to offer Flagstar stock as an investment option under the Plan when they knew the market price of the stock was artificially inflated. (*Id.*)

**E.    Defendants' Motion to Dismiss**

Defendants filed this motion to dismiss all of Plaintiffs' claims under Federal Rule of Civil

Procedure 12(b)(6) on July 16, 2010. Defendants put forth several reasons why their motion should

be granted. First, Defendants argue that Plaintiffs lack standing because they were not employees

at the time they filed their claim and therefore were not participants or beneficiaries of the Plan as

that term is defined by ERISA. (Def.'s Mot. 5.)[3] In the alternative, Defendants claim that Plaintiffs

have failed to state a claim for breach of fiduciary duty (*id.* at 6), failure to monitor (*id.* at 17), and

conflict of interest (*id.* at 17-18). Even if this Court believes Plaintiffs alleged sufficient facts to

make such claims, Defendants contend that ERISA section 404(c) bars any recovery Plaintiffs seek

because under the Plan, Participants exercised independent investment control over their accounts.

(*Id.* at 15.) Finally, Defendants move to dismiss the Executive Defendants from this action because

Plaintiffs have failed to allege that they were Plan fiduciaries with respect to the specific decision

to offer Company Stock as an investment option. (*Id.* at 19).

## STANDARD OF REVIEW

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege facts

which, if true, would entitle it to relief. This requires more than a mere formulaic recitation of the

---

[3] Defendants also argue that this Court lacks subject matter jurisdiction over Plaintiffs' claims. (Def.'s Mot. 5.) Defendants support this claim with two citations to cases purporting to explain the limitations on ERISA subject matter jurisdiction. (*Id.*) This argument appears to be without merit. Under 29 U.S.C. § 1132(b), a participant or beneficiary may bring a civil action to enforce its rights under § 1109. That section states that if a fiduciary breaches his duties, he "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate." § 1109(a). As a result, if Plaintiffs are participants then this Court has subject matter jurisdiction. Accordingly, Defendants' claim that this Court lacks subject matter jurisdiction will not be addressed further.

elements of a cause action, and conclusory statements alone will be insufficient. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (internal citations omitted); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2008). The claims set forth must be plausible, rather than simply conceivable. *See Twombly*, 550 U.S. at 570. When evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in its favor. *See DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

## DISCUSSION

Defendants move to dismiss Plaintiffs' claims under a variety of theories. First, Defendants argue that Plaintiffs lack standing. Next, they contend that Plaintiffs have failed to allege sufficient facts to support a claim for breach of fiduciary duty, failure to monitor, or failure to avoid a conflict of interests. Furthermore, Defendants claim that even if Plaintiffs have stated such claims, application of section 404(c) of ERISA bars any recovery in this case. Finally, Defendants argue that this Court must dismiss the Executive Defendants because Plaintiffs have failed to allege that they were fiduciaries with respect to the decision to continue offering Flagstar stock as an investment option under the Plan. Each of these arguments will be addressed in turn.

## I.    Do Plaintiffs Have Standing?

Under ERISA section 502(a)(2) a civil action may be brought "by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109(a) states that if a fiduciary breaches his duties, he "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . and shall be subject to such

other equitable or remedial relief as the court may deem appropriate." Because Plaintiffs are suing on behalf of the Plan and all its Participants for damages suffered by the Plan as a result of Defendants actions (Compl. ¶ 128), the only question is whether Plaintiffs are "participants" as that term is defined by ERISA.

A "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . ." 29 U.S.C. § 1002(7). The United States Supreme Court has construed the term "participant" to mean, in part, former employees "who have a 'colorable claim' to vested benefits." *Bridges v. Am. Elec. Power Co.*, 498 F.3d 442, 445 (6th Cir. 2007) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989)). The question becomes whether, if the plaintiffs win their case, they will receive a Plan benefit. *Id.* (quoting *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007)). If the employees have already received all of their vested benefits, they must show "that they are claiming an amount of money to which they are entitled by the plan documents over what they received when they retired and received the money in their retirement accounts." *Harzewski*, 489 F.3d at 804. For a claim of breach of fiduciary duties, the plaintiff must allege facts sufficient to establish that "had it not been for the trustees' breach of their fiduciary duty he would have been entitled to greater benefits than he received." *Id.* at 806.

In *Bridges*, the Sixth Circuit adopted the reasoning in *Harzewski* and held that former employees may have participant standing despite "cashing out" of their defined contribution plan. 498 F.3d at 445. Specifically, the court held that Kermit Bridges had standing to maintain a claim for breach of fiduciary duties against his former employer, American Electric Power Company ("AEP"), for actions AEP took between 1998 and 2002 despite the fact that he no longer worked

there and sold his plan holdings in 2004. *Id.* at 444. In doing so, the Sixth Circuit specifically noted

that *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947 (6th Cir. 1990) and *Swinney*

*v. General Motors Corporation*, 46 F.3d 512 (6th Cir. 1995) were not helpful to resolving the case.

*Bridges*, 498 F.3d at 445 n.3.

In this case, Plaintiffs clearly have standing. Although they may not have been current

employees when they filed their claim, Plaintiffs remained "participants" for standing purposes

under *Firestone* and *Bridges* because they have a "colorable claim" to benefits they were entitled

to under the Plan. *See Firestone*, 489 U.S. at 117; *Bridges*, 498 F.3d at 445. Even if Plaintiffs were

the ones who ended their employment relationship with Flagstar and received all of their vested

benefits, Plaintiffs still have standing because their claim is that had Defendants not breached their

fiduciary duties they would have been entitled to greater benefits under the Plan. *See Bridges*, 498

F.3d at 445; *Harzewski*, 489 F.3d at 804. Defendants' arguments to the contrary, which rely solely

on *Teagardener* and *Swinney*, are without merit.

## II.  Have Plaintiffs Stated a Claim for Breach of Fiduciary Duty?

The Sixth Circuit has explained that the fiduciary duties described in section 404(a)

constitute three separate components:

> The first is a "duty of loyalty" pursuant to which all decisions
> regarding an ERISA plan must be made with an eye single to the
> interests of the participants and beneficiaries. The second obligation
> imposed under ERISA, the "prudent man" obligation, imposes an
> unwavering duty to act both as a prudent person would act in a
> similar situation and with single-minded devotion to those same plan
> participants and beneficiaries. Finally, an ERISA fiduciary must act
> for the exclusive purpose of providing benefits to plan beneficiaries.

*Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995) (internal quotations and citations omitted); *see*

*also Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999). In order to state a claim for

breach of a fiduciary duty under ERISA, the plaintiff must allege that the defendant was a fiduciary who breached one of the above-mentioned duties while acting in his or her capacity as a plan fiduciary. *In re Huntington Bancshares Inc. ERISA Litig.*, 620 F. Supp. 2d 842, 849 (S.D. Ohio 2009). Under ERISA, someone is a fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." § 1002(21)(A).

