UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE ADVANTA CORP. ERISA LITIG. ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO.:  2:09-CV-04974-CMR |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY IN FURTHER SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT AND IN RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

In further support of their Opposition to Defendants' Motion To Dismiss Plaintiffs' Consolidated Class Action Complaint (Dkt No. 57) ("Plaintiffs' Opposition" or "Pls. Opp"), and in response to the notice of supplemental authority filed by Defendants on April 6, 2011 (Dkt. No. 62) ("Defs. Notice" or "Defendants' Notice"),[1] Plaintiffs respectfully submit for the Court's consideration four recent, relevant decisions:  (1) *In re American Int'l Group, Inc. ERISA Litig.*, No. 08-CV-5722, 2011 WL 1226459 (S.D.N.Y. Mar. 31, 2011) ("*AIG*");[2] (2) *In re Coventry Healthcare, Inc. Sec. Litig.*, No. 09-CV-2261, slip op. (D. Md. Mar. 31, 2011) ("*Coventry*");[3] (3) *Peabody v. Davis*, Nos. 09-CV-3428, 09-CV-3452, 09-CV-3497, 10-CV-1851, 10-CV-2079, and 10-CV-2091, 2011 WL 1364427 (7th Cir. Apr. 12, 2011) ("*Peabody*");[4] and (4) *In re: YRC*

---

[1]   The full title of Defendants' submission is Defendants' Notice of Supplemental Authority In Support of Their Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint.

[2]   The *AIG* decision is attached hereto as Exhibit A.

[3]   The *Coventry* decision is attached hereto as Exhibit B.

[4]   The *Peabody* decision is attached hereto as Exhibit C.

*Worldwide, Inc. ERISA Litig.*, No. 09-CV-2593-JWL, 2011 WL 1457288 (D. Kan. Apr. 15, 2011) ("*YRC*").[5]

I. **ARGUMENT**

    A. **Plaintiffs' Supplemental Authorities Are Directly Relevant To The Issues Currently Before The Court**

        (1) *AIG*

The directly relevant *AIG* decision supports the conclusion that this Court should deny Defendants' Motion To Dismiss Plaintiffs' Consolidated Class Action Complaint (Dkt. No. 52) ("Motion to Dismiss").

First, the *AIG* court rejected Defendants' arguments here that ERISA[6] § 404(c), 29 U.S.C. § 1104(c) relieves Defendants of their fiduciary obligations under ERISA to prudently and loyally manage retirement plans. Indeed, the *AIG* court, in agreeing with the Department of Labor's ("DOL") long held position, found that the safe harbor provision of ERISA § 404(c) is inapplicable to a fiduciary's selection or retention of imprudent investment options within a retirement. *Compare AIG* at *4, *with* Pls. Opp. at 37. Rather, the act of choosing or continuing to designate investment alternatives offered by a 404(c) plan is a fiduciary function subject to ERISA's general fiduciary standards. *See AIG* at *4; Pls. Opp. at 37. *See also AIG* at *4 (quoting *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007)); Pls. Opp. at 36 (same). Ultimately the *AIG* court noted that it "finds the analysis in DeFelice [sic] to be persuasive" and succinctly concluded, "[c]laims of imprudent selection and maintenance of particular investment options are not foreclosed as a matter of law by ERISA section 404(c) in

---

[5]     The *YRC* decision is attached hereto as Exhibit D.

[6]     Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq.*, as amended.

the context of participant-directed plan structure." *AIG* at \*4.  As Defendants make the same ill-suited arguments here, a similar conclusion is warranted.

