# EXHIBIT A



Page 1

Slip Copy, 2011 WL 1226459 (S.D.N.Y.), 50 Employee Benefits Cas. 2377
**(Cite as: 2011 WL 1226459 (S.D.N.Y.))**

COnly the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re AMERICAN INTERNATIONAL GROUP,
INC. ERISA LITIGATION II.
This Document Relates to: All Actions.

No. 08 Civ. 5722(LTS)(KNF).
March 31, 2011.

### MEMORANDUM OPINION AND ORDER
LAURA TAYLOR SWAIN, District Judge.

  *1 This putative class action is brought pursuant to §§ 502(a)(2) and (a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (a)(3), on behalf of participants and beneficiaries ("Plaintiffs") of three retirement savings plans ("Plans"). Listed as defendants are American International Group, Inc. ("AIG"), and 59 individual defendants (19 named defendants and 40 defendants listed as "John and Jane Does") alleged to be fiduciaries of the Plans (collectively, "Defendants"). Plaintiffs allege that Defendants breached their fiduciary duties by offering AIG stock through the Plans when it was no longer prudent to do so, failing to disclose necessary information to co-fiduciaries, failing to monitor properly fiduciary appointees, failing to provide complete and accurate information to participants of the Plans, acting in their personal interests as employees or executives of AIG at the expense of Plaintiffs' best interests and failing to prevent breaches by co-fiduciaries of their duties. Plaintiffs assert that Defendants are liable to the Plans under ERISA for losses suffered by the Plans on their holdings of AIG stock. The Court has jurisdiction of Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).

  Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and, pursuant to Rule 12(b)(1), to dismiss all claims regarding a certain plan covering employees in Puerto Rico. For the reasons that follow. Defendants' motion is granted in part and denied in part.

### BACKGROUND
The following facts are drawn from the Consolidated Amended Complaint ("Complaint"). The Court takes these facts as true for the purposes of this motion to dismiss.

*The Parties*
  Plaintiffs were participants or beneficiaries in certain Plans at points between June 15, 2007, and the present ("Class Period"). Five of the six named Plaintiffs, Dwight Wellons, Kevin Hoffman, Walter Lewis, Mark Ludwig and Thomas West, were participants or beneficiaries in the AIG Incentive Savings Plan ("ISP"). The sixth named Plaintiff, Grace Baxter, was a participant or beneficiary in the American General Agents' & Managers' Thrift Plan ("AGC Plan"). None of the named Plaintiffs is alleged to have been a participant or beneficiary in the CommoLoco Thrift Plan ("CommoLoco Plan"). (Compl.¶¶ 20–25). The proposed class consists of all persons, other than Defendants, who were participants in or beneficiaries of the Plans during the Class Period and whose Plan account holdings included AIG stock. (Compl.¶ 422),

  The Complaint identifies and refers to six general groupings of Defendants, beginning with the entity defendant, AIG. (Compl.¶ 26). The second group, the Director Defendants, is composed of three individuals who served on AIG's Board of Directors; Martin Sullivan, who was elected to the Board in 2002 and became AIG's CEO in March 2005; Robert Willumstad, who was elected to the Board in 2006 and became AIG's CEO in June 2008; and Edmund Tse who, in addition to serving on the AIG Board, was AIG's Senior Vice President for Life Insurance at the time the Complaint was filed (collectively, "Director Defendants"). (Compl. ¶¶ 28–31). The third group, the AIG Retirement Board Defendants, consists of the ISP's administrative board members, twelve of whom are named in the Complaint ("AIG Retirement Board"). (Compl.¶¶ 32–33). The fourth group is the AIG Investment Committee Defendants, comprised of at least eight members named in the Complaint, who assisted the AIG Retirement Board in monitoring the ISP's investment options ("AIG Investment Committee").[FN1] (Compl.¶¶ 34–35). The fifth group, the AGC and CommoLoco Administrative Board Defendants, consists of an administrative board with responsibility for the AGC Plan and an administrative board with responsibility for the CommoLoco Plan ("AGC and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1226459 (S.D.N.Y.), 50 Employee Benefits Cas. 2377
**(Cite as: 2011 WL 1226459 (S.D.N.Y.))**

CommoLoco Administrative Boards"). The individuals composing both of these boards are the same as the corresponding fiduciaries of the ISP. (Compl.¶¶ 36–37). The sixth group, the AGC and CommoLoco Monitoring Defendants, consists of individuals responsible for appointing, removing and monitoring the AGC and CommoLoco Administrative Boards ("AGC and CommoLoco Monitoring Defendants"). These individuals are the same as the corresponding fiduciaries of the ISP. [FN2] (Compl.¶¶ 38–39).

