# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| IN RE CONVENTRY HEALTHCARE, INC. SECURITIES LITIGATION, <br>                             Plaintiff, <br><br> THIS DOCUMENT RELATES TO: <br> ALL ACTIONS | Action No. 08:09–CV–2661—AW <br> Related actions: <br> 10-462-AW <br> 09-3063-AW <br> 09-2850-AW <br> 09-3074-AW |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion to Dismiss the Plaintiffs' (Loretta Boyd, Christopher Sawney, Karen A. Milner, John Nigro, Jack J. Nelson and Karen Billig)[1] Class Action Complaint for Violations of the Employee Retirement Income Security Act Plan.[2] The parties have fully briefed the issues, and the Court deems that no hearing is necessary. For the reasons articulated herein, the Court will **GRANT**-in-**PART** and **DENY-in-PART** Defendants' Motion to Dismiss.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

During the Class Period in the present case, Plaintiffs Loretta Boyd, Christopher Sawney, Karen A. Milner, John Nigro, Jack J. Nelson and Karen Billig were enrolled in an ERISA "defined contribution" plan ("The Plan") which allowed participants to make elective contributions through payroll deferrals. The Plan is administered by Coventry Health Care, Inc.

---

[1] Plaintiff Jack Nigro withdrew from this action on March 8, 2011.

[2] This Motion has been filed in the following related cases: *Boyd, et al. v. Coventry Health Care, Inc., et al.* (09-2661-AW); *Billig v. Coventry Health Care, Inc., et al.* (10-462-AW); *Nelson v. Coventry Health Care, Inc., et al.* (09-3063-AW), *Milner v. Coventry Health Care, Inc. et al.* (09-2850-AW); and *Nigro v. Coventry Health Care, Inc. et al.* (09-3074-AW).

(17 at 15).³   The "Named Fiduciary of the Plan is the 401(k) Plan Investment Committee which is designated by the Board of Directors." *Id.* at 17.

In Plaintiffs' Amended Complaint, they allege that their retirement plans declined in value after their employer, Coventry, reported that the company was experiencing adverse business conditions.  According to Plaintiffs' these adverse business conditions (specifically, massive delays in processing claims from one of Coventry's new business initiatives, the PFFS program) were known or recklessly disregarded by the Defendants during the Class Period.  As such, Plaintiffs posit that Defendants breached their ERISA fiduciary duties by engaging in the following acts:

> (i) continuing to offer Company Stock as a retirement saving option; (ii) continuing to acquire and hold shares of Company Stock in the Plan when it was imprudent to do so; (iii) failing to provide complete and accurate information to participants regarding the Company's financial condition and the prudence of investing in Company Stock; and (iv) maintaining the Plan's pre-existing investment in Company Stock when it was no longer a prudent investment for the Plan.

Plaintiffs allege the following Counts arising under the Employee Retirement Income Act of 1974 ("ERISA") against the Defendants named in this action:  Count I-Failure to Prudently and Loyally Manage the Plan and Assets of the Plan; Count II- Failure to Monitor Fiduciaries; Count III-Failure to Avoid Conflicts of Interest; and Count IV-Co-Fiduciary Liability.

Plaintiffs allege these Counts against the following Defendants, who are divided into three categories:  "Director Defendants," consisting of Coventry Health Care, Inc, Dale Wolf, Daniel Mendelson, Rodman Moorhead, Timothy Weglicki, L. Dale Crandall, Elizabeth Tallett, Allen Wise, Joel Ackerman, and Lawrence Kugelman; "Officer Defendants," consisting of Shawn Guertin, Patricia Davis; "the Committee Defendants," consisting of the Plan Investment

---

³ This Memorandum cites to pleadings in case 09-2661-AW.  Identical pleadings were filed in the related cases.

Committee, and Plan Investment Committee members [Harvey DeMovick, James McGarry, Allen Spath, David Finkel, Maria Fitzpatrick, and Richard Bates]. Additionally, the Plaintiffs refer to the Coventry and the Director Defendants collectively as the "Monitoring Defendants."

401(K) Plan Investment Committee; Harvey C. DeMovick (Executive Vice President of Coventry); (James E. McGarry (Senior Vice President of Company in July 1998); Allen H. Spath (Chief Operation Officer at HealthCare USA/Coventry HealthCare); David A. Finkel (Senior Vice President of Coventry in August 2005); Maria Fitzpatrick (Senior Vice President of Coventry in May 2007); Richard A. Bates (head of the specialty business division at Coventry); John Does 1-20 (fiduciaries of the ERISA Plan during the Class Period).

