IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ADVANTA CORP. ERISA LITIGATION | | |
| MATTHEW A. RAGAN, *et al.* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ADVANTA CORP., *et al.* | : | NO. 09-4974 |

MEMORANDUM OPINION AND ORDER

**Rufe, J.**                                                                                                         September 30, 2011

Plaintiffs bring this action on behalf of themselves and other participants in Advanta Corp.'s Employee Stock Ownership Plan ("ESOP") and Employee Savings Plan ("Savings Plan") who held shares in Advanta common stock in their accounts between October 31, 2006 and November 8, 2009 (the "Class Period"). The claims are brought pursuant to the Employee Retirement Income Security Act ("ERISA").[1]

The Consolidated Class Action Complaint ("Complaint") alleges that Defendants, employees and officers of Advanta who administered the Plans during the relevant time, breached their duties of prudence, loyalty, and monitoring by continuing to offer Advanta stock as an investment option in the Plans after Defendants knew of serious problems that would have a negative effect on Advanta's stock price. Plaintiffs also allege that Defendants failed to provide complete and accurate information to participants in the Plans regarding Advanta's financial condition. Plaintiffs allege that the value of their investments fell along with Advanta's

---

[1] 29 U.S.C. §§ 1109-1132.

fortunes and stock price. Advanta, which is now in bankruptcy, is no longer a defendant. All Defendants move for dismissal of all counts set forth in the Complaint, for failure to state a claim under the Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth here, the Motion will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

Plaintiffs were participants in two retirement plans offered by Advanta to their employees: the ESOP and the Savings Plan. The ESOP was designed to encourage employee ownership of shares of the employer's stock. In this case, the contributions of Advanta stock within the ESOP were funded entirely by Advanta; participants were not permitted to contribute to the ESOP.[2] The Savings Plan was intended to "provide a means for employees to save for retirement" by permitting both participants and Advanta to contribute.[3] The Savings Plan offered a selection of investment options; one of these was the Company Stock Fund, which was invested primarily in Advanta stock.[4]

To support their claims that investment in Advanta stock was not in the interests of the Plans' participants, Plaintiffs have filed the Complaint, detailing the fall of Advanta and the alleged wrongdoing of its officers and directors. Before its collapse, Advanta was a large issuer of credit cards to professionals and small businesses.[5] It operated its business primarily through

---

[2] Compl. ¶ 44.

[3] Compl. ¶¶ 47, 56.

[4] Compl. ¶¶ 60.

[5] Compl. ¶ 98.

its subsidiary, Advanta Bank Corp.[6] Plaintiffs allege that Defendants knew or should have known that Advanta common stock was an imprudent investment for the Plans because its earnings masked what the Federal Deposit Insurance Company ("FDIC") determined were "unsafe, unsound, unfair, deceptive and illegal banking practices."[7] These allegedly illegal practices included a cash back reward program in which it was effectively impossible to earn the promised rewards, and an interest rate re-pricing scheme that indiscriminately raised interest rates, both of which caused quality customers to leave Advanta, and resulted in Advanta paying approximately $35 million in restitution.[8] Plaintiffs allege that Defendants knew that the company's policies had for years led to undisclosed losses,[9] but continued to hold Advanta stock in the Plans even while Advanta's senior executives and directors were selling their Advanta shares.[10] On October 31, 2006, the first day of the Class Period, Advanta Class B stock closed at $ 26.16 per share and Advanta Class A stock closed at $ 29.93 per share.[11] On July 2, 2009 (the last date for which a stock price is alleged), the Class B stock closed at 39 cents per share and Class A stock closed at 42 cents per share, a drop of almost 99 percent.[12]

---

[6] Id.

[7] Compl. ¶ 99.

[8] Compl. ¶¶ 101-03.

[9] Compl. ¶ 144.

[10] Compl. ¶ 104.

[11] Compl. ¶¶ 105, 107.

[12] Compl. ¶¶ 175-76. By November 29, 2007, the share prices had already fallen more than 60 percent. Compl. ¶ 129.