Plaintiffs' breach of fiduciary duty claim in Count I accuses Defendants of breaching their fiduciary duties in several ways. Plaintiffs allege that Defendants breached their duty to act prudently by continuing to offer Flagstar common stock as one of 23 investment options when they knew it was an imprudent investment, and for failing to divest the Plan's pre-existing investments in Company Stock once Defendants realized, or should have realized, it was imprudent to continue investing in Flagstar. (Compl. ¶ 2.) Plaintiffs also claim that Defendants breached their duty of loyalty by failing to provide complete and accurate information regarding Flagstar's financial position. (*Id.*) Finally, Plaintiffs contend that Defendants breached their co-fiduciary obligations by aiding other defendants' breach of their fiduciary duties and failing to remedy those breaches and/or failing to fully disclose material information to other fiduciaries. (Compl. ¶ 102.)

A.     **Defendants Duty to Act Prudently[4]**

The first question this Court must decide is whether Defendants were acting as fiduciaries

---

[4] The law and analysis in this section applies to Plaintiffs' claim that Defendants breached their fiduciary duties by continuing to offer Flagstar stock as an investment option and Plaintiffs' claim that Defendants should have divested from the Company Stock the Plan had already invested in. Courts often analyze these two claims together. *See, e.g.,Edgar v. Avaya, Inc.*, 503 F.3d 340, 348 (3d Cir. 2007); *In re Huntington*, 620 F. Supp. 2d at 852.

when they decided to continue offering Company Stock as an investment option and declined to divest the Plan's existing Flagstar investments. *See Kuper*, 66 F.3d at 1458. This inquiry typically turns on whether Defendants were exercising discretion when deciding not to divest or cease offering Company Stock as an investment option. *See* 29 U.S.C. § 1002(21)(A). Managing a plan's assets is generally a fiduciary function. *In re Goodyear Tire & Rubber Co. ERISA Litig.*, 438 F. Supp. 2d 783, 791 (N.D. Ohio 2006). A fiduciary is not required to, and in fact may not, blindly follow Plan terms if they violate ERISA. *Kuper*, 66 F.3d at 1457; *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 860 (N.D. Ohio 2006); *See also* 29 U.S.C. § 1104(a)(1)(D) (stating fiduciaries must discharge their duties "in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with the provisions of this title and title IV*") (emphasis added).[5] Accordingly, even if the Plan mandated that Company Stock remain an option, Defendants breached their fiduciary duties by offering it if Flagstar was not a prudent investment.

Plaintiffs emphasize that Defendants maintained discretion to choose which investment options to offer. (Pls.' Resp. 4-5.) Indeed, it seems clear that the Plan, by its own terms, supports Plaintiffs' position. The Amended Plan Document states "[t]he Employer shall not be relieved of fiduciary responsibility for the selecting and monitoring of the Permissible Investments under the Plan." (Def.'s Mot. Ex. 5 ¶ 8.02 at 37.) Accordingly, the Court holds that Defendants were acting as fiduciaries when they did not choose to remove Flagstar stock as an investment option. On the

---

[5] *But see In re Citigroup ERISA Litig.*, No. 07 Civ. 9790, 2009 WL 2762708, at *7 (S.D.N.Y. Aug. 31, 2009) (holding administrators had no discretion to cease offering company stock as investment option, and accordingly were not fiduciaries with respect to that decision, where the plan stated "the Citigroup Common Stock Fund shall be permanently maintained as an Investment Fund under the Plan.")

15

other hand, since the Plaintiffs selected and controlled their plan investments, the Defendants could not have divested or sold the Company Stock in the Plaintiffs' accounts.[6]

Defendants claim that deciding not to eliminate Company Stock as an investment option was prudent, and also claim that they are entitled to a presumption that their decision was prudent.[7] (Def.'s Mot. 8.) Furthermore, Defendants argue that Plaintiffs have not pled facts sufficient to rebut the presumption, and therefore their claims should be dismissed. (*Id.* at 9-10.)  In response, Plaintiffs argue that the presumption should not be applied to a motion to dismiss. (Pls.' Resp. 5.) Plaintiffs suggest that their Complaint need only satisfy the liberal pleading requirements of Rule 8(a), and should be deemed sufficient if their allegations put Defendants on notice of the claims they are trying to make. (*Id.* at 7.)  In the alternative, Plaintiffs contend that even if the presumption is applicable at this stage, Defendants are not entitled to it (*id.* at 5), or that their pleadings, if true, would overcome the presumption (*id.* at 7).  Plaintiffs argue that Defendants are not entitled to the presumption because the instant Plan does not require them to invest in Company Stock. (*Id.* at 4.)

### 1.    The Presumption of Prudence

Under ERISA, fiduciaries generally must diversify investments of plan assets to minimize risk.  29 U.S.C. § 1104(a)(1)(C).  This requirement, however, is waived for certain kinds of investment plans.  Eligible individual account plans ("EIAPs") are exempt from the diversification requirement. § 1104(a)(1)(D). An EIAP is "an individual account plan which is (i) a profit sharing,

---

[6] Accordingly, the Court will not address Plaintiffs' claim that Defendants breached their fiduciary duties by failing to divest Participant accounts already investing in Company Stock further.

[7] The presumption of prudence that Defendants urge this Court to apply when deciding their motion to dismiss will further be referred to simply as "the presumption."

stock bonus, thrift, or savings plan; (ii) an employee stock ownership plan; or (iii) a money purchase plan which was in existence on September 2, 1974, and which on such date invested primarily in qualifying employer securities." § 1107(d)(3)(A). Although fiduciaries of EIAPs do not need to always diversify investments, they are exempted from their duty to act prudently "only to the extent that it requires diversification." § 1104(a)(1)(C).

The presumption Defendants invoke was first articulated by the United States Court of Appeals for the Third Circuit in *Moench v. Robertson*, 63 F.3d 553, 576 (3d Cir. 1995). *Moench* dealt with an employee stock ownership plan. Employee stock ownership plans ("ESOPs") are benefit plans that compensate employees with stock and are "designed to invest primarily in qualifying employer securities." 29 U.S.C. § 1107(d)(6)(A). The court held that "an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision." *Moench*, 63 F.3d at 576. A plaintiff can rebut the presumption by establishing the administrator abused its discretion by deciding to invest in company stock. *Id.*

The *Moench* court explained that Congress' decision to exempt ESOPs from the diversification requirement demonstrated that it believed there is some value, in and of itself, to employee ownership of its employer's securities. *Id.* at 570. The court warned, however, that when the employer's financial condition starts to deteriorate, fiduciaries that are also corporate officers "begin to serve two masters." *Id.* at 572. It stated that "the more uncertain the loyalties of the fiduciary, the less discretion it has to act," and instructed that "when a fiduciary has dual loyalties, the prudent person standard requires that he make a careful and impartial investigation of all investment decisions." *Id.* (quoting *Martin v. Feilen*, 965 F.2d 660, 670 (8th Cir. 1992)) (quotation

17

marks omitted). A fiduciary abuses its discretion if he cannot show that he impartially investigated the options. *Id.* In *Moench*, the plan at issue did not absolutely require administrators to invest in company stock but fiduciaries were "more than simply permitted to make such investments." *Id.* at 571. Courts have found the presumption inapplicable where the plans at issue merely permitted fiduciaries to offer corporate stock as an investment option. *See, e.g., In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231, 238 n.5 (3d Cir. 2005); *Graden v. Conexant Sys., Inc.*, 574 F. Supp. 2d 456, 463-64 (D.N.J. 2008).