Second, the *AIG* decision also rejected the argument made by Defendants here that they possessed no fiduciary responsibility with respect to investment of the Advanta ESOP's assets because the Advanta ESOP required that its assets be invested in Advanta stock.  In *AIG*, the defendants similarly argued that because "the [p]lans mandated that AIG stock be offered to participants as an investment option, and that because no Defendant had discretion to limit or cancel that option, no Defendant had fiduciary authority or responsibility with respect to the maintenance and continuation of the AIG Stock Fund." *AIG* at \*4.  In rejecting this assertion, the court referenced language in the plan documents which specifically vested the defendants with discretionary authority.  *See, e.g.*, *AIG* at \*5 (quoting plan document which stated "[t]he Employer shall have the exclusive authority and discretion to select the Investment Funds"). Thus, the court concluded, "The Plan's provisions for maintaining the Company Stock Fund and investing in [Company stock] are not entirely clear and could plausibly support a finding that Defendants had a degree of discretionary authority with regard to these elements of the Plan, Therefore, dismissal for complete absence of discretionary authority would not be appropriate in the context of this Rule 12(b)(6) motion practice." *Id.* at \*6.  Similarly, the operative Plan documents here belie any contention by Defendants, in particular the Director Defendants,[7] that they were unable to act because they lacked discretionary authority.  *See, e.g.*, Pls. Opp. at 20-21 (noting "the ESOP SPD[8] "expressly vests the Board of Directors with the 'discretion whether

---

[7]     As specified in the Amended Complaint (Dkt. No. 39), the Director Defendants include Defendants Dennis Alter, Max Botel, Dana Becker Dunn, Ronald Lubner, and William A. Rosoff.  *See* Complaint at ¶ 21.

[8]     The January 2006 ESOP Summary Plan Description was attached as Exhibit B to Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss Plaintiffs' Consolidated Class Action Complaint, ("Defs. Mem."), Dkt. No. 52-2.

and in what amount contributions shall be made, there is no set amount which must be contributed each year by the Company.'"). *AIG* thus confirms that the ESOP language in this action warrants rejection of Defendants' Motion to Dismiss on the basis that Defendants lacked discretionary authority over the ESOP.

Moreover, a fiduciary is not excused from taking prudent action to protect a retirement plan's assets even in the face of plan language that requires investment in company stock. *See, e.g.*, Pls. Opp. at 2-3 ("As the Third Circuit made clear in *Avaya*, 'Despite the special status of ESOPs … ESOP fiduciaries *are still required* to act in accordance with the duties of loyalty and care that apply to fiduciaries of typical ERISA plans.'" (citing *Edgar v. Avaya*, 503 F.3d 340, 346 (3d Cir. 2007) (emphasis added)).

Third, the *AIG* court considered and rejected several of the other arguments raised by Defendants in this action as well, including:  (i) heightened pleading requirements of FED. R. CIV. P. 9(b) are not warranted in an ERISA breach of fiduciary duty action (*compare AIG* at *8, *with* Pls. Opp. at 49-50); (ii) the defendants could have taken a variety of steps to protect the plan participants (*compare AIG* at *8, *with* Pls. Opp. at 24 n.19); (iii) loss causation should not be considered on a motion to dismiss (*compare AIG* at *9, *with* Pls. Opp. at 47-48); and (iv) allegations of the failure of appointee fiduciaries to investigate the prudence of maintaining company stock despite warning signs are sufficient to state a claim for failure to monitor (*compare* AIG at *10, *with* Pls. Opp. at 53-56).

**(2)   *Coventry***

The *Coventry* decision further underscores the validity of Plaintiffs' allegations in this case and ERISA breach of fiduciary duty allegations in general.

First -- like the *AIG* court -- the *Coventry* court confirmed that because "the plaintiffs do not allege fraud, only breaches of fiduciary duties and ERISA violations," courts "apply the more lenient pleading standard of Federal Rule of Civil Procedure 8(a)(2)." *Coventry*, slip op. at 5 (internal quotations, citations omitted).

Second, the *Coventry* decision observed that the so-called "presumption of prudence" articulated in *Moench v. Robinson*, 62 F.3d 553 (3d Cir. 1995) should not be applied at the motion to dismiss stage, noting "[d]espite the prevalence of the *Moench* presumption, it is not universally accepted, and several courts have found that the application of the presumption is inappropriate at the Motion to Dismiss stage." *Coventry*, slip op. at 6. In reaching this conclusion, the *Coventry* court relied upon some of the same authority Plaintiffs cited in support of the same conclusion in their Opposition. *Compare Coventry*, slip op. at 6 (citing *In re Pfizer, Inc. ERISA Litig.*, No. 04-CV-10071, 2009 WL 749545, at *11 (S.D.N.Y. Mar. 20, 2009), *with* Pls. Opp. at 25-26 (same).