> FN1. Defendants Richard Grosiak, Howard Greene and Nicholas Tyler are alleged to have been members of both the AIG Retirement Board and the AIG Investment Committee. (Compl.¶¶ 32, 34).

> FN2. AIG and the Director Defendants are alleged to have been responsible for monitoring the administrator of the ISP. (Compl.¶ 370).

*The Plans*

**\*2** "The Plans are 'employee pension benefit plan[s]' within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A)." (Compl.¶ 40). The Plans include "eligible individual account plan[s]" and "qualified cash or deferred arrangement[s]" as defined by 29 U.S.C. § 1107(d)(3) and 26 U.S.C. § 401(k). (Compl.¶ 40). Each of the Plans was established and maintained through a written instrument. [FN3] (Compl.¶ 42). The CommoLoco Plan was established by CommoLoco, Inc., for the benefit of its employees who were residents of Puerto Rico. [FN4] (Compl.¶ 57). Under each Plan, a participant was permitted to defer a percentage of his base compensation for investment in the Plan, AIG would match a certain percentage of each employee's salary deferral and contribute the matching portion to that employee's account. (Compl.¶¶ 46, 50–52, 58–60). Each Plan offered participants a menu of investment options, most of which were diversified mutual funds, and one of which was the AIG Stock Fund. (Compl.¶¶ 48, 51, 59). The AIG Stock Fund was designed to invest mainly, though not exclusively, in AIG stock. (Compl.¶ 65). Participants were limited in their ability to invest in the AIG Stock Fund. For instance, with regard to the ISP, only employer matching contributions could be invested in the AIG Stock Fund as of January 1, 2008, and, as of May 4, 2009, the employer matching contributions could no longer be invested in the AIG Stock Fund, though prior investments could remain invested in the fund. (Compl.¶ 46). ISP participants could transfer money out of the AIG Stock Fund but were not permitted to reinvest that money in the AIG Stock Fund at a later time. (Compl.¶ 49). With regard to the AGC Plan and CommoLoco Plan, the Complaint alleges both that "[t]he [Plans] did not purport to require the fiduciaries to offer the [ATG] Stock Fund" and that "the Plan[s] purported to require all employer contributions to be invested in [A1G] stock." (Compl.¶¶ 51, 53, 59, 61). AGC Plan participants, as of January 1, 2002, could reallocate employer contributions in AIG stock to other funds offered by the Plan. (Compl.¶ 56). Until January 1, 2003, AGC Plan participants could use participant contributions to invest in AIG stock. (Compl.¶ 56). Under the CommoLoco Plan, participants age 60 or older could direct their investment of employer matching contributions into any of the available funds. (Compl.¶ 53, 61).

> FN3. The instruments through which the Plans were established and maintained are attached to the Complaint, as amended and restated. For the ISP. see Ex. A ("2008 AIG Plan Document"). For the AGC Plan, see Ex. B ("2001 AGC Plan Document"), and for the CommoLoco Plan, see Ex. C ("2001 CommoLoco Plan Document").

> FN4. CommoLoco, Inc., was a subsidiary of American General Corporation. (Compl.¶ 57). On August 29, 2001, AIG acquired American General and, following the acquisition, all American General stock held by the AGC and CommoLoco Plans was converted to AIG stock. (Compl.¶¶ 54, 62). For the purposes of this motion, these Plans' documents' references to "AIG stock," "AGC stock" and "company stock" are interchangeable, unless otherwise noted.

*Claims Asserted*

Plaintiffs assert the following claims: that all Defendants, except the AGC and CommoLoco Monitoring Defendants, breached the duty of prudence by continuing to offer the AIG Stock Fund as an investment option, even when they knew or should have known that AIG stock was no longer a suitable and appropriate investment for the Plans (Count 1); that AIG and the Director Defendants breached their fiduciary duty by failing to disclose to co-fiduciaries

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1226459 (S.D.N.Y.), 50 Employee Benefits Cas. 2377
**(Cite as: 2011 WL 1226459 (S.D.N.Y.))**

non-public information that was needed to protect the interests of the Plans (Count II); that AIG and the Director Defendants breached their duty to monitor the AIG Retirement Board, that the AIG Retirement Board breached its duty to monitor the AIG Investment Committee, and that the AGC and CommoLoco Monitoring Defendants breached their duties to monitor the AGC and CommoLoco Administrative Boards (Count III); that all Defendants, except the AGC and CommoLoco Monitoring Defendants, breached a fiduciary duty by failing to provide the Plans' participants with complete and accurate information regarding AIG's mismanagement and improper business practices and the soundness of AIG stock (Count IV); that all Defendants beached the duty of loyalty because their compensation and/or tenure was tied to the performance of AIG stock and the publicly reported financial performance of AIG, and specifically because they allowed Plan participants to be injured, at AIG's benefit, insofar as AIG met its obligation to pay employer matching contributions into each Plan with inflated AIG stock, even when Defendants knew that the true value of the A1G stock did not match, dollar-for-dollar, the full extent of the obligation owed (Count V); and that all Defendants share to some extent co-fiduciary liability pursuant to ERISA § 405(a), 29 U.S.C. § 1105(a), (Count VI).