Plaintiffs allege that Defendants breached their fiduciary duties under ERISA Section 502(a), 29 U.S.C. §1132(a)(2). This statute states,

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

On March 30, 2011, this Court issued a Memorandum Opinion and Order in the related case *In Re Coventry Securities Litigation*, 09-2337-AW. From the Amended Complaint filed in the instant case, it appears that the Plaintiffs rely on the same public statements made by Coventry that the Court assessed in 09-2337-AW as the basis for their ERISA claim.

### I. STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999). Except in certain specified cases, a plaintiff's complaint need only

satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  In two recent cases, the United States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Those cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly,* 550 U.S. at 556 n. 3 (2007).  That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 783 (4th Cir.1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979).  In addressing a motion to dismiss, a court should first review a complaint to determine what pleadings are entitled to the assumption of truth. *See Iqbal,* 129 S.Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

The Court notes that in the instant ERISA case, as compared to *In Re Coventry Health Care, Inc. Securities Litigation,* 09-2337-AW, "the plaintiffs do not allege fraud, only breaches of fiduciary duties and ERISA violations. As such, we apply the more lenient pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Pugh v. Tribune Co.* 521 F.3d 686, 699 (7th Cir. 2008).

## II.   ANALYSIS

### 1. Count I- Failure to Prudently and Loyally Manage the Plan and Assets of the Plan

In their Amended Complaint, Plaintiffs allege that "the serious problems facing the Company made it imprudent for Defendants to continue offering Company Stock as a retirement investment in the Plan." In Plaintiffs' Response to Defendant's Motion to Dismiss, Plaintiffs aver that their Amended Complaint alleges that Defendants knew or should have known that Coventry Stock was an unduly risky investment for Plan participants because:

- the Company employed under-pricing strategies to create the appearance that its new Medicare Advantage PFFS initiative was capable of driving the high growth necessary to offset Coventry's contracting Commercial business;
- the Company failed to disclose the true risks associated with its underpricing strategies, including the fact that the Company was generating new Medicare Advantage PFFS membership at the expense of profit margins and profitability;
- the true negative affects [sic] of the Company's under-pricing strategies were masked by improper claims assumptions that materially understated the Company's healthcare claim expenses;
- the surge in Coventry's Medicare Advantage PFFS membership overwhelmed Coventry's claims processing infrastructure in existence during the Class Period, which resulted in significant errors and delays in processing of the PFFS claims;
- the Company's deficient system of internal controls over claims processing caused it to fail to timely and accurately process, quantify and record PFFS claims throughout the Class Period;
- the inability to timely and accurately process the PFFS claims distorted and understated Coventry's true claims exposure resulting in artificially inflated financial statements which did not conform with GAAP;

- the inability to timely and accurately process the PFFS claims caused the Company to materially understate its PFFS claim reserves, including its IBNR reserve
- the Company's failure to timely and accurately measure and reserve for its PFFS claim expenses resulted in distorted reporting of its MLR which was materially higher than the Company was reporting to its investors, including the Plan participants;
- the Company's disclosure and internal controls representations, and Defendants Wolf's and Guertin's certifications thereon, were inaccurate when made; and as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements in fiduciary communications to Plan participants about the Company, its prospects and earnings guidance during the Class Period.

(Doc. No. 24, at 37-38).

According to Defendants, the Amended Complaint should be dismissed because the "Complaint fails to allege any facts that would call into question Coventry's continued viability as an ongoing concern during the Class Period." (Doc. No. 20, at 18). Defendants urge the Court to adopt the finding that the Third Circuit made in *Moench v. Robertson*, 62 F.3d 553 (3d Cir.1995), regarding the inadequacy of the Plaintiff's prudence claims. "In *Moench v. Robertson,* the Third Circuit held that an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. This presumption of prudent investment, often called the '*Moench* presumption,' has been applied widely by the courts of appeal, as well as by district courts in the Second Circuit." *In re Morgan Stanley ERISA Litigation*, 696 F.Supp.2d 345, 358 (S.D.N.Y. 2009). Despite the prevalence of the *Moench* presumption, it is not universally accepted, and several courts have found that the application of the presumption is inappropriate at the Motion to Dismiss stage. *See In re Pfizer, Inc. ERISA Litig.,* No. 04-CV-10071, 2009 WL 749545, at *11 (S.D.N.Y. Mar. 20, 2009); *Agway, Inc. Employees' 401(K) Thrift Investment v. Magnuson,* No. 03-CV-1060, 2006 U.S. Dist. LEXIS 74670, at *73-74 (N.D.N.Y July 13, 2006). *See also In re Enron Corp. Sec., Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 534 n. 3 (S.D.Tex.2003) ("A determination as to whether an ESOP fiduciary breached its fiduciary duty should not be made on a motion to dismiss, but only after discovery develops a factual record."); *In re Ferro Corp. ERISA Litig.,*

Page **6** of **14**

422 F.Supp.2d 850, 860 (N.D.Ohio 2006) ("The Court has serious doubts as to whether it is appropriate to evaluate the *Moench* presumption [on a motion to dismiss for failure to plead claims]").