There are two groups of defendants. The first, the "Director Defendants," comprises the CEO and Chairman of the Board of Directors, Dennis Alter, and four members of the Board of Directors, Max Botel, Dana Becker Dunn, Ronald Lubner, and William Rosoff. The second group of Defendants, the "Administrative Committee Defendants," comprises Philip M. Browne, Paul Jeffers, David Weinstock, Michael Coco, John Moore, Jodi Plavner, Cathy Wilson, and Marci Wilf, all of whom served on the committees that administered the Plans.

Plaintiffs allege that Defendants breached their fiduciary duties to the Plans' participants. Count I alleges a failure to prudently and loyally manage the Plans' assets and to disclose information to the Plans' participants; Count II alleges a breach of the duty to avoid conflicts of interest; and Count III alleges a failure by the Director Defendants to adequately monitor other fiduciaries and provide them with accurate information. Defendants argue that all of the claims should be dismissed.

## II. LEGAL STANDARD

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" does not possess enough substance to show that plaintiff is entitled to relief.[13] In determining whether a motion to dismiss is appropriate the court must consider those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[14] Courts are not bound to accept as true legal conclusions

---

[13] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

[14] ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

couched as factual allegations.[15] Something more than a mere *possibility* of a claim must be alleged; the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[16] A complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[17] The court has no duty to "conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[18]

### III. DISCUSSION

#### A. Motion to Dismiss Count I Claims for Breach of Duty to Prudently and Loyally Manage

ERISA requires that fiduciaries discharge their duties solely in the interest of the beneficiaries and with care, skill, prudence, and diligence.[19] A failure to do so may give rise to

---

[15] Twombly, 550 U.S. at 555, 564.

[16] Id. at 570.

[17] Id. at 562 (quoting CarCarriers v. Ford Motor Corp., 745 F.2d 1101, 1106 (7th Cir. 1984).

[18] Id. at 562 (citing McGregor v. Industrial Excess Landfill, Inc., 856 F.2d. 39, 42-43 (6th Cir. 1988)).

[19] Specifically, section 404 of ERISA provides that:

> (a) Prudent man standard of care
>
> (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
>
> (A) for the exclusive purpose of:
>
> > (i) providing benefits to participants and their beneficiaries; and
> >
> > (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with

5

liability,[20] provided that Plaintiffs can show that the breach of fiduciary duty caused a loss.[21] ERISA also provides that fiduciaries may invest in the employer's stock without running afoul of the duty to diversify investments.[22]

It is well established in the Third Circuit that "an ESOP fiduciary who invests the assets

---

like aims . . . .

29 U.S.C. § 1104(a)(1)(A),(B).

[20] Section 405 of ERISA provides in relevant part:

(a) Circumstances giving rise to liability

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

>   (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
>   (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
>   (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

[21] 29 U.S.C. § 1109(a) (providing that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . .").

[22] The statute provides that:

>   (2) In the case of an eligible individual account plan (as defined in section 1107(d)(3) of this title), the diversification requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities (as defined in section 1107(d)(4) and (5) of this title).

29 U.S.C. § 1104(a)(2). The statute also provides that any provision of a plan that "purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty . . . shall be void as against public policy." 29 U.S.C. § 1110.

in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities."[23] In addition, "ESOP fiduciaries are still required to act in accordance with the duties of loyalty and care that apply to fiduciaries of typical ERISA plans."[24] The Savings Plan is not an ESOP, but because the Savings Plan documents required that the investment options include a fund invested primarily in Advanta stock, the same presumption of prudence applies to the Savings Plan as to the ESOP.[25]

To state a claim that Defendants abused their discretion by continuing to invest in and hold Advanta securities, Plaintiffs must plead facts sufficient to "show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate."[26] The Complaint must allege "the type of dire situation which would require defendants to disobey the terms of the Plans by not offering the [employer's stock] as an investment option, or by divesting the Plans of [the employer's] securities."[27] In Moench, the Court reversed a grant of summary judgment where the evidence showed that the company's stock price fell from $18.25 per share to less than 25 cents per share, that regulators informed the board of directors of violations of law and regulation in subsidiary banks, and that the FDIC took control of a subsidiary, after which

---

[23] Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995).