In *Kuper v. Iovenko*, the Sixth Circuit adopted the *Moench* presumption for ESOP fiduciaries. 66 F.3d at 1459. Under *Kuper*, "[a] plaintiff may rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Id.*

Although there are many cases dealing with the presumption, several questions must be answered before determining its applicability to Plaintiffs' claims. First, does the Plan qualify for the presumption, or does it simply permit fiduciaries to offer Flagstar stock as an investment option? Next, does the presumption apply to all EIAPs, or just ESOPs? Should it be applied on a defendant's motion to dismiss under Rule 12(b)(6)? Finally, what facts must a plaintiff plead in order to rebut the presumption and survive a motion to dismiss? These questions will now be addressed in turn.

### (a) Does the Presumption Apply to the Plan?

The *Moench* presumption applies to plans even if they do not absolutely require fiduciaries to offer company stock, as long as the administrators are "more than simply permitted to make such investments." *Moench*, 63 F.3d at 571. Plaintiffs insist the presumption should not apply because

the Plan never did more than simply permit Defendants to offer Company Stock. (Pls.' Resp. 4.) Section 20.12 of the Plan Document says the Company Stock fund will exist *if* it is one of the *permissible* investment options. (*Id.* at 4-5; Defs.' Mot. Ex. 1 at 80.) Furthermore, the Plan does not enumerate the permissible investment options, suggesting that selecting the options is an administrative function as opposed to a settlor one. (Pls.' Resp. 5 n.4.) Defendants rely on, *Herrera v. Wyeth.* No. 08-4699, 2010 WL 1028163 (S.D.N.Y. Mar. 16, 2010) to support their argument that the Plan itself suggests that Flagstar stock was more than simply permitted as an investment option. (Defs. Reply 2 n.2.)

In *Wyeth*, the court found that the plan implicitly encouraged investment in company stock because the plan documents made several references to the Wyeth Common Stock Fund. *Id.*, at *5. The court held that the plan itself offered "evidence of the settlor's clear intent that the Stock Fund be offered as an investment option." *Id.*, at *6 ("From the references to the Stock Fund found throughout the plan agreements, it is clear that the agreements presuppose the existence of the Stock Fund."). As a result, the court found that the plaintiffs were unable to "harmonize" these repeated references with their theory that the fiduciaries had discretion not to offer company stock as an investment option. *Id.*

The Flagstar Bank Plan lists "GENERAL GUIDELINES FOR SELECTING AND MONITORING INVESTMENT OPTIONS. The Flagstar Bank committee has determined that a number of factors should be reviewed when selecting the investment options that constitute those broad range of investment alternatives." However, after listing "general criteria", and then additional requirements for review, the plan states:

> This Investment Statement (including the criteria for the selection and monitoring of investment options under the Plan) does not apply

19

to employer securities (also known as Company stock) offered under
the Plan.

(Pls.' Resp. Ex. A – Flagstar Bank 401(k) Investment Statement, at 2.) Accordingly, the Plan does

create a special type of preference for Flagstar stock, as well as protection for the Defendant

fiduciaries. The Court concludes that this brings the instant plan under the *Moench* presumption,

because it evidences an intent that the Stock Fund be offered as a investment option.

### (b)    Does the Presumption Apply to All EIAPs?

As stated above, EIAPs are exempt from the prudent person standard of care's requirement

that plan fiduciaries diversify the Plan's investments. 29 U.S.C. § 1104(a)(2); *Wright v. Or.*

*Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004). Additionally, EIAPs are exempt from

ERISA's general rule that no more than ten percent of a plan's assets may be invested in employer

securities § 1107(b). These exemptions reflect a strong policy in favor of investment in employer

stock. *In re Diebold ERISA Litig.*, No. 5:06-cv-0170, 2008 WL 222712, at *7 (N.D. Ohio May 28,

2008).

The Sixth Circuit has not held that the presumption articulated in *Kuper* applies to all EIAPs.

*Kuper*, however, does give some guidance. Although the court specifically addressed ESOPs, the

ERISA provisions it cited to when discussing Congress' intent to encourage employee ownership

of their company stock exempt all EIAPs (of which ESOPs are one subset) from the diversification

requirement. *See* 66 F.3d at 1458. Other circuits and district courts have held that the presumption

applies to all EIAPs, not just ESOPs. *See, e.g., Edgar v. Avaya, Inc.*, 503 F.3d 340, 347 (3d Cir.

2007) (applying presumption to plan that offered company stock as one of twenty-three investment

options).[8]  The *Edgar* court stated that ESOPs are merely one type of EIAPs and that "one of the

purposes of EIAPs is to promote investment in employer securities." *Id.*

   Other courts have also found that EIAPs serve the same Congressionally-approved goal of

encouraging employee-ownership of company stock that ESOPs do.  *See e.g.*, *Kirschbaum v. Reliant*

*Energy*, 526 F.3d 243, 254 (5th Cir. 2008) ("The *Moench* presumption logically applies to any

allegations of fiduciary duty breach for failure to divest an EIAP or ESOP of company stock."); *In*

*re Citigroup ERISA Litig.*, No. 07-9790, 2009 WL 2762708, at *14 (S.D.N.Y Aug. 31, 2009) (Stein,

J.) ("ERISA's purpose, which is, at least for EIAPs and ESOPs, to encourage employee stock

ownership, not to guarantee retirement benefits.").  The Court agrees, and decides to follow the

Third Circuit's decision in *Edgar* holding that the *Kuper* presumption applies to all EIAPs, not just

ESOPs.

### (c)      Does the Presumption Apply on a Motion to Dismiss?

   There is a significant split of authority over whether the presumption should be applied when

evaluating a defendant's motion to dismiss under Rule 12(b)(6). *In re Ferro*, 422 F. Supp. 2d at 860.

Again, the Sixth Circuit has failed to give explicit guidance regarding this question.  The Third and

Ninth Circuits have both definitively held that it should be applied. *Edgar*, 503 F.3d at 348; *Wright*,

360 F.3d at 1098.  Additionally, several district courts have adopted the views expressed in those

cases. *See, e.g.*, *Gearren*, 690 F. Supp. 2d at 270. The split of authority can be seen amongst district

courts in this Circuit as well. *Compare In re Regions Morgan Keegan ERISA Litig.*, 692 F. Supp.

---

   [8] *See also Wright*, 360 F.3d at 1097; *Benitez v. Human, Inc.*, No. 3:08-cv-211-H, 2009
WL 3166651, at *6, 6 n.2; (W.D. Ky. Sept. 30, 2009); *Landgraff v. Columbia/HCA Healthcare*
*Corp. of Am.*, No. 3-98-0090, 2000 WL 33726564, at *5 (M.D. Tenn. May 24, 2000), *aff'd*, 30
Fed. Appx. 366 (6th Cir. Feb. 7, 2002).