Third, the *Coventry* court rejected the defendants' argument, similar to Defendants' argument here, that the plan mandated the investment in company stock noting that "[f]actual development of the record is necessary for just determination of this claim." *Coventry*, slip op. at 8.

Lastly, with respect to the plaintiffs' failure to monitor claim, the *Coventry* court determined that it needed "[t]he benefit of discovery for a just determination of the extent to which the Monitoring Defendants possessed a fiduciary duty over the Plan Investments," and therefore "at this juncture, dismissal of this claim is inappropriate." *Coventry*, slip op. at 10. *Coventry* is thus yet another decision joining the long line of cases which find deciding whether

5

the duty to monitor has been breached is a fact-based determination that is not appropriately resolved on a motion to dismiss.  *See* Pls. Opp. at 55 (listing cases).

### (3)     *Peabody*

In *Peabody*, the Seventh Circuit Court of Appeals upheld many of the arguments Plaintiffs raise in this action.  With regards to the so-called "diversification exemption" that certain Eligible Individual Account Plans ("EIAPs") are afforded, the *Peabody* court specifically held, "while the express duty to diversify is inapplicable to EIAPs investing in employer securities, the full ERISA duty of prudence nevertheless applies." *Peabody* at *4.  Indeed, the *Peabody* court went so far as to warn that "plans with no diversification duty demand[] an even more watchful eye, diversification not being in the picture to buffer the risk to the beneficiaries should the company encounter adversity." *Id.* (internal quotations, citations omitted).  These strong statements bolster Plaintiffs' arguments that regardless of the nature of the Plans at issue here, Defendants were still duty-bound by ERISA to act as prudent and loyal fiduciaries, irrespective of any diversification exemption.  *See generally* Pls. Opp. at 27-30 ("Indeed, Defendants' statement that EIAPs are exempt from the duty of diversification (*see* Def. Mem. at 30) only reinforces their misunderstanding of the claims in this matter.  The crux of Plaintiffs' claim is that Defendants breached their fiduciary duties by permitting the Plans to invest [and maintain preexisting investments] in Advanta stock when Advanta stock was clearly imprudent due to the severe mismanagement of the Company, *not* as a result of the failure to diversify.").[9]

Moreover, the *Peabody* court's discussion of ERISA § 404(c) is instructive here.  In its analysis, the court expressed its concern regarding the defense, warning that § 404(c) "would serve no real purpose if … fiduciaries never had any liability for losses in an individual account."

---

[9]     Of additional relevance, in a footnote, the *Peabody* court noted the split in authority regarding the presumption of prudence, noting "it is unclear whether this '*Moench*' presumption should apply to all EIAPs, or only to ESOPs." *Peabody* at *4, n.6.

*Peabody* at *6 (internal quotations, citations omitted).  After listing numerous cases and the Department of Labor's regulations also referenced by *Peabody*, all of which have agreed with Plaintiffs' arguments and *Peabody's* holding, Plaintiffs noted "[t]here is good reason for these decisions.  While the statutory text of Section 404(c) provides a safe harbor to fiduciaries under certain circumstances, it does not immunize a fiduciary's decisions regarding selection and retention of plan investment options."  Pls. Opp. at 37.  *Peabody* thus strongly supports Plaintiffs' contention that "Section 404(c) is not a defense to a fiduciary's selection or retention of imprudent investment options."  Pls. Opp. at 36.  Additionally, the *Peabody* court confirmed that "[f]iduciaries bear the burden on the § 404(c) defense" (*Peabody* at *6), joining the other authority Plaintiffs cited for this same proposition.  *See* Pls. Opp. at 38 (citing, *inter alia*, *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 446 (3d Cir. 1996) (Section 404(c) is an affirmative defense that defendants have the burden to plead and prove)).