*DISCUSSION*
*Motion to Dismiss for Lack of Standing*

**\*3** Defendants seek dismissal of all claims asserted with respect to the CommoLoco Plan, arguing that the Court lacks subject matter jurisdiction of such claims because none of the named Plaintiffs was a participant or beneficiary in that Plan. This aspect of the motion is granted. To have Article III standing, a plaintiff must have suffered an injury-in-fact, traceable to the conduct at issue, and redressable by a favorable decision. *Kendall v. Employees Retirement Plan of Avon Products,* 561 F.3d 112, 118 (2d Cir.2009) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). For statutory standing pursuant to 29 U.S.C. §§ 1132(a) (2) and (a)(3) a plaintiff, other than the Secretary of Labor, must be a participant, a beneficiary or a fiduciary' of an ERISA-covered employee benefit plan. See *Coan v. Kaufman,* 457 F.3d 250, 255 (2d Cir.2006). According to the Second Circuit, "this list is exclusive." *Donahue v. Teamsters Local 282 Welfare, Pension, Annuity, Job Training and Vacation and Sick Leave Trust Funds,* 12 F.Supp.2d 273, 278–79 (E.D.N.Y.1998) (citing *Pressroom UnionsPrinters League Income Sec. Fund v. Cont'l Assurance Co.,* 700 F.2d 889, 892 (2d Cir.1983) ("We therefore decline to construe § 1132(d)(1) as sub silentio conferring jurisdiction over actions brought by parties other than those specified in § 1132(e)(1).")).

Named Plaintiffs allege that they were participants or beneficiaries in the ISP and the AGC Plan during the putative class period. (Compl.¶¶ 20–25). Defendants do not dispute that this confers standing as to those two Plans for both named Plaintiffs and unnamed members of the putative class. With regard to the CommoLoCo Plan, no named Plaintiff is alleged to have been a participant, beneficiary or fiduciary, and Plaintiffs do not dispute that they lack standing to bring a CommoLoco-based claim on their own behalf. Rather, Plaintiffs assert that, once standing has been established vis-a-vis the Defendants, "an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affected all of the plans." (Pl.'s Mem. in Opp. to M. to Dismiss 78 (quoting *Fallick v. Nationwide Mutual Ins .,* 162 F.3d 410, 422 (6th Cir.1998) (discussing Article III standing))). Plaintiffs' argument is unavailing because, even if the rule in *Fallick* were the law of this Circuit, Plaintiffs' allegations are not premised upon general practices. Rather, Plaintiffs assert their claims in the context of discrete decisions made by different groups of fiduciaries at different points in time and informed by ever-accruing knowledge about AIG and its financial health. For each Plan, the trier of fact will need to consider when particular decisions were made by each group of fiduciaries, what evidence was before the fiduciaries at the time each relevant decision was made, which red flags were present at that time, and what facts at the time would have been uncovered by a reasonable investigation of the real estate market and of the true value of AIG stock. Also, to the extent that Plaintiffs' claims relate to communications made to Plan participants and beneficiaries, the trier of fact will likely have to consider the timing and content of the communications made to participants and beneficiaries of each Plan. For these reasons, the Court finds that Plaintiffs lack Article III standing for claims based on the CommoLoco Plan and, therefore, the Court not need reach the question of statutory standing.

*Participant Direction Safe Harbor*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1226459 (S.D.N.Y.), 50 Employee Benefits Cas. 2377
**(Cite as: 2011 WL 1226459 (S.D.N.Y.))**

**\*4** Defendants seek dismissal of all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that section 404(c) of ERISA, which absolves fiduciaries of liability for losses or breaches arising from participants' exercise of control over assets in their individual accounts, precludes the claims asserted against them here. The section 404(c) safe harbor provision for eligible individual account plans reads in pertinent part as follows;

> [N]o person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from [an ERISA-based account] participant's or beneficiary's exercise of control ... [over the assets in his account].

ERISA § 404(c), 29 U.S.C.A. § 1104(c)(1)(A) (West 2009). Defendants' motion will be denied insofar as it is premised on section 404(c), because Plaintiffs' claims are based on losses and breaches arising from the alleged imprudence of the maintenance and availability of the AIG Stock Fund as an investment option under the Plan, rather than from Participants' asset allocation decisions. The Department of Labor's preamble to the final regulations regarding the safe harbor provision makes clear the distinction:

> [T]he act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA § 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant's direction.