It is important to highlight that Court's observation in the related securities case, *In re Coventry Health Care Inc. Securities Litigation*, AW-09-2337, where the Court observed that "[Confidential Witness 1's] attendance at the April 2008 meeting [with Coventry executives] [was] the only indication from the Amended Complaint of a time in which Defendants had knowledge or should have had knowledge of Coventry's claims processing problems." While this alleged knowledge of the company's internal business problems, may only pertain to a brief span in the Class Period, the Court has nonetheless found that Plaintiffs have alleged that the Defendants knowingly or recklessly made misleading statements to the public about the success of their PFFS business. Therefore, the Defendants' argument that *DiFelice v. U.S. Airways, Inc.* 497 F.3d 410(4th Cir. 2007) warrants dismissal of the Plaintiffs' Complaint is unavailing here. While the Fourth Circuit found that the ERISA plan fiduciaries in *DiFelice* had fulfilled their duties under ERISA, such a finding was made after discovery had completed. As the Fourth Circuit has articulated,

> When deciding whether a plan fiduciary has acted prudently, a court must inquire whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment. In other words, a court must ask whether the fiduciary engaged in a reasoned decisionmaking process, consistent with that of a prudent man acting in like capacity. A similar inquiry must take place when plaintiffs allege, as the Employees do here, that a fiduciary's *failure* to engage in a transaction, such as removal or closure of a company fund, breaches a duty. In this situation, a fiduciary has an obligation to use appropriate methods to investigate the merits of removing a plan option such as an employer stock fund. The evaluation is not a general one, but rather must depend[ ] on the character and aim of the particular plan and decision at issue and the circumstances prevailing at the time.

497 F.3d at 420 (internal citations omitted).

Defendants additionally assert that "[w]hen plans are written to require or permit investment in employer securities, the investment is offered as a matter of plan design, and the design is not subject to ERISA fiduciary standards." Doc. No. 20-1, (citing *Kirschbaum v.*

Page **7** of **14**

*Reliant Energy, Inc.*, 526 F.3d 243, 249 (5th Cir. 2008)).  Plaintiffs contend that Defendants' assertion that Coventry Stock was a required Plan investment is inaccurate, as they aver that Plan offered twenty-four investment options during the Class Period.  ("The Plan Document permitted the fiduciaries to freely add or eliminate Investment Funds, including the Coventry Stock, from the group of Investment Funds offered in the Plan. . . Accordingly, nothing in the Plan documents prevented the fiduciaries from taking corrective action to prevent erosion of the Plan assets stemming from the Plan holdings of Coventry Stock during the Class Period.").   With these averments, at this juncture, the Court cannot dismiss Plaintiffs' claims based on breach of fiduciary duty on the grounds that Defendants did not have discretion to alter the Plan's investment options.  Factual development of the record is necessary for just determination of this claim.

As an additional ground for dismissal, Defendants argue that Plaintiffs have failed to adequately plead reliance on the misrepresentation or omissions that Plaintiffs made in their public statements with respect to the PFFS program.  However, the Court finds the Plaintiffs have adequately alleged that their financial loss under the Plan resulted from the Defendants' breach of fiduciary duties.  Accordingly, the Court finds that reliance has been sufficiently alleged.

In light of the Court's finding in 09-2337-AW that Plaintiffs adequately alleged that Defendants knew or should have known by April 2008 of the Coventry PFFS claims processing challenges, Plaintiffs in that matter sufficiently alleged that public statements made about the claims processing problems were materially misleading.

In the matter at bar, the Court finds that Plaintiffs have sufficiently alleged that Defendants acted as fiduciaries and have failed to act prudently by continuing to invest in the Plan after the Defendants allegedly knew that the PFFS program was not as profitable as initially

Page **8** of **14**

projected. Whether the company's alleged knowledge of the claims processing problems as of April 2008 actually made further investment in the Plan imprudent is an issue necessitating further factual development. Accordingly, the Court will **DENY** Defendants' Motion to Dismiss as to Count I of the Amended Complaint.