[24] Edgar v. Avaya, Inc., 503 F.3d 340, 346 (3d Cir. 2007).

[25] Id. at 347.

[26] Moench, 62 F.3d at 571.

[27] Edgar, 503 F.3d at 348.

the company filed a petition for bankruptcy.[28]  In Edgar, the Court of Appeals affirmed dismissal of the complaint where the corporation underwent developments "that were likely to have a negative effect on the company's earnings and, therefore, on the value of the company's stock," but where the price of the stock later rebounded.[29]  In this case, Defendants argue that the Complaint alleges nothing more than a summary of Advanta's statements concerning its financial situation, citations to Advanta's stock price, and quotations from financial analysts' statements regarding Advanta.[30]  This understates the overarching pattern of the facts alleged:  that Advanta consistently misrepresented the quality of its accounts, that officers and directors were aware that the business was in trouble and sold their own stock holdings, that the company's stock value plummeted, and that the company filed for bankruptcy protection.  The facts alleged in this case more closely resemble Moench than Edgar, and are sufficient to permit Plaintiffs to conduct discovery.[31]

Defendants also argue that Plaintiffs have failed to plead sufficient facts establishing that Defendants knew that the Advanta stock was an imprudent investment. The Court disagrees. Plaintiffs have alleged that Advanta's share prices were falling precipitously, federal regulators were investigating, and officers and executives were selling large blocks of Advanta stock while publicly stating that the company's future was bright.  The inference may be drawn that at some point during the three-year decline, the totality of the circumstances required Defendants to act to

---

[28] Moench, 62 F.3d at 557.

[29] Edgar, 503 F.3d at 348-49.

[30] Defs.' Mem. Supp. Mot. Dismiss at 39.

[31] To the extent Defendants argue that the Court should consider the state of the global economy and the problems associated with the financial-services industry, the Court declines to do so on the present record.

protect the plan participants.  Plaintiffs are not required to allege more.[32]

Defendants have an additional argument with regard to the ESOP:  that they are immune from liability because the Plan's documents required investment in Advanta securities, leaving Defendants without any discretion to act.  The Third Circuit suggested in Moench that if the fiduciary were "absolutely required to invest in employer securities," the fiduciary's decisions would be "essentially" immune from judicial inquiry.[33]  In the same opinion, however, the Court stated that because it was "not concerned with a situation in which an ESOP plan in absolutely unmistakable terms requires that the fiduciary invest the assets in the employer's securities regardless of the surrounding circumstances" it "should not be understood as suggesting that there never could be a breach of fiduciary duty in such a case."[34]

Even if the decision in Moench may be read as Defendants urge, the Court concludes that Defendants were not "absolutely required" to invest in Advanta shares under the terms of the ESOP.  The ESOP provides that the employer had the right at any time to suspend contributions to the Plan,[35] or to completely discontinue contributions by resolution of the Board of Directors.[36]  Because Defendants were not required to continue contributions of Advanta stock, the ESOP did not, as Defendants argue, "run[] itself."[37]  Dismissal is not appropriate on this basis.

---

[32] The Fifth Circuit's decision in Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243 (5th Cir. 2008), on which Defendants rely, was based on a summary-judgment record.  In Ward v. Avaya, Inc., 487 F. Supp. 2d 467 (D.N.J., 2007), aff'd, 299 F. App'x 196 (3d Cir. 2008), there were no allegations of government investigations, and the stock price had recovered.

[33] Moench, 62 F.3d at 571.

[34] Id. at 567 n.4.

[35] Compl. Exh. D. at § 16.4.

[36] Compl. Exh. D. at § 16.3.

[37] Defs.' Mem. Supp. Mot. Dismiss at 35.