2d 944, 954 (W.D. Tenn. 2010) ("*Regions I*") (not applying the presumption)[9] *with Dudenhoeffer v. Fifth Third Bank*, — F. Supp. 2d —, 2010 WL 4970767, at *5 (S.D. Ohio Nov. 24, 2010) (applying presumption).[10]

The courts declining to apply the presumption to a motion to dismiss note that presumptions are generally considered evidentiary standards, not pleading requirements. *In re Ferro*, 422 F. Supp. 2d at 860 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002)). Accordingly, requiring the plaintiff to allege facts sufficient to overcome the presumption would conflict with the liberal pleading requirements of Rule 8(a). *In re Ferro*, 422 F. Supp. 2d at 860. In response, courts that apply the presumption at this stage argue that the *Moench* presumption is not an evidentiary standard. It is "merely a shorthand way to refer to what the *Moench* court called a standard of review." *Gearren*, 690 F. Supp. 2d at 269. Viewing the presumption that way, "if a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is required to dismiss the complaint." *Edgar*, 503 F.3d at 349; *see also Wright*, 360 F.3d at 1098.

The Court finds that although the term "presumption" often describes evidentiary standards, in this context the presumption merely indicates the standard required for plaintiffs to state claims in "stock drop" cases. Accordingly, the Court chooses to follow those authorities applying the presumption when deciding a motion to dismiss.

### (d)    What is Required to Overcome the Presumption?

---

[9] *See also Sims v. First Horizon Nat'l Corp.*, No. 08-2293-STA-cgc, 2009 WL 3241689, at *24-25 (W.D. Tenn. Sept. 30, 2009); *In re Diebold*, 2008 WL 222712, at *7; *In re Goodyear*, 438 F. Supp. 2d at 794; *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 828-29 (S.D. Ohio 2004).

[10] *See also Benitez*, 2009 WL 3166651, at *6; *In re Ford Motor Co. ERISA Litig.*, 590 F. Supp. 2d 883, 889 (E.D. Mich. 2008); *Shirk v. Fifth Third Bancorp*, No. 05-cv-49, 2007 WL 1100429, at *10 (S.D. Ohio Apr. 10, 2007).

The Court must next address what Plaintiffs must allege to overcome the presumption. In *Kuper*, the Sixth Circuit held that a plaintiff may rebut the presumption "by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision." 66 F.3d at 1459. Ruling on the merits, that court held that the plaintiffs failed to overcome the presumption merely by alleging the defendants did not consider diversifying or liquidating investments containing company stock despite knowing about various financial woes the company was experiencing[11] and the stock eventually lost almost eighty percent of its value. *Id.* at 1459.

There is currently a split of authority regarding whether plaintiffs must allege fraud, the impending collapse of the defendant corporation, or other dire circumstances. *In re Ferro*, 422 F. Supp. 2d at 860. Again, the Sixth Circuit has not specifically addressed this issue. Several courts from other circuits require such allegations. *See, e.g.*, *Kirschbaum*, 526 F.3d at 247; *Edgar*, 503 F.3d at 348; *Wright*, 360 F.3d at 1098. In *Kirschbaum*, the Fifth Circuit held that the plaintiffs had not overcome the presumption where they alleged that the stock dropped forty percent after the defendant corporation announced that some of its employees were engaged in fraudulent transactions which inflated the company's stock price. 526 F.3d at 247. The court held that the presumption was not overcome, in part, because there was "no indication that REI's viability as a going concern was ever threatened." *Id.*

District courts from the Sixth Circuit are also split regarding this issue. *Compare In re Ford*, 590 F. Supp. 2d at 982 ("[A] stock can be imprudently risky for an employee savings plan even in the absence of fraud or imminent collapse.") *with Dudenhoeffer*, 2010 WL 4970767, at *7-8

---

[11] Such financial concerns included a recapitalization that increased the company's debt, interest expenses, and capital repayments; decreased operational diversity; a major fire at a plant that limited production; and a decline in net sales/income. *Kuper*, 66 F.3d at 1451.

(holding that plaintiffs failed to overcome the presumption, in part, because "the Complaint suggests that Fifth Third is and was a viable, on-going concern"). In *Dudenhoeffer*, even though the plaintiffs alleged that the price of Fifth Third stock dropped seventy-five percent, the court held the presumption was not overcome. 2010 WL 4970767, at *7-8. The court found that "Fifth Third remained a viable company throughout the class period." *Id.*, at *8. Factors that supported the court's conclusion included the fact that other entities increased their investment in Fifth Third stock during the class period and Fifth Third received government loans. *Id.*

In *Dudenhoeffer*, Judge Sandra Beckwith stated "the fact that the company remained viable despite a substantial drop in the stock price is a strong indicator that no breach of fiduciary duty occurred by remaining invested in employer securities." *Id.*, at *8. Judge Beckwith also pointed to Fifth Third's participation in the Capital Purchase Program (CPP), not as a stigma and a sign of financial stress, but as a positive:

> [T]he Treasury Department states that the purpose of the CPP was to stabilize the financial system by providing capital to *viable financial institutions* of all sizes throughout the nation. Indeed, the Treasury Department goes on to state that participation [in the CPP] was *reserved for healthy viable financial institutions* that were recommended by their applicable federal banking regulator.

*Id.*, at *8 (emphasis in original) (quotation marks and citations omitted). In the instant case, the Court agrees that Plaintiffs' allegations must demonstrate that Flagstar was on the verge of impending collapse or other dire circumstances.

Even if a company seems to be doing poorly, the fact that other similarly-situated companies were also doing poorly during the 2008-09 economic tailspin, cuts against claims that fiduciaries breached their duties. *See, e.g., In re Huntington Bancshares Inc. Erisa Litigation*, 620 F.Supp.2d 842, 849 (S.D. Ohio 2009). In *In re Huntington*, the court rejected the plaintiffs' claims even though

there was a significant drop in Huntington's stock price, in part, because "Huntington's stock price essentially moved in tandem with the other regional banks in Huntington's geographic footprint over the Class period." *Id.* at 852; *see also In re American Express Co. ERISA Litig.*, — F. Supp. 2d —, 2010 WL 4371434, at *10 (S.D.N.Y. Nov. 2, 2010) (Koeltl, J.) ("[T]he price of the stock dropped, but it did so along with the stock of other companies."). The *In re Huntington* court further noted:

> Defendants cannot be held to a standard that would require them to predict the future of the financial markets so as not to breach their fiduciary duties under ERISA.
>
> As mentioned above, it is clear that the federal courts are currently experiencing a significant rise in "stock drop cases" due to the current status of the Stock Market and the economic climate in general which of course includes the subprime lending crisis. However, ERISA was simply not intended to be a shield form the sometimes volatile financial markets.

*Id.* at 853

Similarly, a district court in the Eastern District of Michigan has dismissed the plaintiffs' claims where, as here, the employees had complete control over the management of their accounts. *See Pfeil v. State Street Bank & Trust Co.*, No. 09-12229, 2010 WL 3937165, at *1 (E.D. Mich. Sept. 30, 2010). In *Pfeil*, plan participants had multiple options, including the GM Common Stock Fund, and the plan provided "participants may change the allocation of the assets in the Plan accounts between several options 'on any Business Day of the month'" up to "100%." *Id.* When granting the defendants' motion to dismiss, United States District Judge Denise Page Hood stated "[t]he plans at issue allow the participants to change the allocation of the assets from one account to another on any business day. Plaintiffs had total control over how to allocate their assets. . . . State Street cannot be held liable for actions which Plaintiff controlled." *Id.*, at *5.