The *Peabody* decision is further instructive in that it raises a potential step defendant-fiduciaries can take in order to protect plan assets from suffering a decline when the company itself is struggling.  Specifically, the *Peabody* court noted that even if the plan in that case was exempted from the duty to diversify, "there was a prudential duty to reduce exposure to company stock in an orderly way, as company profitability abruptly and openly dropped."  *Peabody* at *7 (citing *Steinman v. Hicks*, 352 F.3d 101, 1106 (7th Cir. 2003) (recognizing that in certain circumstances an ESOP trustee may have a duty to sell company stock, that might "become a duty to diversify, even though failure to diversify an ESOP's assets is not imprudence per se.")).  This holding supports Plaintiffs' contentions throughout their Opposition that Defendants had options available to them, but "Defendants failed to take any action to protect the Plans and the participants such as ceasing to offer the Advanta Stock Fund," (*see* Pls. Opp. at 24) and/or by

"failing to timely engage independent fiduciaries who could make independent judgments concerning the Plans' investments in the Company's own securities." Pls. Opp. at 52. In short, Defendants had available to them a variety of plan-protective steps they could have taken including ceasing the investment in Advanta stock -- or as *Peabody* notes -- divesting part of the Plans' holdings. Nevertheless, Defendants failed to do anything, and in doing so, blatantly violated the mandates of ERISA's fiduciary duties for which they must be held responsible.

### (4) YRC

Lastly, the *YRC* decision further undermines Defendants' arguments regarding ERISA § 404(c). In the decision, which granted in part and denied in part a motion to strike affirmative defenses, the court confronted directly analogous ERISA breach of fiduciary duty allegations. The court rejected the Defendants' attempted invocation of § 404(c) as an affirmative defense finding that § 404(c) does not create a safe harbor for a fiduciary's imprudent selection of investment options. Specifically, the court held "that although section 404(c) does limit a fiduciary's liability for losses that occur when participants make poor choices from a satisfactory menu of options, it does not insulate a fiduciary from liability for assembling an imprudent menu in the first instance." *YRC* at *4. In its reasoning, the court noted that this conclusion is "supported by the underlying purpose of section 404(c)… and is appropriate in light of the deference afforded to the DOL's reasonable interpretation of its own regulations." *Id.* (discussing the same DOL regulations cited in Pls. Opp. at 37). The *YRC* decision is thus further support for Plaintiffs' argument here that "Section 404(c) is not a defense to a fiduciary's selection or retention of imprudent investment options." Pls. Opp. at 36.

### B. The Supplemental Authorities Proffered By Defendants Do Not Support Dismissal Of Plaintiffs' Claims

Defendants' Notice offered the decision in *In re UBS ERISA Litigation*[10] as "strong support" for the arguments Defendants advanced in their motion to dismiss briefing in this action. Defs. Notice at 2. *UBS* actually undermines Defendants' position. Whereas Defendants argue in this action that because the ESOP required investment in Advanta stock they had no discretion to act with regard to the Company stock, *UBS* only provides that defendants have a presumption of prudence where company stock is required, not that they have *no* duty to act. Defs. Notice at 2; *see also UBS* at *5-*6. Moreover, only seven (7) days after the *UBS* opinion was decided, the *AIG* decision discussed above was rendered in the same jurisdiction. Plaintiffs submit that the more-recent and better-reasoned *AIG* decision is the appropriate benchmark for ERISA breach of fiduciary duty actions within the Southern District of New York, not *UBS*.

Further, the other two cases offered in Defendants' Notice, *Fulmer v. Klein*, No. 09-CV-2354, 2011 WL 1108661 (N.D. Tex. Mar. 16, 2011) ("*Fulmer*") and *Griffin v. Flagstar Bancorp, Inc.*, No. 10-CV-10610, 2011 WL 1261196 (E.D. Mich. Mar. 31, 2011) ("*Flagstar*")[11] are contrary to the prevalent case law addressing ERISA breach of fiduciary duty actions against fiduciaries of employee retirement benefit plans. In particular *Fulmer* is inapposite here as the plaintiffs in that case alleged the defendants breached their fiduciary duty by failing to diversify plan assets. *See Fulmer* at *4 ("[p]laintiffs actually alleged that [d]efendants breached their duty of prudence by failing to 'diversify'"). As Plaintiffs make plain in their Opposition, the "crux of Plaintiffs' claim is that Defendants breached their fiduciary duties by permitting the Plans to

---

[10] Defendants submitted for the Court's review the slip opinion, *In re UBS ERISA Litig.*, No. 08-CV-6696 (S.D.N.Y. Mar. 24, 2011). *In re UBS ERISA Litig.* has since been published on Westlaw at *In re UBS ERISA Litig.*, No. 08-CV-6696, 2011 WL 1344734 (S.D.N.Y. Mar. 24, 20110), referred to herein as "*UBS*."