Final Regulations Regarding Particular Directed Individual Account Plans (ERISA § 404(c) plans), 57 Fed.Reg. 46906, 46924–225 n.27 (General Preamble). The Court of Appeals for the Fourth Circuit has, similarly, explained that the "safe harbor provision does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k) plan." *DiFelice v. U.S. Airways, Inc.,* 497 F.3d 410, 418 n.3 (4th Cir.2007).

> [A] fiduciary must initially determine and continue to monitor the prudence of *each* investment option ... including the Company Fund.... [A] fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other funds, which an individual *may or may not* elect to combine with a company stock fund, could theoretically, in combination, create a prudent portfolio.

*Id.* at 423 (emphasis in original). Other circuit courts have interpreted the safe harbor provision differently, *see Langbecker v. Elec. Data Sys. Corp.,* 476 F.3d 299, 310–11 (5th Cir.2007), but this Court finds the analysis in *DeFelice* to be persuasive. Claims of imprudent selection and maintenance of particular investment options are not foreclosed as a matter of law by ERISA section 404(c) in the context of a participant-directed plan structure.

*Fiduciary Status*

Defendants assert that the Complaint should be dismissed as against all Defendants because Plaintiffs have failed to allege facts sufficient to render plausible Plaintiffs' assertion of the requisite fiduciary status as to each Defendant. They argue that AIG and the Director Defendants, specifically, were not fiduciaries of the Plans. Defendants also argue that the Plans mandated that AIG stock be offered to participants as an investment option, and that, because no Defendant had discretion to limit or cancel that option, no Defendant had fiduciary authority or responsibility with respect to the maintenance and continuation of the AIG Stock Fund.

**\*5** To state a claim under section 404 of ERISA for breach of fiduciary duty, a plaintiff must allege that (1) defendants were fiduciaries of the plan who, (2) acting within their capacities as plan fiduciaries, (3) engaged in conduct constituting a breach of an ERISA fiduciary duty. 29 U.S.C. § 1109; *Pegram v. Herdrich,* 530 U.S. 211, 222–24 (2000). Fiduciary status under ERISA arises from being named as a fiduciary in plan documents, the performance of fiduciary functions, or the possession of fiduciary authority. ERISA defines the parameters of fiduciary status as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1226459 (S.D.N.Y.), 50 Employee Benefits Cas. 2377
**(Cite as: 2011 WL 1226459 (S.D.N.Y.))**

29 U.S.C.A. § 1002(21)(A) (West 2008). An officer or director is only a fiduciary with respect to those aspects of a plan over which he or she is allocated fiduciary responsibility in plan documents or exercises discretionary authority or control. *See* Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir.1987); Schultz v. Texaco Inc., 127 F.Supp.2d 443, 451 (S.D.N.Y.2001). "An employer acts as a fiduciary within the meaning of ERISA ... when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration." Siskind v. Sperry Ret. Program Unisys, 47 F.3d 498, 505 (2d Cir.1995).

*Fiduciary Status of AIG and the Director Defendants*

Plaintiffs have alleged sufficiently that AIG had discretionary authority under the Plans that carried with it fiduciary responsibilities. Plaintiffs have also made sufficient allegations that the Director Defendants, as members of AIG's Board of Directors at relevant times, had fiduciary responsibilities, at least in so far as they are alleged to have had discretionary authority over the Plans, their assets and their administration. The Complaint quotes relevant Plan language, including section 2.1 of the ISP Trust Agreement, which provides that "[t]he Employer shall have the exclusive authority and discretion to select the Investment Funds," (Compl.Ex, F), and section 12.1 of the 2008 AIG Plan Document, which provides that "[i]n general, the Employer shall have the sole responsibility for ... designating the procedures for the investment of Trust assets in accordance with Section 6.6 to the extent the Plan Administrator does not direct investment as provided in Section 6.6." (Compl.Ex.A). AIG also had "sole responsibility for ... appointing and removing the Plan Administrator and Trustee" of the ISP Plan (*id* ), and AIG, acting through its Board of Directors, had authority and responsibility to appoint the AGC Plan Administrator (2001 AGC Plan Document § 2.1, Compl. Ex. B). Director Defendants are also alleged to have had authority to appoint and remove the Trustees of the Plans, and to have exercised fiduciary authority in connection with their communications to Plan participants. (Compl.¶¶ 362, 380).