## II. Count II-Failure to Monitor

Defendants contend that Plaintiffs' conflict of interest, co-fiduciary, and failure to monitor claims (Counts II-IV) "are wholly derivative of the Count I 'prudence' and 'misrepresentation' claims; therefore, they must be dismissed because Count I fails to state a cognizable claim." (Doc.No. 20). Addressing the duty to monitor claim in Count II, Plaintiffs contend that the Monitoring Defendants had a duty to monitor the Committee Defendants. According to Defendants, this claim should be dismissed because "the Plan makes it clear that the Monitoring Defendants had no fiduciary duty with respect to Plan Investments; that duty rested *exclusively* with the Investment Committee and it members, a fact acknowledged by the Complaint." *Id.* Defendants cite *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861 (N.D. Ill. 2009) for the proposition that fiduciaries "were not required to monitor the prudence of the individual investments offered under the Plan. Such a broad duty to monitor would undermine the entire rationale of creating a specialized committee tasked with determining what investments should be offered under the plan." *Id.* However, the Fourth Circuit has held that "at reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonable to ensure that their performance has been in compliance with the terms of the plan and statutory standards and satisfies the needs of the plan." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465-66 (4th Cir. 1996). In stating that the Monitoring Defendants failed to "ensure that their fiduciary appointees appreciated the true extent of Coventry's highly risky and inappropriate business practices, and the likely impact of such practices on the value of the Plans' investment in Coventry's Stock," the Court believes that

Plaintiffs have stated a cognizable claim for failure to monitor. The benefit of discovery is necessary for a just determination of the extent to which the Monitoring Defendants possessed a fiduciary duty over Plan Investments. However, at this juncture, dismissal of this claim is inappropriate. Accordingly, the Court will DENY Defendants' Motion to Dismiss Count II of the Amended Complaint.

### III. Count III-Conflict of Interest

In Count III of Plaintiffs' Complaint, Plaintiff posits that Defendants breached their fiduciary duties by failing to avoid conflicts of interest. Defendants aver that Plaintiffs state in a "conclusory fashion that Defendants failed to timely engage independent fiduciaries to make 'independent judgments' about Plan investments. However "there is nothing in this allegation from which the Court could infer that appointing an independent fiduciary would have resulted in the opportunistic sale of the stock Plaintiffs demand." (Doc. No. 20-1, at 42). Defendants additionally allege that "there is no *pe se* conflict of interest under ERISA when a corporate officer or director who also acts as a plan fiduciary is compensated in the form of plan sponsor or engages in transactions involving sponsor stock." (Doc. No. 20-1, at 43).

Plaintiff alleges that Defendants were motivated to "inflate the perceived success of the company in order to increase their salaries and incentive compensation." (Doc. No. 24, at 54). Plaintiffs contend that "instead of voicing concerns over the Plan's imprudent investment in Coventry Stock, Defendants chose to stand by idly while the Plan lost tens of millions of dollars. . . . ." According to Plaintiffs, "between May 2007 and February 2008, Davis, Guertin, Kugelman, Tallet, Wise, and Wolf sold 328,460 shares of Coventry's Stock for over $14 million." *Id.*

"Under ERISA, the duty of loyalty includes the duty to avoid conflicts of interest. The duty of loyalty requires that "all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries. . . . In order to establish a breach of

loyalty claim based on conflict of interest, a plaintiff must prove that the defendant "took an action to affect plan participants adversely while performing a fiduciary function." *Shirk v. Fifth Third Bancorp*, 2009 WL 692124, No. 05-cv-049, at *20 (S.D. Ohio Jan. 29, 2009) (internal citations and quotations omitted).

Addressing the duty to avoid conflicts of interest, the Court in *Martin v. Feilen*, 965 F.2d 660, 670 (8th Cir. 1992), the noted that "[w]hen a fiduciary has dual loyalties, the prudent person standard requires that he make a careful and impartial investigation of all investment decisions." *See also Morgan Stanley ERISA Litigation*, 696 F.Supp.2d at 366 (holding, "[a]lthough Defendants' mere status as employees [of the Company] is not actionable, they can still be held liable for disloyalty if they acted in their own interests or the Company's, and against the interests of the Plan, while performing fiduciary duties," and even "imprecise" allegations stated a claim for breach of the duty of loyalty where, *inter alia,* the compensation of the fiduciaries was tied to the value of the stock)."