**B.       Motion to Dismiss Count I Claim for Breach of Duty to Disclose**

An ERISA fiduciary may not materially mislead those to whom the duties of loyalty and prudence are owed; the duty includes both the duty not to misinform and the duty to inform when the fiduciary knows that silence might be harmful.[38] The fiduciary has the duty to inform participants about the potential risks associated with investment in the plan, but does not have the duty to give investment advice or opine on the stock's condition.[39] Plaintiffs allege that Defendants breached a duty to ensure that participants had complete and accurate information about Advanta stock. Defendants failed to disclose, among other things, that Advanta was hiding large amounts of impaired credit card receivables, failing to verify its customers' ability to pay (resulting in a default rate nearly six times that of the industry average), and incorrectly accounting for delinquent customers and credit trends.[40] According to Plaintiffs, Defendants should have disclosed the allegedly illegal practices that drew the attention of the FDIC.[41]

These allegations do not state a claim for breach of the duty to disclose, because Plaintiffs cannot allege that a loss resulted.[42] In Edgar, the Third Circuit affirmed the district court's determination, on a motion to dismiss, that had the defendants publicly released negative information earlier, the market would have reacted swiftly, the plans would not have been able to sell the stock holdings at the higher pre-announcement price, and the plans would have sustained

---

[38] In re Unisys Sav. Plan Litig., 74 F.3d 420, 441 (3d Cir. 1996).

[39] Edgar, 503 F.3d at 350 (citing Unisys, 74 F.3d at 443).

[40] Compl. ¶ 100.

[41] Compl. ¶ 101-03.

[42] Edgar, 503 F.3d at 350.

the same losses.[43] On the other hand, had the defendants divested the plans of stock based on information that was not publicly available, they would have faced potential liability for insider trading.[44] This holding precludes Plaintiffs' claim based on a failure to disclose, and this part of Count I will be dismissed.[45]

### C. Motion to Dismiss Count II Alleging Breach of Duty to Avoid Conflicts of Interest

Count II alleges that Defendants failed to engage independent fiduciaries to make independent judgments about the investments in Advanta securities and placed their own interests above those of the Plans' participants.[46] Defendants argue that Plaintiffs have not alleged any specific fiduciary breaches by any Defendant as a result of a conflict of interest. In response, Plaintiffs point to allegations that Defendants' compensation was, in some cases, tied to the price of Advanta stock and that they sold their own stock holdings while failing to protect the plan participants.[47] Some courts have held that allegations that defendants would benefit from an inflated stock price at the expense of participants holding stock for retirement are sufficient to state a claim,[48] while other courts have held that the holding of stock by fiduciaries

---

[43] Id.

[44] Id.

[45] The loss-causation argument does not bar the imprudent investment claim, as Plaintiffs allege that Defendants failed to take steps to protect the Plan participants even as negative information became publicly known.

[46] Compl. ¶ 230.

[47] Compl. ¶¶ 198, 202-05.

[48] See, e.g., In re YRC Worldwide, Inc. Erisa Litig., No. 09-2593, 2010 WL 4386903, at * 9 (D. Kan. Oct. 29, 2010).

does not sufficiently allege that the personal investments caused the fiduciary to take or fail to take any actions detrimental to the plan while acting as a fiduciary.[49] The Court concludes that the determination of whether Defendants' actions constituted a conflict of interest is better determined on a developed record, and will deny the motion to dismiss Count II.

      **D.**      **Motion to Dismiss Count III Alleging Breach of Fiduciary Duty by Failing to Monitor Other Fiduciaries and Provide Information**

The Complaint alleges that Director Defendants are liable for failing to monitor other fiduciaries, including Administrative Defendants, to ensure that these fiduciaries had access to information about the company's business problems, and failed to ensure that the other fiduciaries acted properly.[50] Defendants primarily argue that the claim must be dismissed because the claim for breach of fiduciary duty to prudently manage is without merit. However, because the Court has determined that the prudence claim may proceed, Count III will not be dismissed on this basis.