      **2.**      **Analysis**

Plaintiffs have alleged that Defendants breached their fiduciary duty of prudence by continuing to offer Flagstar stock as an investment option. The Court concludes that given that each Plaintiff had total control over the investments in his/her Plan, the Defendants had no authority to either exercise control over the individual employee plan selections, or to divest already-made employee investments.

As to the continuing offering of Flagstar stock, the Court finds, given the language of the Flagstar Bank Plan, the *Moench* presumption applies to protect Defendants, that the presumption is applicable on Defendants' motion to dismiss, and that Plaintiffs must allege facts that, if true, prove Flagstar was on the verge of economic collapse or other "dire circumstances" in order to rebut the presumption and survive the motion. The Court holds that Plaintiffs have not met this burden, and grants Defendants' motion to dismiss with respect to Plaintiffs' claim in Count I that Defendants breached their fiduciary duty to act prudently by continuing to offer Flagstar stock as an investment option.

Plaintiffs cite the drop in Flagstar's stock; over ninety-five percent. Plaintiffs also aver that Defendant Flagstar was required to enter into a Supervisory Agreement with the Federal government in January 2010 to fix and regulate risky banking practices. (Compl. ¶ 86.) The Complaint also alleged that Flagstar's credit rating had been downgraded several times (*id.* ¶¶ 50, 61), and how analysts often gave poor evaluations of the stock or Flagstar's future prospects (*id.* ¶¶ 47, 48, 56, 60, 64, 68). Plaintiff's point out that 11.2% of Flagstar's loans were non-performing and that the Company's equity-to-assets ration was 5.4%. (*Id.* ¶ 79.) The Complaint alleges that as a result of these circumstances, Defendants knew Flagstar's stock was artificially inflated and therefore knew or should have know it was an imprudent investment. (Compl. ¶ 5.)

The Court notes that all of these factors occurred in the economic downdraft in the nation, and indeed, through the world, in 2008-2009. Thus, the critical question is whether, given this economic maelstrom, Plaintiff's allegations suffice. The following facts are not challenged by Plaintiffs: Flagstar Bank did not fail; Flagstar's common stock continues to be traded on the New York Stock Exchange; Flagstar received private capital infusions, and Flagstar participated in the federal TARP Program. As in the cases cited above, participation in the TARP program, and continued private investment in Flagstar demonstrate that it was, and is, a viable company. *See Dudenhoeffer*, 2010 WL 4970767, at *8.

Furthermore, Plaintiffs do not allege that Defendants engaged in any type of accounting irregularities or fraud. Such claims are very common in cases denying motions to dismiss. *See, e.g.*, *In re Ferro*, 422 F. Supp. 2d at 860-61; *In re Goodyear*, 438 F. Supp. 2d at 794 (finding plaintiffs' allegations that the defendant corporation's stock plummeted as a result of accounting "gimmickry and mismanagement" were sufficient to defeat defendants' motion to dismiss). In *In re Ferro*, the court emphasized that "this is not a case in which a plaintiff is complaining about mere stock fluctuations," and held that the plaintiff's allegations that "Ferro inflated its earnings expectations through accounting manipulations" were sufficient to state a claim that it breached its fiduciary duties. 422 F. Supp. at 860-61.

Finally, although Plaintiffs point out that several credit agencies downgraded Flagstar's credit rating (Compl. ¶¶ 50, 61), many financial experts recommended holding onto Flagstar securities during the Class Period. On January 28, 2008, Oppenheimer & Co. gave Flagstar stock the rating of "Perform." (Defs.' Mot. Ex. 8.) Such a rating signals to investors that Oppenheimer expects the stock "to perform in line with the S&P 500 within the next 12-18 months." (*Id.* at 4.)

The report also indicated that its rating "remain[d] Perform," indicating that the rating agency had previously believed that Flagstar stock would perform in line with other S&P 500 companies.

On July 12, 2007, Moody's Investors Service rated Flagstar's long-term deposits at Baa2, its bank financial strength at C-, and its short-term deposits at Prime-2. It also stated that its outlook regarding these ratings was "stable." (Ex. 7.) At the same time, while recognizing that the stock's performance demonstrated the volatility of the mortgage market, "[n]onetheless, a number of Flagstar's other financial fundamentals, such as asset quality and capital adequacy, are solid." (*Id.*) Accordingly, the Court holds that Plaintiff has failed to allege facts sufficient to overcome the *Moench/Kuper* presumption.

But even if the presumption does not apply, Defendants are still entitled to dismissal of the Complaint. At the end of the day, as Judge Gregory Frost set forth in *In re Huntington*, "[t]o state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that: (1) the defendant was a fiduciary of an ERISA plan who, (2) acting within his capacity as a fiduciary (3) engaged in conduct constituting a breach of his fiduciary duty." 620 F.Supp.2d 842, 849 (S.D. Ohio 2009) (quoting *In re Cardinal Health ERISA Litigation*, 424 F.Supp.2d 1002, 1016 (S.D. Ohio 2006)) (further citations omitted). In *Huntington*, the court held that it was unnecessary to determine whether the presumption applied to the defendants' actions because the Plaintiffs' claims failed to state a claim under *Twombly*. *Id.* at 851. The court found that private investment in Huntington had actually increased during the class period and that the company's stock fell in tandem with others in its geographical footprint. *Id.* at 852.

In the instant case, Plaintiffs' allegations also fail to state such a claim per *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Yes,

28

the fiduciaries created a 23 option menu that included Flagstar stock, but the plan participants had total control over their investment choices. The SPD warned Participants "[y]ou are responsible for investment decisions relating to the investment of assets in your Account under the Plan and the Plan fiduciaries are not responsible for any losses based on your investment instructions." (Defs.' Mot. Ex. 2, at 11.) Furthermore, Flagstar continued to be a viable banking institution with capital infusions from private investors and the TARP program. Accordingly, even if the *Moench* presumption does not apply, Count I cannot survive Defendant's Motion to Dismiss because the allegations do not set, with sufficient clarity under *Iqbal*, a breach of a fiduciary duty. Accordingly, Defendants motion to dismiss with respect to Plaintiffs' prudence claim is GRANTED.

**B.      Defendants' Duty to Disclose/Not Mislead**

The United States Supreme Court has stated that "lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." *Varity Corp v. Howe*, 516 U.S. 489, 506 (1996) (quoting *Peoria Union Stock Yards Co. v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983)). The duty of loyalty extends not only to mandatory actions ERISA requires fiduciaries to take, but also to any actions "that are ordinary and natural means of achieving the objective of the plan." *Id.* at 504 (quotation marks and citation omitted). This fiduciary duty constrains *all* discretionary actions undertaken. *See id.* ("If the fiduciary duty applied to nothing more than activities already controlled by other specific legal duties it would serve no purpose.").

In *Sprague v. General Motors Corporation*, the Sixth Circuit identified three ways a fiduciary may breach its duty of loyalty: (1) plaintiffs ask specific questions and receives an incomplete or misleading answer; (2) a plan provider *on its own initiative* provides misleading or inaccurate information about the plan; or (3) ERISA requires an administrator to make future

29

predictions about the plan and he fails to do so. 133 F.3d 388, 405-06 (6th Cir. 1998). This duty comprises both a negative duty not to misinform and an affirmative duty to provide information when silence might be harmful. *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 452 (6th Cir. 2002); *Krohn*, 173 F.3d at 548.