[11] Defendants submitted for the Court's review the slip opinion in *Griffin v. Flagstar Bancorp, Inc.*, No. 10-CV-10610 (E.D. Mich. Mar. 31, 2011). *Griffin v. Flagstar Bancorp, Inc.*, has since been published on Westlaw as noted. Accordingly, Plaintiffs' citations herein are to the Westlaw version of the *Flagstar* decision.

invest [and maintain preexisting investments] in Advanta stock when Advanta stock was clearly imprudent due to the severe mismanagement of the Company, *not* as a result of the failure to diversify." Pls. Opp. at 28 (emphasis in original).

Moreover, *Flagstar* confirms that "[a] fiduciary is not required to, and in fact may not, blindly follow [p]lan terms if they violate ERISA." *Flagstar* at *8 (citing 29 U.S.C. § 1104(a)(1)(D)). "Accordingly," the *Flagstar* court continued, "even if the [p]lan mandated that Company Stock remain an option, [d]efendants breached their fiduciary duties by offering it if [company stock] was not a prudent investment." *Flagstar* at *8. Thus, *Flagstar*, like *UBS*, unequivocally supports Plaintiffs' arguments here that the Plans' terms did not excuse Defendants from their ERISA-mandated fiduciary obligations (*see* Pls. Opp. at 16-20) and eviscerates Defendants' contention that they are somehow "immune from judicial scrutiny" because they supposedly had no discretion with respect to Advanta stock in the Plans. *See* Defs. Mem. at 31.

## II. CONCLUSION

These supplemental authorities thus address and reject multiple arguments advanced by Defendants in their motion to dismiss briefing. For the reasons set forth in Plaintiffs' Opposition, and as further supported by the above recent authorities, Plaintiffs respectfully request that this Court deny Defendants' motion to dismiss in its entirety.

DATED: May 20, 2011

Respectfully submitted,

/s/ Edward W. Ciolko
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Edward W. Ciolko
Mark K. Gyandoh
Julie Siebert-Johnson
280 King of Prussia Road
Radnor, PA 19087

10

Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

*Interim Class Counsel*

Robert A. Izard
William Bernarduci
IZARD NOBEL LLP
29 South. Main Street, Suite 215
West Hartford, CT 06107
Telephone:  (860) 493-6292
Facsimile:  (860) 493-6290

*Attorneys for Plaintiff Paula Hiatt*

Michael D. Donovan
DONOVAN SEARLES, LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone:  (215) 732-6067
Facsimile:  (215) 732-8060

Edwin J. Mills.
Michael J. Klein
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017
Telephone:  (212) 687-7230
Facsimile:  (212) 490-2022

Gregory M. Egleston
EGLESTON LAW FIRM
360 Furman Street, Suite 443
Brooklyn, NY 11201
Telephone:  (646) 227-1700
Facsimile:  (646) 227-1701

*Attorneys for Plaintiffs Pamela Yates & Joann Claflin*

Evan J. Smith, Esquire
BRODSKY & SMITH, LLC
Two Bala Plaza, Suite 602
Bala Cynwyd, PA 19004
Telephone:  (610) 667-6200
Facsimile:  (610) 667-9029

*Attorney for Plaintiff Mathew Ragan*

11

## CERTIFICATE OF SERVICE

I certify that, on May 20, 2011, I caused the foregoing Plaintiffs' Notice of Supplemental Authority In Support of Their Opposition to Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint and In Response to Defendants' Notice of Supplemental Authority to be filed with the Clerk of the Court via the CM/ECF system, which will deliver notification of filing to all counsel of record.

/s/ Edward W. Ciolko
Edward W. Ciolko