*Fiduciaries' Discretion to Limit Investment in AIG stock*

**\*6** Defendants assert that the Complaint should be dismissed against all Defendants because the Plan documents require investment in the AIG Stock Fund and that, lacking authority to suspend or eliminate the AIG Stock Fund as an investment option, Defendants cannot be found liable as fiduciaries for the maintenance of that option. The motion to dismiss, insofar as it is premised upon this argument, will be denied. With regard to the ISP Plan, Defendants cite to the definition of "Funds" from the Plan document and a May 4, 2009, amendment to the Plan adopted by AIG that they argue confirms the Retirement Board's historic interpretation of the Plan as requiring the maintenance of the AIG Stock Fund and the investment of employer matching contributions into that fund. The Plan defines "Funds" as follows:

> 2.30 *"Fund(s)"* means one or more of the regulated investment companies, collective investment funds or contracts, the AIG Stock Fund, or any other investments selected by the Plan Administrator as funding vehicles for investment of the assets of the Plan, subject to any limitations imposed by the Trustee or Plan Administrator in accordance with Section 6.4(b).

(Compl. Ex. A section 2.30). Section 6.4(b) states in its entirety, "The Trustee or Plan Administrator may impose reasonable limitations regarding the types of investments available under this Plan and the Trust Agreement." (*Id.* at 6.4(b)). The May 4, 2009, Plan amendment relied upon by Defendants reads in pertinent part: "Effective prior to May 4, 2009, only Employer Matching Contributions may be invested in the AIG Stock Fund. Effective on and after May 4, 2009, no contributions of any kind ... may be invested in the AIG Stock Fund ...." (Pappas Declaration, Ex. 2). The cited Plan provisions are ambiguous, particularly in light of the Trust Agreement provision granting AIG authority to select investment options. The amendment, even if construed to require a stock fund on and after May 4, 2009, is not conclusive of the question of whether the Plan was required to have such a fund prior to such date. To the extent that Defendants rely on an interpretation of the Plan by the Retirement Board, such action is outside the scope of the Complaint and in any event implicates the exercise of fiduciary interpretive authority and control over plan assets.

The AGC Plan document defines "Stock Fund" as "The separate investment fund forming a part of the Trust which is invested in, or held for investment in,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1226459 (S.D.N.Y.), 50 Employee Benefits Cas. 2377
**(Cite as: 2011 WL 1226459 (S.D.N.Y.))**

Company Stock." (Compl. Ex. B § 2.38). Plaintiffs have pleaded two contradictory allegations—first, that the AGC Plan "did not purport to require the fiduciaries to offer the [Company] Stock Fund" (Compl.¶ 51), and second, that "the Plan purported to require all employer contributions to be invested in [Company] Stock." FN5 (Compl.¶ 54). In their briefs, Plaintiffs argue that Defendants had discretion to suspend, eliminate or withhold funds for investment in the Company Stock Fund or, in the alternative, that even if the AGC Plan required investment in the Stock Fund, Defendants had a fiduciary duty not to follow the Plan when doing so became imprudent. The Plan's provisions for maintaining the Company Stock Fund and investing in AIG stock are not entirely clear and could plausibly support a finding that Defendants had a degree of discretionary authority with regard to these elements of the Plan, Therefore, dismissal for complete absence of discretionary authority would not be appropriate in the context of this Rule 12(b)(6) motion practice.

> FN5. The same contradictory allegations were made regarding the CommoLoco Plan but, as the CommoLoco-based claims will be dismissed for lack of standing, the Court need not address the contradictory pleading as it relates to them.

*Duty of Prudence (Count I)*

**\*7** Plaintiffs have alleged that the "Defendants knew or should have known that AIG common stock was no longer a suitable and appropriate investment for the Plans," but nonetheless maintained it as an investment option within the limited pool of options available to Plan participants. Plaintiffs have pleaded numerous factual circumstances that they claim warranted further inquiry into AIG's financial health; Plaintiffs allege that such inquiry would have revealed that AIG common stock was no longer a prudent investment. "A fiduciary's failure to investigate may ... constitute an abuse of discretion [and breach of duty] if an adequate investigation would have revealed to a reasonable fiduciary that investment in employer stock was improvident." *In re Polaroid,* 362 F.Supp.2d 461, 475 (S.D.N.Y.2005) (citation and internal punctuation omitted). The circumstances allegedly warranting further investigation include that AIG's Board of Directors was notified of weaknesses in how AIG's large Financial Products Unit ("ATGFP") tested for risk, documented its transactions, and communicated its risk tolerances to the Board:

> As early as March 2006, the Office of Thrift Supervision had notified AIG's Board that it had found weaknesses in AIGFP's documentation of complex structures transactions, in policies and procedures regarding accounting, in stress testing, in communication of risk tolerances, and in the company's outline of lines of authority, credit risk management and measurement.

(Compl.¶ 268); that AIG saw mounting evidence of increased risk in the residential housing market:
> During 2005, AIG began to see mounting evidence that lending standards and pricing in the U.S. residential housing market were deteriorating at a significant pace.... In September 2007 the Congressional Research Service reported that defaults and foreclosures were likely to rise even higher in 2007 and the first half of 2008.... On December 22, 2007, the Economist estimated subprime defaults would reach a level between $200 and $300 billion.