The Plaintiffs appear to base their conflict of interest allegations on the fact that the defendants sold a substantial amount of stock during the class period. However, the time in which Plaintiffs allege that this stock was sold was from May 2007 to February 2008." As stated in the Memorandum Opinion in case 09-2337-AW, the Amended Complaint in that matter did not adequately allege that Defendants were aware of the claims processing issues until April 2008. Accordingly, any conflict of interest that the Plaintiffs allege cannot have arisen until April 2008, the date in which Defendants allegedly knew or should have known about Coventry's financial instability caused by the PFFS claims overload.  From the Amended Complaint, in this matter, it does not appear as though any named Defendant sold any stock after April 2008.  As the Plaintiffs not have alleged that insider stock sales of high quantities occurred

after April 2008, the Court will dismiss this Count. Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to this claim.

### IV. Count IV-Co-Fiduciary Liability

In Count IV, Plaintiffs assert that they have adequately stated a claim for co-fiduciary liability under ERISA. Pursuant to 29 U.S.C. A. §1105(a), a defendant can be liable as a fiduciary when he (1) "participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1). . . in the administration of his responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

Defendants posit that Plaintiffs' Complaint offers no allegations that the fiduciaries in this case had knowledge of or knowing participation in another's breach. As the Court found in the related case, 09-2337-AW, Plaintiffs adequately alleged that Defendants knew or should have known about the PFFS claims processing problems within Coventry by April 2008. The Court will adopt this finding in this case. Accordingly, the Court finds that Plaintiffs have adequately pled that Defendants had actual knowledge of the PFFS claims processing problems as of April 2008. Such knowledge, that was allegedly concealed, is sufficient to state a claim for co-fiduciary liability. As such, Defendants' Motion to Dismiss Count IV is **DENIED**.

### V. Defendants' Motion to Dismiss Counts I, III, and IV as to the Company, the Director Defendants, and the Officer Defendants

Defendants move to dismiss Counts I, III, and IV as to the Company, the Director Defendants, and the Officer Defendants, as they argue that these Defendants are not fiduciaries of the Plan (Doc. No. 20). To support their argument, Defendants contend that "a Defendant can be held liable for breaching the duty of prudence under ERISA only if he has fiduciary

responsibility for the acts alleged to constitute a breach." *Id.* As these Defendants do not have "authority to remove (or sell) Coventry Stock, from the Plan," Defendants argue that they are not fiduciaries under ERISA. However, the Court does not find Defendants' conception of fiduciary persuasive. In *Adams v. Brink's Company*, the Fourth Circuit offered a much broader definition of who constitutes a fiduciary under ERISA stating,

> A "person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties, "to the extent" that he or she "exercises any discretionary authority or discretionary control respecting management" of the plan, or "has any discretionary authority or discretionary responsibility in the administration" of the plan. Fiduciary status is not an all-or-nothing concept. The inclusion of the phrase "to the extent" in 29 U.S.C. § 1002(21)(A) means a party is a fiduciary only as to the activities which bring the person within the definition. When determining whether a party is a fiduciary, "a court must ask whether a person is a fiduciary with respect to the particular activity at issue." A court is required to examine the relevant documents to determine whether the conduct at issue was within the formal allocation of responsibilities under the plan documents and, if not, ascertain whether, in fact, a party voluntarily assumed such responsibility for the conduct at issue.

261 Fed.Appx. 583, 590 (4th Cir. 2008)(internal citations and quotations omitted).

Defendants attack the form of Plaintiffs' Complaint, contending that Plaintiffs issue a "formulaic recitation of the elements of a cause of action," for Count IV. However, "an ERISA complaint need 'do little more than track the statutory definition of fiduciary' to establish a defendant's fiduciary status in compliance with Rule 8. *In re Morgan Stanley ERISA Litigation* 696 F.Supp.2d 345, 365 (S.D.N.Y.,2009) (citing *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 241 (2d Cir.2002) (finding that conclusory pleadings adequately allege fiduciary duty)). While Plaintiffs' Complaint does appear to track the statutory definition of fiduciary, the Court finds that these allegations are sufficient to satisfy Rule 8 of the Federal Rules of Civil Procedure, and hence the Plaintiffs have adequately alleged that the Company, the Director Defendants, and the Officer Defendants are fiduciaries of the Plan.

**CONCLUSION**

For the reasons stated above, the Court will DENY-in-PART and GRANT-in-PART. The Court will deny Defendant's Motion to Dismiss as to Counts I, II, and IV, but will grant Defendant's Motion to Dismiss Count III. The Court believes that at this early stage in the litigation, dismissal of Counts I, II, and IV are not warranted, as the parties deserve the benefit of discovery on these claims. An Order Consistent with this Memorandum Opinion will follow.


Date:  <u>March 31, 2011</u>                                                            <u>         /s/          </u>
                                                                                                       Alexander Williams, Jr.
                                                                                                       United States District Judge