Defendants also argue that Plaintiffs do not specifically identify any circumstances that should have triggered action by Director Defendants to monitor the other fiduciaries. But Plaintiffs allege that Director Defendants had a duty to ensure that the plan administrators had all relevant information about the problems affecting Advanta, including the allegations that Advanta was hiding large amount of impaired credit card receivables, failing to verify its customers' ability to pay (resulting in a default rate nearly six times that of the industry average), incorrectly accounting for delinquent customers and credit trends, and engaging in illegal

---

[49] See, e.g., In re WorldCom, Inc., 263 F. Supp. 2d 745, 768 (S.D.N.Y. 2003).

[50] Compl. ¶ 238.

practices. These allegations are sufficient to state a claim and Count III will not be dismissed.[51]

### E.    Motion to Dismiss All Savings Plan Claims

Defendants argue that Section 404(a) of ERISA bars any claims based on the Savings Plan. Section 404(c) provides that where a plan "provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary) . . . no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control . . . ."[52] Although Section 404(c) provides a limited exception to a fiduciary's liability where a participant has been deemed to have exercised control over investment decisions, the Department of Labor has emphasized "that § 404(c) would not be available to fiduciaries disclaiming liability for 'the act of designating investment alternatives . . . All of the fiduciary provisions of ERISA remain applicable to both the initial designation of investment alternatives and investment managers and the ongoing determination that such alternatives and managers remain suitable and prudent investment alternatives for the plan.'"[53] In the context of a motion to dismiss, the Court cannot conclude that Defendants offered a broad-enough range of investment

---

[51] See WorldCom, 263 F. Supp. 2d at 765.

[52] 29 U.S.C. § 1104(c)(1)(A).

[53] In re Morgan Stanley ERISA Litig., 696 F. Supp.2d 345, 359-60 (S.D.N.Y. 2009) (quoting Final Regulation Regarding Participant Directed Individual Account Plans (ERISA § 404(c) Plans), 57 Fed. Reg. 46906, 46922 (Oct. 13, 1992) (29 C.F.R. at 2550)).

alternatives or that the investment alternatives were suitable.[54]

### F. Motion to Dismiss All Savings Plan Claims Against the Director Defendants

In addition to the other arguments for dismissal, Director Defendants argue that they cannot be deemed fiduciaries of the Savings Plan, because the terms of the Savings Plan limit the role of the Board of Directors to responsibility "for appointing and removing the Committee and the Trustee and for amending or terminating the Plan and the Trust Agreement."[55] Plaintiffs argue that determination of fiduciary status is a highly fact-intensive inquiry, but do not allege facts that contradict Defendants' argument.[56] Because Plaintiffs have not alleged facts to support a claim that Director Defendants were fiduciaries with respect to the Savings Plan, claims against them with regard to the Savings Plan will be dismissed.[57]

## IV. CONCLUSION

For the reasons stated above, the claims based on a failure to disclose will be dismissed, as will all claims against the Director Defendants based on the Savings Plan. In all other respects, the Motion to Dismiss will be denied. An order will be entered.

---

[54] Cf. Hecker v. Deere & Co., 556 F.3d 575 (7th Cir. 2009) (upholding dismissal in an excessive fee case where the participants had a choice of 2,500 mutual funds varied in type and fee). Defendants assert that they offered 13-14 investment alternatives. Defs.' Mem. Supp. Mot. Dismiss at 18.

[55] Defs.' Mot. Dismiss Exh. D. at § 2.5.1.

[56] See Plff.'s Mem. Opp. Mot. Dismiss at 15-16 (referring to Paragraph 91 of the Complaint, which alleges that "with respect to the ESOP, the Director Defendants had ultimate 'discretion whether and in what amount contributions [were to] be made.'"). No such allegations are made with regard to the Savings Plan.

[57] See In re RCN Litig., No. 04-5068, 2006 WL 753149, at * 8 (D.N.J. Mar. 21, 2006).