### 1.   Defendants' Affirmative Duty to Disclose

The duty to inform "is a constant thread in the relationship between beneficiary and trustee." *Krohn*, 173 F.3d at 548 (quoting *Bixler v. Cen. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)) (quotation marks omitted). *Krohn* dealt with a situation where a participant's husband asked the plan administrator about his wife's benefits and the administrator only told him about short-term benefits. *Id.* The Sixth Circuit held that failing to inform him about long-term disability pay she might be entitled to breached her duty to "carefully, completely and accurately" inform the participant of her all her options when answering the husband's inquiry. *Id.* at 551.

Absent a specific inquiry from a participant or beneficiary, however, there is no affirmative duty under ERISA to disclose non-public information regarding a company's financial condition. *Pirelli*, 305 F.3d 451; *In re Ferro*, 422 F. Supp. 2d at 864. Defendants' affirmative duty to disclose is limited to the requirements ERISA imposes under 29 U.S.C. §§ 1021-1026. *Sprague*, 133 F.3d 388; *In re Ferro*, 422 F. Supp. 2d at 864.

Although there is no affirmative duty to disclose certain financial information, if such information is distributed by a defendant while he is serving in a fiduciary capacity or incorporated into plan documents it must be complete and accurate. *In re Gen. Motors ERISA Litig.*, No. 05-71085, 2007 WL 2463233, at *6 (E.D. Mich. Aug. 28, 2007); *see also In re WorldCom*, 263 F. Supp.

2d at 768 ("What is required, is that any information that is conveyed to participants be conveyed in compliance with the standard of care that applies to ERISA fiduciaries."). In *In re General Motors*, the court denied the defendants' motion to dismiss because the plaintiffs alleged SEC filings that were incorporated by fiduciaries into plan summaries were misleading, and therefore sufficiently stated a claim for breach of the fiduciary duty of loyalty. 2007 WL 2463233, at *6.

Plaintiffs must allege what they believe the defendants should have disclosed, and provide a basis for that position. *In re Huntington*, 620 F. Supp. 2d at 856. When analyzing a motion to dismiss, some courts have held that alleging the defendants failed to disclose the "general risks" involved in investing in Company Stock was sufficient. *In re Ferro*, 422 F. Supp. 2d at 864. Many courts have rejected defendants' claims that disclosing non-public information indicating investing in Company Stock is imprudent would constitute insider trading and therefore cannot be the basis of ERISA fiduciary liability. *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 823 (S.D. Ohio 2004) (collecting cases). Defendants can always stop making new investments in a corporation, publically disclose the problems, and then sell existing shares without violating ERISA or securities regulations. *Id.*

### 2.    Defendants' Negative Duty Not to Mislead

To establish a claim for breach of the negative fiduciary duty not to mislead, plaintiffs must prove: (1) the defendant was acting as a fiduciary when the challenged representation was made; (2) the misrepresentation was material; and (3) the plaintiffs relied on the misrepresentation to their detriment. *Pirelli*, 305 F.3d at 449. An administrator breaches his fiduciary duty not to mislead regardless of whether the misrepresentation was made negligently or intentionally. *Krohn*, 173 F.3d at 548 (citing *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1163-64 (6th Cir. 1988)). Information

is material if "there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision." *Id.* at 547.

Courts often consider evaluation of these factors on a motion to dismiss inappropriate if they involve fact-intensive inquiries. *See, e.g.*, *In re Diebold*, 2008 WL 222712, at *10-11 (describing the question of reliance as being more amenable to disposition on a motion for summary judgment or at trial); *In re AEP*, 327 F. Supp. 2d at 832 (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 443 (3d Cir. 1996)) ("Whether communications constituted misrepresentations and whether they were material under the principles we have articulated are questions of fact that are properly left for trial.").

Generally, public statements about a corporation's financial situation alone will not expose a defendant to liability under ERISA. But such statements are actionable under ERISA if they are specifically tied to plan benefits. *Varity*, 516 U.S. at 505. They can also trigger fiduciary liability if they are incorporated into the plan or disseminated to plan participants. *See, e.g.*, *In re Goodyear*, 438 F. Supp. 2d at 795; *In re Ferro*, 422 F. Supp. 2d at 865.

This type of incorporation often happens with SEC filings. *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 361-62 (S.D.N.Y. 2009) (collecting cases). It is not necessary for the plan documents or summaries to contain a specific incorporation clause explaining that SEC or other corporate filings have been incorporated. *In re Schering-Plough Corp. ERISA Litig.*, No. 03-cv-1204, 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007). While normally the plaintiff must show an SEC filing was drafted by a corporate officer in their "fiduciary" capacity as opposed to their "corporate" capacity, a corporate document can still be subject to ERISA liability if it is later incorporated. In such a scenario, the question becomes whether the defendant was acting as a

32

fiduciary when they incorporated the SEC filing into a plan document or disseminated it to plan participants. *In re Gen. Motors*, 2007 WL 2463233, at *6.

If the answer is yes, the defendant may not argue that the SEC filing is not an ERISA communication because it is required to be filled out under securities' laws. *In re Morgan Stanley*, 696 F. Supp. 2d at 362-63; *see also In re Goodyear*, 438 F. Supp. 2d at 792 ("[C]ompliance with securities laws does not negate [defendants] requirement to comply with other laws, such as ERISA."). Encouraging participants to rely on SEC documents and other public information can incorporate those communications. *In re Morgan Stanley*, 696 F. Supp. 2d at 362; *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 883 (S.D. Tex. 2004).

In many cases, defendants argue that disclosures contained in their SEC filings or other incorporated documents shield them from liability arising out of allegations that they provided misleading or incomplete information. Courts respond to this defense in different ways. Some find the question to be one best resolved on a motion for summary judgment or at trial. *See, e.g., In re Morgan Stanley*, 696 F. Supp. 2d at 363. In *In re Morgan Stanley*, the court stated "[a] determination of whether the information provided to participants was adequate to inform them of the risks of investing in [employer] stock is a fact-intensive inquiry that must await a full factual record." *Id.* (quoting *In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 671 (S.D. Tex. 2004)).

Similarly, in *Shirk v. Fifth Third Bancorp*, No. 05-cv-49, 2007 WL 1100429 (S.D. Ohio Apr. 10, 2007), the court denied the defendants' motion to limit the plaintiffs' misrepresentation claim to damages incurred before January 31, 2003 because on that date they publically disclosed the corporate defects that comprised the underlying claim. *Id.*, at *16. The court stated that whether such "curative" disclosures were sufficient was a question best left for a later stage in the litigation

because "doubts regarding the reasonableness of reliance should be resolved in favor of extending the class period." *Id.* (quoting *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 143 (D.N.J. 1984)).

On the other hand, in *Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007*)*, the Third Circuit found that disclaimers in plan documents warning that the company fund was tied to market performance; each fund had different risks; it was particularly risky to invest in a non-diversified fund; each participant was responsible for investigating the investment option and in doing so should consider professional help; and that the plan did not guarantee a particular return on investment, was enough to satisfy the defendants' obligation not to misinform participants about risks associated with investing in the company fund. *Id.* at 350.