(Compl. ¶ 200 (quoting CEO Sullivan speaking during a 2007 Investor Call); ¶ 319); that AIG faced increased calls for collateral:
> In late August 2007, Goldman Sachs demanded $1.5 billion in collateral from AIG due to increases in the market risk on Goldman Sachs' $20 billion in CDS that it purchased from AIG.... Collateral calls continued to be made on AIG. requiring AIG to obtain another $37.3 billion on October 8, 2008.

(Compl.¶ 319); that AIG's financial position was increasingly leveraged:
> By [the end of 2008], AIG had become 13.7 times leveraged, or nearly 4 times more leveraged than the year before.

(Compl.¶ 319); and that AIG was the subject of a federal criminal investigation:
> On September 24, 2008, the FBI announced that it was investigating possible criminal wrongdoing at AIG.

(Compl.¶ 319). Other warning signs are identified throughout the Complaint. (*See e.g.,* Compl. ¶¶ 197–252, 266–96, 319–324). Plaintiffs have also sufficiently alleged that, had there been an investigation triggered by, and incorporating, these warning signs, it

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1226459 (S.D.N.Y.), 50 Employee Benefits Cas. 2377
**(Cite as: 2011 WL 1226459 (S.D.N.Y.))**

would have demonstrated that AIG stock had become an imprudent investment. It is not disputed that the Plans remained invested in AIG stock throughout the Class Period. In sum, Plaintiffs have pleaded sufficiently a claim for breach of the duty of prudence.

**\*8** Defendants also assert that, to the extent Plaintiffs have alleged actual knowledge, as opposed to mere inquiry notice, of the unsuitability of AIG stock for inclusion in the Plans as an investment option, this claim should be dismissed because Plaintiffs have failed to meet the heightened pleading requirements for fraud pursuant to Rule 9(b). Defendants are mistaken. "Allegations of [knowing and] intentional conduct do not transmogrify breach of fiduciary duty claims into causes of action for fraud." *In re Polaroid,* 362 F.Supp.2d 461, 469–70 (S.D.N.Y.2005).

*Failure to Disclose Material Info rm ation to Co-fiduciaries (Count II)*
Defendants contend that the claim against AIG and the Director Defendants for failure to disclose material information to co-fiduciaries should be dismissed because the disclosure of non-public material information to co-fiduciaries would have violated federal securities laws. This aspect of Defendants' motion will be denied. Plaintiffs have sufficiently alleged that AIG and the Director Defendants were aware of the increasingly risky financial position maintained by AIG, material weaknesses in AIG's financial health and the potential impending erosion of the value of AIG's stock. AIG and the Director Defendants could have taken a variety of steps that would not have been violations of the securities laws, including independently evaluating the prudence of the maintenance of the AIG Slock Fund as an investment option under the Plans, ceasing new investments in the AIG Stock Fund, questioning the valuation of in-kind stock contributions to the Plans, considering whether public disclosure of material information would have been in the best interests of the Plans' participants, or informing appointees of relevant external factors and their effect on AIG's business model so that the appointees could have independently evaluated whether AIG's common stock had become too risky to be maintained as an investment option under the Plans. See *In re WorldCom Inc. ERISA Litig.,* 263 F.Supp.2d 745, 765 (S.D.N.Y.2003) ("Plaintiffs' allegation that [a fiduciary] failed to disclose to the Investment Fiduciary and other investigating fiduciaries material information he had regarding the prudence of investing in WorldCom stock is sufficient to state a claim."); *see also In re Pfizer Inc. ERISA Litig.,* 04 Civ. 10071, 2009 WL 749545, at \*9–10 (S.D.N.Y. Mar. 20, 2009).

*Misrepresentation or Omission to Plan Participants (Count IV)*[FN6]

> FN6. For the purposes of evaluating the viability of this Count, the Court has not relied on the Form S–8 mentioned in the Complaint in relation to the ISP. (*See* Compl. ¶ 85). Defendants contend that this form was filed for a stock incentive plan unrelated to the Plans at issue here, and that in fact a Form S–8 has never been filed on behalf of the ISP. (Def's Mem in Support of M. To Dismiss 39). Plaintiffs do not challenge this contention in their opposition brief.

Defendants argue that the claim for misrepresentation or omission to plan participants should be dismissed because: Plaintiffs have not alleged the omission of information covered by the reporting requirements in sections 101 to 111 of ERISA; there is no duty under ERISA for fiduciaries to give investment advice or otherwise opine on the value of company stock; the alleged misrepresentations made in SEC filings and other documents were made in Defendants' capacity as officer and employees of AIG and not as plan fiduciaries; and Plaintiffs cannot show loss causation because, if Defendants had publicly revealed that AIG stock was overvalued, the market would have reacted quickly enough that Plaintiffs could not have divested their accounts of AIG stock in time to avoid a loss.