### 3. Analysis

Defendants make several arguments why Plaintiffs' breach of fiduciary duty claim with respect to Defendants' failure to disclose material information and refrain from making misleading statements should be dismissed. First, Defendants argue that there is no affirmative duty to disclose financial information outside of the specific requirements set forth in 29 U.S.C. §§ 1021-1026. Defendants point out that the cases articulating an affirmative duty to speak when the employer knows silence would be harmful involve instances where the defendant was aware of the individual plaintiff's circumstances and the misleading statement was prompted by specific questions. (Defs.' Mot. 12-13); *see also Krohn*, 173 F.3d at 548. In this respect, Defendants' arguments are persuasive, and the Court finds that Defendants had no affirmative obligation to disclose non-public financial information. *See Sprague*, 133 F.3d 388; *In re Ferro*, 422 F. Supp. 2d at 864. Nevertheless, Defendants can still be liable for providing misleading or incomplete information.

34

Defendants claim that Plaintiffs do not sufficiently allege that Defendants mislead them because they do not cite specific instances where Defendants made misrepresentations. (Defs.' Mot. 13-14.) Defendants also argue that SEC filings cannot form the basis of ERISA fiduciary liability even if they are incorporated into plan documents. (Defs.' Reply 4 n.9.) Analysis of one of the cases they cite, *Kirschbaum*, 526 F.3d at 256-57, demonstrates why this assertion misses the mark. In *Kirschbaum*, the Fifth Circuit held that those who sign SEC filings do not become fiduciaries simply because those documents are incorporated, and they are not liable if they contain misrepresentations. *Id.* (quoting *In re WorldCom*, 263 F. Supp. 2d at 766). This is true, but only stands for the proposition that individuals who fill out the forms are not necessarily ERISA fiduciaries. Defendants fail to appreciate that the proper inquiry is whether the fiduciaries who *incorporated* the documents are liable under ERISA for the misleading statements contained in the SEC filings. *See In re Gen. Motors*, 2007 WL 2463233, at *6. *Kirschbaum* actually supports this proposition. *See* 526 F.3d at 257 (distinguishing a case where the plaintiff alleged the employer used SEC filings as part of the plan summary for ERISA purposes).

Plaintiffs allege that Defendants filed several SEC documents that contained "numerous material misrepresentations and omitted to state materials facts." (Compl. ¶ 88.) Plaintiffs allege that these documents were incorporated into Plan summaries and documents.[12] (*Id.*) Plaintiffs also claim that Defendants breached their fiduciary duties because they "fostered a positive attitude toward the Company's stock," and failed to adequately warn participants of the risks associated with investing in Flagstar securities. (*Id.* ¶ 101.)

---

[12] Defendants do not deny that SEC filings were incorporated into Plan summaries or documents. (Defs.' Mot. 15.)

Although SEC filings can form the basis of a claim that the defendants breached their fiduciary duty not to mislead participants, the Court holds that Plaintiffs have failed to state a claim upon which relief may be granted. Plaintiffs' allegations regarding their disclosure and misrepresentation claims are the definition of conclusory, and must therefore be dismissed. *See Twombly.* 550 U.S. at 555. For example, the Complaint simply states that the SEC filings contained "numerous material misrepresentations and omitted to state materials facts." (Compl. ¶ 88.) It does not say which filings (although presumably the ones attached to Plaintiffs' Response) or how they were misleading. Additionally, Plaintiffs claim that Defendants were misleading because they fostered a positive attitude about Flagstar's stock, but they do not articulate how they fostered an overly positive attitude or why such actions were misleading. Accordingly, the Court holds that Plaintiffs have failed to state a claim upon which relief can be granted regarding Defendants' duty of loyalty. Defendants' motion is therefore GRANTED with respect to these claims.

**C.   Defendants' Co-Fiduciary Duties**

Plaintiffs also claim that Defendants are liable for their complacency or involvement in other fiduciaries' violations of their duties under ERISA § 404(a). (Compl. ¶¶ 102, 118.) An administrator is liable for the breach of another fiduciary if he "(1) knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or (2) enables another fiduciary to commit a breach; or (3) has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts to remedy the breach." 29 U.S.C. § 1105(a); *In re Morgan Stanley*, 696 F. Supp. 2d at 367. Generally, when the plaintiff adequately pleads the defendants breached their fiduciary duties, he or she also states a valid claim for co-fiduciary liability against the same defendant. *In re Morgan Stanley*, 696 F. Supp. 2d at 366; *Sims v. First Horizon Nat'l*

*Corp.*, No. 08-2293-STA-cgc, 2009 WL 3241689, at *30 (W.D. Tenn. Sept. 30, 2009). Because the Court finds Plaintiffs have not adequately stated a claim that Defendants breached their fiduciary duties, it also holds that they have not made a sufficient claim for co-fiduciary liability. Thus, Defendants' motion to dismiss Plaintiffs' claims for co-fiduciary liability is GRANTED.

## III.     Have Plaintiffs Stated a Claim for Conflict of Interest?

The duty of loyalty requires that "all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries." *Kuper*, 66 F.3d at 1458. As a result, administrators breach their duty if they engage in fiduciary activity while embroiled in a conflict of interest. A conflict of interest does not exist, however, simply because the defendant is a plan fiduciary and also works for the employer in a corporate capacity. *In re Ferro*, 422 F. Supp. 2d at 866; *see also* 29 U.S.C. § 1108(c) (explaining that a plan sponsor may appoint its own "officer, employee, agent or other representative" to serve as a fiduciary).

The plaintiff must allege additional facts demonstrating the defendant was actual conflicted. *Id.* Usually plaintiffs allege that the defendant had significant investments in the employer's stock and that their pay was tied to the stock's performance. *See, e.g.*, *In re Morgan Stanley*, 696 F. Supp. 2d at 365-66 (collecting cases). Some courts, however, have found such claims to be insufficient. *See, e.g.*, *In re Ferro*, 422 F. Supp. 2d at 866; *In re WorldCom*, 263 F. Supp. 2d at 768. In *In re WorldCom*, the court held that the plaintiffs needed to allege that the fiduciary's investments caused him to do something detrimental to the plan *while* wearing his "fiduciary hat." *Id.* (emphasis in the original). Where a conflict is shown to exist, "allegations that [the defendants] took no ameliorating steps such as appointing an independent fiduciary or seeking independent advice sufficiently states a claim." *Shirk*, 2007 WL 1100429, at *18; *In re Ferro*, 422 F. Supp. 2d at 866.

In the instant case, Plaintiffs allege that "Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia* failing to timely engage independent fiduciaries who could make independent judgments concerning the Plan's investments in the Company's own securities" and "by otherwise placing their own and/or the Company's interests above the interests of the Participants with respect to the Plan's investment in the Company's securities." (Compl. ¶ 108.) Defendants argue that Plaintiffs have failed to identify how or why they were not independent. (Defs.' Mot. 17.) Furthermore, they stress that they were not required to appoint independent fiduciaries unless they were caught in a conflict of interests. (*Id.* at 18.) Accordingly, Defendants contend that Plaintiffs' conflict of interests claim represents nothing more than unsupported conclusory allegations that cannot survive under *Twombly*. (*Id.*)

The Court agrees with Defendants. Plaintiffs' Complaint does not allege any conflict of interests. It merely claims Defendants failed to appoint independent fiduciaries. (Compl. ¶ 108.) While it would almost certainly have been a good idea for Defendants to appoint independent fiduciaries (it would reduce the likelihood of litigation if nothing else), ERISA simply does not require it unless the appointed fiduciaries are in fact conflicted. *See* 29 U.S.C. § 1108(c). Because Plaintiffs have failed to allege how or why Defendants were actually conflicted, this claim must be dismissed. Accordingly, Defendants motion is GRANTED with respect to Count II.