**\*9** Defendants' motion to dismiss this claim will be denied because Plaintiffs have adequately alleged that Defendants failed to disclose the true extent of the risk facing AIG as a result of its financial decisions and the decline of the residential housing market, and that Defendants affirmatively misrepresented the strength and extent of the processes AIG had in place to mitigate this risk. "ERISA fiduciaries ... cannot, in violation of their fiduciary obligations, disseminate false information to plan participants,...." *In re WorldCom,* 265 F.Supp.2d at 766–67. The alleged misstatements identified by Plaintiffs include a statement by Defendant Sullivan in AIG's November 2007 Quarterly Report, with regard to AIG's credit default swap ("CDS") portfolio, that "our active and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1226459 (S.D.N.Y.), 50 Employee Benefits Cas. 2377
**(Cite as: 2011 WL 1226459 (S.D.N.Y.))**

strong risk management processes helped contain the exposure" to deterioration of the residential mortgage and credit markets (Compl.¶ 314); and statements by "Defendants" that CDS "are insensitive to normal changes in market credit spreads" and that AIG's "risk modeling was extremely robust and that it employed 'conservative modeling assumptions' " (Compl.¶ 309). AIG is also alleged to have admitted on February 11, 2008, that it had understated losses in its CDS portfolio. (Compl. ¶ 314). Plaintiffs have further alleged that some of these misstatements were directed to Plan participants in the form of "newsletters, press releases and intranet postings" (Compl.¶ 308) and "newsletters, Plan documents, and the Plan's materials that were disseminated to all participants and beneficiaries" (Compl.¶ 312). With regard to the argument that Plaintiffs cannot demonstrate loss causation, the extent to which disclosure would have mitigated, exacerbated or had no effect on the Plaintiffs' losses is a question of fact. *In re Enron Corp. Sec. Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 566 (S.D.Tex.2003). Further, had Defendants informed Plaintiffs of the alleged overvaluation of AIG stock, Plaintiffs might have sought to challenge the past and ongoing use of AIG stock to satisfy the employer-contribution matching obligation. Accordingly, Defendants' motion to dismiss Plaintiffs' claim for misrepresentations and omissions to plan participants will be denied.

*Duty to Monitor (Count III)*

Defendants argue that the claims for breach of the duty to monitor must be dismissed because Plaintiffs have not pleaded a sufficient underlying breach to support a duty to monitor claim. However, as explained above, the allegations of a failure by the appointee fiduciaries to act upon factual circumstances constituting warning signs that warranted further investigation into the prudence of maintaining AIG stock as an investment option, and the maintenance of that option through the collapse of the company, are sufficient to state a plausible allegation of inadequate performance of appointees, which is a sufficient antecedent claim to support a breach of the duty to monitor.

**\*10** Defendants also argue that the duty to monitor claims must be dismissed because Plaintiffs have not alleged facts to show that Defendants' monitoring activities were deficient enough to constitute a breach of the limited duty to monitor. A duty to monitor is pleaded sufficiently to survive a motion to dismiss when a complaint alleges that the fiduciaries responsible for appointing other fiduciaries utterly "failed to establish a procedure for monitoring [the appointed fiduciaries] and [failed] to review those fiduciaries' performance." See *In re Pfizer Inc. ERISA Litig.,* 04 Civ. 10071, 2009 WL 749545, at \*9; *see also In re Polaroid,* 362 F.Supp.2d at 477; *In re WorldCom,* 263 F.Supp.2d at 765. Here, Plaintiffs' pleading is sufficient, alleging as it does that the monitoring Defendants "failed to monitor their appointees, to evaluate their performance, or to have any system in place for doing so ... [and] fail[ed] to take any steps to remove appointees whose performance was inadequate." (Compl.¶ 373).

*Duty of Loyalty (Count V)*

Defendants argue that the claims for breach of the duty of loyalty should be dismissed because Plaintiffs have alleged no specific examples of a conflict of interest. Defendants also argue that Plaintiffs' claim that a breach of the duty of loyalty can be premised solely on a relationship between Defendants' "compensation and tenure" and AIG's stock price and AIG's publicly reported performance is insufficient as a matter of law. See *In re Polaroid,* 362 F.Supp.2d 461, 479 (S.D.N.Y.2005) (holding that, with regard to defendant fiduciaries of an ERISA plan, the allegation that "[d]efendants' compensation was stock-based ... fails to state a claim for breach of fiduciary duty"). This aspect of Defendants' motion will be denied with respect to AIG and the Director Defendants insofar as Plaintiffs have identified a non-compensation-based conflict, but granted with respect to all other Defendants.