## IV.   Have Plaintiffs Stated a Claim for Failure to Monitor?

Plan administrators have an obligation to monitor the performance of other fiduciaries under section 404(a). *See In re Morgan Stanley*, 696 F. Supp. 2d at 366. This duty requires monitoring fiduciaries to provide asset managers with any adverse information they possess and remove fiduciaries who are not doing their job. *In re AEP*, 327 F. Supp. 2d at 833 (quoting 29 C.F.R. §

38

2509.75-8). This duty requires disclosure of otherwise non-public information to other fiduciaries. *In re WorldCom*, 263 F. Supp. 2d at 765 ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired which acting in his corporate capacity.").

It is appropriate, however, to dismiss a failure to monitor claim where the plaintiffs have failed to adequately allege the defendants breached their fiduciary duties. *Benitez v. Human, Inc.*, No. 3:08-cv-211-H, 2009 WL 3166651, at *11 (W.D. Ky. Sept. 30, 2009) (collecting cases). Because the Court has already found that Plaintiffs have not made out a claim for breach of fiduciary duty. Thus, no failure to monitor claim exists. Accordingly, Defendants' motion to dismiss with respect to Count III is GRANTED.

## V.      Have Plaintiffs Stated a Proper Claim Against the Executive Defendants?

Defendants argue that Plaintiffs claims against the Executive Defendants must be dismissed. (Defs.' Mot. 18-19.) Defendants contend that neither England or Lucci were named fiduciaries, and that Plaintiffs have failed to adequately allege that they were acting as fiduciaries "with respect to the specific decision to offer employer stock as an investment option." (*Id.*)

The Court need not determine whether Plaintiffs stated a proper claim against the named defendants. Because the Court finds that Plaintiffs have failed to state a claim for breach of fiduciary duty generally, it also holds that they have failed to state a claim against the Executive Defendants. Thus, Defendants motion to dismiss the Executive Defendants is GRANTED.

## CONCLUSION

A very recent decision reinforces this Court's reasoning stated above, to GRANT the Defendants' motion to dismiss.

In the case of *In re UBS AG ERISA Litigation*, No. 08-CV-6696 (FJS), — F. Supp. 2d —

(S.D.N.Y. Mar. 24, 2011),[13] United States District Judge Richard J. Sullivan granted the Defendant

financial institution's motion to dismiss an ERISA-based "stock drop" complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6), noting that "Rule 8 marks a notable and generous departure from

the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions." *Id.*, at *5 (quoting *Iqbal*, 129

S. Ct. at 1950).

In *In re UBS*, the Swiss bank, in October 2008, owing to the financial turmoil, accepted a

"bailout" from the Swiss government. Also, as a result of its financial troubles, the market price for

UBS stock fell 69%. *Id.*, at *3.

UBS, like Flagstar offered its employees EIAPs where "plan participants had the sole

discretion to invest their plan assets entirely in one fund or to spread their assets among multiple

funds, and could make changes to their investments at any time" and "[e]ach plan offered

participants the option of investing in the UBS Stock Fund, a fund invested almost exclusively in

shares of UBS common stock." *Id.*, at *4.

In *In re UBS*, the SIP documents did not explicitly require that the SIP fiduciaries offer the

UBS Stock Fund as an investment option, but "the SIP documents contain numerous references to

the UBS Stock Fund that strongly suggest that the settlor intended the UBS Stock Fund to be one

of the funds available to plan members." *Id.*, at *7. So too in the case *sub judice*.

Judge Sullivan ruled that there was no merit to the plaintiffs' suggestion that courts refuse

---

[13] Because this decision was handed down so recently, it is not yet available on Westlaw or Lexis.

to apply the presumption of prudence to non-ESOP retirement plans. *Id.*, at *8. This Court concurs.

Judge Sullivan further concluded that post *Twombly*, courts regularly apply *Moench* at the motion-to-dismiss stage, thereby entitling "the decisions made by Defendants with respect to the administration of the UBS retirement plans . . . to a presumption of prudence." *Id.*, at *9. This Court concurs.

Judge Sullivan further found that "given that, throughout the class period, UBS never reached the brink of imminent collapse, there remained a possibility that the value of UBS stock would rebound." *Id.*, at *11. The court reasoned that in light of this possibility, "had Defendants withdrawn the fund, and had the fund then rebounded, Defendants would likely have faced breach of fiduciary duty obligations for failing to carry out settlors' intentions." *Id.* Judge Sullivan noted: "As other courts have stressed, the duty of prudence does not require plan fiduciaries to engage in such prognosticating", and accordingly "Plaintiffs have failed to plead facts sufficient to overcome the presumption of prudence. . . ." *Id.*, at 11-12. Further, Judge Sullivan held that since he found "that Defendants' decision to continue offering the BUS Stock Fund was not imprudent, Plaintiffs' argument that Defendants also breached a duty to investigate fails." *Id.*, at *12 n.16. This Court concurs.

As to whether ERISA imposes an affirmative duty on fiduciaries to disclose information about the company's financial condition to plan participants, Judge Sullivan held that it does not. *Id.*, at *12. This Court concurs.

This Court further notes Judge Sullivan's ruling with regard to the claim that "Defendants breached their fiduciary duty of candor by failing to provide complete and accurate information regarding UBS Stock to the Plans' participants." *Id.* (quotation marks omitted). Judge Sullivan

41

ruled:

> To the extent that Plaintiffs suggest that Defendants' duty of candor was breached because each plan's documents made reference to SEC filings and press releases that allegedly contained misstatements and omissions, such an argument fails as a matter of law.  As an initial matter, Plaintiffs fail to allege, with any degree of specificity, the nature of these alleged misrepresentations . . . .

> Even if UBS's SEC filings did contain misrepresentations, the Complaint nonetheless fails to sufficiently allege a breach of the duty of candor . . . .  If any Defendant did in fact, violate federal securities laws, he will be liable to Plaintiffs in their capacities as shareholders under those laws, but not under ERISA.

*Id.*, at 12-13.  This Court concurs in this conclusion, and applies it in the instant case.

Finally as to a conflict of interest claim by an ERISA fiduciary defendant, Judge Sullivan wrote "[m]erely alleging, as Plaintiffs do, that a conflict of interest exists because Defendants were ERISA fiduciaries as well as corporate officers and directors is insufficient as a matter of law." *Id.*, at *14.  This Court concurs, and has adopted this reasoning in the instant opinion.

For the reasons stated above, Defendants' motion to dismiss is GRANTED

SO ORDERED.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 31, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 31, 2011.

S/Denise Goodine
Case Manager

42