Plaintiffs have alleged an actual and specific conflict, as Defendants allowed AIG to pay its employer-contribution matching obligations with stock that some Defendants allegedly knew was overvalued—thus injuring Plan participants for the benefit of AIG. However, only AIG and the Director Defendants are alleged to have had the actual knowledge of facts indicative of overvaluation that would support an inference of disloyalty, as opposed to imprudence, in this regard. Plaintiffs have alleged expressly that AIG had actual knowledge that its stock had become an imprudent investment (Compl.¶ 349), and alleged facts to support plausibly an inference that AIG and the Director Defendants had such actual knowledge, including that Sullivan and the rest of the Board of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1226459 (S.D.N.Y.), 50 Employee Benefits Cas. 2377
**(Cite as: 2011 WL 1226459 (S.D.N.Y.))**

Directors knew that AIG's auditor had found "a material weakness at AIGFP regarding the CDS portfolio and risk management controls" (Compl.¶¶ 268, 319, p118); that AIG knew that its "models failed to provide any guidance by which AIG could predict, model, or control the risks it took on its CDS portfolio" (Compl.¶ 265); and that "[t]op officials at [AIG] knew of potential problems in valuing derivative contracts long before these risky transactions caused [its] shareholders severe pain" (Compl.¶ 292) (quoting an October 11, 2008, article from the *Wall Street Journal*). With regard to Defendants other than AIG and the Director Defendants, Plaintiffs have not pleaded facts sufficient to create a plausible inference that they had actual knowledge, so claims against them for breach of the duty of loyalty will be dismissed.

*Co-fiduciary Liability (Count VI)*

**\*11** A fiduciary may face liability for the acts of a co-fiduciary in three circumstances: "(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C.A. § 1105(a) (West 2009). Invoking the third prong of the statute, Plaintiffs have alleged that each of the Defendants was aware of, but did not attempt to remedy, the other Defendants' failure to investigate, and that AIG knowingly participated in the breaches of other defendants. For instance, the Complaint alleges that "[t]he AIG Retirement Board Defendants and the AIG Investment Committee Defendants were aware of each other's failure to conduct an independent investigation of the merits of the Plans' investments in Company stock." (Compl.¶ 403); that "[s]imilarly, the AGC and CommoLoco Monitoring Defendants and the AGC and CommoLoco Administrative Board Defendants were aware of each other's failure to conduct an independent investigation of the merits of the Plans' investment in Company stock" (*id.*); that "[t]he Director Defendants were aware of the failure of the AIG Retirement Board, the AIG Investment Committee, the AGC and CommoLoco Administrative Board Defendants, and the AGC and CommoLoco Monitoring Defendants to conduct an independent investigation of the merits of the Plans' invest-ments in Company stock" (Compl.¶ 405); and that "A1G knowingly participated in the fiduciary breaches of other defendants in that it exercised control over their conduct and benefitted from the diminution in the contribution obligations to the Plans that resulted from the failure to disclose information which would have resulted in a more proper valuation of the stock allocated to the participants' accounts." (Compl.¶ 408). These allegations of fiduciary authority, factual circumstances warranting investigation into the prudence of maintaining the company stock funds, the fiduciaries' failure to investigate, and co-fiduciaries' knowledge of, and failure to remedy, this failure to investigate are sufficient to plead plausibly both underlying breaches and grounds for co-fiduciary liability.

*Monetary Relief Under ERISA § 502(a)(3)*

Defendants assert that Plaintiffs are not entitled to monetary relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), because Plaintiffs cannot trace any property that they would rightfully own back to a Defendant who is in possession of that property. *See Pfizer, 2009 WL 749545 at \*16*. Plaintiffs do not challenge this argument in their opposition brief. The Court thus deems the claim abandoned and the motion to dismiss it is granted.

*CONCLUSION*

**\*12** For the foregoing reasons, the motion to dismiss the Complaint is granted with regard to all claims based on the CommoLoco Plan, as Plaintiffs lack standing to assert those claims, and granted with regard to Plaintiffs' claims for breach of the duty of loyalty as to all Defendants except AIG and the Director Defendants. The motion to dismiss the Complaint is also granted insofar as Plaintiffs seek monetary relief pursuant to ERISA § 503(a)(3). In all other respects, the motion to dismiss is denied. This Memorandum Opinion and Order resolves docket entries 44, 47 and 50.

SO ORDERED.

S.D.N.Y.,2011.
In re American Intern. Group, Inc. ERISA Litigation II
Slip Copy, 2011 WL 1226459 (S.D.N.Y.), 50 Employee Benefits Cas. 2377

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2011 WL 1226459 (S.D.N.Y.), 50 Employee Benefits Cas. 2377
**(Cite as: 2011 WL 1226459 (S.D.N.Y.))**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.